# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

## Case No. 21-3115

**ZIA SHAIKH,**

*Appellants/Plaintiff*

**v.**

**MADELINE F EINBINDER J.S.C**
**MARLENE L FORD A.J.S.C**
**JOHN S. DORAN J.S.C**
**DEBORAH H. SCHRON J.S.C**
**FRANCIS HODGSON J.S.C**
**LISA P. THORTON A.J.S.C**

*(All under individual and official capacities)*

*Appellees/Defendants*

## <u>BRIEF OF APPELLANTS</u>

**APPEAL FROM THE ORDER DATED NOVEMBER 1, 2021, OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEWJERSEY AT DOCKET NO. 3:20-CV-02540-ZNQ-TJB, DENYING APPELLANTS' CIVIL COMPLAINT AND MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

I.    TABLE OF AUTHORITIES

II.    JURISDICTION AND VENUE OF DISTRICT COURT

III.    JURISDICTION OF THE THIRD CIRCUIT COURT OF APPEALS

IV.    STATEMENT OF ISSUES UNDER APPEAL

V.     FACTUAL STATEMENT OF THE CASE WITH RESPECT TO EACH
       DEFENDANT

A. Factual Statement for Defendant Judge- Madeline F. Einbinder

B. Factual Statement for Defendant Judge -Marlene L. Ford

C. Factual Statement for Defendant Judge- John S. Doran

D. Factual Statement for Defendant Judge- Deborah H. Schron

E. Factual Statement for Defendant Judge – Frances Hodgson

F. Factual Statement for Defendant Judge- Lisa P. Thorton

VI.    LEGAL ARGUMENTS

A. THE LOWER COURT HAD MISIRABLY FAILED IN RECOGONIZING
   THE DUTY OF JUDGES TO ACT ETHICALLY AS PER THE "ABA
   MODEL CODE OF CONDUCT FOR JUDGES 2010" AND THE NEW
   JERSEY CODE OF JUDICIAL CODUCT AND JUDICIAL CANONS.

1. The Duty of Judges to Act Ethically

2. General Impropriety

3.  Judicial Bias

4.  When is a Judge entitled to Absolute Immunity?

5.  The New Jersey Code of Judicial Conduct and Judicial Canons

6.  Judicial Violations, Misconducts, Abuse of Process and Conflict of Interest by the Defendant Judges

B.  THE LOWER COURT HAS FAILED TO UNDERSTAND, RECOGNISE AND THUS MISCONSTRUED THE LAWS, JUDGMENTS AND NTERPRETATION OF THE TERM "NON-JUDICIAL ACTS" IN TERMS OF JUDICIAL IMMUNITY FOR JUDGES.

1.  No Judicial Immunity for "Non-Judicial Acts"

2.  So, how does a judge establish these two elements?

3.  Judicial Act

4.  Within Judge's Jurisdiction

C.  THE LOWER COURT HAS FAILED TO UNDERSTAND, RECOGNISE AND THUS MISCONTRUED THE LAWS, JUDGMENTS AND INTERPRETATIONS OF THE TERM "IN CLEAR ABSENCE OF ALL JURISDICTIONS" IN TERMS OF JUDICIAL IMMUNITY FOR JUDGES.

1.  No Judicial Immunity- In "*Clear absence of all Jurisdictions*"

D.  THE LOWER COURT HAS FAILED TO UNDERSTAND, RECOGNISE AND MISCONTRUED THE LAWS, JUDGMENTS AND INTERPRETATIONS OF THE TERM " ADMINISTRATIVE ACTIONS" IN TERMS OF JUDICIAL IMMUNITY FOR JUDGES

1. No Judicial Immunity- For Administrative Actions

E. THE LOWER COURT HAS FAILED TO PROPERLY UNDERSTAND, RECOGNISE AND THUS MISCONTRUED THE LAWS, JUDGMENTS AND INTERPRETATION OF THE ACTION AND PROCESS OF "FILING FEE WAIVER" AS A "JUDICIAL ACTION", WHEN THE SAME IS ONLY AN "AMINISTRATIVE ACTION".

1. Filing fee waiver- Administrative Action

F. THE LOWER COURT HAS UTTERLY FAILED TO PROPERLY UNDERSTAND, RECOGNISE THE PROCESS, LAW AND PROCEDURES PERTAINING CLAIMING OF IMMUNITY OF JUDGES – A PARTY CLAIMING IMMUNITY BEARS THE BURDEN OF ESTABLISHING THE JUSTIFICATION FOR SUCH IMMUNITY.

1. A Party claiming immunity "bears the burden of establishing the justification for such immunity"

G. THE LOWER COURTS HAVE UTTERLY FAILED IN UPHOLDING THE VEXATIOUS LITIGANTS' RIGHTS OF THE FIRST AMENDMENT RIGHT OF RIGHT TO SPEECH (RIGHT TO PETITION), 42 USC § 1981 (RIGHT TO SUE, GIVE EVIDENCE, TO BE PARTIES TO SUITS), THE 14TH AMENDMENT RIGHT (DUE PROCESS), AND ACCESS TO THE COURTS:

1. Free Speech (the right to petition) Violation.

2. *Ubi jus ibi remedium*

3. Violation of 42 U.S.C. §1981 And Access to The Courts

4. Due Process Clauses

H. THE LOWER COURT HAS ABSOLUTELY FAILED TO REFER, CONSIDER THE ELABORATE FACTS AND LAWS STATED BY THE PLAINTIFF PERTAINING TO "NON-JUDICIAL" AND "LACK OF

JURISDICTION" CLAUSES IN BOTH THE ORIGINAL COMPLAINT AND IN THE AMENDMED COMPLAINT.

VII.  BRIEF AND CONSICE POINTERS OF THE CONSITUTIONAL AND DUE PROCESS VIOLATIONS AND FAILURES OF THE FEDERAL DISTRICT COURT

VIII.  APPELLANT WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF REVERSAL OF FEDERAL DISTRICT COURT ORDER AND AN EMERGENT INJUNCTION.

IX.   THE BALANCE OF HARDSHIP SHARPLY FAVORS APPELLANT

X.   THE PUBLIC INTEREST FAVORS A PRELIMINARY INJUNCTION

XI.   CONCLUSION

XII.   CERTIFICATION OF ELECTONIC FILING AND WORD COUNT

XIII.  CERTIFICATE OF SERVICE

# I.  TABLE OF AUTHORITIES

*Tannen v. Tannen*, 208 N.J. 409 (2011)

*Santosky v. Kramer, 102 S Ct 1388; 455 US 745, (1982)*

*Quillon v. Walcott, 98 S Ct 549; 434 US 246, 255-56, (1978*

*Yick Wo v. Hopkins, 118 US 356, (1886)*

*Stanley v. Illinois, 405 US 645, 651; 92 S Ct 1208, (1972)*

*Illinois vs. Allen court: U.S. March 31,1970*

*Quillon v. Walcott, 98 S Ct 549; 434 US 246, 255-56, (1978)*

*Yick Wo v. Hopkins, 118 US 356, (1886)*

*Stanley v. Illinois, 405 US 645, 651; 92 S Ct 1208, (1972)*

*Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S. Ct. 1099,

*Davis v. Tarrant County, Tex*., 565 F.3d 214, 221 (5th Cir. 2009)

*Turner v. Pruitt*, 161 Tex. 532, 342 S.W.2d 422, 423 (Tex. 1961)

*City of Houston v. W. Capital Fin. Servs. Corp*., 961 S.W.2d 687

*Mireles v. Waco*, 502 U.S. 9, 112 S. Ct. 286, 116 L. Ed. 2d 9, 1991

*Bradt v. West*, 892 S.W.2d 56, 69 (Tex. App. Houston 1st Dist. 1994)

*Malina v. Gonzales*, 994 F.2d 1121, 1124 (5thCir. 1993)

*Davis v. Tarrant County*, *Texas*, 565 F.3d at 221

*Ballard v. Wall*, 413 F.3d at 515

*Forrester v. White*, 484 U.S. 219 (1988)

*Bradley v. Fisher*, 13 Wall. 335, 351-52 (1872)

*Stump v. Sparkman*, 435 U.S. 349, 357 n.7 (1978)

*Rankin V. Howard 633 F.2d 844*

*Lopez v. Vanderwater,* 620 F.2d 1229, 1235-37 (7th Cir. 1980)

*Gardner v. Parson*, 874 F.2d 131, 145-46 (3d Cir. 1989)

*Hodorowski v. Ray*, 844 F.2d 1210, 1213-15 (5th Cir. 1988)

*Meyers v. Contra Costa County Dep't of Social Serv.*, 812 F.2d 1154, 1157 (9th Cir.)

*Malachowski v. City of Keene*, 787 F.2d 704, 712 (1st Cir.)

*Imbler v. Pachtman*, 424 U.S. 409, 430-31, 96 S. Ct. 984, 994-96, 47 L. Ed. 2d 128 (1976)

*Briscoe v. LaHue*, 460 U.S. 325, 335, 103 S. Ct. 1108, 1115, 75 L. Ed. 2d 96 (1983)

*Twilligear v. Carrell*, 148 S.W.3d 502, 504-505 (Tex. App. Houston 14th Dist. 2004)

*Delcourt v. Silverman*, 919 S.W.2d 777, 782 (Tex. App. Houston 14th Dist. 1996)

*Spencer v. City of Seagoville*, 700 S.W.2d 953, 957-58 (Tex. App.—Dallas 1985, no writ)

*Holloway v. Walker*, 765 F.2d 517, 523 (5th Cir.)

*Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985)

*Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993)

*Sindram v. Suda*, 300 U.S. App. D.C. 110, 986 F.2d 1459, 1460 (D.C. Cir. 1993)

*Brewer v. Blackwell, 692 F.2d 387, 397 (5th Cir. 1982)*

*Turner v. Raynes, 611 F.2d at 97*

*Mullis v. United States Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987)*

*Maestri v. Jutkofsky, 860 F.2d 50 (2d Cir. 1988)*

Stebbins v. Watkins, No. 3:13-CV-03068, 2013 WL 5288476

*Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 432 (1993)*

*Justice Network Inc. v. Craighead Cty., 931 F.3d 753, 763–64 (8th Cir. 2019*)

*Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 432 (1993)*

*Brown v. Reinhart, 760 F. App'x 175, 179 (4th Cir. 2019)*

*Morrison v. Lipscomb, 877 F.2d 463, 466 (6th Cir. 1989)*

*Stebbins v. Watkins, No. 3:13-CV-03068, 2013 WL 5288476*

*Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 432 (1993)*

*Butz* v. *Economou, 438 U. S. 478, 508*

*Kassen v. Hatley, 887 S.W.2d 4, 8-9, 38 Tex. Sup. Ct. J. 73 (Tex. 1994)*

*DeWitt v. Harris County, 904 S.W.2d 650, 653, 38 Tex. Sup. Ct. J. 916 (Tex. 1995)*

*Ballantyne v. Champion Builders, Inc., 144 S.W.3d 417, 422, 47 Tex. Sup. Ct. J. 852 (Tex. 2004)*

*United Mine Workers of America v. Illinois State Bar Association (1967)*

*California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972)*

*Hicks v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d (1988)*

*Nye v. United States, 61 S.Ct. 810, 813 (1941)*

*Lusardi v. Curtis Point Property Owners Assoc., 138 N.J. Super. 44, 50 (App.Div. 1975)*

*N.J. Dept. of Health v. Roselle, 34 N.J. 331 (1961)*

*Hicks v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d (1988)*

*Nye v. United States, 61 S.Ct. 810, 813 (1941)*

*Lusardi v. Curtis Point Property Owners Assoc., 138 N.J. Super. 44, 50 (App.Div. 1975)*

*State v. Madewell, 63 N.J. 506, 512 (1973)*

*D'Amore v. D'Amore, 186 N.J. Super. 525, 530 (App. Div. 1982)*

*Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)

*Doe v. Wood Cty. Bd. of Educ*., 888 F. Supp. 2d 771, 777 (S.D. W.Va. 2012)

*Joelner v. Village of Wash. Park*, *Ill*. 378 F.3d 613, 620 (7th Cir. 2004)

*United States v. Raines*, 362 U.S. 17, 27 (1960)

*Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014)

STATUES, REGULATIONS AND AUTHORITIES

*28 U.S.C. §§ 1331*

*28 U.S.C. §§ 1343*

*42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988*

*28 U.S.C. § 1337*

*28 U.S.C. § 1391*

*42 USC §1981*

*Uniform Interstate Family Support Act 201(2)*

*NJ R 1:7-4*

*New Jersey Court Rule 1:12-1(g)*

*N.J.S.A. 2A:15-49*

*NJ Rev Stat § 2A:20-8 (2013)),*

*42 U.S.C. §§ 1985(2),1986, 1988*

*New Jersey Court Rule 1:12-1(g)*

*N.J.S.A. 2A:15-49*

*42 U.S.C. §§ 1981(a), 1985(2), 1986, and 1988*

*ABA Model Code of Conduct for Judges, 2010*

*New Jersey Code of Judicial Conduct*

*New Jersey Code of Judicial Conduct, Canon 3(A)(6)*

*42 U.S.C. Section(s) 1983*

*Tex. Civ. Prac. Rem Code §51.014(5) (Vernon 2005)*

*NJ R 1:7-4*

*42 U.S.C. §1981, and Rev. Stat. §1979, §1983*

*18 U.S. Code § 1201*

*18 U.S. Code 14 § 872*

*N.J. Court Rule, R. 1:10-3*

*29 CFR 870.10*

*15 U.S.C. § 1673*

*22 USC § 7102*

## II. JURISDICTION AND VENUE OF DISTRICT COURT

The district court has jurisdiction pursuant to 28 U.S.C. §§ 1331, and 1343 which confer jurisdiction upon the district court for violations of the *Fourth, Fourteenth, and Eighth* Amendments, to the Constitution of the United States, the civil rights act of 1866 and 1871, as amended, *42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988.*

The district court also has jurisdiction pursuant to *28 U.S.C. § 1337, and 28 U.S.C. § 1391* as one or more of the defendants are located in this court's district, and a substantial part of the events giving rise to the instant case occurred in this district.

## III. <u>JURISDICTION OF THE THIRD CIRCUIT COURT OF APPEALS</u>

This Court has jurisdiction over this appeal of the order of the District Court that denied Plaintiffs' Complaint. This appeal was timely filed. The District Court entered its order denying Plaintiffs' Complaint on November 1, 2021, and Appellant filed their Notice of Appeal from that order on November 15, 2021. The District Court's Order Dismissing Plaintiff's complaint and denying Plaintiffs' Motion for a Preliminary Injunction considered the merits of Appellants' claims and concluded that Appellants are unlikely to prevail on the merits. The Order dismissing Plaintiffs 'Complaint and Motion for a Preliminary Injunction is immediately appealable by Appellants pursuant to 28 U.S.C. § 1292(a)(1).

## III.  <u>STATEMENT OF ISSUES UNDER APPEAL</u>

- Whether the act of the NJ Federal District Court in never even attempting to request the Defendant Judges to file their responses to the Plaintiff's Complaint is a blatant violation of the Constitutional Due Process of Law.

- Whether the NJ Federal District court blatantly failed its Constitutional duty to follow the Due Process of law when it volunteered itself to become a litigant in this case and defend the judges against the Plaintiff, that too even without the request or consent of the Defendant Judges.

- Whether the NJ Federal District Court ORDERS are judiciously premature and unconstitutional, when none of the Defendant Judges were required to file their reply to statements on the Plaintiff's Compliant.

- Whether the NJ Federal District Court manifestly failed to notice and consider that Defendant Judge Frances Hodgson denied the FEE WAIVER order, after granting the same earlier in the day and to legally construe it as an ADMINISTRATIVE act, which caused Plaintiff's home to be lost to Sheriff sale / foreclosure on Sep 19,2019.

- Whether the NJ Federal District Court, miserably failed to notice and consider that all family court orders against the Plaintiff were completely without any jurisdiction, since they directly violate the US Constitutional laws and US SUPREME court case laws as referenced in Plaintiff's complaint.

- Whether the NJ Federal District Court has failed to notice and consider the "Non-Judicial" and "Lack of Jurisdiction" facts, laws and pleadings of the Plaintiff's amended complaint, in compliance to *Mireles v. Waco* requirements.

- Whether the NJ Federal District Court has failed to give any detailed speaking order of dismissal of the Plaintiff's complaint and has bluntly and negligently quoted only the *Mireles V. Waco* requirements for dismissal, in spite of Plaintiff judiciously complying with same in the Amended Complaint.

- Whether the NJ Federal District Court intentional failed to take notice or legally misconstrued the Constitutional Provisions and the Judgements provided and elaborated by the Plaitniff in his Amended Complaint pertaining to the "Non-Judicial" and "Lack of Jurisdiction" and the "exceptions" to Judicial Immunity of Judges.

- Is it a violation of the First Amendment right of speech (right to petition), 42 USC §1981 (right to sue, give evidence, to be parties to suits), the 14th Amendment right (due process), and access to the courts, even if the person has been determined vexatious by a state court, in particularly as in this case, if?

  a) U.S. citizens are determined as vexatious by fraud and conspiracy,

  b) If U.S. citizen's civil cases are not being evaluated properly and thus his or her access to courts are wrongfully denied, restricting their ability to sue,

  c) If appellate courts have refused to accept U.S. citizens petitions because he or she has been wrongfully determined as a vexatious litigant.

- Whether the vexatious litigant statutes should be outlawed as unconstitutional, offensive to due process, and fair play, and or a tool that is used by defense

attorneys and judges to abuse non-lawyers, violate their rights, and win cases for the defense.

## V. FACTUAL STATEMENT OF THE CASE WITH RESPECT TO EACH DEFENDANT

### A. DEFENDANT JUDGE -MADELINE F. EINBINDER

On or about April 23, 2014, pursuant to: **Docket No. FM-15-500-14-W** the Plaintiff's first judge in his family court dispute against his ex-wife, Defendant Madeline F. Einbinder issued an Ex-Parte order in the absence of Plaintiff and his attorney, while not even requiring any evidence on allegations being made by the ex-wife's divorce counsel and furthermore not even a simple attestation or testimony on such allegations by from the ex-wife. Based on these conjectures alone Plaintiff was forthwith removed from his home, stripped of the custody of his three minor children, barred from retuning there, ordered his cellular phone to be tracked, banned him from obtaining a US passport, and blocked the Plaintiff from selling his home to be able to split the proceeds as equitable distribution.

On or about April 24, 2014, Defendant Einbinder refused to correct her order upon the written request of the Plaintiff's counsel Stephanie J. Brown, Esq. Where the Plaintiff's counsel complained to the court that no notice of the hearing was received by her very small legal practice. The Fact that Ms. Brown has such a small practice

gives rise to the claim that notice was never sent to her office as reported by the clerk of the court. What's abundantly shocking is that the court offered no proof that the notice was sent to the Plaintiff's counsel and could not offer such proof since the notice was never sent. This action by the Defendant constitutes a violation of the Plaintiff's due process rights under the Fourteenth Amendment of the United States Constitution, and a fundamental miscarriage of justice.

On or about June 13, 2014, the Defendant in this instant case granted a $50,000 (FIFTY THOUSAND DOLLARS) retainer to be paid to opposing counsel Steven A. Zabarsky Esq, claiming to "level the playing field" *while the Plaintiff stood before the court all alone as a pro se litigant, desperately raising this award of the fees as an alarming concern, but the defendant from the bench continued on berating Plaintiff as he watched in horror his NJ and US constitutional rights to a fair and impartial hearing getting violated with every word from the Defendant. Favorable orders for the benefit of her family friend Steven A. Zabarsky were issued who was also the best man to her husband at their wedding; recusal was demanded by Plaintiff but was repeatedly denied; the conflicts of interest were encouraged and benefited the friends of this defendant.*

On October 15, 2014, Defendant Einbinder conducted EXTORTION by issuing a bench warrant order for the Plaintiff's arrest and illegal incarceration to once again

illegally enrich her family friend Steven A. Zabarsky; the order reads *"A bench warrant shall issue against Zia H. Shaikh , for his continuing failure to abide by the courts orders to pay Steven A. Zabarsky, ESQ for counsel fees in the amount of $35,827.41, Joseph Gunteski CPA in the amount of $10,000 ..."*; this is blatant extortion using government resources to show favor to her friends. Additionally, the order demanded Plaintiff turn over his passport to opposing counsel; ONLY the Federal government has the authority to revoke or confiscate a passport. Superior courts do not have jurisdiction and authority to arrest and imprison litigants for a civil, commercial issue. Under duress of the bench warrant and not being able to see his children due to the chaos created by Defendant Einbinder Plaintiff under extreme duress paid the $50,000 to Steven A. Zabarsky from his children's college fund and his IRA retirement account. This act by the Defendant constitutes kidnapping which is clearly defined by *18 U.S. Code § 1201.*

In her new order dated December 19, 2014, Defendant Einbinder seems to reverse her position on fast tracking the Forensic accounting investigation while showing the DEPTH of her loyalty to Steven A. Zabarsky by GRANTING an additional $5,000 from the retainer funds paid by Plaintiff to his second divorce attorney August J. Landi, thus even shortchanging Plaintiff's counsel for the benefit of Zabarsky – HOW ludicrous – the order stated in part *"Defendant's (ex-wife) application for an order for the sum of $5,000 held by August J. Landi Esq to be*

*paid to Steven A. Zabarksy Esq".* Had the $5,000 been paid to the forensic accountants per Plaintiff's motion for same via his attorney, the divorce could have settled in the following weeks, but EIGHT years later despite fighting for justice feverishly and being blocked at every step via collusion and abuse of power. Plaintiff is still being victimized by the blatant disregard of the law and abuse of government resources by this defendant.

Plaintiff's marital home was owned and titled into a Land Trust with no interests and possessory rights on Plaintiff's wife, which is a clear personal/separate property and not available for equitable distribution under New Jersey Laws and Statutes. In such a scenario, Defendant Judge Einbinder on April 23, 2014, granted ownership to Plaintiff's ex-wife Laura, without any jurisdiction to grant such an order, once again violating all the pertinent Federal and New Jersey Laws and Statutes.

The Supreme Court of New Jersey held that a beneficiary spouse's interest in a trust does not constitute property "legally and beneficially" acquired unless the beneficiary has acquired "unimpaired control and totally free use and enjoyment" of the trust assets. See *Mey*, 79 N.J. at 125. This holding was reaffirmed by the New Jersey Supreme Court in *Tannen v. Tannen*, 416 N.J. Super. 248 (App. Div. 2010), *aff'd Tannen v. Tannen*, 208 N.J. 409 (2011).

Also beginning on April 23, 2014, up to this day all the orders passed by this Defendant Judge were without jurisdiction and it never cured loss of the Plaintiff's custody / Parental rights pursuant to *Santosky v. Kramer, 102 S Ct 1388; 455 US 745, (1982)-*

## DEFENDANT JUDGE-MARLENE L. FORD

In June 2015 Marlene L. Ford took over the Plaintiff's case in light of her own conflicts of interest with opposing counsel Zabarsky and continued to ignore the violations of the previous judge Einbinder. Plaintiff once again attempted to gain unbiased adjudication of his case and over the life of the case thus far has filed over TWENTY motions for her recusal. Marlene L. Ford was an Ocean County prosecutor with Zabarsky.

Plaintiff was jailed by defendant Ford from June 15, 2016 to July 02,2016 (17 days) and again from March 21,2017 to April 12,2017 (24 days) on nonindictable alleged offenses for failing to pay alleged support payments in violation of the Uniform Interstate Family Support Act 201(2) thus lacking any inpersonam and subject matter jurisdiction.

The illegal incarcerations of June 15, 2016, to July 2, 2016, and again on March 21, 2017 to April 12, 2017, constitute an act of kidnapping, a gross violation of the

Plaintiff's rights under the Fourth Amendment of the United States Constitution, and the Federal kidnapping statute.

After instructing Zabarsky from the bench at an earlier hearing in October 2016, for him to file a motion to suppress Plaintiff's pleadings under the pretense of non-compliance with discovery; her November 2016 order suppressed the Plaintiff's pleadings further depressing his rights to the due process of law. Defendant Ford's disregard for the law is abundantly clear when she chose to give legal advice to opposing counsel Zabarsky informing him that he needed to file a motion to suppress the pleadings. This violates the ethical rules and the Plaintiff's rights to due process under the Fourteenth Amendment to the United States Constitution to a fair and impartial hearing.

At the default trial on December 20, 2016, Defendant Ford granted sole custody of the three children when he was never found to be a danger to his children in anyway by a three-month DCP&P investigation at the onset of the divorce upon false allegations made by the ex-wife; granted all equity from the marital home owned by the land trust without any jurisdiction, retirement savings etc. to the ex-wife, including phantom assets alleged by the forensic accounting firm of Cowan Gunteski

& Co. The Plaintiff was burdened with all of the marital debts in line with the April 23, 2014, order made by Defendant Einbinder.

Adding salt to the wound once again defendant Ford showed extreme favor to her former  colleague from the Ocean county prosecutor's office, Steven A. Zabarksy by granting over $47,110.57 in additional fees at the FJOD even though Zabarsky was the main reason to drag out the divorce proceedings and even to this day has failed to prove the existence of the phantom assets alleged and or the CIS presented by the Plaintiff and his attorneys throughout the divorce proceedings were inaccurate in anyway; despite the services of the TOP New Jersey firm of Cowan Gunteski forensic accountants --- blatant disregard for the law whatsoever and malicious violations of the Plaintiff's rights.

**Defendant Ford was fully aware that on January 19, 2017, Plaintiff had filed a Notice of appeal with the NJ Appellate court thereby removing all jurisdiction to issue new orders** but this was not sufficient to stop Ford from once again violating NJ court rules by issuing several new orders on October 19,2017 refusing the one hour per week of supervised parenting time when Plaintiff filed his motion to enforce litigants' rights since his ex-wife refused to bring the children to court ordered visitations.

On March 3, 2017, Defendant Ford issued an illegal bench warrant to once again kidnap the Plaintiff for failure to pay alleged support. Plaintiff was subsequently arrested after a supervised visitation session at the Ocean County courthouse by the Sheriffs dept and was confined to the Ocean County jail for twenty-two days, from March 21, 2017, to April 12,2017. This incarceration occurred while a motion was pending in her court room thru Plaintiff's recently obtained third counsel David A. Schlendorf who was specifically hired to stay this bench warrant pending a plenary hearing. Defendant Ford once again acting as IF she is a monarch paid no attention to same and continued to jail Plaintiff without any subject matter or inpersonam jurisdiction; this is blatant violation of the Plaintiff's rights under the Fourth Amendment of the United States Constitution as well as New Jersey Statutes by her actions lacking inpersonam and subject matter jurisdiction.

In her further desperate attempt to shut out the Plaintiff's access to the court system, WITHOUT ANY JURISDICTION, since the underlying case was being appealed at the NJ appellate division; defendant Ford then crafted a new scheme and issued an additional new order dated October 19,2017 in which once again with no basis, labeled Plaintiff a "vexatious litigant", without ever providing any findings of fact or conclusions of law as required by NJ R 1:7-4; any and all filings with the court

cited established NJ and US case law demanding available relief, but all such citations were ignored by Defendant Ford.

Plaintiff has filed over TWENTY motions for recusal of Def. Ford in accordance with New Jersey Court Rule 1:12-1**(g)** which states in part: ***when there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so,*** as well as the NJ statute <u>N.J.S.A.</u> 2A:15-49 states: ***A judge must disqualify himself if his impartiality might reasonably be questioned. Code of Judicial Conduct, Canon 3C(1)(a)*** and for change of venue due to multiple federal lawsuits filed against her in which she is a co-defendant, raising insurmountable issues of conflict of interest and bias.

In light of citing various federal case law to obtain a fair trial, all such motions repeatedly get denied till this present day; adding to Plaintiff's frustration in his desperate efforts to obtain justice. Defendant Ford blatantly refuses even for the direct letters that Plaintiff has send off late as of November 8, 2021 which objected to Defendant Ford from presiding on the December 03,2021 hearings on two pending motions due to blatant bias and appearance of impropriety; she later denied any relief in accordance with the law.

This is a direct violation of the Sixth amendment which states "A party's Sixth Amendment right to attend his own trail was so "absolute" that, regardless of how unruly his conduct, he could never be held to have lost that right so long as [he] insisted on it. *See Illinois vs. Allen court: U.S. March 31,1970397 U.S. 337 (1970),90 S. Ct.1057.* This frivolous determination has continued to harm the progression of Plaintiff's case and unbiased adjudication of an ordinary divorce case till this day and is yet another example of your abuse of authority, harassment and blatant disregard for the rule of law under frivolous doctrine of judicial immunity.

Plaintiff's marital home was owned and titled into a Land Trust with no interests and possessory rights on Plaintiff's wife, which is a clear personal/separate property and not available for equitable distribution under New Jersey Laws and Statutes. In such a scenario, Defendant Judge Ford in December 2016 granted ownership to Plaintiff's wife Laura, completely without jurisdiction and violating all the pertinent Federal laws and New Jersey Laws and Statutes.

The Supreme Court of New Jersey held that a beneficiary spouse's interest in a trust does not constitute property "legally and beneficially" acquired unless the beneficiary has acquired "unimpaired control and totally free use and enjoyment" of the trust assets. See *Mey*, 79 N.J. at 125. This holding was reaffirmed by the New

Jersey Supreme Court in *Tannen v. Tannen*, 416 N.J. Super. 248 (App. Div. 2010), *aff'd Tannen v. Tannen*, 208 N.J. 409 (2011).

Also beginning on April 23, 2014, up to this day all the orders passed by this Defendant Judge were without jurisdiction and it never cured loss of the Plaintiff's custody / Parental rights pursuant to *Santosky v. Kramer, 102 S Ct 1388; 455 US 745, (1982)*.

## DEFENDANT JUDGE- JOHN S. DORAN

Sometime in April of 2017 Defendant John S. Doran was assigned the "enforcement" portion of the underlying divorce case Dkt# FM 15-500-14W thus bi-furcating the case between two judges. Plaintiff was unaware of this change since he was illegally incarcerated in Ocean cty jail between Mar 21 - Apr 12,2017 and despite the pending motion to stay the bench warrant of March 03,2017 before defendant Ford while being represented by counsel David A. Schlendorf, Defendant Doran refused to release Plaintiff until April 12,2017. Plaintiff has continually challenged the jurisdiction of the court to which at an oral argument Defendant Doran responded *".... I have jurisdiction!"* without citing any legal authority on same. Refusing to respond to any legal challenges, on November 28,2017 Defendant Doran issued a bench warrant citing an alleged noncompliance with support orders;

this order is still active as of today, leaving Plaintiff in constant fear of being arrested while he continues to assert his rights at various levels of our judiciary.

These acts make Defendant Doran guilty of violating the Federal kidnapping statute. The defendant had no grounds or legal authority to order the Plaintiffs arrest and subsequent incarceration predicated on a civil law case. Defendant Doran subsequently denied all of the Plaintiff's challenges to the court's jurisdiction pursuant to *The Interstate Family Support Act Section 201(2).*

The November 28, 2017, bench warrant despite the various challenges made by the Plaintiff on violations of jurisdiction and demands of proof as required by law *(See: NJ Rev Stat § 2A:20-8 (2013)),* Defendant Doran has continued to evade all legal challenges by the Plaintiff under the direct orders of Defendant Ford. Defendant Doran has refused to recuse himself from this case even though the Plaintiff's motions seeking his recusal make a showing of grounds for him to do so.

Defendant Doran also refused to reverse the bench warrants on lack of subject matter and inpersonam jurisdiction. It is clear that Defendant Doran was taking orders from and following the directions of Defendant Ford. This Defendant has continued the conspiracy to violate the Plaintiff's rights under the color of state law and has committed the torts of abuse of process and malicious prosecution of the Plaintiff.

Defendant Doran while working under the direct orders of Defendant Ford refused to recuse himself after the Plaintiff filed motions for him to do so given the close relationship with Defendant Ford. He showed a clear conflict of interest in the case against the Plaintiff given that Defendant Ford was his supervisor. He conspired with Defendant Ford to deprive the Plaintiff of his rights protected by Federal law pursuant to 42 U.S.C. §§ 1985(2),1986, 1988.

Also beginning on April 23, 2014, up to this day all the orders passed by this Defendant Judge were without jurisdiction and it never cured loss of the Plaintiff's custody / Parental rights pursuant to *Santosky v. Kramer, 102 S Ct 1388; 455 US 745, (1982)-*

## D. DEFENDANT JUDGE- DEBORAH H. SCHRON

For a short while the case moved to a new Judge Valter Must who upon perhaps realizing the validity of the jurisdictional challenges transferred the case to the FIFTH judge in this case sometime in October of 2019 to Defendant Deborah H. Schron. Defendant Schron under the direction of Defendant Ford failed to respond to the Plaintiff's challenges on jurisdiction pursuant to the *Uniform Interstate Family Support Act 201(2)*. She continually issued new orders as the newest judge on the Plaintiff's post-divorce case in spite of being notified that her court lacked subject matter and inpersonam jurisdiction in addition to the case now having progressed to

the NJ Supreme court Dkt# 082984 but she continued to violate and or respond to jurisdictional challenges.

Defendant Schron further failed to comply with the lawful jury verdict order of September 06,2019 in sua sponte reversing custody of the minor children back to the Plaintiff. She went out of her way to state that the AFFIDAVIT signed by Martin Lynch of WTPCS and corresponding jury verdict ***"…is counterfeit and is not recognized by this court";*** rejecting compliance with a lawful order and acted on her own under the color of state law to violate the Plaintiff's rights of due process and a fair and impartial hearing as well as the *Uniform Interstate Family Support Act...*

Deborah H. Schron J.S.C. in retaliation continued to preside on Plaintiff's cases at the Ocean cty superior court in violation of New Jersey Court Rule 1:12-1(g) and statute N.J.S.A. 2A:15-49 in presence of impropriety and insurmountable conflicts of interest, while being repeatedly noticed by this Plaintiff on her violations of NJ court rules and NJ Judicial canons.

Def. Deborah Schron lacked jurisdiction pursuant NJ R.1:12-1(g) and NJ statue 2a:15-49

Also beginning on April 23, 2014, up to this day all the orders passed by this Defendant Judge were without jurisdiction and it never cured loss of the Plaintiff's

custody / Parental rights pursuant to _Santosky v. Kramer, 102 S Ct 1388; 455 US 745, (1982)-_

## E. DEFENDANT JUDGE -FRANCES HODGSON

Defendant Frances Hodgson under direct order of Defendant Ford led to the loss of the Plaintiff's former marital residence to the Ocean County Sheriff sale on September 03,2019. On February 12,2019 Plaintiff had filed a motion to vacate sheriff sale of the former marital residence due to lack of service on the original foreclosure proceedings from the lender with a fee waiver. On February 15, 2019 defendant Hodgson in his first order of the day GRANTED the fee waiver that would have allowed the progression of the accompanying motion but later that same day reversed his own fee waiver order without any explanation or legal citations, despite multiple letters requests for same by the Plaintiff, thus leading to the loss of the family home causing his three minor children and ex-wife to become homeless.

Defendant Hodgson under direct guidance from Defendant Ford maliciously abused his power to prevent the use of the court system to save the home Plaintiff built for his children by avoiding the docketing of the case for a hearing or trial on the matter. Plaintiff had used up the two statutory adjournments and the only remedy available was to file the motion to stay the erroneous sale of the home. The Plaintiff did just

that and was ignored by the Defendant creating a direct and proximate cause to the loss of the home.

Also beginning on April 23, 2014, up to this day all the orders passed by this Defendant Judge were without jurisdiction and it never cured loss of the Plaintiff's custody / Parental rights pursuant to *Santosky v. Kramer, 102 S Ct 1388; 455 US 745, (1982)-*

## F. DEFENDANT JUDGE- LISA P. THORTON

Plaintiff as the resident of Monmouth County NJ filed five separate law division complaints in this venue against various individuals who had harmed him in various capacities. The five cases were filed and accepted with the corresponding fee waivers and assigned to numerous judges in the Monmouth vicinage for adjudication.

Without any notice or request for dismissal by any party, Defendant Lisa P. Thorton A.J.S.C. dismissed all five cases sua sponte. It is plainly obvious that several months later while these cases were in the process of being adjudicated by multiple judges in the Monmouth city venue, Def. Thorton was ordered or influenced via Ex-Parte communications by Defendant Marlene L. Ford to defeat the Plaintiff from accessing the court system and receive proper adjudication of his cases in light of Due Process

laws of our nation. Upon issuing these surprising dismissal orders Defendant Thorton reasoned by citing the Oct 19, 2017, order …that states in relevant part:

*"With regard to any future filings with the Superior Court of New Jersey by this Plaintiff, Zia Shaikh, the Court will order that any filing shall be marked received not filed and shall be reviewed by the Assignment Judge as to whether or not this filing is a duplication of a prior filing; repetitive; nonsensical, or otherwise incomprehensible and thus constituting a vexatious filing. The Court will then determine whether or not to accept the documents for filing".*

As it is clearly evident from the language of the order that the assignment Judge DOES NOT have to be Marlene Ford, yet this miscarriage of justice is being perpetrated by the malfeasance and misfeasance of Ocean County Assignment Judge Marlene Lynch Ford, A.J.S.C., carried out by and in collusion with Monmouth County Assignment Judge Lisa P. Thorton A.J.S.C

Defendant Thorton has now blocked without cause the Plaintiff's right to access the court. Pursuant the Fourteenth Amendment of the United States Constitution the Plaintiff has such a fundamental due process right to access the courts that violating those rights shocks the conscience and creates the most basic and fundamental miscarriage of justice. This defendant has done just that and has acted without any

jurisdiction as well as in a manner outside of the laws of the State of New Jersey and the United States. This Defendant is guilty of not only the tort of abuse of process but malicious prosecution. The atrocities that this Defendant has caused cannot be allowed to stand in light of the NJ and US constitutional rights available to this Plaintiff.

Defendant Thorton's sua sponte dismissal of lawsuits filed against several defendants and her blocking the Plaintiff's access to the courts stating that the Plaintiff needed leave of another county court judge to file any motions therein has continued the conspiracy with Defendant Ford and has violated *42 U.S.C. §§ 1981(a), 1985(2), 1986, and 1988.*

Also beginning on April 23, 2014, up to this day all the orders passed by this Defendant Judge were without jurisdiction and it never cured loss of the Plaintiff's custody / Parental rights pursuant to *Santosky v. Kramer, 102 S Ct 1388; 455 US 745, (1982)*

## VI. LEGAL ARGUMENTS

### A. THE LOWER COURT HAD MISIRABLY FAILED IN RECOGONIZING THE DUTY OF JUDGES TO ACT ETHICALLY AS PER THE "ABA MODEL CODE OF CONDUCT FOR JUDGES 2010" AND THE NEW JERSEY CODE OF JUDICIAL CODUCT AND JUDICIAL CANONS.

The Lower court while bluntly dismissing the Plaintiff's complaint without any speaking order and by merely referencing the *Mireles v. Waco*, judgement squarely ignored the Duty of Judges to act Ethically as per the "ABA Model Code of Conduct for Judges, 2010" and the New Jersey Code of Judicial Conduct and Judicial Canons.

## 1.  THE DUTY OF JUDGES TO ACT ETHICALLY

In order to fully understand the responsibilities of judges to act ethically and without bias, it is prudent to consider the regulations that govern the judiciary.  The American Bar Association (ABA) has historically issued the Model Code of Judicial Conduct (Code), which has been adapted throughout the past century. (ABA *Model Code of Judicial Conduct 2010)*.  Though the Code is not enforceable by the ABA, state court judges must adhere to their state's version of the Code, which is imposed by the highest court in the state. Most states have drafted a very similar version of the Code to which their judges must abide. Federal judges must adhere to the Code of Conduct for Federal Judges.

The Current State of the Model Code of Judicial Conduct:

The ABA in (2010) amended the Code as follows. The Preamble to this current version emphasizes the importance of "[a]n independent, fair and impartial judiciary" for our country, "based upon the principle that an independent, impartial,

and competent judiciary, composed of men and women of integrity, will interpret and apply the law that governs our society." (*MODEL CODE OF JUDICIAL CONDUCT 2010*)

In order for the strength and legitimacy of the judiciary to remain intact, "judges should maintain the dignity of judicial office at all times and avoid both impropriety and the appearance of impropriety in their professional and personal lives.  They should aspire at all times to conduct that ensures the greatest possible public confidence in their independence, impartiality, integrity, and competence." Having set the backdrop for ensuring the importance of judicial integrity, the Model Code of Judicial Conduct strives to maintain a high level of ethical behavior from each member of the American judiciary system.

### 2.  General Impropriety

The 2010 Code is separated into four discrete canons, each with its own distinct topic. The first canon warns of actual impropriety and the appearance of impropriety for the judiciary.

**Rule 1.2,** titled "Promoting Confidence in the Judiciary," describes with slightly more clarity what a judge should do to avoid acting with impropriety.

**Rule 1.3** expands on the previous rule by insisting that "[a] judge shall not abuse the prestige of [the] judicial office to advance the personal or economic interests of the judge or others, or allow others to do so."

### 3. Judicial Bias:

The second canon of the 2010 Code promotes the importance of impartiality, competence, and diligence within the judicial office. This single canon includes a total of sixteen rules, which range in titles and topics from "Impartiality and Fairness" and "Ensuring the Right to Be Heard" to "Decorum, Demeanor, and Communication with Jurors" and "Disability and Impairment." **Rules 2.2 and 2.3,** however, deal with judicial bias and the negative aspects that bias can have on the judiciary.

**Rule 2.3,** "Bias, Prejudice, and Harassment," explores the responsibilities of judges to act without bias in all judicial affairs.

**Rule 2.4,** "External Influences on Judicial Conduct," states in part that "[a] judge shall not permit family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment."

### 4.  When is a Judge Entitled to Absolute Immunity?

Absolute Immunity is a tool designed specifically to allow judges the ability to effectively perform their job. A Judge acting in his or her official judicial capacity enjoys absolute immunity from liability for judicial acts performed within the scope of their jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978); *Davis v. Tarrant County, Tex*., 565 F.3d 214, 221 (5th Cir. 2009); *Turner v. Pruitt*, 161 Tex. 532, 342 S.W.2d 422, 423 (Tex. 1961). *"Judges enjoy absolute judicial immunity from liability for judicial acts, unless the act is performed in the clear absence of all jurisdictions*." *Alpert v. Gerstner*, 232 S.W.3d 117, 127 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (quoting *City of Houston v. W. Capital Fin. Servs. Corp*., 961 S.W.2d 687, 689 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd w.o.j.)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdictions.'" *Stump*, 435 U.S. at 356-57.

"Judicial immunity is immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 112 S. Ct. 286, 116 L. Ed. 2d 9, 1991 (1991); *Bradt v. West*, 892 S.W.2d 56, 69 (Tex. App. Houston 1st Dist. 1994). Therefore, it

makes no difference what specific causes of action are brought; the judge is immune from being sued at all. *Id* at 288. Despite the unfairness to litigants that sometimes results, the existence of the doctrine of judicial immunity is in the best interests of justice as a whole. *Stump*, 435 U.S. at 363, 98 S. Ct. at 1108. It allows a judge, in exercising the authority vested in him, to be free to act according to his best judgment, unencumbered by anxiety about being sued for acts he performs in discharging his duties. *Id*. The public has a right to expect the unfettered execution of those duties; this doctrine helps the judge fulfill those expectations.

Thus, absolute judicial immunity "should not be denied where the denial carries the potential of raising more than a frivolous concern in a judge's mind that to take proper action might expose him to personal liability." *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5thCir. 1993). "The fact that the issue before the judge is a controversial one is all the more reason that he should be able to act without fear of suit." *Stump*, 435 U.S. at 364, 98 S. Ct. at 1108. **In essence, as long as the judge acts 1) within his judicial capacity (not administrative capacity) and 2) within his jurisdiction, the judge is entitled to absolute judicial immunity.**

## 5. THE NEW JERSEY CODE OF JUDICIAL CONDUCT AND JUDICIAL CANONS:

The New Jersey Code of Judicial Conduct, Judicial Canons, which EVERY judge is obligated to uphold. Judicial Canon 3 imposes upon a "Judge" the following:

**Canon 3A(3)**. The duty to hear all proceedings fairly and with patience is not inconsistent with the duty to dispose promptly of the business of the court. Courts can be efficient and business like
while being patient and deliberate.

**Canon 3A(6).** A judge should accord to every person who is legally interested in a proceeding, or that person's lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending
proceeding.

The duty under Canon 2 to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary applies to all the judge's activities, including the discharge of the judge's adjudicative and administrative responsibilities. The duty to be respectful includes the responsibility to avoid

comment or behavior that could reasonably be interpreted as harassment, prejudice or bias.

When a judge acts as a trespasser of the law, when a judge does not follow the law, the judge loses subject-matter jurisdiction and the judges orders are void, of no legal force or effect. The U.S. Supreme Court, in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974) stated that "when a state officer acts under a state law in a manner violative of the Federal Constitution, he "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." [Emphasis supplied in original]. By law, a judge is a state officer.

## 6. JUDICIAL VIOLATIONS, MISCONDUCTS, ABUSE OF PROCESS AND CONFICT OF INTEREST BY THE DEFENDANT JUDGES

- On April 23, 2014 which was the very first case management conference to initiate the divorce process, Ocean County Prosecutor Zabarsky illegally influenced his best friend's wife who was the presiding Judge Einbinder to fast-track his Pendente Lite financial and custody motion from its return date on May 2, 2014, to his desired date of April 23, 2014 to take advantage of the absence of

opposing counsel and Pla'.  Plaintiff's attorney, Stephanie Brown, Esq., was not informed of this case management conference date and neither in the impromptu oral request by counsel Zabarsky for the later date motion hearing which was changed to April 23, 2014 by his oral request, promptly granted by this judge. Plaintiff was never served notice that the hearing was moved up from May 2, 2014, to April 23, 2014.  As a result of this ex parte hearing before Judge Einbinder, in violation of the *New Jersey Code of Judicial Conduct, Canon 3(A)(6)*, prohibiting ex parte hearings or communications, Defendant Judge Einbinder committed judicial misconduct and issued the Pendente Lite Order on April 23, 2014 granting ex-wife and divorce case Defendant Laura Germadnig sole possession of the marital residence at 5 Lons Lane, Jackson, New Jersey, which was valued at approximately $550,000 ($120,000 equity) at that time in 2014 and ordered Plaintiff's removal from the premises on April 23, 2014, granted Defendant Laura Germadnig sole custody of all three (3) children without conducting a custody hearing or seeking any evidence on allegations spoken only by counsel Zabarsky without testimony from Laura Germadnig, the mother.

- On or about June 13, 2014, the Defendant Judge Madeline F Einbinder in a case granted a $50,000 (FIFTY THOUSAND DOLLARS) retainer to be paid to opposing counsel Steven A. Zabarsky Esq, claiming to "level the playing

field" *while the Plaintiff stood before the court all alone as a pro se litigant, even raising the award of the fees as an alarming concern, but the defendant from the bench continued on berating Plaintiff as he watched in horror his NJ and US constitutional rights to a fair and impartial hearing getting violated with every word from the Defendant. Favorable orders for the benefit of her family friend Steven A. Zabarsky were issued who was also the best man to her husband at their wedding; recusal and reversal of the orders was demanded by Plaintiff but denied as the prescribed solution* **to such conflicts of interest.**

- In June 2015 Marlene L. Ford took over the Plaintiff's case **in light of her own conflicts of interest** with opposing counsel Zabarsky and continued to ignore the violations of the previous judge Einbinder. Plaintiff once again attempted to gain unbiased adjudication of his case and over the life of the case has filed over ten motions for her recusal. Marlene L. Ford was an Ocean county prosecutor with Zabarsky.    From June 15, 2016 to July 02,2016 (17 days) and again from March 21,2017 to April 12,2017 (24 days) Defendant Ford jailed the Plaintiff on nonindictable alleged offenses for failing to pay support payments in violation of the Uniform Interstate Family Support Act 201(2) thus lacking any inpersonam or subject matter jurisdiction.

- Defendant Doran while working under the direct orders of Defendant Ford refused to recuse himself after the Plaintiff filed motions for him to do so given the close relationship with Defendant Ford. He ***showed a clear conflict of interest*** in the case against the Plaintiff given that Defendant Ford was his supervisor. He conspired with Defendant Ford to deprive the Plaintiff of his rights protected by Federal law pursuant to 42 U.S.C. §§ 1985(2),1986, 1988.

**B. <u>THE LOWER COURT HAS FAILED TO UNDERSTAND, RECOGNISE AND THUS MISCONSTRUED THE LAWS, JUDGMENTS AND INTERPRETATION OF THE TERM "NON-JUDICIAL ACTS" IN TERMS OF JUDICIAL IMMUNITY FOR JUDGES.</u>**

**1. No Judicial Immunity for "Non-Judicial Acts"**

Thus, Absolute judicial immunity is overcome in only two rather narrow sets of circumstances: first, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity, and second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdictions. *Mireles v. Waco*, 502 U.S. at 11-12; *Davis v. Tarrant County*, *Texas*, 565 F.3d at 221; *Ballard v. Wall*, 413 F.3d at 515.

Examination of the cases cited by the Supreme Court in its opinion in *Mireles* illuminates the narrowness of each such exception to the general rule of

absolute judicial immunity. As an example of the first exception, i.e., non-judicial actions, the Supreme Court cited in *Mireles* to its opinion in *Forrester v. White*, 484 U.S. 219 (1988), in which it held that a judge was not immune from liability for allegedly having engaged in illegal discrimination when firing a court employee. *Forrester v. White*, 484 U.S. at 225-29. To help define the parameters of the second exception, i.e., actions taken in complete absence of all jurisdictions, the Supreme Court cited to its opinions in *Bradley v. Fisher*, 13 Wall. 335, 351-52 (1872) (in which it discussed a hypothetical situation in which a judge in a probate court with limited statutory jurisdiction attempted to try parties for public criminal offenses), and *Stump v. Sparkman*, 435 U.S. 349, 357 n.7 (1978) (in which the Supreme Court held a state judge presiding over a court of general jurisdiction absolutely immune from liability for issuing an order permitting a mother to sterilize her somewhat retarded fifteen year old daughter, despite the fact the judge had arguably violated state statutes relating to the sterilization of minors and incompetent persons in so doing).

In *Rankin V. Howard 633 F.2d 844*, Rankin alleged that Judge Zeller agreed in advance with the others to rule favorably on the petition. We conclude that a judge's private, prior agreement to decide in favor of one party is not a judicial act. *See also Lopez v. Vanderwater,* 620 F.2d 1229, 1235-37 (7th Cir. 1980) (judge not immune for "prosecutorial" acts prior to biased decision). If the alleged agreement manifests

Judge Zeller's participation in a conspiracy, then proof of the agreement could from the basis of liability whether or not he is immune from liability for subsequent judicial acts.

2. **So, how does a judge establish these two elements?**

3. **Judicial Act**

Courts around the country have followed the lead of the United States Supreme Court and adopted a "functional approach" in determining whether a party is entitled to absolute immunity. See *Gardner v. Parson*, 874 F.2d 131, 145-46 (3d Cir. 1989); *Hodorowski v. Ray*, 844 F.2d 1210, 1213-15 (5th Cir. 1988); *Meyers v. Contra Costa County Dep't of Social Serv.*, 812 F.2d 1154, 1157 (9th Cir.), cert. denied, 484 U.S. 829, 108 S. Ct. 98, 98 L. Ed. 2d 59 (1987); *Malachowski v. City of Keene*, 787 F.2d 704, 712 (1st Cir.), cert. denied, 479 U.S. 828, 107 S. Ct. 107, 93 L. Ed. 2d 56 (1986).

Under the functional approach, courts determine whether the activities of the party seeking immunity are ***"intimately associated with the judicial process."*** *Imbler v. Pachtman*, 424 U.S. 409, 430-31, 96 S. Ct. 984, 994-96, 47 L. Ed. 2d 128 (1976). The question is whether the activities undertaken by the party are "functions to which the reasons for absolute immunity apply with full force." *Imbler v. Pachtaman*, 424 U.S. at 430, 96 S. Ct. at 995. In other words, a party is entitled to absolute immunity

when the party is acting as an integral part of the judicial system or an "arm of the

court". *Briscoe v. LaHue*, 460 U.S. 325, 335, 103 S. Ct. 1108, 1115, 75 L. Ed. 2d 96

(1983).

Whether an act is judicial (or nonjudicial) is determined by the nature of the act, i.e.,

whether it is a function normally performed by a judge, as contrasted from other

administrative, legislative, or executive acts that simply happen to be done by

judges. *Forrester v. White*, 484 U.S. 219, 227, 98 L. Ed. 2d 555, 108 S. Ct. 538

(1988). Nonjudicial acts include other tasks, even though essential to the functioning

of courts and required by law to be performed by a judge, such as making personnel

decisions regarding court employees and officers. *Twilligear v. Carrell*, 148 S.W.3d

502, 504-505 (Tex. App. Houston 14th Dist. 2004)

**The focus is on the nature of the function performed, not the identity of the**

**actor.** *Delcourt v. Silverman*, 919 S.W.2d 777, 782 (Tex. App. Houston 14th Dist.

1996); *Forrester v. White*, 484 U.S. 219, 230, 108 S. Ct. 538, 545-46, 98 L. Ed. 2d

555 (1988)). Judges have absolute immunity for their judicial acts "unless such acts

fall clearly outside the judge's subject-matter jurisdiction." *Spencer v. City of*

*Seagoville*, 700 S.W.2d 953, 957-58 (Tex. App.—Dallas 1985, no writ); see

*Holloway v. Walker*, 765 F.2d 517, 523 (5th Cir.), cert. denied, 474 U.S. 1037, 106

S. Ct. 605, 88 L. Ed. 2d 583 (1985); *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir.

1985), cert. denied, 474 U.S. 1101, 106 S. Ct. 883, 88 L. Ed. 2d 918 (1986).

*Thus, in determining whether absolute judicial immunity applies, courts look to a*

*two-part inquiry:* **First,** *were the acts "judicial" ones?* **Second,** *were those acts*

*"clearly outside" the judge's jurisdiction? Brandt v. West, 892 S.W.2d 56, 66-67*

*(Tex. App. Houston 1st Dist. 1994).*

The factors considered in determining whether a judge's act is a "judicial" one are:

(1) whether the act complained of is one normally performed by a judge,

(2) whether the act occurred in the courtroom or an appropriate adjunct such as the

judge's chambers,

(3) whether the controversy centered around a case pending before the judge, and

(4) whether the act arose out of a visit to the judge in his judicial capacity.

*Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993) (citing *McAlester v. Brown*,

469 F.2d 1280, 1282 (5th Cir. 1972). These factors should be broadly construed in

favor of immunity. *Malina*, 994 F.2d at 1124; *Adams*, 764 F.2d at 297. Not all of the

factors must be met for immunity to exist. *Malina*, 994 F.2d at 1124; *Harris*

*Deveraux*, 780 F.2d 911, 915 (11th Cir. 1986).

### 4. Within Judge's Jurisdiction:

In determining whether an act was clearly outside a judge's jurisdiction for judicial

immunity purposes, the **focus is not on whether the judge's specific act was**

**proper or improper, but on whether the judge had the jurisdiction necessary to**

**perform an act of that kind in the case.** See *Mireles v. Waco*, 502 U.S. 9, 112 S.

Ct. 286, 289, 116 L. Ed. 2d 9 (1991) (where judge was alleged to have authorized

and ratified police officers' use of excessive force in bringing recalcitrant attorney to

judge's courtroom, and thus to have acted in excess of his authority, his alleged

actions were still not committed in the absence of jurisdiction where he had

jurisdiction to secure attorney's presence before him); *Malina*, 994 F.2d at 1124

(because judge had power to cite for contempt and to sentence, where judge cited

motorist for contempt and sentenced him to jail, these acts were within his

jurisdiction, even though judge had acted improperly in stopping the motorist

himself, privately using an officer to unofficially "summon " the motorist to court,

and charging the motorist himself); *Sindram v. Suda*, 300 U.S. App. D.C. 110, 986

F.2d 1459, 1460 (D.C. Cir. 1993) (judge's prohibiting plaintiff from filing any new

civil actions pro se before paying outstanding sanctions was "well within" judge's

"jurisdiction" as term is used for judicial immunity test).

In order to reach this second circumstance, a judge must proceed in an area where it is clear he cannot act. *See Brewer v. Blackwell, 692 F.2d 387, 397 (5th Cir. 1982)* (state court judge making an invalid arrest).

The Stump Court distinguished between" excess" and "clear absence" of jurisdiction by quoting the example given by the Bradley Court. Thus, criminal court judge who convicts a defendant of a nonexistent crime acts in excess of jurisdiction and is absolutely immune. *Stump, 435 U.S. at 357, 98 S.Ct. at 1105, 55 L.Ed.2d at 339;Turner v. Raynes, 611 F.2d at 97.* But a probate judge who tries and convicts a defendant of a crime acts in the clear absence of jurisdiction and enjoys no immunity. *Stump, 435 U.S. at 357, 98 S.Ct. at 1105, 55 L.Ed.2d at 339;*

**C. <u>THE LOWER COURT HAS FAILED TO UNDERSTAND, RECOGNISE AND THUS MISCONTRUED THE LAWS, JUDGMENTS AND INTERPRETATIONS OF THE TERM "IN CLEAR ABSENCE OF ALL JURISDICTIONS" IN TERMS OF JUDICIAL IMMUNITY FOR JUDGES.</u>**

**1. No Judicial Immunity- In "*Clear absence of all Jurisdictions*"**

Although judges usually are immune from suits for damages based on their judicial conduct, a judge who acts "in the clear absence of all jurisdictions" is not entitled to absolute immunity. *See Stump v. Sparkman,* 435 U.S. 349, 356-57*, 98 S.Ct. 1099, 55 L.Ed.2d 331( 1978) ( quoting Bradley v. Fisher, 80 U.S. ( 13 Wall.) 335, 351,20*

*L.Ed. 646 ( 1871); Mullis v. United States Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).*

By reference to an illustration from Bradley, Stump further distinguished between an "excess of jurisdiction" and "the clear absence of all jurisdictions over the subject matter." Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as many questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend.

Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of usurped authority.

In *Maestri v. Jutkofsky, 860 F.2d 50 (2d Cir. 1988),* the case relied upon by the district court here to reject the immunity defense, we elaborated on the distinction

between a judicial act in excess of jurisdiction and an act in the clear absence of jurisdiction: Because scrutiny of a judge's state of mind would hinder the adjudicatory process in the very manner that the judicial immunity doctrine is designed to prevent, a judge will be denied immunity only where it appears, first, that the judge acted in the clear absence of jurisdiction, and second, that the judge must have known that he or she was acting in the clear absence of jurisdiction. This test composed both of an objective element — that jurisdiction is clearly absent, i.e., that no reasonable judge would have thought jurisdiction proper — and of a subjective element — that the judge whose actions are questioned actually knew or must have known of the jurisdictional defect — protects judicial acts from hindsight examination while permitting redress in more egregious cases, such as where a judge knowingly acts outside his territorial jurisdiction.

Maestri considered the immunity defense raised by Joseph Jutkofsky, the Town Justice of the Town of Taghkanic, New York. Justice Jutkofsky issued a warrant for the arrest of plaintiffs Maestri and Zook for their conduct in the Town of Germantown, New York. Maestri and Zook sued Justice Jutkofsky, among others, alleging deprivation of their rights pursuant to *42 U.S.C. Section(s) 1983*. The district court dismissed the suit against Justice Jutkofsky on the ground of judicial immunity. This Court reversed, holding that Justice Jutkofsky acted in the clear

absence of all jurisdictions and must have known that he was acting in clear absence of all jurisdictions.

D. **THE LOWER COURT HAS FAILED TO UNDERSTAND, RECOGNISE AND THUS MISCONTRUED THE LAWS, JUDGMENTS AND INTERPRETATIONS OF THE TERM " ADMINISTRATIVE ACTIONS" IN TERMS OF JUDICIAL IMMUNITY FOR JUDGES.**

1. **No Judicial Immunity- For Administrative Actions:**

Judicial immunity does not apply to purely administrative acts of a judge, such as employment decisions, but there may be qualified immunity in such circumstances, just as for other public officials. *"In the case before us, we think it clear that Judge White was acting in an **administrative capacity** when he demoted and discharged Forrester. Those acts – like many others involved in supervising court employees and overseeing the efficient operation of a court – may have been quite important in providing the necessary conditions of a sound adjudicative system. The decisions at issue, however, were not themselves judicial or adjudicative. . .. [A] judge who hires or fires a probation officer cannot meaningfully be distinguished from a district attorney who hires and fires assistant district attorneys, or indeed from any other Executive Branch official who is responsible for making such employment decisions." Forrester v. White*, 484 US 219, 229 (1988).

Judicial immunity, however, does not extend to the administrative or executive functions that judges "may on occasion be assigned by law to perform," even if such acts are essential to the very functioning of the courts.    Forrester, 484 U.S. at 227–88.    Entitlement to judicial immunity depends upon the "scope" of the challenged conduct carried out in the defendant's "administrative capacity[y]."    Brown v. Reinhart, 760 F. App'x 175, 179 (4th Cir. 2019).    Immunity from suit is "a fact-intensive inquiry that  will turn on the record as it develops at least through discovery."   Id. "Any time an action taken by a judge is not an  adjudication between parties, it is less likely that the act is a judicial one."    Morrison v. Lipscomb, 877 F.2d 463, 466 (6th Cir. 1989).    In  Morrison, the Sixth Circuit found that a Chief Judge's declaration of a moratorium  on the issuance of writs of possession (to  evict tenants) during the holiday  season, which was applied to deny the petitioner's requested writ, was an administrative act not entitled to judicial immunity. Id.   The Sixth Circuit characterized the judge's moratorium  as "a general order, not connected to any particular litigation"  because it "did not alter the rights and liabilities of any parties but, rather,  instructed court personnel on how to process the petitions made to the court."  Id. (emphasis added).  Similarly, in Ratté v. Corrigan, the court found that a judge's actions in pre signing partially completed orders that would later be filled in by non-judicial court personnel was not a judicial act protected by immunity because at the time the judge signed the order, "there were

no parties before the court nor were there any active [] proceedings."  989 F. Supp.

2d 550, 560 (E.D. Mich. 2013);  see also Stebbins v. Watkins, No. 3:13-CV-03068,

2013 WL 5288476, at *3 (W.D. Ark. Sept. 19, 2013),  aff'd, 550 F. App'x 347 (8th

Cir. 2014) (characterizing administrative assignment of case  numbers as ministerial

act not protected by judicial immunity).


### E. <u>THE LOWER COURT HAS FAILED TO PROPERLY UNDERSTAND, RECOGNISE AND THUS MISCONTRUED THE LAWS, JUDGMENTS AND INTERPRETATION OF THE ACTION AND PROCESS OF "FILING FEE WAIVER" AS A "JUDICIAL ACTION", WHEN THE SAME IS ONLY AN "AMINISTRATIVE ACTION".</u>

#### 1.  Filing fee waiver- Administrative Action

*In Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 432 (1993),* Defendant

Anderson's administrative action to enforce OMVH Rules requiring a filing fee is

not protected by judicial immunity. Judges are accorded immunity from liability for

monetary damages and injunctive relief when engaged in "judicial acts."  *Stump v.*

*Sparkman, 435 U.S. 349, 359 (1978); Justice Network Inc. v. Craighead Cty., 931*

*F.3d 753, 763–64 (8th Cir. 2019)*.  However, judicial immunity does not foreclose

prospective declaratory relief.  Id.  The party claiming immunity "bears the burden

of establishing the justification for such immunity."  *Antoine v. Byers & Anderson,*

*Inc., 508 U.S. 429, 432 (1993).*  The "touchstone" for justifying this immunity is

whether a claim challenges a judge's "performance of the function of resolving

disputes between parties, or of authoritatively adjudicating private rights." Thus, "paradigmatic judicial acts" protected by judicial immunity involve resolution of "disputes between parties who have invoked the jurisdiction of the court" and expect to deal "with the judge in his judicial capacity." Forrester, 484 U.S. at 227–28.

Judicial immunity, however, does not extend to the administrative or executive functions that judges "may on occasion be assigned by law to perform," even if such acts are essential to the very functioning of the courts. *Forrester, 484 U.S. at 227–88.* Entitlement to judicial immunity depends upon the "scope" of the challenged conduct carried out in the defendant's "administrative capacity[y]." *Brown v. Reinhart, 760 F. App'x 175, 179 (4th Cir. 2019).* Immunity from suit is "a fact-intensive inquiry that will turn on the record as it develops at least through discovery." Id. "Any time an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one." *Morrison v. Lipscomb, 877 F.2d 463, 466 (6th Cir. 1989).* In Morrison, the Sixth Circuit found that a Chief Judge's declaration of a moratorium on the issuance of writs of possession (to evict tenants) during the holiday season, which was applied to deny the petitioner's requested writ, was an administrative act not entitled to judicial immunity. Id. The Sixth Circuit characterized the judge's moratorium  as "a general order, not connected to any particular litigation"  because it "did not alter the rights and

liabilities of any parties but, rather, instructed court personnel on how to process the petitions made to the court." Id. (*emphasis added*). *Similarly, in Ratté v. Corrigan, the court found that a judge's actions in pre signing partially completed orders that would later be filled in by non-judicial court personnel was not a judicial act protected by immunity because at the time the judge signed the order, "there were no parties before the court nor were there any active [] proceedings." 989 F. Supp. 2d 550, 560 (E.D. Mich. 2013); see also Stebbins v. Watkins, No. 3:13-CV-03068, 2013 WL 5288476, at \*3 (W.D. Ark. Sept. 19, 2013), aff'd, 550 F. App'x 347 (8th Cir. 2014) (characterizing administrative assignment of case numbers as ministerial act not protected by judicial immunity).*

Defendant Anderson fails to point to any "judicial act" that is entitled to judicial immunity. ECF No. 45-1 at 3, 21. In response to Plaintiffs' requests for hearings without an accompanying filing fee, OMVH staff completed several non-judicial tasks in accordance with Defendant Anderson's alleged protocols and procedures for administratively enforcing OMVH filing fee rules, including: communication by OMVH staff to people seeking relief from license suspension that the agency requires filing fee payment for each contested suspension and offers no fee waiver process; and the withholding of a docket number and assignment of cases to hearing officers absent full payment of filing fees. These alleged administrative acts

to enforce the OMVH filing fee rules were carried out under Defendant Anderson's supervision, and discovery will develop the full scope of other administrative conduct, or failure to exercise administrative authority, by which Defendant Anderson ensures the denial of hearings to people seeking to  contest license suspensions who cannot pay filing fees in full. Because the claims  against him do not pertain to any individualized adjudication in Plaintiffs' cases but instead to administrative enforcement of OMVH policies and protocols and the supervision and training of OMVH staff regarding the same, Defendant Anderson is not protected by judicial immunity.

While a judge's duty to maintain order in courtroom proceedings is judicial in nature and protected by judicial immunity, the establishment and oversight of policies and procedures for enforcing OMVH Rules concerning filing fees is not.


F. **THE LOWER COURT HAS UTTERLY FAILED TO PROPERLY UNDERSTAND, RECOGNISE THE PROCESS, LAW AND PROCEDURES PERTAINING CLAIMING OF IMMUNITY OF JUDGES – A PARTY CLAIMING IMMUNITY BEARS THE BURDEN OF ESTABLISHING THE JUSTIFICATION FOR SUCH IMMUNITY.**

1. **A Party claiming immunity "bears the burden of establishing the justification for such immunity"**

The party claiming immunity "bears the burden of establishing the justification for such immunity." *Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 432 (1993).*

Respondents bear the burden of establishing the justification for the absolute immunity they claim, which depends on the immunity historically accorded officials like them at common law and the interests behind it, *Butz* v. *Economou, 438 U. S. 478, 508. In the present case None of the Defendants Judges (Defendant 1 to Defendant 6) never even responded or claimed absolute immunity before the NJ Federal District Court and are now estopped from raising any such claims. By their acts and conducts, in not even claiming, all the Defendant Judges have waived any such right and even if claimed would be timed barred.*

**Once a judge establishes, he or she is entitled to absolute immunity,** the proper mechanism to utilize, the same is to file **either a plea to the jurisdiction or a motion for summary judgment or a motion to dismiss, asserting absolute judicial immunity. (The** reason the mechanism is grey is due to the contradictory holdings regarding judicial immunity. Judicial immunity, as an absolute immunity, is immunity from suit. This means there is no jurisdiction to bring the judge before another judicial tribunal and should be challenged through a plea to the jurisdiction. However, other courts have held that judicial immunity is an affirmative defense.

*Kassen v. Hatley, 887 S.W.2d 4, 8-9, 38 Tex. Sup. Ct. J. 73 (Tex. 1994)* (official immunity is a common law affirmative defense*); DeWitt v. Harris County, 904 S.W.2d 650, 653, 38 Tex. Sup. Ct. J. 916 (Tex. 1995)* (discussing immunity from liability); *Ballantyne v. Champion Builders, Inc., 144 S.W.3d 417, 422, 47 Tex. Sup. Ct. J. 852 (Tex. 2004)* (discussing immunity from suit). Affirmative defenses are not jurisdictional. As a result, **affirmative defenses** should be raised in a **motion for summary judgment.)**

 If a trial court denies the assertion of immunity, the judge is entitled to an interlocutory appeal pursuant to Tex. Civ. Prac. Rem Code §51.014(5) (*Vernon* 2005). If the judge is entitled to such immunity, the judge should be dismissed with prejudice.


G. **THE LOWER COURTS HAVE UTTERLY FAILED IN UPHOLDING THE VEXATIOUS LITIGANTS' RIGHTS OF THE FIRST AMENDMENT RIGHT OF RIGHT TO SPEECH (RIGHT TO PETITION), 42 USC § 1981 (RIGHT TO SUE, GIVE EVIDENCE, TO BE PARTIES TO SUITS), THE 14TH AMENDMENT RIGHT (DUE PROCESS), AND ACCESS TO THE COURTS:**


Defendant Judge Ford, in her desperate attempt to shut out the Plaintiff's access to the court system, WITHOUT ANY JURISDICTION, since the underlying case was being appealed at the NJ appellate division; defendant Ford then crafted a new scheme and issued an additional new order dated October 19,2017 in which once

again with no basis, labeled Plaintiff a "vexatious litigant", without ever providing any findings of fact or conclusions of law as required by NJ R 1:7-4; any and all filings with the court cited established NJ and US case law demanding available relief, but all such citations were ignored by Defendant Ford.

Defendant Ford in her order of October 19,2017 violated the FIRST and FOURTEENTH amendment rights of the Plaintiff when she blocked access to ANY state court unless it was with her approval. By declaring Plaintiff, a "vexatious litigant", without ever providing any findings of fact or conclusions of law as required by NJ R 1:7-4; this order lacks jurisdiction. The right to access the courts is fundamental to our system of justice. In one sense, such a right has been a traditional and noncontroversial part of our constitutional law; barring unusual circumstances, anyone can bring a lawsuit, or be heard in his or her own defense.

### 1. Free Speech (the right to petition) Violation.

The First Amendment to the U.S. Constitution prevents the govern-ment from making laws which respect an establishment of religion or the right to petition the government for redress of grievances. Drake will focus on the First Amendment right to petition in this writ.

Despite the common misconception that the First Amendment prohibits anyone from limiting free speech, the text of the amendment only prohibits the federal government, along with the states and local governments, from doing so. In the case at bar, the federal court in New Jersey and the State Courts at New Jersey "deprived" him of a "right... secured by the Constitution." 42 U.S.C. §1981, and Rev. Stat. §1979, §1983.

"Petitioning" is a nonviolent legal means of encouraging or disapproving government action, whether directed to the judicial, executive or legislative branch. In *United Mine Workers of America v. Illinois State Bar Association (1967)*, this Court exalted the right to petition as "among the most precious liberties safeguarded by the Bill of Rights" and implicit in "the very idea of government." This Court deemed this right as a funda-mental liberty, protected against encroachment by federal, state and local governments. Hence, in *NAACP v. Button (1963),* it formed the conceptual basis for the Court's ruling that a civil rights group could not be barred from soliciting people to serve as litigants in civil rights cases. The Court declared: "Litigation may well be the sole practical avenue open to a minority to petition for a redress of grievances." Yet, this very precious, nonviolent tool which is a right is what actors of the State and federal governments confiscated from the Petitioner as a means to silence him—to force him to use in what appears violence—to permanently silence him.

The First Amendment right "*to petition the Government for a redress of grievances*" includes a right of court access, but narrowly define this right as the right to "sue" to file petitions. This dominant view fails to meaning-fully differentiate between the right to petition, the freedom of speech, and due process, missing the distinct significance of the Petition Clause when individuals petition courts. The most significant threats to court access today occur before it's actually filed when state and federal governments prevent non-lawyers from even filing their petitions as in the case of the Petitioner.

### 2. Ubi jus ibi remedium —

"where there is a right, there should be a remedy." ' This ancient legal maxim articulates a great inspirational ideal. But it is not an accurate description of the American legal system. Not every person who suffers (or fears) legal injury obtains a remedy from the courts. In fact, the denial of "freedom" has been a cornerstone of American jurisprudence for people of color for centuries. In the face of remedy denial, the critical question is whether this Court will put an end to the abuses used by state and federal courts in the form of prefixing orders as set forth in this writ, which are meant to harm only pro se litigants who citizens of this nation are and enjoys an enforceable right to a remedy. An enforceable remedial right would entail a correlative duty upon this Court to provide redress and thereby impose constraints

on state and federal courts that use and misuse prefixing orders against U.S. citizens to deny their rights to petition and have access to the courts.

Citizens of this nation have a constitutional right to a remedy based on the Due Process Clause, the First Amendment, the Equal Protection Clause, as well as the 14th Amendment and to have access to the courts.' Citizens of this nation have a constitutional avoidance canon because the Court's interpretation may violate the "fundamental right" to "access the courts" guaranteed by the "First Amendment right to petition."

In *Rhodes v. Chapman*, this Court rejected an Eighth Amendment challenge to prison conditions but emphasized that the federal courts have a duty to remedy constitutional violations. The Petitioner is not a prisoner, and yet his rights to have access to the courts have been barred, stripped away, and prohibited which has cost the Petitioner thousands of dollars in lost compensation, and treatment that is less than known terrorists who the U.S. government held in Guantanamo Bay. The right to access to the courts for non-prisoners comes with the same right to pay taxes and not to commit crimes. If the government takes away one right, it cannot complain about a citizen not providing this nation in other ways.

One of the earliest petitions on record dates back to the year 1644. A group of eleven petitioners, not including their children, entreated the Council of New Netherland

for freedom, based on the claim that it was impossible for them to support their growing families under slavery. These slaves were given at least their partial freedom. Yet, this is the sum of the Petitioners complaint, that actions of the state and federal courts complained about in this writ have regressed back to the days of slavery and have enacted a new kind of slavery that blots out and sever rights enshrined in our Constitution and Bill of Rights for certain class of people like the Petitioner to have access to the courts.

### 3. Violation of 42 U.S.C. §1981 And Access to The Courts.

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue (file petitions), be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The Bill of Rights does not declare who shall or shall not have the right to sue, give evidence, and be a party to a suit. This includes even those that have been wrongfully declared as vexatious litigants like the Petitioner have inalienable rights, but those named herein have taken it upon themselves to hinder the Petitioner rights to sue,

give evidence, and be a party to a lawsuit for profit, and as an act of racism and or for their entertainment.

### 4.Due Process Clauses:

The Fifth and Fourteenth Amendments of the United States Constitution contain Due Process Clauses. Due process deals with the administration of justice and thus the Due Process Clause acts as a safeguard from arbitrary denial of life, liberty, or property by the government outside the sanction of law. This Court interprets the clauses as providing four protections: procedural due process (in civil and criminal proceedings), substantive due process, a prohibition against vague laws, (as referenced in the eastern district court of fabricating orders that does not exist and refusing to allow the Plaintiff to schedule a hearing to reverse orders obtained by fraud). The First Amendment (Amendment I) to the U. S. Constitution pre-vents the government from making laws which respect an establishment of religion, prohibit the free exercise of religion, or abridge the freedom of speech, the freedom of the press, the right to peaceably assemble, and the right to petition the government for redress of grievances.

The case at bar focuses on "the right to petition," pursuant to the First Amendment, and the right to sue, give evidence pursuant to 42 USC §1981, due process claims, and access to courts. The Petition Clause protects the right "to petition the

government for a redress of grievances." This includes the right to communicate with government officials, lobbying government officials and petitioning the courts by filing lawsuits with a legal basis. *In California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972),* this Court stated that the right to petition encompass "the approach of citizens or groups of them to administrative agencies (which are both creatures of the legislature, and arms of the executive) and to courts, the third branch of Government. Certainly, the right to petition extends to all departments of the Government.

The right of access to the courts is indeed but one aspect of the right of petition." According to this Court, "redress of grievances" is to be construed broadly: it includes not solely appeals by the public to the government for the redressing of a grievance in the traditional sense, but also, petitions on behalf of private interests seeking personal gain. [J Those rights not only protect demands for "a redress of grievances" but also demands for government action. The petition clause includes according to this Court the opportunity to institute non-frivolous lawsuits. *In Borough of Duryea v. Guarneri (2011),* this Court stated regarding the Free Speech Clause and the Petition Clause: "The right to petition is an expression directed to the government seeking redress of a grievance."

H. **THE LOWER COURT HAS ABSOLUTELY FAILED TO REFER, CONSIDER THE ELABORATE FACTS AND LAWS STATED BY THE PLAINTIFF PERTAINING TO "NON-JUDICIAL" AND "LACK OF JURISDICTION" CLAUSES IN BOTH THE ORIGINAL COMPLAINT AND IN THE AMENDMED COMPLAINT.**

The Lower Court has dramatically failed to refer, consider the elaborate facts and laws stated by the Plaintiff pertaining to " Non-Judicial" and " Lack of Jurisdiction Clauses in both the Original Complaint and in the Amended Complaint pertaining to each of the following Judges:

- *MADELINE F EINBINDER J.S.C*

- *MARLENE L FORD A.J.S.C*

- *JOHN S. DORAN J.S.C*

- *DEBORAH H. SCHRON J.S.C*

- *FRANCIS HODGSON J.S.C*

- *LISA P. THORTON A.J.S.C*

The Lower Court even in its July 13, 2021, have utterly failed to reference or discuss any of those and hence it is evidently clear that the Lower Court has not applied the facts and Laws into consideration elaborated by the Plaintiff in his Complaint. Hence this Appellate Court should make a de-nova review of the entire facts and laws stated and elaborated by the Petitioner in his Original and Amended Complaint.

## VII. <u>BRIEF AND CONSICE POINTERS OF THE CONSITUTIONAL AND DUE PROCESS VIOLATIONS AND FAILURES OF THE FEDERAL DISTRICT COURT</u>

- The NJ Federal District Court miserably failed in its Constitutional and Due Process of Law duly by prematurely dismissing the Plaintiff's complaint, when NONE of the Defendants Judges ever filed a Motion to dismiss or even responded to any of the amended complaints of the Plaintiff before the NJ Federal District Court.

- The NJ Federal District Court, never even attempted to request the Defendant Judges to file their responses to the Plaintiff's Complaint, which is a blatant violation of the Constitutional Due Process of Law.


- The NJ Federal district courts ORDERS are all premature and unconstitutional, since None of the Defendant Judges were required or raised any objections on any of the Plaintiff's complaint.


- The NJ Federal District court blatantly failed its Constitutional duty to follow the Due Process of law when it allowed itself to become a litigant in this case and defend the judges against the Plaintiff.

- The NJ Federal District Court manifestly failed to notice that Defendant Judge Frances Hodgson denied the FEE WAIVER order, after granting the same earlier in the day and to legally construe it as an ADMINISTRATIVE act. This caused Plaintiff's home to be lost to Sheriff sale / foreclosure on Sep 19,2019.

- The NJ Federal District Court, miserably failed to notice that all family court orders were completely without any jurisdiction, since they directly violate the US Constitutional laws and US SUPREME court case laws as referenced in Plaintiff's complaint.

- The NJ Federal District Court has failed to consider any and all "Non-Judicial" and "Lack of Jurisdiction" facts, laws and pleadings of the Plaintiff's amended complaint in spite of the Plaintiff judiciously elaborating and complying with the requirements of *Mireles v. Waco, 502 U.S. 9, 12 (1991)*

- The NJ Federal District Court has failed to give any detailed speaking order of dismissal of the Plaintiff's complaint and has bluntly quoted only the *Mireles V. Waco* requirements for dismissal, when the same has been judiciously complied by the Plaintiff.

## VIII. APPELLANT WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF REVERSAL OF FEDERAL DISTRICT COURT ORDER AND AN EMERGENT INJUNCTION.

The Constitutional rights must be carefully guarded for once an infringement has occurred it cannot be undone by monetary relief" *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). This situation is at least as egregious as situations where irreparable injury was recognized. *See, e.g., Doe v.Wood Cty. Bd. of Educ*., 888 F. Supp. 2d 771, 777 (S.D. W.Va. 2012). In absence of reversal of the Federal District Court Order and a Preliminary Injunction, Appellant will suffer irreparable harm, loss and hardship.

## IX. THE BALANCE OF HARDSHIP SHARPLY FAVORS APPELLANT

An injunction does no harm to Appellees because the Defendant Judges and the government is not harmed when it is prevented from enforcing unconstitutional and illegal laws. *Joelner v. Village of Wash. Park*, *Ill*. 378 F.3d 613, 620 (7th Cir. 2004). Thus, the balance of hardship only favors the Appellant rather than Appellees.

## X. THE PUBLIC INTEREST FAVORS A PRELIMINARY INJUNCTION.

"[T]here is the highest public interest in the due observance of all the constitutional guarantees[.]" *United States v. Raines*, 362 U.S. 17, 27 (1960). It is in the public

interest to prevent the Judges and government from "violat[ing] the requirements of state and federal law," *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014).


## XI. <u>CONCLUSION</u>

Appellant respectfully demands that the Federal District Court's Order dated November 01, 2021, be reversed and that an emergent preliminary injunction be issued to safeguard the Constitutional Rights of the Appellant.


**Respectfully submitted.**


**Zia Shaikh**
**200 Village Ctr Dr**
**Unit 7381**
**Freehold, NJ 07728**
**(732)766-5466**


**Dated: December 20,2021**

## XII. **CERTIFICATION OF ELECTONIC FILING AND WORD COUNT**

I hereby certify that the text of the electronic Brief filed by ECF and the text of the hard copies filed or to be filed with the court are identical. The electronic copy of the Brief has been duly scanned for viruses.

I further certify that this Brief complies with the type-volume limitation of Fed. R. App.P.32(a)(7)(B) because it contains 12,617 words as calculated by the word processing program used in the preparation of this brief, excluding the parts of the brief exempted by Fed. R. App.P.32(a)(7)(B)(iii).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. (32)(a)(5) and type style requirements of Fed. R. App. P. 32 (a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font.

**Respectfully submitted.**

**Zia Shaikh**
**200 Village Ctr Dr**
**Unit 7381**
**Freehold, NJ 07728**
**(732)766-5466**                          **Dated: December 20,2021**

## XIV. CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 20, 2021, the foregoing was filed electronically and served on the other parties via the court's ECF system. The undersigned hereby certifies that he has also delivered an electronic copy of the foregoing to the Appellees and is sending the same by regular mail to:

**MADELINE F EINBINDER J.S.C**
**MARLENE L FORD A.J.S.C**
**JOHN S. DORAN J.S.C**
**DEBORAH H. SCHRON J.S.C**
**FRANCIS HODGSON J.S.C**
**LISA P. THORTON A.J.S.C**

**Respectfully submitted.**

**Zia Shaikh**
**200 Village Ctr Dr**
**Unit 7381**
**Freehold, NJ 07728**
**(732)766-5466**

## <u>LIST OF DOCUMENTS SUBMITTED BY THE APPELLANT</u>

1.  Original Complaint of the Appellant filed at the United States District Court, New Jersey in  case No: **3:20-CV-02540-ZNQ-TJB**

2.  Amended Complaint(s) of the Appellant filed at the United States District Court, New Jersey in case No:  **3:20-CV-02540-ZNQ-TJB**

3.  Order of Dismissal of the Appellant Complaint by the United States District Court New Jersey in case No: **3:20-CV-02540-ZNQ-TJB    dated 1st November 2021.**

4.  Notice of Appeal filed by the Appellant dated November 14,2021.

ORIGINAL COMPLAINT
FILED WITH
FEDERAL DISTRICT COURT

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Zia Shaikh

**(b)** County of Residence of First Listed Plaintiff   **Ocean County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS
Madeline Einbinder, Marlene Ford, John Dorian, Francis Hodgson, Lisa Thorton,

County of Residence of First Listed Defendant   **Ocean County**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question *(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                   *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☒ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☒ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 865 RSI (405(g)) | ☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from Another District *(specify)*
☐ 6  Multidistrict Litigation - Transfer
☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988
Brief description of cause:
Violations of civil rights under the color of state law, and violations of the R.I.C.O. statute

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $** 80,000,000.00
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

*Zia Shaikh in propria persona*
*4400 Rt. 9*
*Suite 1000*
*Freehold, NJ 07728*
*(732)766-5466 Cell*

# DISTRICT COURT FOR THE UNITED STATES
## DISTRICT OF NEW JERSEY
### TRENTON VICINAGE

| | | |
|---|---|---|
| ZIA SHAIKH, | ) | |
| Plaintiff, | ) | CIVIL CASE NO.: 3:20-CV-02540-ZNQ-TJB |
| | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| | ) | |
| MADELINE F. EINBINDER J.S.C. | ) | |
| | ) | |
| MARLENE L. FORD A.J.S.C. | ) | |
| | ) | CIVIL COMPLAINT WITH JURY |
| JOHN S. DORAN J.S.C. | ) | DEMAND |
| | ) | |
| DEBORAH H. SCHRON J.S.C. | ) | |
| | ) | |
| FRANCIS HODGSON J.S.C. | ) | |
| | ) | |
| LISA  P. THORTON | ) | |
| Defendants, | ) | |

**COMES NOW,** the Plaintiff Zia Shaikh in propria persona, in the above captioned matter and states the following:

## PARTIES

1.  Plaintiff Zia Shaikh ("Plaintiff") is an individual currently domiciled in the State of New Jersey and resides at: 4400 Route 9 Suite 1000, Freehold, NJ 07728 in Monmouth County New Jersey.

2.  Defendant  Madeline F. Einbinder is an  Ocean County Superior Court judge in, New Jersey.

3.  Defendant Marlene L. Ford is an Ocean County Superior Court judge, in New Jersey.

4.  Defendant John S. Doran is an Ocean County Superior Court judge in, New Jersey.

5.  Defendant Deborah H. Schron is an Ocean County Superior Court judge in New Jersey.

6.  Defendant Francis Hodgson is an Ocean County Superior Court judge in New Jersey.

7.  Defendant Lisa P. Thorton is a Monmouth County Superior Court judge in New Jersey.

## JURISDICTION AND VENUE

8.  This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, and 1343 which confer jurisdiction upon this court for violations of the *Fourth, Fourteenth, and Eighth* Amendments, to the Constitution of the United States, the civil rights act of 1866 and 1871, as amended, *42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988.*

9.  This court also has jurisdiction pursuant to *28 U.S.C. § 1337, and 28 U.S.C. § 1391* as one or more of the defendants are located in this court's district, and a substantial part of the events giving rise to the instant case occurred in this district.

## FACTUAL BACKGROUND

## COUNT ONE

## VIOLATIONS OF 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988. AGAINST DEFENDANTS EINBINDER, FORD, DORAN, SCHRON, HODGSON, AND THORTON.

10.    The Plaintiff in this instant case incorporates by reference all of the allegations stated in the above paragraphs herein.

11.    Section 1983 enables persons whose constitutional rights have been violated to sue the wrongdoer personally for redress. In the typical case, liability will attach if (1) the defendant has acted "under color of" state law, and (2) the defendant's action deprived the plaintiff of some right, privilege, or immunity secured by the Constitution (or federal "laws"). Unconstitutional behavior of state actors taken in the course of employment can potentially subject them to personal liability under § 1983. Although private actors, in contrast to governmental actors, ordinarily cannot violate the Constitution because they do not engage in "state action," they sometimes may be liable under § 1983 when they act in concert with officials or when their acts are otherwise fairly attributable to the government as is the case here.

12.    The Defendants in this instant case have performed quasi-judicial acts and are subject to personal liability for their actions. The Defendants named herein should be required to obtain personal counsel in this claim and should not be permitted to use the office of the attorney general.

13. This complaint involves the tortious acts of various state judges acting as judicial administrators under the color of state law. They have for years been violating the Plaintiff's rights protected by the United States Constitution and Federal law. They have illegally kidnaped the Plaintiff and are guilty of abuse of process and malicious prosecution in this case.

3

## MADELINE F.EINBINDER

14.    On or about April 23, 2014 pursuant to: **Docket No. FM-15-500-14-W** the Plaintiff's first judge in his family court dispute against his ex-wife,  Defendant Madeline Einbinder issued an ex-parte order without any evidence or testimony from the Plaintiff and thereby removed the plaintiff from his home, barring him from retuning there, caused the Plaintiff's cellular phone to be tracked, the Plaintiff was banned from obtaining a passport, and caused the Plaintiff not to be able to sell his home (**See: April 23, 2014 Order as Exhibit 1**).

15.    On or about April 24, 2014 Defendant Einbinder refused to correct her order upon the request of the Plaintiff's counsel Stephanie Brown, Esq. Where the Plaintiff's counsel complained to the court that no notice of the hearing was received by her very small legal practice. The Fact that Ms. Brown has such a small practice gives rise to the claim that notice was never sent to her office as reported by the clerk of the court (**See: Stephany Brown Letter to Einbinder as Exhibit 2**).. What's more the court offered no proof that the notice was sent to the Plaintiff's counsel and has no proof because the notice was never sent. This action by the Defendant constitutes a violation of the Plaintiff's due process rights under the Fourteenth Amendment of the United States Constitution, and a fundamental miscarriage of justice.

16.    On or about June 13, 2014 the Defendant in this instant case granted a $50,000-dollar fine to be paid to opposing counsel. The Plaintiff at this time was coming before the court pro se and could only stand there and watch in horror as his rights to a fair and impartial hearing were violated by the Defendant. (**See: June 13, 2014 order as Exhibit 3**).

17.    What's More, NJ Dissipation of assets in divorce is Fraud on marital rights. Where

18. property has been dissipated during the marriage the asset subject to distribution may take the form of a cash indebtedness to be imposed by the court upon one spouse in favor of the

other."); *N.J.S.A. 2A:34-23.1(i)* ("[i]n making an equitable distribution of property, the court shall consider . . . [t]he contribution of each party to the . . .

19. dissipation . . . in the amount or value of the marital property") ("intentional dissipation" of marital assets is a "fraud on marital rights". This excessive amount has caused great financial hardship to the Plaintiff. This action has violated the Eighth Amendment of the Unites States Constitution by causing the Plaintiff to pay excessive "fines" in the form of restitution to his ex-wife and her attorney without a scintilla of proof that the Plaintiff owed such an amount is a willful and blatant violation of the Plaintiff's due process rights protected under the Fourteenth, and Eighth  Amendments of the United States Constitution.

20.   On October 15, 2014 Defendant Einbinder issued a bench warrant for the Plaintiff's arrest and illegal incarceration for failing to turn over his passport. superior courts in general do not have jurisdiction and authority to arrest and imprison Plaintiff for a civil, commercial issue. This act by the Defendant constitutes kidnapping which is clearly defined by *18 U.S. Code § 1201.*

21.   The Plaintiff is a living, breathing man currently domiciled as a New Jersey resident, with all-natural rights secured by the state and Federal constitution. This is in violation of the Plaintiff's due process rights, , and federal kidnapping statutes. What's more this action constitutes malicious prosecution, and the tort of abuse of process. This defendant has while acting not as a judge but as an administrator caused the Plaintiff damages to his reputation, finances and lost time. Moreover, this Defendant has asked for a document issued by the Federal government to be surrendered to the jurisdiction of the county courts without probable cause or

authority, and has violated Federal law by doing so, being that only the Federal government has
the authority to revoke or confiscate a passport.[1]

22.     The Plaintiff's wife's counsel, Mr. Zabarsky, was the best man at Defendant
Einbinder's wedding, and even though there was a clear conflict of interest present in the case,
the Defendant refused to recuse herself. She continued on with the case which adversely affected
the shape of the proceedings which were constantly against the Plaintiff in this instant case. **(See:
Landi Letter to Judge as Exhibit 4).**

23.     Defendant Einbinder acted under the color of state law to conspire with opposing
counsel with whom she had a personal relationship with that has extended for many years. The
Defendant treated the Plaintiff with total disrespect at hearings by intimidating and berating him
without cause or reason, thereby acting in an unprofessional manner. The Defendant violated the
Plaintiff's rights to a fair and impartial trier of facts. She refused to rule on citations presented by
the Plaintiff's counsel and showed blatant favoritism to Zabarsky who was counsel to the
Plaintiff's ex-wife during the aforementioned state family court proceedings.  Defendant
Einbinder refused to recuse herself  from the Plaintiff's case upon request of the Plaintiff.

24.     The Defendant  issued orders in the case against the Plaintiff without finding of fact in
violation of NJ 1:7-4[2] and was not acting as a judicial officer, but as an individual holding a
public office. Thereby acting in her personal capacity acting under the color of state law.

---

[1] All official passports remain the property of the U.S. Department of State and are to be used for official business
only. The SIA office of the U.S. Department of State issues passports to citizens traveling abroad for the U.S.
Government.
[2] NJ Court Rule 1:7-4. Findings by the Court in Non-jury Trials and on Motions. (a) Required Findings. The court
shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law
thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of
right, and also as required by R. 3:29 The court shall thereupon enter or direct the entry of the appropriate
judgment.

25. Defendant Einbinder also violated the *Uniform Interstate Family Support Act Section 201(2)* by imprisoning the Defendant without inpersonam or subject matter jurisdiction.

26.    Defendant Einbinder has refused to recuse herself in spite of the clear conflict of interest in the case against the Plaintiff. She granted ex parte orders regarding the marital home and custody of the Plaintiff's children in favor of the Plaintiff's ex-wife.

## **MARLINE L. FORD**

27.    Sometime in June 2016 Marline L. Ford took over the Plaintiff's case and continued to ignore the violations of the previous judge's ten motions for her recusal and conflict of interest. Sometime in June 2016 Defendant Ford jailed the Plaintiff on non-jailable   alleged offenses for failing to pay support payments.

28.    Defendant Ford also lacked subject matter and inpersonam jurisdiction over the Plaintiff in the matters before her court and continued the violations of the Uniform Interstate Family Support Act. This Defendant jailed the Plaintiff by order from the bench on August 23, 2014 to August 24, 2014, June 15, 2016 to July 2, 2016, and again on March 21, 2017 to April 12, 2017. This act of kidnapping by the Defendant constitutes a gross violation of the Plaintiff's rights under the Fourth Amendment of the United States Constitution, and the Federal kidnapping statute.

29. Sometime in  November 2016 Defendant Ford suppressed the Plaintiff's pleadings and gave legal advice to opposing counsel Zabarsky informing him that he needed to file a motion to suppress the pleadings.  This violates the ethical rules and the Plaintiff's rights to due process under the Fourteenth Amendment to the United States Constitution to a fair and impartial hearing.

7

30. Defendant Ford subsequently granted the motion to suppress illegally citing discovery violations. Sometime in December 2017 and January 2018 Defendant Ford granted all equity to the Plaintiff's ex-wife and assigned all of the debts to the Plaintiff in line with the April 23, 2014 order made by Judge Einbinder **(See: April 23, 2014 Order as Exhibit 1.)**

31. The Plaintiff was given only one hour per week of visitation with his children. The bias against fathers in family court is the most damaging of these issues, fathers not being the only victims. Children must also face the consequences of custody rulings that rule in favor of the mother unfairly. The reason is largely traced to the preference Judges and

32. Attorneys indicate to have for mothers. The data shows overwhelming bias from attorneys towards mothers in custody cases, with over half of judges indicating the same. This not only impacts a judge's ruling, but the performance of the attorney. This can mean an increase or decrease in quality depending on who they are representing.

33. The effects of this bias are most definitely seen, as sole legal custody is an unlikelihood for fathers and the chances of joint legal custody only correlate with an increase of income. What causes this disparity is a number of factors. The way America has organized the family court system is a promotion of gender roles in parenting. As men associate with the fatherly role, a less nurturing role, the courts perceive it this way. The fact is though that this is a narrow and ultimately costly way of seeing the big picture of child custody that children and fathers see the consequences of, while mothers overwhelmingly benefit.

34. In January of 2017 the Plaintiff filed an appeal with the New Jersey appellate court thereby removing Defendant Ford's ability to issue new orders. Which the Defendant subsequently violated on a number of occasions violating the Plaintiff's rights to appeal his case to a higher court.

35.     Sometime in April 2017 On the Plaintiff's motion to enforce litigants' rights being that the Plaintiff's ex-wife was not bringing the children to visitation Defendant Ford subsequently removed the one-hour visitation without jurisdiction due to the pending appeal.

36. The justification for this was that it was inconvenient to the Plaintiff's ex-wife. Visitation rights are awarded to the noncustodial parent in divorce and child custody proceedings. These rights allow the parent time to visit with their child. All decisions regarding custody and visitation are made with the child's best interest standard, and not the custodial parent.

37.     In general, it is best for the child to have a meaningful and healthy relationship with both of their parents. Therefore, it is rare that a court will refuse visitation rights to a parent entirely. This court did this without evidence of any malicious or criminal acts by the Plaintiff toward the children or his ex-spouse.

38.     A father's right to visitation simply means that the child's biological father has as much right to spend time with their child as the mother does. In the past, the law was stacked against fathers, and mothers were often granted full custody rights whether or not they were best suited for the role. That is no longer the case, and a parent's gender does not typically have any bearing on the visitation rights they will receive as the noncustodial parent. Regardless of which parent is granted visitation rights, those rights include: The right to visit their child at a designated time, as is prescribed in the divorce decree; The right to schedule any allowed activities with the child, which are also detailed in the divorce decree; The right to be free of the other parent's control during visitation; The right to spend the entire allotted time with the child, with no infringement;    The right to an injunction in order to stop the other parent from moving the child out of state; and The right to modify the divorce decree when it is no longer feasible.

39. The Plaintiff was required to pay a custody neutral assessment (CNA) with Dr. Mackervich who specializes in drug and alcohol counseling despite the Plaintiff's objections.

40.    On or about March 3, 2017 Defendant Ford issued an illegal bench warrant for the Plaintiff's arrest for failure to pay child support to his ex-wife **(See March 3, 2017 Order by Judge Ford as Exhibit 5, and the Plaintiff's letter of objection Dated January 2, 2018 as Exhibit 6).** Defendant Ford is guilty of violating the Plaintiff's rights under the Fourth Amendment of the United States Constitution as well as New Jersey Statutes by her actions in having the Plaintiff arrested for being in arrears on his child support.

41.    Sometime in June 2017 Defendant Ford removed all of the Plaintiff's access to the courts via a letter to staff ordering them not to speak to the Plaintiff on the phone and to only respond to the Plaintiff via U.S. mail. During this time Defendant Ford denied the Plaintiff's motions for basic relief and issued orders without finding of fact in violation of NJ Court Rule 1:7-4. As well as the due process and access to the court's provisions found in the Fourteenth Amendment to the United States Constitution.

42. The right to access to the courts is fundamental to our system of justice. In one sense, such a right has been a traditional and noncontroversial part of our constitutional law; barring unusual circumstances, anyone can bring a lawsuit, or be heard in his or her own defense.

43. Defendant Ford refused to rule on citations cited by the Plaintiff's counsel showing clear favoritism to the Plaintiff's ex-wife's counsel. She issued orders in clear violation of *NJ 1:7-4* which requires proof and a finding of facts. Defendant Ford has clearly violated Federal law codified under *42 U.S.C. §§ 1981, 1985(2), 1988.*

## JOHN S. DORAN

44.    Sometime in  April of 2017 Defendant John S. Doran took over the Plaintiff's case

and issued an order to jail the Plaintiff . The Plaintiff spent March 21, 2017 to April 12, 2017

incarcerated by the Defendant. This act makes the Defendant guilty of violating the Federal

kidnapping statute. The defendant had no grounds or legal authority to order the Plaintiffs arrest

and subsequent incarceration predicated on a civil law case. Defendant Doran subsequently

denied all of the Plaintiff's challenges to the court's jurisdiction pursuant to *The Interstate*

*Family Support Act Section 201(2)*.

45.    On November 28, 2017 Defendant Doran issued a bench warrant despite the various

challenges made by the Plaintiff on violations of jurisdiction and demands of proof as required

by law *(See: NJ Rev Stat § 2A:20-8 (2013))*. Defendant Doran has continued to evade all legal

challenges by the Plaintiff under the direct orders of Defendant Ford. Defendant Doran has

refused to recuse himself from this case even though the Plaintiff's motions seeking his recusal

make a showing of grounds for him to do so.

46. Defendant Doran also refused to reverse the bench warrants on lack of subject matter and

inpersonam jurisdiction. It is clear that Defendant Doran was taking orders from and following

the directions of Defendant Ford. This Defendant has continued the conspiracy to violate the

Plaintiff's rights under the color of state law and has committed the torts of abuse of process and

malicious prosecution of the Plaintiff.

47. Civil wrongs that don't result in physical harm can fall into a category called dignitary

torts, which are torts that have caused harm to a person's reputation or dignity. A few examples

of dignitary torts are malicious prosecution, and abuse of process. Abuse of process refers to a

11

person using the legal system in a way that is not necessarily serving the underlying legal action, but rather to achieve another purpose.

48. Defendant Doran while working under the direct orders of Defendant Ford refused to recuse himself after the Plaintiff filed motions for him to do so given the close relationship with Defendant Ford. He showed a clear conflict of interest in the case against the Plaintiff given that Defendant Ford was his supervisor. He conspired with Defendant Ford to deprive the Plaintiff of his rights protected by Federal law pursuant to 42 U.S.C. §§ 1985(2),1986, 1988.

## DEBORAH H. SCHRON

49.    Sometime in October of 2019 Defendant Deborah H. Schron took over the Plaintiff's case. Defendant Schron under the direction of Defendant Ford failed to respond to the Plaintiff's challenges on jurisdiction pursuant to the *Uniform Interstate Family Support Act*. She continually issued orders as the newest judge on the Plaintiff's post-divorce case in spite of being notified that her court lacks jurisdiction **(See: October 22 order by Judge Schron as Exhibit 7 and October 30 lack of jurisdiction motion as Exhibit 8).**

50.    Defendant Schron failed to comply with the lawful jury verdict order reversing custody of the minor children back to the Plaintiff. She went on to state that the jury verdict was fake and therefore would not follow it **(See: November 6, 2019 Final Jury verdict as Exhibit 9).** Therefore, she ignored the law in this case and acted on her own under the color of state law to violate the Plaintiff's rights of due process and a fair and impartial hearing as well as the *Uniform Interstate Family Support Act.*

51. Defendant Schron refused to comply with a lawful jury verdict order reversing custody of the Plaintiff's children to him . She has been non responsive to the Plaintiff's motions challenging jurisdiction continuing the conspiracy with Defendant Ford. Defendant Schron

violated the Plaintiff's rights under *42 U.S.C. §§ 1985, 1986, and 1988*. The Defendant violated the Plaintiff's rights having full knowledge of the case against the Plaintiff and the orders put forth by the other Defendants in this case.

## FRANCES HODGSON

52.     Defendant Frances Hodgson under direct order of Defendant Ford denied the quiet title motions, fee waiver on the Plaintiff's former marital residence causing the Plaintiff not to avoid the September 3, 2019 sheriff sale of his home causing his minor children to be homeless. The Plaintiff had filed the quiet title motion and fee waiver long before the sheriff sale of his home sometime in early January of 2019 but were not ruled upon until February of 2019(**See: February 14, 2019 Order as Exhibit 10**) .

53.     Defendant Hodgson has been non responsive to the Plaintiff's letters seeking assistance from the court and allowed the Plaintiff's home to be sold at a sheriff's sale on or about September 3, 2019 (**See: 3/15 Letter to Judge Francis Hodgson as Exhibit 11**).

54.  Defendant Hodgson did not give the Plaintiff a meaningful opportunity to fight the Sheriff's Sale of his home and never docketed the case for a hearing or trial on the matter. According to New Jersey Law a homeowner is entitled to two "statutory adjournments" which are 2-week postponement of the sale-which is a total of 28 days. Note: the lender can adjourn the Sale as many times as they want for any reason and any length of time. To get the adjournment, you generally need to go in person to the Sheriff's office and include a $28.00 fee. After all the adjournments are used, a homeowner can file a motion with the judge to ask to stay the sale. The Plaintiff did just that and was ignored by the Defendant thereby losing his home and leaving his children homeless.

55. Defendant Hodgson denied a quiet title motion permitting the sheriff sale of the Plaintiff's home, was non responsive to the Plaintiff's request for assistance form the court and caused financial damages to the Plaintiff. This Defendant was continuing the conspiracy with Defendant Ford and has violated *42 U.S.C. §§ 1981,1985(2), 1986, and 1988.* Having full knowledge of the case and refusing to rule upon the Plaintiffs motion in a manner constant with the interest of justice. Defendant Hodgson has clearly conspired with Defendant Ford in this matter before the court.

## **LISA P. THORTON**

56.    Defendant Lisa P. Thorton sua sponte dismissed five lawsuits filed by the Plaintiff against Defendants that had caused him serious harm. Defendant Thorton stated in her order that the Plaintiff needed permission from the Ocean County Judge before he could file a lawsuit, thereby blocking without cause the Plaintiff's right to access the court. Under the Fourteenth Amendment of the United States Constitution the Plaintiff has such a fundamental due process right to access the courts that violating that right shocks the conscience and creates a fundamental miscarriage of justice. This defendant has done just that and has acted in a manner outside of the laws of the State of New Jersey and the United States. This Defendant is guilty of not only the tort of abuse of process but malicious prosecution as well and should be dealt with accordingly. The atrocities that this Defendant has caused should not be allowed to stand.

57.    Defendant Thorton's sua sponte dismissal of lawsuits filed against several defendants and her blocking the Plaintiff's access to the courts stating that the Plaintiff needed leave of the court to file any motions therein. This was per an order from Defendant Ford requiring that the Plaintiff seek the leave of the superior court prior to filing any motions therein.

14

This defendant has continued the conspiracy with Defendant Ford and has violated *42 U.S.C. §§ 1981(a), 1985(2), 1986, and 1988.*

58.     **WHEREFORE,** the Plaintiff Zia Shaikh respectfully demands judgement against all of the Defendants as named herein individually, jointly, and severally for:

(A) Damages in the amount of $40 Million ($40,000,000.00)

(B) Punitive Damages in the amount of $40 Million ($40,000,000.00)

(C) Awarding of the cost of the suit

(D) Interest

(E) Damages for pain, suffering and irreputable harm to the Plaintiff's reputation

(F) Issue a Nunc pro tunc order reversing the pervious orders of these judges.

(G) Any further relief this court deems just in the instant case.

## COUNT TWO

### VIOLATIONS OF THE FOURTH, FOURTEENTH, AND EIGHTH AMENDMENTS, TO THE CONSTITUTION OF THE UNITED STATES AGAINST DEFENDANTS EINBINDER, FORD, DORAN, SCHRON, HODGSON, AND THORTON.

59.     The Fourth Amendment of the U.S. Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation.

60. The Fourteenth Amendment of the United States Constitution states that: All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state

deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

## MADELINE EINBINDER

61. Defendant Einbinder has clearly violated the Plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendment. She has jailed the Plaintiff without probable cause caused the Plaintiff's cellular phone to be tracked and confiscated the Plaintiff's passport These constitutional violations were conducted without probable cause or at the least reasonable suspicion and are in violation of Federal law. [3] Defendant Einbinder has also violated the Plaintiff's rights to due process and access to the courts by issuing orders limiting his access to file suit.

62. The Eighth Amendment states that: Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. Defendant Einbinder has required the Plaintiff to pay fees in excess of $50,000 dollars to his ex-wife and her counsel in direct violation of the Eighth Amendment of the United States Constitution. This act was done with no justification or proof that the amount was even owed to the parties receiving the funds.

## MARLENE L. FORD

63. Defendant Ford has declared the Plaintiff a vexatious litigant. The vexatious statute attacks the pro se litigants due process in civil cases, as well as his or her access to the courts, and freedom of speech. Any injunction on U.S. citizens meant to restrict their rights to access to the courts is also a restriction on that citizens first amendment rights to petition.

---

[3] Approval of a FISA application requires the court find probable cause that the target of the surveillance be a "foreign power" or an "agent of a foreign power", and that the places at which surveillance is requested is used or will be used by that foreign power or its agent.

64.    [P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity. The role of the courts is unique and sacrosanct, providing citizens with a forum in which to air their grievances-we consider cases in which "the question is difficult, [and] the consequences weighty." A citizen's right to petition courts for assistance in resolving legal disputes is a fundamental and basic right in our society.

65. The right of access to courts for redress of wrongs is an aspect of the First Amendment right for the Plaintiff Zia Shaikh to maintain action in this court. The Due Process Clause guarantees a 'meaningful opportunity to be heard' to civil litigants in judicial proceedings. These principles are inviolable and remain foremost in this Court's analysis.

66. The Plaintiff, Zia Shaikh has filed lawsuits in New Jersey, but those lawsuits asserted valid claims, and some of the claims are still pending in the court. Therefore, this Court must decline to impose sanctions against Petitioner Zia Shaikh at this time. This Court must give Petitioner Zia Shaikh the benefit of doubt that he has brought his various NJ claims in good faith and not for purposes of harassment or to waste judicial resources. Certainly, is the case with this instant filing for the best interest of the minor children.

67. Defendant Ford has issued ex-parte orders, failing to recuse herself when there was a clear conflict of interest, intimidating and berating the Plaintiff during court proceedings, refusing to rule on legal citations given by the Plaintiff's counsel and issuing orders without finding of fact. She has conspired with the other Defendants to continue to violate the Plaintiffs protected rights.

68.    Defendant Ford has also jailed the Plaintiff without a showing of probable cause three times. In violation of the Plaintiff's rights and the protections offered by the United States Constitution under the Fourth and Fourteenth Amendment.  Defendant Ford has suppressed the

Plaintiff's pleadings, gave legal advice to opposing counsel from the bench, granted equity to the Plaintiff's ex-wife and indebted the Plaintiff without cause or evidence, issued new orders in the case while an appeal was in progress thereby lacking jurisdiction to do so.

69. Defendant Ford has removed the Plaintiff's access to the courts and ordered the court staff not to communicate with the Plaintiff on any matters before the court. She has also denied any and all motions filed by the Plaintiff without finding of fact thereby violating not only the Plaintiff's rights to access the courts, but his due process rights protected by the United States Constitution as well.

70. Defendant Ford refused ten recusal motions filed by the Plaintiff citing impropriety and conflicts of interest being that she was named in a previous lawsuit filed by the Plaintiff. She suppressed pleadings prior to the trial for the final judgement of divorce (FJOD). Defendant Ford removed the Plaintiff from the court room whenever he objected to her false testimony from being placed on the record. She despite receiving a favorable report from the supervised parenting sessions through Ocean Healthcare Initiatives at a cost to the Plaintiff of $45.00 per session for 30 sessions refused to give joint custody of the Plaintiff's children to him. She subsequently ordered more supervised visitation at the courthouse where the Plaintiff could be supervised by law enforcement and DCP. Ordered the blocking of the Plaintiff from contacting the court citing that the Plaintiff was "rude to court staff" which the Plaintiff has recordings of the conversations showing that he was polite to the staff. Defendant Ford continuously reduced the Plaintiff's supervised parenting time each time the Plaintiff filed motions to enforce litigants' rights being that the Plaintiff's ex-wife was refusing to bring the children to the supervised visits. As of the filing of this complaint the Plaintiff has not seen or spoken to his children for several years.

71.    While the case in question was being appealed Defendant, Ford removed the Plaintiff's one hour per week visitation claiming that it was inconvenient for the Plaintiff's ex-wife to bring the children to the visitation as her legal reasoning.

72.    Defendant Ford has influenced the other Defendants into not issuing favorable orders or reversing unfavorable orders in the Plaintiff's case in direct violation of the due process clauses of the Fourth and Fourteenth Amendment of the United States Constitution. Defendant Ford has blocked the Plaintiff's right under the Jury verdict to have custody returned to him by the local police and the sheriff. This Defendant has acted contrary to the due process laws of the Fourteenth Amendment of the United States Constitution.

## JOHN S. DORIAN

73.    Defendant Doran on November 28, 2017 ordered the Plaintiff's arrest and incarceration in violation of the Fourth Amendment as this order lacked probable cause and was in regard to a civil matter not a criminal case. There was no reason for the bench warrant to be issued in this case, and by Defendant Dorian causing this warrant to be issued he has clearly violated the Plaintiff's constitutional rights.   Defendant Doran is conspiring with Defendant Ford to block the Plaintiff's access to the courts in direct violation of the Fourteenth Amendment of the United States Constitution.

## DEBORAH H. SCHRON

74.    Defendant Schron after being notified that her court lacked jurisdiction she continued issuing orders in the Plaintiff's case. She refused to comply with the lawful jury verdict ordering the return of custody to the Plaintiff, instead she ruled the jury verdict a fake. Under the law, Jury Verdicts hold the full force of the law, and by denying the Plaintiff this right Defendant Schron

has clearly violated the Plaintiff's rights to due process of law protected under the Fourteenth Amendment of the United States Constitution.

## FRANCIS HODGSON

75. Defendant Hodgson caused by his own actions the Plaintiff's property to be sold at a sheriff's auction thereby depriving him of his property in direct violation of the Fourth and Fourteenth Amendment of the United States Constitution.

76.    Defendant Thorton blocked the Plaintiff's access to the courts in violation of the Fourteenth Amendment of the United States Constitution. She informed the Plaintiff that he needed permission to file any documents with the court and sua sponte dismissed a lawsuit filed in good faith by the Plaintiff.

## LISA P. THORTON

77.    Defendant Thorton sua sponte dismissed suits filed by the Plaintiff stating that the Plaintiff needed permission to file the complaints in her court. This act alone clearly flies in the face of the laws and protections that our United States Constitution protects. This defendant has out right violated the Plaintiff's Fourteenth Amendment rights under the United States Constitution by a clear violation of the Plaintiff's due process rights. She has blocked the Plaintiff from court proceedings with out cause or any evidence that would justify her illegal actions taken against the Plaintiff.

78.    **WHEREFORE,** the Plaintiff Zia Shaikh respectfully demands judgement against all of the Defendants as named herein individually, jointly, and severally for:

(H) Damages in the amount of $40 Million ($40,000,000.00)

20

(I)  Punitive Damages in the amount of $40 Million ($40,000,000.00)

(J)  Awarding of the cost of the suit

(K) Interest

(L) Damages for pain, suffering and irreputable harm to the Plaintiff's reputation

(M) Nunc pro tunc orders to reverse the judgements against the Plaintiff.

(N) Any further relief this court deems just in the instant case.

## DAMAGE CLAIMS AGAINST ALL OF THE DEFENDANTS

51.    Plaintiff Zia Shaikh incorporates by reference all of the allegations states herein as fully set forth.

52.    In addition to the requested compensatory damages the Plaintiff hereby makes a claim for punitive damages against the Defendants named herein in an amount to be settled at trial for deliberate and malicious acts in violation of the United States constitution and Federal laws as alleged in the complaint.

53.    The aforementioned acts of the Defendants were so gross and culpable in nature that they arise to the standard of reckless indifference and vicious disregard for the law.

54.    The Defendants as named herein have in fact committed the acts and omissions as named herein and have subjected the Plaintiff to outrageous and improper treatment thereby causing unnecessary financial loss and emotional distress.

55.    The Defendant's actions were so egregious, and they should be punished setting an example for others so that they are not repeated.

56.    The recovery of punitive damages is proper under the Federal Civil Rights statutes for reckless and/or callous indifference to protected Federal rights.

## JUDICIAL IMMUNITY AS IT APPLIES TO THE INSTANT CASE

57.     State Judges are quick to cry "Judicial Immunity" whenever an accusation of this nature lands in their court. The validity of the complaint is put aside, they only say "I have no responsibility for my actions". This extent of abuse has been recognized by the courts when it has, on its own merits, been considered. A finding that the judges were outside their judicial authority was not required. Judges whose abuse of office is characteristic of the judicial defendants in this case have been held liable for damages.

58. The Supreme Court of the United States said "The resolution of immunity questions requires a balance between the evils inevitable in any available alternative. In situations of abuse of office, an action for damages may offer the only realistic avenue for vindication of Constitutional guarantees." Government immunity violates the common law maxim that everyone shall have a remedy for an injury done to his person or property. It is well established that a question of immunity to suit under *42 U.S.C. §1983* et seq. raises an issue of Federal law and that state law cannot immunize conduct of state actors which may otherwise violate constitutional rights. The Supreme Court held that:

59.     "Conduct by persons acting under color of state law which is wrongful under 42 *U.S.C. § 1983 or 42 U.S.C. § 1985* cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that proper construction may be enforced. "The immunity claim raises a question of federal law.

60.     If immunity from liability were granted, carte blanche, to anyone or any class of state officials, it would serve to deny the right to redress for wrongs and torts committed under color

of law. The very intent of the civil rights act of 1871 is to ensure that these wrongs and torts are actionable. If there be any truth to the notion that, "Justice Will Be Done," Judges and Court officers should be measured by an even more stringent set of rules than ordinary citizens, and by a higher authority. The terrible swift sword of justice is an awesome weapon when improperly wielded.

61.    Through § 1983, Congress sought "to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." Accordingly, it authorized suits to redress deprivations of civil rights by persons acting under color of any [state] statute, ordinance, regulation, custom, or usage." *42 U. S. C. § 1983.* The requirement of action under color of state law means that the judicial defendants become liable for tortious acts they commit precisely because of their authority as judicial officers.

62.    The judicial defendants are state judicial officers sued in their individual capacities and are "persons" within the persons" meaning of § 1983. Unlike official-capacity defendants-who are not "persons" because they assume the identity of the government that employs them, officers sued in their personal capacity come to the court as individuals and thus fit comfortably within the statutory term "person," Moreover, § 1983's authorization of suits to redress deprivations of civil rights by persons acting under color of state law means that judicial defendants may be held liable for the torts committed precisely because of their authority as judicial officials. That the acts are both within the official's authority and constitute the performance of court functions should not be considered acts of the State that cannot give rise to a personal-capacity action against these defendants. That contention ignores the Supreme Court's holding that § 1983 was enacted to enforce provisions of the Fourteenth Amendment

against those who carry a badge of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.

63. Therefore, the Defendants in the case at bar are individuals as stated in Federal law and are properly sued in this complaint.

## R.I.C.O VIOLATIONS

64.    The aforementioned Defendants in this case have acted in concert to violate the R.I.C.O statute codified at *18 U.S.C. § 1961*. Which states in pertinent part: (1)"racketeering activity" means (A) any act or threat involving **kidnapping,  bribery, or extortion**. As shown herein the Defendants have clearly acted to violate the  R.I.CO statute by there actions both alone and in conspiracy with one another against the Plaintiff.

65.    There are civil penalties for these actions under the statute which states: (a)The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons. The Plaintiff seeks redress under these laws and all of the other laws as named herein.

## USE OF THE ATTORNEY GENERAL

66.    Based on their own Mission Statement [1], the Office of the Attorney General for the State of New Jersey is to protect the people first. If the Defendants in this case were permitted to use the office of the Attorney General they would be protecting the very people who are violating Plaintiff's Due Process and Equal Protection Rights, as well as violating the rights of the people of New Jersey and elsewhere.

67. As head of the Department of Law, the Attorney General is both the "People's Lawyer" and the State's chief legal officer. As the "People's Lawyer", the Attorney General serves as the guardian of the legal rights of the citizens of New Jersey, its organizations and its natural resources. In his role as the State's chief legal counsel, the Attorney General not only advises the Executive Branch of State government, but also defends actions and proceedings on behalf of the State. Along with this, the Office of Attorney General also has other numerous conflicts of interest.

68. According to the State of New Jersey website for the Office of Attorney General, the OAG's "Mission Statement" says: is to "protect the safety, security, and quality of life of the people of New Jersey". If also says that the Office of the Attorney General and Department of Law & Public Safety are "dedicated to making New Jersey safe for all its residents and visitors". Their job is to have its 9,000 employees protect citizens' "civil" and consumer rights.  Therefore, the Plaintiff requests that the Defendants in this case at bar be required to retain private counsel and not use the Attorney General's Office.

## FREEZING OF ASSETS

69.    It is requested that the Defendants be restrained from liquidating, hypothecating, encumbering, or otherwise disposing of any personal or corporate assets under their direct or indirect control to preserve assets to be paid in damages related to this claim.

## JURY DEMAND

Plaintiff Zia Shaikh hereby demands that this case be tried by a jury of twelve in the District Court of the United States in and for the District of New Jersey.

Respectfully Submitted,

This done on this the _____day of _____, 2020

_____

Zia Shaikh, Pro Se
4400 Rt. 9 South
Suite 1000
Freehold, NJ 07728
(732) 766- 5466

## CERTIFICATE OF SERVICE

**I, Zia Shaikh** hereby certify under the penalty of perjury that copies of the foregoing have been sent to the Defending parties in accordance with the rules of Civil Procedure, and have been served upon the defendants by: Process server and delivered to the following parties:

MADELINE F. EINBINDER J.S.C.

118 Washington St, Toms River, NJ 08754

MARLENE L. FORD A.J.S.C.

 118 Washington St, Toms River, NJ 08754

JOHN S. DORAN J.S.C.

 118 Washington St, Toms River, NJ 08754

DEBORAH H. SCHRON J.S.C.

118 Washington St, Toms River, NJ 08754

FRANCIS HODGSON J.S.C.

118 Washington St, Toms River, NJ 08754

LISA  P. THORTON

 33 Mechanic St, Freehold, NJ 07728

This done on this the
_____day of
_____, 2020

Zia Shaikh, Pro Se

4400 Rt. 9 South

Suite 1000

Freehold, NJ 07728

(732) 766- 5466



**CITTA, HOLZAPFEL & ZABARSKY**
**248 Washington Street**
**Toms River, NJ 08753**
**Phone (732) 349-1600**
**Fax (732) 349-0792**
**Attorneys for Defendant**
**Steven A. Zabarsky, ID 005931985**

| | | |
|---|---|---|
| ZIA H. SHAIKH, | : | SUPERIOR COURT OF NEW JERSEY |
| | : | CHANCERY DIVISION/FAMILY PART |
| Plaintiff, | : | OCEAN COUNTY |
| | : | DOCKET NO. FM-15-500-14-W |
| | : | |
| vs. | : | CIVIL ACTION |
| | : | |
| LAURA L. GERMADNIG-SHAIKH, | : | ORDER |
| | : | |
| Defendant. | : | |
| | : | |

THIS MATTER having come to the attention of the Court upon application of

Steven A. Zabarsky, Esq., of the firm of Citta, Holzapfel & Zabarsky, attorneys for the

Defendant, Laura L. Germadnig-Shaikh, and a Notice of Motion for Pendente Lite

Relief having been filed by the Defendant on or about April 2, 2014, and the return

date of said Notice of Motion presently scheduled for Friday, May 2, 2014, and further,

the Plaintiff has not filed a responsive pleading to Defendant's Notice of Motion for

Pendente Lite Relief, said answer having been due to be filed on or before Thursday,

April 18, 2014; and upon oral application by the Defendant, that immediate and

irreparable harm will occur if an Order is not entered on this date, and for good cause

shown;

IT IS, on this 23rd day of _April_ , 2014, ORDERED as follows:

1.     That the Defendant, Laura L. Germadnig-Shaikh, shall have temporary

sole, legal and residential custody of the minor children, to wit: Milana Shaikh, born

March 26, 2000; Sonya Shaikh, born December 29, 2003, and Harrison Shaikh, born November 7, 2007, pending further Order of the Court.

2.    The Defendant, Laura L. Germadnig-Shaikh, and the minor children, shall have sole and exclusive occupancy of the marital residence located at 5 Lons Lane, Jackson, New Jersey.    Further, the Plaintiff, Zia H. Shaikh, shall remove himself and any personal items on or before 5:00 p.m., Wednesday, April 23, 2014; and further he shall be barred from returning to the residence.

3.    The Plaintiff, Zia H. Shaikh, shall be restrained from listing or attempting to sell the marital residence located at 5 Lons Lane, Jackson, New Jersey. Further, the Plaintiff shall remove or otherwise un-list the marital residence on any site or other publication for being for sale no later than 5:00 p.m., Wednesday, April 23, 2014. This provision is pending further Order of the Court.

4.    The Plaintiff, Zia H. Shaikh, shall be restrained from liquidating, hypothecating, encumbering, or otherwise disposing of any marital asset until further Order of the Court.

5.    The Defendant's cellular telephone, phone number (732) 685-1840, through a T-Mobile account in the name of the Plaintiff, Zia H. Shaikh, is hereby authorized and ordered to be tracked for security purposes by T-Mobile to determine the location of the phone presently and in the past.

6.    The unemancipated children born of the marriage, Milana Shaikh, born March 26, 2000, Sonya Shaikh, born December 29, 2003; and Harrison Shaikh, born November 7, 2007, shall hereby be prohibited and otherwise not be permitted to travel outside the United States.

2

7. The Plaintiff, Zia H. Shaikh, shall be prohibited from applying for passports for the unemancipated children, to wit: Milana Shaikh, born March 26, 2000, Sonya Shaikh, born December 29, 2003; and Harrison Shaikh, born November 7, 2007; and the Defendant, Laura L. Germadnig-Shaikh, until further Order of the Court.

8. The Plaintiff, Zia H. Shaikh, shall turn over to the office of Citta, Holzapfel & Zabarsky, 248 Washington Street, Toms River, New Jersey, to be held in trust, on or before Friday, April 25, 2014, at 5:00 p.m., the following original documents: (a) any and all passports for the Defendant and minor children; (b) any and all Social Security cards for the Defendant and minor children; (c) any and all birth certificates for the Defendant and minor children.

9. The return date of the entry of this emergent Order shall be Friday, May 2, 2014, at 9:00 a.m., which is the scheduled return date for the Defendant's Notice of Motion for Pendente Lite Relief.

10. The Defendant's attorney shall telefax a copy of this signed Order filed in chambers to Plaintiff's attorney, Stephanie J. Brown, Esq.

Honorable Madelin F. Einbinder, J.S.C.

3

THE LAW OFFICES OF STEPHANIE J. BROWN
Stephanie J. Brown, Esquire
129 Shire Drive, Swell, NJ 08080
Telephone- (856) 904-9390
Facsimile- (856) 269-4649
EMAIL: sjbrownesquire@yahoo.com



EXHIBIT

2

STEPHANIE J. BROWN, ESQUIRE
ADMITTED IN NJ AND PA.

April 23, 2014

The Honorable Madelin F. Einbiner
**Ocean County Superior Court**
Family Division
118 Washington Street
Toms River, New Jersey 08754
*Via facsimile, only – 732-288-7239*

<div align="center">

RE: <u>Zia H. Shaikh v. Laura Germadnig-Shaikh</u>
Docket No. FM-15-500-14-W

</div>

Dear Judge Einbiner:

Please be advised that I represent the Plaintiff, in the above matter. Please accept my sincerest apologies for missing today's Case Management Conference. As I explained in the attached correspondence to my opponent I did not receive the scheduling notice and the conference was not on my calendar. I spoke with the your clerk this afternoon and she assured me that the notice was sent on March 7, 2014. I certainly do not think the clerk is being untruthful, however, I must insist that I do not recall receiving the notice. I have a very small practice and there is not an over abundance of mail received on a daily basis that would make items easily lost. I have placed inquiries with my two interns, and they have stated that they only knew of my hearing today in Philadelphia and the Motion for Pendente Lite hearing on May 2, 2014, as on the calendar. Again, I can only apologize for the enormous inconvenience that I caused the Court and Attorney Zabarsky. I would kindly request that you see the attached, for further explanation as to today, as well as our failure to provide the responsive pleading.

As I was not there today, I would respectfully request the Court reschedule the Case Management Conference. I had hoped that in addition to receiving our proposed scheduling dates, I would have an opportunity to attempt to put forth my client's desire to settle the matter. I believe with the amount of acrimony that surrounds this case, a chance at discussing the matter in an attempt to resolve is certainly worth the time. Again, I have expressed to Attorney Zabarsky that I will make myself available you him, if at all possible.

We would further like to request that the Court reconsider its interim Order. However, as the May 2, 2014 date is so close, I have related to my client that I was not very hopeful that the

THE LAW OFFICES OF STEPHANIE J. BROWN
Stephanie J. Brown, Esquire
129 Shire Drive, Swell, NJ 08080
Telephone- (856) 904-9390
Facsimile- (856) 269-4649
EMAIL: sjbrownesquire@yahoo.com

RE:    **Zia H. Shaikh v. Laura Germadnig-Shaikh**
       **Docket No. FM-15-500-14-W**
       Page -2-

Court would so allow. However, there are many issues contained with the Pendente Lite Motion, as well as our response that need to be adjudicated. I believe the entire litigation will be severely prejudiced by our inability to submit our filing and receive consideration. As stated, I have pleaded with my client to provide the required documents to attach to the filing and he has so far not obeyed. I am in a difficult position of having to straddle an ethical fence, while not allowing my client to circumvent the Court's rules, yet not fail in my owed fiduciary duty.

As of 9:30 p.m. on today's date, despite many promises, my client has still not submitted the remainder of his financial documents to me. I am still unable to file our response. Kindly note, I would have approached the Court sooner with this dilemma, in at least an explanation for our tardiness, but I did not want any negative inference to be drawn by the document production failure. I will keep all parties informed and I sincerely hope that I am able to produce our response and that we can move towards the matter's resolve.

I thank you in advance for your professional, extended courtesies. Although I have been having trouble with my cell phone as noted to Attorney Zabarsky, I will make a concerted effort to be on top of anyone's attempt to contact me. I thank you thank you again and I look forward to your response.

Very Truly Yours,

Stephanie J. Brown, Esquire

SJB/ts
cc: **STEVEN A. ZABARSKY, ESQUIRE**



FILED
JUN 1 3 2014
JUDGE LINEBINDER'S CHAMBERS

EXHIBIT
3

PREPARED BY THE COURT

| | | |
|---|---|---|
| **ZIA H. SHAIKH** | : | SUPERIOR COURT OF NEW JERSEY |
| | | CHANCERY DIVISION/FAMILY PART |
| **Plaintiff** | : | OCEAN COUNTY |
| | | |
| vs. | : | DOCKET NO. FM-15-500-14W |
| | | |
| **LAURA L. GERMADNIG-** | : | CIVIL ACTION **ORDER** |
| **SHAIKH** | | |
| | : | RETURNABLE JUNE 13, 2014 |
| **Defendant** | | |
| | : | |

**Defendant's Attorney: Steven A. Zabarsky, Esq.**          **Fax: 732-349-0792**

**THIS MATTER** comes before the Court June 13, 2014 on Defendant's motion for

pendente lite relief. Plaintiff is self-represented. Defendant is represented by Steven A. Zabarsky,

Esq. Defendant has provided good proof of service. Plaintiff filed a Cross Motion which

exceeded the page limits by eight (8) pages. Defendant's Notice of Motion exceeded the page

limits by five (5) pages. Plaintiff did not file a Notice of Cross Motion, only a certification.

Defendant requests oral argument. Parties have a history of domestic violence but there is no

active restraining order.

### RELIEF REQUESTED

Defendant seeks the following relief: (1) for Defendant and the minor children to

maintain exclusive occupancy of the marital residence located at 5 Lons Lane, Jackson, New

Jersey; (2) temporary custody of the unemancipated children born of the marriage; (3) for

1

Plaintiff to have parenting time as ordered by the Court with Harrison and Sonya. With regard to

Milana, the Plaintiff shall not have parenting time presently. (4) for Plaintiff to attend and

successfully complete an anger management program. Further, the Court shall receive a report

and recommendation from Milana's therapist as to any parenting time between the Plaintiff and

Milana; (5) for the Plaintiff to pay unallocated temporary support to the Defendant for the

unemapncipated children through the Ocean County Probation Department in the an amount

established by the Court for expenses to maintain the marital lifestyle and status quo. (6) for

Plaintiff to directly pay all roof and car expenses as shown on the Defendant's Case Information

Statement, Schedules "A" and "B" , the children's school and summer camp expenses, piano,

guitar lessons, and JuJitso School; (7) for Plaintiff to provide a copy of all tax returns prepared

for 2010-2012 for Progressive Equity partners, LLC, Fore Bridge Capital Management, LLC,

and any and all other entities to which Plaintiff has an interest, including but not limited to, as a

member, partner, beneficiary, trustee or otherwise; (8) that Plaintiff be restrained from

liquidating, hypothecating, encumbering, or otherwise disposing of any marital asset until further

Order of the Court; (9) that the Plaintiff provide a check in the amount of $5,005.62 to Defendant

to pay off the use of credit cards for both herself and from her friend to borrow funds due to the

Plaintiff's failure to provide temporary support to the Defendant and the minor children; (10) that

the Plaintiff be restrained from harassing and otherwise communicating with the Defendant

unless by text message for the sole purpose of discussing the children; (11) that the Plaintiff be

Ordered to issue a check in the amount of $50,000.00 to the trust account of Citta, Holzapfel, &

Zabarsky. Further, that from said monies, a check in the amount of $15,000.00 shall be issued to

Citta, Holzapfel, & Zabarsky for attorney's fees; $10,000.00 to R. Joseph Gunteski, CPA for

forensic accounting fees; and $5,000.00 to Patricia Germadnig as reimbursement for payment

2

towards Defendant's attorney's fees.  Further that a check in the amount of $2,500.00 be issued

to Bradley Billhimer, Esq. for his retainer to defend Defendant against Plaintiff's Municipal

Court Complaint.  Further, that the balance of $17,500.00 remain in the trust account of Citta,

Holzapfel, & Zabarsky until further Order of the Court or written agreement by the parties

through counsel; (12) that the Plaintiff be obligated to maintain health insurance and pay for any

and all unreimbursed medical expenses for the Defendant and/or the minor children; (13) that the

Plaintiff is specifically Ordered to remove the marital residence from any website, listing, or

otherwise advertising it is for sale; (14) that the Plaintiff shall turn over to the Defendant hers

and the children's birth certificates and social security cards.  Further, that Plaintiff turn over to

Defendant's counsel the children's passports to be held in trust until further order of the Court

within three (3) days, and to the Defendant her passport; (15) that the Plaintiff remove any and

all tracking devices from the Defendant's car; (16) that the Defendant maintain sole and

exclusive possession and use of the 2004 Toyota Sequoia motor vehicle; (17) counsel fees and

costs.

## PROCEDURAL HISTORY

The parties married 03/05/99. Three children were born of the marriage, Milana, born

03/26/00 (age 14), Sonya, born 12/29/03 (age 10), and Harrison, born 11/07/07 (age 6).

Parties were last before the Court 04/23/14 for OTSC.  The Court ruled:

1.      That the Defendant, Laura L. Germadnig-Shaikh shall have temporary sole, legal

and residential custody of the minor children, to wit: Milana Shaikh, born March 26, 2000;

Sonya Shaikh, born December 29, 2003; and Harrison Shaikh, born November 7, 2007, pending

further Order of the Court.

2.      The Defendant, Laura L. Germadnig-Shaikh, and the minor children, shall have

3

sole and exclusive occupancy of the marital residence located at 5 Lions Lane, Jackson, New Jersey. Further, the Plaintiff, Zia H. Shaikh shall remove himself and any personal items on or before 5:00 p.m., Wednesday, April 23, 2014; and further he shall be barred from returning to the residence.

3.    The Plaintiff, Zia H. Shaikh, shall be restrained from listing or attempting to sell the marital residence located at 5 Lons Lane, Jackson, New Jersey. Further, the Plaintiff shall remove or otherwise un-list the marital residence on any site or other publication for being for sale no later than 5:00 p.m., Wednesday, April 23, 2014. This provision is pending further Order of the Court.

4.    The Plaintiff, Zia H. Shaikh, shall be restrained from liquidating, hypothecating, encumbering, or otherwise disposing of any marital asset until further Order of the Court.

5.    The Defendant's cellular telephone, phone number 732-685-1840, through a T-Mobile account in the name of the Plaintiff, Zia H. Shaikh, is hereby authorized and ordered to be tracked for security purposes by T-Mobile to determine the location of the phone presently and in the past.

6.    The unemancipated children born of the marriage, Milana Shaikh, born March 26, 2007, shall hereby be prohibited and otherwise not be permitted to travel outside of the United States.

7.    The Plaintiff, Zia H. Shaikh, shall be prohibited from applying passports for the unemancipated children, to wit: Milana Shaikh, born March 26, 2000; Sonya Shaikh, born December 29, 2003; and Harrison Shaikh, born November 7, 2007; and Defendant Laura L. Germadnig-Shaikh until further Order of the Court.

8.    The Plaintiff, Zia H. Shaikh, shall turn over to the office of Citta, Holzapfel, &

4

Zabarsky, 248 Washington Street, Toms River, New Jersey, to be held in trust, on or before

Friday, April 25, 2014, at 5:00 p.m. the following original documents: (a) any and all passports

for the Defendant and minor children; (b) any and all original Social Security cards for the

Defendant and minor children; (c) any and all original birth certificates for the Defendant and

minor children.

9.     The return date of the entry of this emergent Order shall be Friday, May 2, 2014,

at 9:00 a.m., which is the scheduled return date for the Defendant's Notice of Motion for

Pendente Lite Relief.

10.     The Defendant's attorney shall telefax a copy of this signed Order filed in

chambers to Plaintiff's attorney, Stephanie J. Brown, Esq.

Parties were last before the Court 05/02/14 on Plaintiff's counsel's motion to be relieved

as counsel.  This motion was granted.

The Court has considered the moving papers and the positions of the parties and for other

good cause having been shown,

**IT IS** on this 13th day of June 2014 **ORDERED:**

**Defendant's Motion / Court's Findings and Decision:**

1.     Defendant's application for an Order for Defendant and the minor children to

maintain exclusive occupancy of the marital residence located at 5 Lons Lane, Jackson, New

Jersey is **granted**.

2.     Defendant's application for an Order for temporary custody of the

unemancipated children born of the marriage is **granted**.  (See Paragraph 3)

3.     Defendant's application for an Order for Plaintiff to have parenting time as

ordered by the Court with Harrison and Sonya.  With regard to Milana, the Plaintiff shall not

5

have parenting time presently is **granted** pending participation in the Ocean County Parenting

Time Mediation Program.  In the event the mediation does not result in a Consent Order, the

parties are to submit to a CNA, with costs to be split equally between the parties.  In the event a

CNA does not result in a Consent Order, either party is free to write to the Court to request a

Plenary Hearing.  Pending the parenting time mediation, the parenting time for Harrison &

Sonya will be one (1) night during the week and one day during the weekend, with no overnights

until further Order of the Court.

    4.    Defendant's application for an Order for Plaintiff to attend and successfully

complete an anger management program.  Further, the Court shall receive a report and

recommendation from Milana's therapist as to any parenting time between the Plaintiff and

Milana is **granted in part.** (See Paragraph 3 above)  After reviewing the video recording

submitted by the Defendant and the audio recording submitted by the Plaintiff, this Court feels

the Plaintiff would benefit from an anger management program.  Plaintiff is directed to contact

Preferred Behavioral Health or a similar provider to set up an anger management program within

ten (10) days of the date of this Order.  Plaintiff is directed to enroll in the next available

program as well as satisfactorily complete it.

    5.    Defendant's application for an Order for the Plaintiff to pay unallocated

temporary support to the Defendant for the un-emancipated children through the Ocean County

Probation Department in the amount established by the Court for expenses to maintain the

marital lifestyle and status quo is **granted**.  The Court has reviewed the Defendant's expenses

and has adjusted them to what the Court feels is reasonable.  In addition, the Court has Ordered

Plaintiff to be responsible for all Schedule "A" and "B" expenses pendente lite.  Defendant is

therefore responsible for an additional  $800.00/week in unallocated temporary support for

6

Defendant and the un-emancipated children effective the date of filing of this motion, April 2,

2014 payable through Probation.

6.       Defendant's application for an Order for Plaintiff to directly pay all roof and car

expenses as shown on the Defendant's Case Information Statement, Schedules "A" and "B", the

children's school and summer camp expenses, piano, guitar lessons, and Jujitso School is

**granted** pending final dissolution.

7.       Defendant's application for an Order for Plaintiff to provide a copy of all tax

returns prepared for 2010-2012 for Progressive Equity partners, LLC, Fore Bridge Capital

Management, LLC, and any and all other entities to which Plaintiff has an interest, including but

not limited to, as a member, partner, beneficiary, trustee or otherwise is **granted**.

8.       Defendant's application for an Order that Plaintiff be restrained from liquidating,

hypothecating, encumbering, or otherwise disposing of any marital asset until further Order of

the Court is **granted so long as it is mutual**.

9.       Defendant's application for an Order that the Plaintiff provide a check in the

amount of $5,005.62 to Defendant to pay off the use of credit cards for both herself and from her

friend to borrow funds due to the Plaintiff's failure to provide temporary support to the

Defendant and the minor children is **denied without prejudice**.

10.      Defendant's application for an Order that the Plaintiff be restrained from

harassing and otherwise communicating with the Defendant unless by text message for the sole

purpose of discussing the children is **granted insofar as it is mutual**.

11.      Defendant's application for an Order that the Plaintiff be Ordered to issue a check

in the amount of $50,000.00 to the trust account of Citta, Holzapfel, & Zabarsky. Further, that

from said monies, a check in the amount of $15,000.00 shall be issued to Citta, Holzapfel, &

7

Zabarsky for attorney's fees; $10,000.00 to R. Joseph Gunteski, CPA for forensic accounting fees; and $5,000.00 to Patricia Germadnig as reimbursement for payment towards Defendant's attorney's fees. Further that a check in the amount of $2,500.00 be issued to Bradley Billhimer, Esq. for his retainer to defend Defendant against Plaintiff's Municipal Court Complaint. Further, that the balance of $17,500.00 remain in the trust account of Citta, Holzapfel, & Zabarsky until further Order of the Court or written agreement by the parties through counsel is **granted in part**. Defendant is responsible for her retainer regarding any Municipal Court matters. Plaintiff is Ordered to issue a check to the trust account of Citta, Holzapfel & Zabarsky, Esqs. for $15,000.00 for attorney's fees, $10,000.00 to R. Joseph Gunteski, CPA for forensic accounting fees and $5,000.00 to Patricia Germadnig as reimbursement towards Defendant's counsel fees. All payments shall be made by Plaintiff within thirty (30) days of the date of this Order.

12.     Defendant's application for an Order that the Plaintiff be obligated to maintain health insurance and pay for any and all unreimbursed medical expenses for the Defendant and/or the minor children is **granted in part**. Reimbursement is for medically necessary and reasonable expenses only, not for elective cosmetic procedures.

13.     That the Plaintiff is specifically Ordered to remove the marital residence from any website, listing, or otherwise advertising it is for sale is **granted**.

14.     Defendant's application for an Order that the Plaintiff shall turn over to the Defendant hers and the children's birth certificates and social security cards. Further, that Plaintiff turn over to Defendant's counsel the children's passports to be held in trust until further order of the Court within three (3) days, and to the Defendant her passport is **granted**.

15.     Defendant's application for an Order that the Plaintiff remove any and all tracking devices from the Defendant's car is **granted**.

8

16.   Defendant's application for an Order that the Defendant maintain sole and exclusive possession and use of the 2004 Toyota Sequoia motor vehicle is **granted**.

17.   Defendant's application for an Order counsel fees and costs is **denied without prejudice** pending final dissolution.  (See Paragraph 11 above)

18.   The Plaintiff may enter the marital home to remove his business records and personal items.  Plaintiff may not remove any of the furniture from the residence.  Plaintiff shall have four (4) hours to remove the business records and personal items on Wednesday, June 18, 2014, from 11:00 a.m. to 3:00 p.m.

**MADELIN F. EINBINDER, J.S.C.**



EXHIBIT
tabbies®
4

December 16, 2014

Honorable Madelin F. Einbinder, P.J.F.P.

Chambers  -   Ocean County Court House            **Via Facsimile to 732.929.4716**
100 Hooper Avenue - First Floor; Toms River, NJ 08754

Dear Judge EINBINDER:

> RE:  ZIA SHAIKH  v.  LAURA L. GERMADNIG-SHAIKH
>        Docket No. FM-15-0500-14-W
>   -    Pendente lite cross-motions scheduled for Oral Argument -
>        December 19, 2014

In an advance of oral argument on December 19, 2014, I respectfully ask that Your Honor review the thoughtful decision of Justice Albin *In the Matter of Advisory Letter No. 7-11, Docket No A-012011 (068633 decided MArch 6, 2013.* For the Court's convenience I have appended the case.   Quoting from the advisory Letter:

> The mere appearance of bias in a judge -- however difficult, if not impossible, to quantify -- is sufficient to erode respect for the judiciary. See DeNike v. Cupo, 196 N.J. 502, 514 (2008). To that end, judges must "'refrain . . . from sitting in any causes where their objectivity and impartiality may fairly be brought into question.'" Ibid. (quoting State v. Deutsch, 34 N.J. 190, 206 (1961)).   .
> . . .
>
> Therefore, "ensuring both conflict-free, fair hearings and ***the appearance of impartiality in . . . court is vital***" to maintaining public confidence in our system of justice. McCabe, supra, 201 N.J. at 42. To accomplish that goal, we have in place exacting standards of judicial conduct to which

1

we now turn.   . . . .

Rule 1:12-1(g), requires judges to disqualify themselves "when there is any other reason __which might preclude a fair and unbiased hearing and judgment, *or which might reasonably lead counsel or the parties to believe so*."

Rule 1:12-1(g) -- like Canon 3(C)(1), which mandates disqualification when a "judge's impartiality might reasonably be questioned" -- is intended to apply to *scenarios that cannot be neatly catalogued.* See State v. Tucker, 264 N.J. Super. 549, 554 (App. Div. 1993)

("The situations in which a judge should grant a motion for recusal are varied . . . ."), certif. denied, 135 N.J. 468 (1994). Thus, "[n]either Canon 3C nor Rule 1:12-1 recite an exclusive list of circumstances which disqualify a judge and require recusal from a matter." State v. Kettles, 345 N.J. Super. 466, 470 (App. Div. 2001), certif. denied, 171 N.J. 443 (2002).   . . . .

It is clear from the canons of the Code of Judicial Conduct, the Court Rules, and the Guidelines for Extrajudicial Activities that "'*justice must satisfy the appearance of justice.*'" Deutsch, supra, 34 N.J. at 206 (quoting Offutt v. __United States, 348 U.S. 11, 14, 75 S. Ct. 11, 13, 99 L. Ed. 11, 16 (1954)).

The purpose of our judicial disqualification provisions "is to maintain public confidence in the integrity of the judicial process, which in turn depends on a belief in the impersonality of judicial decision making." United States v. Nobel, 696 F.2d 231, 235 (3d Cir. 1982) (emphasis added), cert. denied, 462 U.S. 1118, 103 S. Ct. 3086, 77 L. Ed.2d 1348 (1983). Even a "righteous judgment" will not find acceptance in the public's mind unless the judge's impartiality and fairness are above suspicion. State v. Muraski, 6 N.J. Super. 36, 38 (App. Div. 1949). "In other words, *judges must avoid acting in . . . a manner that may be perceived as partial*," otherwise the integrity of the judicial process will be cast in doubt. DeNike, supra, 196 N.J. at 514. DeNike, supra, 196 N.J. at 514 (quoting Deutsch, supra, 34 N.J. at 206).

2

Those principles have been distilled to __a simple question: *"Would a reasonable, fully informed person have doubts about the judge's impartiality?"* Id. at 517.   . . . .

The issue is not whether Judge Boyd can faithfully maintain impartiality . . . The workings of his mind cannot be put on display. That is why public perception matters. Judges must appear to be impartial, for in a democracy the standing of our system of justice depends on the people's confidence in the judicial process.   . . . .

Will the litigant reasonably believe that he will receive a **fair shake** or that the scales of justice are tilted against him? *Ultimately, a litigant should not be left to wonder about the judge's objectivity or impartiality.* . . . . If a "judge's impartiality might reasonably be questioned," disqualification is mandated. Canon 3(C)(1); accord DeNike, supra, 196 N.J. at 517.   . . . .

By requiring disqualification whenever a fully informed person might reasonably question the impartiality of a judge, we guarantee that the judicial process will retain its high, preferred place in our democracy."                          [emphasis added.   Reformatted for clarity]

---

ZIA SHAIKH has profounded misgivings going back to April 23, 2014, when:

[a] Mr. SHAIKH was summarily ordered to vacate the family residence, without a hearing, based upon unsworn concerns at a Case Management Conference by his wife's attorney, in his wife's presence who was not sworn to testify as to such issues. His counsel was not present to push back on the oral OSC allowed to be presented *sua sponte* by the Court.   While victims of domestic violence appear ex parte before the Court seeking a TRO, the Court always sets a return date for a hearing to determine whether an

FRO should enter. Fundamental due process mandates this happening. Mr. SHAIKH provided the Court with a written statement citing cases and addressing due process issues - when he was self-represented. ZIA SHAIKH has never been given a "*fair shake*" via a scheduled hearing to address his summary removal by the Court.

[b]   The Court has entered Bench Warrants against ZIA SHAIKH now tallying up to $70,000 based upon representations by LAURA SHAIKH's counsel.

[c] Mr. ZABARSKY as agent for LAURA SHAIKH, advocates for her position. The record is replete with examples of her rage and animus towards her husband. As set out in the Reply Certification, LAURA texts her husband:

> " I will make sure your kids never forgive you ! !! "
> I PROMISE THE KIDS ARE NEVER GOING TO FORGIVE U SICK BASTARD ! "
> " I would rather u rot in jail than anything else at this point ! "
> " I will go the distance baby. On every level. Kids will never forgive you or forget."

Lost in the barrage of advocacy and invectives is ZIA SHAIKH's certification to the effect that he has provided his wife and children with the benefit of $86,000 to meet family support in 2014 (chart attached to his Reply Certification; and the additional fact that he has formally offered $90,000 rather than the Court-ordered $70,000 to lift the Bench Warrants.

[d] LAURA SHAIKH's emails appended to court filings clearly evidence her need for Anger Management. As a result of the legal pounding administered by Mr. ZABARSKY, Mr. SHAIKH is not seeing the children, and can not attend the course of Anger Management in New Jersey per the Court's order that he do so - further creating in his mind the perception that impartiality has not been achieved.

---

If past is prologue, Mr. ZABARSKY will continue pounding away at Mr. SHAIKH until he has created a litigant who is removed entirely from the case.  His approach to dispute resolution has done nothing other than to fuel the emotional fires roiling around in this case - rather the actions taken have inflamed the case; without a path forward to resolution of the issues.

Respectfully submitted,

*August J. Landi, Esq.*

---

Law Offices of Steven A. Zabarsky          [TL 732.349.1600][FX 732.349.0792]

248 Washington Street, Toms River, NJ 08753



FILED
MAR - 3 2017

EXHIBIT

5

PREPARED BY THE COURT

|  |  |
|---|---|
| | : SUPERIOR COURT OF NEW JERSEY |
| | : CHANCERY DIVISION/FAMILY PART |
| **ZIA SHAIKH,** | : OCEAN COUNTY |
| Plaintiff, | : |
| | : DOCKET NO. FM-15-500-14 W |
| v. | : CIVIL ACTION |
| | : |
| **LAURA L. GERMADNIG-SHAIKH** | : **ORDER ON MOTION RETURNABLE ON** |
| Defendant. | : **MARCH 3, 2017** |
| | : |
| | : |

THIS MATTER comes before the Court on the motion of the Defendant, Laura L. Germadnig, appearing self-represented, for an order as follows:

(1) For a bench warrant for the arrest of the Plaintiff for failure to pay child support, the arrears of which are as of February 17, 2017 in the total amount of $68,083.63 for child support and for spousal support, and to set the purge amount in the full amount;

(2) Compelling the mortgage company which holds the mortgage lien on the former marital home to negotiate with Defendant for the ability to remain in the former marital residence.

The Plaintiff Zia Shaikh, self represented, appeared by telephone with the permission of the Court.

The Court has considered the submissions of the parties and the oral argument and testimony of the parties taken on March 3, 2017. The Court has set forth this date on the record the reasons in support of this order, and the rulings on the motion and cross-motion.

It is on this 3rd day of March 2017, Ordered:

1. That the Defendant's motion for a bench warrant for the contempt of the Plaintiff, Zia Shaikh, for willful failure to make child support and alimony payments as set forth in the final judgment of divorce as well as the pendente lite orders of this court is granted. The Court finds that the Plaintiff is currently in arrears for child support and spousal support in the amount of $69,951.63 as of the date of this order. The Court further finds that the Plaintiff Zia Shaikh is

willfully unemployed and underemployed. The Court further finds that the Plaintiff Zia Shaikh lacks credibility and is in fact deceitful to the court as to the nature of his income and assets, and that the Plaintiff's testimony that he only earned about $14,000 for tax year 2016 to be without credibility. The Plaintiff during 2016 paid rent in the amount of $1500 per month. Plaintiff now testified that he pays rent of $600 per month; that he maintains health insurance at the rate of $700 to $800 per month; that he spends on groceries about $160 per month; that he spends on gasoline about $100 per month; that he pays about $100 per month for his office in Freehold drop location; that he spends about $150 per month for cell phone expenses; that he agreed to pay Huntington Learning Center most recently $55 for a practice SAT test, and agreed to spend $85 per hour for SAT tutoring for Milana; that he routinely gives gifts to the children for example, cash, payments on a debit card, a dress for $70, Pro Active skin care $180; and gift baskets and other clothing and gifts directly to the children. The Court finds that the Defendant intentionally will not make support payments of any kind directly to the Defendant who he has attempted to financially cripple. The Court further finds that the proofs of the Defendant's alleged disability based upon a diagnosis of PTSD and depression are not credible. The Court further finds that the Defendant is not disabled by any medical condition which would interfere with his ability to find gainful employment consistent with his income of at least $120,000 per year; and based upon the foregoing this Court finds that the Defendant continues to have income ability and should be imputed with income of $120,000 per year based upon the history of the parties spending about that amount net of taxes on their lifestyle.

2.  The Court will therefore order that a bench warrant issue for the arrest and incarceration of the Plaintiff, Zia Shaikh, on contempt for failure to make child support and spousal support payments as ordered by the Court, and that a purge or release about be established in the amount of $5,000.

3.  That Plaintiff has a pending application for Social Security Disability based upon an unproven allegation that he suffers from Post Traumatic Stress Disorder caused by the conduct of this litigation.  Notwithstanding that representation, the Plaintiff has been able to afford housing; to purchase cell phones to his children;  to fund the conduct of several lawsuits in the state and federal courts, for which he has paid filing fees;  has been able to feed and clothe himself, and to file tax returns (the contents of which are unknown to the Court due to the Plaintiff's refusal to produce same) which presumably reflect some type of income.

4.  This Court conducted an ability to pay hearing in October 2015 and concluded that the Plaintiff had an income capacity from his self employment as a financial planner of at least $120,000 per year, and the family support obligations are established based upon that number.  There was no change in the income capacity of the Plaintiff at the time of entry of the Final Judgment of Divorce, and this Court continued to apply that imputed income to the Plaintiff, based upon the proofs submitted at the ability to pay hearing, and after a finding that the Plaintiff was intentionally failing to make a good faith disclosure of his income and assets in this matrimonial litigation.  The Court further finds that the Plaintiff is either intentionally underemployed, or is hiding and not disclosing information as to his actual income.

5.  Plaintiff shall be held in the Ocean County Jail until such time as he is brought before a Superior Court Judge for a contempt/purge hearing within 72 hours of being detained.

6.  That the Defendant's motion to compel the mortgage company that holds the mortgage on the former marital home on Lons Lane in Jackson Township, Ocean County, NJ is denied, since that entity is not before the Court and this Court does not have jurisdiction to enter an order compelling the mortgage company to negotiate with the Defendant.  The Plaintiff however shall obtain and execute any and all authorizations that will permit the Defendant to have full access to the mortgage account and to otherwise be permitted access to the information on that account.  In addition this order shall appoint and designate the Defendant, Laura Germadnig-

Shaikh, now known as Laura Germadnig, as the attorney in fact for the Plaintiff, Zia Shaikh,

relative to all dealings and negotiations as to the default of said mortgage.

7.  That a copy of this order shall be provided to the parties by the Court.


MARLENE LYNCH FORD, A.J.S.C.

**Zia Shaikh**
**4400 Route 9, Suite 1000**
**Freehold, NJ 07728**
**732-766-5466**



January 02, 2018

**VIA FAX (732)240-6097 and USPS mail**
Judge Marlene Lynch Ford A.J.S.C.
Superior Court of New Jersey
118 Washington St.
Toms River, NJ 08754


**VIA FAX (732)288-7889 AND USPS MAIL**
Judge John Doron J.S.C.
and Superior court clerk
Superior Court of New Jersey
120 Hooper Ave.
Toms River, NJ 08754

**VIA FAX (732)288-7850 AND (732)929-2070**
Ocean county Probation Department - **Petitioner**
Terence J. Foley, Vicinage Chief probation officer
Nancy Cain-DeGisi Vicinage Chief Probation Officer
213 Washington St.
Toms River, NJ 08754-2191

<div align="center">

Re:    Zia H. Shaikh

v.

Laura L. Germadnig f/k/a (Shaikh)
**Docket No. FM-15-500-14W**
**Case No. 91103001A**

</div>

**DEMAND To Vacate Bench Warrant  dated November 28, 2017 for LACK of Jurisdiction**
**No Findings of fact supported by relevant law required by NJ Court Rule _R._ 1:7-4**
**and NJ rules of Evidence**


Dear Judge Ford:

I hope you are enjoying the holiday season while litigants such as myself,  the victims of
family courts tyranny try to survive having lost everything to the lawless orders from the courts such
as yourself. This is an emergent matter requiring notice to you and for the record.

<div align="center">1</div>

**Zia Shaikh**
**4400 Route 9, Suite 1000**
**Freehold, NJ 07728**
**732-766-5466**

January 02, 2018

**VIA FAX (732)240-6097 and USPS mail**
Judge Marlene Lynch Ford A.J.S.C.
Superior Court of New Jersey
118 Washington St.
Toms River, NJ 08754

**VIA FAX (732)288-7889 AND USPS MAIL**
Judge John Doron J.S.C.
and Superior court clerk
Superior Court of New Jersey
120 Hooper Ave.
Toms River, NJ 08754

**VIA FAX (732)288-7850 AND (732)929-2070**
Ocean county Probation Department - **Petitioner**
Terence J. Foley, Vicinage Chief probation officer
Nancy Cain-DeGisi Vicinage Chief Probation Officer
213 Washington St.
Toms River, NJ 08754-2191

Re:   Zia H. Shaikh
v.
Laura L. Germadnig f/k/a (Shaikh)
**Docket No. FM-15-500-14W**
**Case No. 91103001A**

### DEMAND To Vacate Bench Warrant dated November 28, 2017 for LACK of Jurisdiction No Findings of fact supported by relevant law required by NJ Court Rule *R*. 1:7-4 and NJ rules of Evidence

Dear Judge Ford:

I hope you are enjoying the holiday season while litigants such as myself, the victims of family courts tyranny try to survive having lost everything to the lawless orders from the courts such as yourself. This is an emergent matter requiring notice to you and for the record.

2

As you are the Supreme Judge of Ocean county Superior court, it is necessary that I bring to your attention the illegal actions by your staff, namely Judge John Doron JSC.  I require your immediate intervention on the bench warrant issued lacking jurisdiction, since EVIDENCE of an injury in fact to the Petitioner is required for this court to have jurisdiction when it issued the November 28, 2017 bench warrant  from an enforcement hearing scheduled by the Ocean county probation department in their effort to collect on Title IV-D loans without ever proving injury in fact to the petitioner; despite filings by me seeking authority of this petitioner.

I have objected to the enforcement hearing and **under no circumstances have I voluntarily participated in the proceedings for alleged non-payment of child support or claim that  I am in arrears for alleged child support**. It is the duty of this court to present proof that the petitioner suffered an "*injury in fact*" that was caused by me, the respondent and without proof of such the court is not likely to redress and remedy the petition, therefore is without discretion and must dismiss petition immediately. *Lujan, secretary of the interior v. Defenders of wildlife et al. 504 u.s. 555 (1992).*

I am standing upon rights guaranteed in the United States constitution and have appeared under the threat of incarceration, default judgment, and suspension of licenses if I do not participate in the proceedings.

Demand to dismiss on the basis the presiding officer is a non-judicial person *coram non judice* and court lacks jurisdiction by writ of *coram nobis "before a person not a judge" — meaning, in effect, that the proceeding in question was not a judicial proceeding because lawful judicial authority was not present, and could therefore not yield a judgment" **burnham v. superior court 495 u.s. 604 (1990)** without subject matter jurisdiction to make determinations in matters of law and equity and without authority and jurisdiction to preside over a trial by jury as is required for a controversy of more than $20 as is guaranteed by the 7th amendment.

A non-judicial person lacks jurisdiction to preside over a trial by jury and issue money

judgments for presumed debts that will be ordered collected by a Title IV-D debt collection agency via income withholding order.

It is understood by me that the courts and officers of the court are to remain impartial and protect against deprivation of rights guaranteed in the bill of rights.

In a court of *limited jurisdiction*, whenever a party denies that the court has subject-matter jurisdiction, **it becomes the duty and the burden of the party claiming that the court has subject matter jurisdiction to provide evidence from the record of the case that the court holds subject-matter jurisdiction**. *Bindell v City of Harvey*, 212 Ill.App.3d 1042, 571 N.E.2d 1017 (1st Dist. 1991) ("the burden of proving jurisdiction rests upon the party asserting it.").

Until the plaintiff submits uncontroversial evidence of subject-matter jurisdiction to the court that the court has subject-matter jurisdiction, the court is proceeding *without* subject-matter jurisdiction. *Loos v American Energy Savers, Inc.*, 168 Ill.App.3d 558, 522 N.E.2d 841(1988)("Where jurisdiction is contested, the burden of establishing it rests upon the plaintiff.").

A court has NO JURISDICTION TO DETERMINE ITS OWN JURISDICTION, for a basic issue in any case before a tribunal is its power to act, and a court must have the authority to decide that question in the first instance.*" Rescue Army v. Municipal Court of Los Angeles*, **171 P2d 8; 331 US 549, 91 L. ed. 1666, 67 S.Ct. 1409.**

**I hereby demand once again that this court Sua Sponte dismiss the illegal bench warrant immediately and order your under link Judge(s) who may not be  well versed in the law as you, the Assignment Judge of Ocean county Superior court.** As you are aware any illegal arrest and incarceration is forbidden by the New Jersey Constitution and the US constitution and the violators of same are waging war and engaged in the act of treason against these United States of America.

**Lack of Judicial immunity**.   Neither Judges nor Government attorneys are above the law. See *United States v. Isaacs*, 493 F. 2d 1124, 1143 (7th Cir. 1974). In our judicial system, few more serious threats to individual liberty can be imagined than a corrupt judge or judges

4

acting in collusion outside of their judicial authority with the Executive Branch to deprive a citizen of his rights.

In *The Case of the Marshalsea*, 77 Eng. Rep. 1027 (K.B. 1613), Sir Edward Coke found that Article 39 of the Magna Carta restricted the power of judges to act outside of their jurisdiction such proceedings would be void, and actionable.

[W]hen a Court has (a) jurisdiction of the cause, and proceeds *inverso ordine* or erroneously, there the party who sues, or the officer or minister of the Court who executes the precept or process of the Court, no action lies against them. But (b) when the Court has not jurisdiction of the cause, there the whole proceeding is [before a person who is not a judge], and actions will lie against them without any regard of the precept or process . . . Id. 77 Eng. Rep. at 1038-41.

Since imprisonment constitutes a criminal feature of a court order, the criminal feature takes precedence over all else, requiring criminal due process--which I never got. **I am demanding discovery from the Probation Department since I am being threatened with contempt and loss of liberties and property. I, therefore, have a RIGHT to Due Process in the form of discovery demands**. Otherwise, the Probation Department's alleged enforcement actions must be denied and dismissed with prejudice.

Plaintiff was incarcerated from June 15 to July 2, 2016 and then again from May 22 to April 12, 2017 **which is now considered punitive incarceration and disallowed by law**. Plaintiff was imprisoned for civil debt in violation of the New Jersey Constitution, Article I, Paragraph 13 prohibiting Imprisonment for Debt in ANY action. Furthermore, since Plaintiff has given up all of his assets and property, as per the Court's orders, and has no income as a result of the two-week imprisonment for debt causing him to have his nine (9) financial services and insurance licenses revoked, the imprisonment was the relief for the debt and can never be incarcerated for the same debt again.

N.J.S.A. 2A:20-1:
**2A:20-1. Debtors in actual confinement**
2A:20-1. Any person, in actual confinement for debt or damages in any jail of this State, who is willing to deliver up to his creditor or creditors all his estate, both real and personal, toward their payment, may bring an action, in a summary manner, for his discharge under

5

this chapter, in the Superior Court.
N.J.S.A. 2A:20-2:

**2A:20-2. Persons arrested; discharge; requirements**
2A:20-2. Any person arrested or held in custody by any officer in any civil action upon *mesne process* or process of execution, or who is surrendered in discharge of his bail, shall be discharged from arrest or custody by the officer upon compliance with the following requirements:

a. He shall make out and deliver to the officer making the arrest, or in whose custody he may be, a true and perfect inventory, under oath or affirmation, of all of his personal property and real estate, or any interest therein.
N.J.S.A. 2A:20-10:

**2A:20-10. Discharge as immunity from imprisonment**
Every insolvent debtor, who has given up all his estate and conformed in all things to the directions of this subtitle, shall, so far as regards the imprisonment of his person, forever thereafter be discharged from all debts due at the time of the assignment, or contracted for before that time, though payable afterwards.
Pursuant to N.J.S.A. 2A:17-77(a):

**2A:17-77. Against whom writ not to issue**
No capias ad satisfaciendum shall issue in a civil action or an action for a penalty to take the body of:

a. A female.

Based on this statute alone (N.J.S.A. 2A:17-77(a)), being a male litigant, I am being discriminated against on basis of gender by the very statute above. Since child support warrants are "bench warrants", they are in reality a capias ad satisfaciendum. In addition, the writ of capias ad satisfaciendum (ca.sa.) is unconstitutional because *N.J.S.A.* 2A:17-77 prohibits courts from issuing the writ against women. Thus, the statute contains a gender classification that has not been upheld by any court in the modern era, and which would almost certainly be invalidated. The U.S. Supreme Court has long held that statutes which treat the sexes differently "must serve important governmental objectives and must be substantially related to achievement of those objectives." *Craig v. Boren*, 429 *U.S.* 190, 198-99 (1976). Gender classifications, whether invidious or benign, are subject to intermediate level scrutiny, which means they must serve important governmental objectives and that the gender classification must be substantially related to the achievement of those objectives. *U.S. v. Virginia*, 518 *U.S.* 515 (1996); *Miss. Univ. for Women v. Hogan*, 458 *U.S.* 718 (1982). More particularly, there must be an "exceedingly persuasive" justification for such a classification. *U.S. v. Virigina*, 518 *U.S.* at 531.

If the purpose of ca. sa. is to permit litigants to recover money owed after judgments entered in their favor, it is difficult to argue that precluding the issuance of the writ against women is substantially related to that purpose. A similar New Jersey statute prohibiting "the arrest or imprisonment of women by virtue of any *mesne process* or process of execution *in any civil action*" was repealed by the legislature in 1993. *See N.J.S.A.* 2A:15-40 (repealed).

6

The immunity of women from incarceration is clearly based on outmoded stereotypes and originated in an era in which there were substantial gender inequalities. In the criminal context, women are subject to incarceration on the same terms as men. It is hard to envision a justification for subjecting men to incarceration, but not women.

The correct appellation of the term **bench warrant** is a capias.  J. VARON, SEARCHES, SEIZURES & IMMUNITIES, Ch.4, §1  (2d ed. 1974).  **Bench warrants** can only issue on probable cause. *Benson v. Henkel*, 198 U.S. 1, 16; *Price v. Henkel*, 216 U.S. 488; *Hughes v. Gault*, 271 U.S. 142.

According to *Perlmutter v. DeRowe*, 274 A.2d 283, 58 N.J. 5, 17 (1971), the New Jersey Supreme Court held:

> "Civil arrest under capias is substantially analogous to arrest under a criminal complaint and a defendant should have all the same procedural rights and protections as if he were arrested on a criminal charge for the same fraud upon which the civil action and the capias are based...By analogy, the procedure on ca. re. should hereafter be as follows:  Upon arrest, after issuance of the writ on ex parte affidavits, defendant is to be brought immediately before the judge who issued the writ, or some other judge named therein, who will advise him of his rights to be released on bond and to bring on a motion on short notice under R. 4:51-3 to attack the basis for the issuance of the writ...."

The writ essentially acts like a contempt-like device who has the means to pay but refuses to do so.  The debtor is arrested on the writ until he pays, if he has the ability to pay,  or is discharged as insolvent.  However, the writ has been curtailed by the New Jersey Constitutional Prohibition against Imprisonment for Debt, Article I, Paragraph 13.

The New Jersey Appellate Division in *Marshall v. Matthei*, 744 A.2d 209, 327 N.J. Super. 512, 526 (App.Div. 2000) stated:

> "Our review of the relevant case law has revealed a dearth of precedent concerning the standards governing implementation of ca. sa. writs.  The standards for proceedings in relief of litigant's rights under R. 1:10-3, however, are plain.  They, too, have contempt-like roots. We discern no reason why the same standards as have developed to govern civil contempts and proceedings in relief of litigants' rights should not apply, as appropriate, to ca. sa. commitments."

A **bench warrant** is for all intents and purposes a capias.  A **bench warrant** is a body execution to bring a person before a court to answer charges criminally.  A capias ad satifaciendum is involved in civil matters, but limited by the Constitutional prohibition against Imprisonment for Debt in ANY action. See, *Marshall v. Matthei*, 327 N.J. Super. 512, 525-26 (App.Div. 2000).  A capias ad satisfaciendum is an at law action used to collect a debt.  A **bench warrant** issued by the Family Court to arrest someone for owing child support is the same. However, they all must comport with all elements of criminal due process, otherwise they are unconstitutional on their face and in their application.

Plaintiff therefore cannot be imprisoned for debt any longer, otherwise it would constitute DOUBLE JEOPARDY and GENDER DISCRIMINATION  in violation of the Fifth and Fourteenth Amendment (Equal Protection)  Amendments of the United States Constitution and Article I, Paragraph 11 and Paragraph 5 of the New Jersey Constitution, respectively.

Unless you can identify your findings in law as required by NJ court rules and Judicial Canons, **you must rescind all such orders as being VOID 'ab initio'** or I will be forced to appeal same and seek dismissal of same. These orders constitute extortion without any authority in law and are being reported for prosecution to proper authorities.

As you should be aware that all judicial officers must comply with the Judicial canons to retain their 11th amendment judicial immunity; in light of that it is imperative that you **immediately vacate the erroneous order and provide immediate confirmation of same.**

In the alternative **STAY of November 28, 2017 orders pending appeal pursuant NJ. R 2:9-5.**

Very truly yours,

Zia Shaikh
Pro se Plaintiff

**Enclosure**:  Notice to dismiss sent to  Hon. John Doron J.S.C.

cc:     (Sent via USPS mail)

Chief Justice Stuart Rabner Supreme court
Defendant Laura Germadnig
Ocean county Prosecutors office
Office of the US DOJ William E. Fitzpatrick acting USA

FILED

OCT 2 2 2019

CHAMBERS OF JUDGE HAND
SUPERIOR COURT
OCEAN COUNTY

**EXHIBIT**

7

**PREPARED BY THE COURT**

| | | |
|---|---|---|
| ZIA SHAKH, | : | **SUPERIOR COURT OF NEW JERSEY** |
| Plaintiff, | : | **CHANCERY DIVISION/FAMILY PART** |
| | : | **OCEAN COUNTY** |
| v. | : | |
| | : | **DOCKET NO. FM-15-500-14** |
| LAURA L. GERMADNIG, | : | **CIVIL ACTION** |
| | : | |
| Defendant. | : | **POST-JUDGEMENT ORDER** |
| | : | |

**THIS MATTER** comes before the Court with the Plaintiff being self- represented and the Defendant being self-represented.

By way of background, the parties were married on March 5, 1999 and divorced pursuant to a Final Judgment of Divorce (FJOD) on December 20, 2016 following the oral decision of the Honorable Marlene Lynch Ford, A.J.S.C. on December 20, 2016 after a trial of the within matter. The FJOD was subsequently amended on January 26, 2017.

There has been significant pre-judgment and post-judgment litigation in the within matter, both at the trial level as well as in the Appellate Division. On May 7, 2019, the Final Judgment of Divorce incorporating the decision of the trial judge was affirmed by the Appellate Division under the Appellate Division Docket No. A-2418-16T1. A second appeal by the Plaintiff under Appellate Division Docket No. A-003068-18 was dismissed on October 11, 2019 for failure to file a timely brief. Plaintiff asserts that there is a New Jersey Supreme Court appeal pending under Docket No. 082984. This Court has confirmed that this docket number does exist. However, the Plaintiff has not paid his filing fee and the matter at present is non-conforming. No Stays have been granted. As such, this Court is satisfied that it retains jurisdiction to address issues of enforcement with regard to the payment of family support obligations.

On July 30, 2019 Defendant filed a Notice of Motion seeking the following reliefs: (1) Amend the most recent court order to include imprisonment of the Plaintiff regarding his consistent perjury to the court; (2) Amend the most recent order of the Court to include imprisonment for Plaintiff regarding his crossing of state lines, while willfully not paying child or spousal support in excess g $10,000.00 for a period exceeding two (2) years; (3) Enforce the various orders granted to the Defendant m regarding the Plaintiff's harassment of said Defendant, as well as any friend or family member who has helped her and her three (3) children obtain basic necessities; (4) Enforce the Plaintiff's Child support court ordered obligation and reinstate the support for Defendant's daughter, M.L.S., as it was revoked due to the fact that she turned 19; (5) Enforce the consistent demand for the Plaintiff's physical residential address and sanction him $100.00 per day that it is not provided; (6) Enforce the consistent demand for NJ tax returns dating back but not limited to the years of 2013 through 2017, including personal as well as those of America's Retirement Planners NJ , Progressive Equity Partners NJ, Texas and elsewhere, Sabur Private Wealth Management, Texas and elsewhere as well as any other entities that the Cot has not yet been informed of. The Plaintiff should be sanctioned $100.00 per day for each day that this information is not provided; (7) Subpoena Plaintiff's current and former bank accounts , pay stubs, telephone records and all assets found under Trusts; (8) Subpoena proof of Plaintiff's claim of having received SSI/Disability benefits, for which he claims is the proof that he is indigent and therefore , receives waivers; (9) Enforce the Final Judgment of Divorce issued on December 20, 2016 , including the arrears to date; (10) Enforce the existing bench warrant; (11) disregard all filings by the Plaintiff that do not prove service by certified mail and regulars mail.

On August 21, 2019, the Plaintiff filed a Request to Cancel the Motion Hearing due to the fact that the New Jersey Supreme Court was hearing the same issues. The Plaintiff provided only a docket number with no supporting documentation.  On August 22, 2019, the Plaintiff filed a second request to cancel the pending motion and also asserted in additional fifteen (15) pages of drop cites and case law blurbs and constitutional and religious commentary that the Court lacks jurisdiction over the Plaintiff and that the bench warrant presently active for Plaintiff's willful failure to pay his court-ordered support obligations is null and void pursuant to federal law. On August 26, 2019, the Plaintiff then filed a Reply Certification in opposition to the motion. In this Certification, Plaintiff alleges that the motion is frivolous, false, etc. Plaintiff also alleges that at some earlier time, he was imprisoned in the "Ocean County Debtor's Prison" on an earlier bench warrant. The Plaintiff writes that all reliefs sought by Defendant have already been addressed. Plaintiff then repeats all of the information previously provided with regard to the court's lack of jurisdiction.

The Defendant requested to be heard via telephone. The Plaintiff affirmatively indicated that he was not requesting oral argument.

The Court having considered the documents filed, and having heard the argument of the Defendant and for good cause shown;

**It is** on this 22nd day of October 2019 **ORDERED:**

1. **Amend the most recent order by the Court to include imprisonment for consistent perjury to the Court, in violation of federal law and punishable by 5 years.**  This request is **DENIED.**  The Court advised the Defendant on the record

that this was state court family division and that criminal issues are not appropriately here.

2. **Amend the most recent Court Order by the Court to include imprisonment of the Plaintiff as he crossed state lines, while willfully not paying child or spousal support in excess of $10,000.00 for over two (2) years, which is a federal offense.** This request is **DENIED.** The Court advised the Defendant during oral argument that there is an active bench warrant for the Defendant's arrest for failure to pay support.

3. **Enforce the various Orders granted to the Defendant regarding the Plaintiff's harassment of said Defendant as well as any friend or family member who has helped her and her three children obtain the basic necessities.** Defendant advised that there is a Temporary Restraining Order in effect which has not yet been served upon the Plaintiff. This request is **GRANTED** and the authorities should make every effort to serve the Plaintiff with a copy of the Temporary Restraining Order. The Defendant provided a possible supplemental address for the Plaintiff which is **950 East State Highway 114, Suite 160, South Lake, Texas 96042.** This address was listed on the licensing histories for the various financial licenses the Plaintiff holds, as well the website he maintains online with regard to "bubble wrapping your assets to protect them from family support obligations" or words to that effect. A copy of the within Order shall be served upon the Sheriff's Department, Warrant Division, with respect to the active bench warrant and the Domestic Violence Office to determine if such Order can be administratively forwarded to the authorities in Texas.

4. **Enforce the child support obligation and reinstate the support for M.L.S as it was terminated upon her 19th birthday.** Defendant advises that MLS will be

attending college full-time at Brookdale Community College. However, at present, she is not living with the Defendant. Defendant advises that she is locating a new residence. Once that residence is in place, the child, M.L.S, will be returning to the home. The Plaintiff was advised that if the child was attending college full-time and commuting, she can re-apply for a reinstatement of the child support obligation. Defendant was further advised that she would have to supply documentation in this regard to include proof of residence and proof of full-time attendance at college.

5. **Enforce the consistent demand for Plaintiff's residential address and sanction him $100.00 per day that it is not provided.** This request is **GRANTED in part.** The Court will Order that Plaintiff shall provide his current residential address to the Court and to the Ocean County Probation Department within five (5) days of the date of the within Order. The Court declines to address the issue of sanctions at this time.

6. **Enforce the consistent demand for tax returns of the Plaintiff and all entities he is involved with.** This request is **DENIED without prejudice.** There has been no showing made as to why these are relevant at this time. The Court will reconsider same if they are relevant to any provisions of the Amended Final Judgment of Divorce which are presently unenforced.

7. **Subpoena Plaintiff's current and former bank accounts, pay stubs, telephone records and all assets under trusts.** This request is **DENIED without prejudice. The Court finds that there has been no showing of a need for such items at this time and the Court is not an investigative body for the Defendant.**

8. **Subpoena proof of Plaintiffs claim of having received Disability benefits for which he claims as proof that he is indigent and therefore receives waivers.** This is **DENIED without prejudice. See, Paragraph 7.**

9. **Enforce the final Judgement of Divorce issued December 20, 2016, including the arrears to date. This request is GRANTED.** The controlling Order of the Amended Final Judgement of Divorce dared January 26, 2017. All obligations contained therein are **ENFORCED.** There remains an active bench warrant for the Plaintiff's arrest for failure to comply with his court-ordered support obligations. As indicated previously, Defendant provided the Court with a new potential address in the State of Texas. The Court shall provide this address to the Ocean County Sheriff's Department and shall also request that the Sheriff's Department consider extending the parameters of the search warrant jurisdiction to include the State of Texas.

10. **Enforce the bench warrant.** This request is **GRANTED.** The bench warrant remain active.

11. **Disregard all filings of the Plaintiff that do not provide service to the Defendant by certified mail one tracking number via regular mail.** This request is **DENIED without prejudice.** The Court believes that the Defendant is aware of the filings of the Plaintiff as she filed a response to his Reply Certification on the eve of the motion.

**In addition, there has been a document circulated by the Plaintiff which the Defendant has provided to the Court. The document appears under the name "We the People" Court Services. This purports to be a Jury Verdict-Sworn Affidavit with respect to**

6

FM-15-500-14 W which is the matrimonial docket number.   The document purports to

indicate that a jury trial was conducted with regard to the termination of the parental

rights of the Plaintiff.  This document is counterfeit and is not recognized by this Court.

No such proceedings were ever commenced. There is no venue listed in such.  This

document was created on a computer and appeared to be something that one can purchase

online.  This document is to be given no force and effect and the State of New Jersey retains

jurisdiction as the home state for all matters relating to child custody on this matter.

Deborah Hanlon-Schron, J.S.C.



EXHIBIT

tabbies®

8

**Zia Shaikh**
**4400 Route 9, Suite 1000**
**Freehold, NJ 07728**
**732-766-5466**

October 30, 2019

Sent **VIA Fax (732)435-8412**
Judge Deborah H. Schron
Superior Court of New Jersey
125 Washington St.
Toms River, NJ 08753

**Sent VIA USPS mail**
Judge Marlene Lynch Ford
Superior Court of New Jersey
118 Washington St.
Toms River, NJ 08754

**Sent VIA USPS mail**
Chief Justice Stuart Rabner
**Supreme court of New Jersey**
R.J. Hughes Justice Complex
P.O. Box 970
Trenton, NJ 08625

**VIA FAX to (609) 292-3508 / USPS mail**
**Office of the Attorney General**
**John J. Hoffman**
Hughes Justice Complex
P.O. Box 080
Trenton, NJ 08625-0081

**Sent VIA USPS mail**
AOC Director, Judge Glenn Grant, J.A.D.
**Candace Moody,** Esq.Exe Dir /Chief
**Maureen Bauman,** Disciplinary Counsel
Administrative Office of the Courts
Hughes Justice Complex
P.O. Box 037
Trenton, NJ 08625

**Sent VIA USPS mail and email c/o**
**Monica.Rodriguez@NJcourts.gov**
Kyle Francis, Esq.
AOC Investigator, Judiciary EEO/AA Unit
Richard J. Hughes Justice Complex
PO Box 037
25 Market Street, 3rd Floor North
Trenton, NJ 08625

Re:    Zia H. Shaikh v. Laura L. Germadnig
       **Dkt # FM-15-500-14W**
       **Supreme court Dkt # 082984**

### PLAINTIFF'S RESPONSES TO OCT 22,2019 ORDER

Dear Judge Schron,

    I have received your October 22, 2019 order and respond to each paragraph GRANTING relief to the Defendant as follows:

    **Pp3**.   As this court have been repeatedly made aware of its lack of Inpersonam and Subject matter jurisdiction upon me; pursuant UNIFORM INTERSTATE FAMILY SUPPORT ACT Section 201(2), **BUT you refuse to respond to this legal challenge**.

NO ENFORCEMENT of any "support orders" is legal upon my person as provided by law.

I am NOT aware of the Texas address that was provided by the Defendant, the ONLY address and residence I maintain is listed above.

**Pp5.**    This Pla' is located at the above listed address and does not maintain any other residential address.

**Pp9**. As stated in pp3, according to Federal and State law, no support order is obligatory on me, as such all previous imprisonments were illegal and in violation of my constitutional rights to Life, Liberty and Property. A federal law suit is being drafted seeking damages against all actors under color of law, including the defendant to be served upon you.

No arrest can be made on a civil issue; as codified under <u>N.J.S.A</u>. 40A:14-152, which expressly forbids police officers from arresting people in civil causes:

*"...police officers shall have the power to serve and execute process issuing out of the courts having local criminal jurisdiction in the municipality and shall have the powers of a constable in all matters **other than in civil causes arising in such courts**".*

Law enforcement officers are only empowered to act for the arrest, detection, investigation, conviction, detention or rehabilitation of persons **violating the *criminal* laws of the State**. Pursuant to <u>N.J.S.A</u>. 40A:14-152.2, it states:

*"As used in this section, "law enforcement officer" means any person who is employed as a permanent full-time member of any State, county or municipal law enforcement agency, department, or division of those governments who is statutorily empowered to act for the detection, investigation, arrest, conviction, detention, or rehabilitation of persons violating the criminal laws of this State and statutorily required to successfully complete a training course approved by, or certified as being substantially equivalent to such an approved course, by the Police Training Commission pursuant to P.L.1961, c. 56 (C.52:17B-66 et seq.).*

*"Law enforcement agency" means any public agency, other than the Department of Law and Public Safety, any police force, department or division within the State of New Jersey, or any county or municipality thereof, which is empowered by statute to act for the detection, investigation, arrest, conviction, detention, or rehabilitation of persons violating the **criminal <u>laws</u>** of this State."*

**"Stevens charges that Hanson violated his Fourth Amendment right against unreasonable seizures by arresting him in connection with a civil dispute. *Stevens v. Rose*, 298 F.3d 880,**

**883 (9th Cir. 2002).**

*We start with the basic proposition that a full-scale arrest must be supported by probable cause. Atwater v. City of Lago Vista, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001); Morgan v. Woessner, 997 F.2d 1244, 1252 (9th Cir.1993) (citing Adams v. Williams, 407 U.S. 143, 148-49, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)).*

*In turn, we have previously held that "[b]y its definition, probable cause can only exist in relation to criminal conduct. It follows that civil disputes cannot give rise to probable cause." Allen v. City of Portland, 73 F.3d 232, 237 (9th Cir.1995). This rather unremarkable proposition — namely that good intentions do not overcome the rule that civil disputes do not give officers probable cause to arrest — is supported by other circuits as well. See e.g., Wooley v. City of Baton Rouge, 211 F.3d 913, 925-27 (5th Cir.2000) (holding that seizure of child violated clearly established Fourth Amendment right where there was no probable cause and child was not in imminent danger of harm); Peterson v. City of Plymouth, 60 F.3d 469, 476-77 (8th Cir.1995) (holding that the arrest was clearly established to be unlawful where officer knew the dispute was a civil, not a criminal, matter); Moore v. Marketplace Rest., 754 F.2d 1336, 1345-47 (7th Cir.1985) (stating that there would be no probable cause to arrest for breach of contract dispute involving payment for food services)."*

**"Indeed, the Peterson case closely parallels the circumstances here. The Eighth Circuit upheld judgment as a matter of law in favor of Peterson who was arrested in connection with a dispute over the ownership of a snowblower. The court noted: "Knowledge of Peterson's reasonable and actual claim of right put [the officer] on notice that the dispute was a civil matter not involving criminal intent." 60 F.3d at 477."**

**Pp10.** The illegal Bench warrant for "enforcement" is VOID in its entirety based on law of the land.

Ocean county probation department  initiated enforcement hearing unconstitutionally threatened Plaintiff with further imprisonment for civil child support debt in violation of Title I8 U.S.C. §1581 and 18 U.S.C. §1589 and remains under threat, duress, and coercion.

Plaintiff compels this court to cite a NJ rule, statute or a Federal statute to support it's reasoning for refusal to address jurisdiction and denial. *Child support has been ruled to be a commercial debt by all Federal Courts of Appeals in Title 18 U.S.C. §228 enforcement* cases.

Imprisonment constitutes a criminal feature of a court order, the criminal feature takes precedence over all else, requiring criminal due process--which Plaintiff never got. Plaintiff hereby **demands discovery from the Probation Department due to being  threatened with contempt and loss of liberties and property.  The court rules and the NJ constitution provides**

**a RIGHT to Due Process in the form of discovery demands**.

Comment on the last paragraph.

**RESPECTFULLY Judge**, I am not sure about your "knowledge of the law" but a quick Google search will teach you that -- The JURY VERDICT is an INVIOLATE NJ and USA constitutionally available remedy to correct VOID judgements. I was deeply disappointed to read your claim "*This document is counterfeit and is not recognized by this court*" although you made the claim BUT you offer no PROOF. This Jury Verdict and all NJ procedures were followed by "We the People Court services" to seek their rebuttal as prescribed in the law, but NEITHER Judge Marlene L. Ford or the Defendant chose to respond. A Jury Verdict DOES NOT require APPROVAL from any Court as it is SUPERIOR to any judicial act – please do all of us a FAVOR and dust off your law books or hire an attorney to explain the law to YOU!

Copy of complete Jury verdict is attached with Judicial notice to you now.

**As a first generation immigrant; I hold the laws of our state and our great nation in very high regard. The law is "too important" as the single greatest achievement of mankind to maintain an orderly society and it cannot be allowed to be manipulated for the satisfaction of select few in the legal profession, no matter who they maybe or their standing within the legal community.**

If I may assist in any manner please contact me anytime at 732-766-5466.

Sincerely;

Zia Shaikh
Loving father!
Pro Se Plaintiff/Appellant

**Enclosure: Complete Jury verdict order and Judicial Notice**

**cc:** Supreme court clerk Mary Neary via FAX

Def. Laura L. Germadnig via USPS mail

EXHIBIT

9

**We the People** Court Services

https://www.wtpcs.org
September 6, 2019

Liberty and Justice for All

Right to a Jury being applied to this case per NJ Const Art 1 Sect 9 "inviolate".

## Jury Verdict – Sworn Affidavit

Case Number: FM15-500-14W
Superior Court of New Jersey – Ocean County Family Division
Review of Custody Orders – Restriction and Violation of Parental Rights
Judge: Marlene Ford
Ref Documents For and Against Termination of Parental Rights dated August 13, 2019
Documents meet the confidentiality requirements of 42 U.S.C. § 5106a

¶1  This Court has been duly noticed of Defendant's Right to have a Jury decide this case. The Judge declined to furnish a jury leaving that responsibility to Defendant per Notice to Judges Paragraph 1.3. In conformance with Due Process, the above mentioned documents have been presented to a Jury and their **unanimous verdict** is as follows:

¶2  **Jury Verdict:** The State has not met the standard of Clear and Convincing evidence that the Father ever was so dangerous to his children such that the State was or is now compelled to restrict the Parental Rights of either Parent. **Wherefore: All orders resulting in restriction of Parental Rights of Father in this case are now and have been void and unenforceable.** The court has discretion to utilize its own Jury at any time. The Right to a Jury Remains INVIOLATE regardless of the results of the Court's Discretion.

¶3  This Court now has the discretion to choose any of the options in Section 4 Page 2 of the attached Notice to Judges. 4.2 Revise custody orders, conforming to the Jury verdict. 4.3 Convene the court's own jury. 4.4 Deal with defiance of the Constitution as noted.

¶4  7th Amendment – "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States". No-place does it say "a judicial order may not be re-examined by a Jury". Only the word "Inviolate" controls in this matter.

I swear and affirm under penalty of Perjury that
the contents stated herein are true and complete.

/s/ Martin Lynch – Manager We the People Court Services

Notary

©WTPCS Rules for Juries in Civil Courts after the Bench Trial are protected intellectual property.

NATALIE REYES, NOTARY PUBLIC
COMM. NO. 568233
COMM. EXP. 04-21-2023
MARICOPA CO. AZ

𝔚𝔢 𝔱𝔥𝔢 𝔓𝔢𝔬𝔭𝔩𝔢 Court Services



https://www.wtpcs.org
August 3, 2019

Liberty and Justice for All

## Notice to Judges NJ - Limited Supplemental Jury Process in all State <u>Civil</u>, <u>Family</u>, <u>Juvenile</u>, <u>Guardianship</u> and <u>Probate</u> Courts - <u>Self Effectuating</u>

Absolute Power corrupts absolutely. So the Founders created a system of checks and balances. Did the Founders forget about Judges? Where is the limit of the power of any Judge to 1) Take your Children 2) Take all your money 3) Throw you in jail? Here it is.

¶1      Command Authorities:

1.1 NJ Constitution Art 1, Sect 9, <u>Right to a Jury is *Inviolate*</u>. (All States use "inviolate".)

1.2 US Constitution 7th Amendment, Right to a Jury is *Preserved*, shall not be reexamined.

1.3 US Constitution 10th Amendment, where Govt has discretion, rights become <u>self-effectuating</u>.

¶2      Supporting Authorities:

2.1 <u>State Statutes</u>, NJS 2B:23-1(b) 6 Jurors. No law prohibits juries in these courts.

2.2 Federal and State <u>Rules of Civil Procedure</u>, 38 and 39, affirm Jury Rights are *inviolate*.

2.3 <u>Family</u>, <u>Juvenile</u>, and <u>Probate</u> <u>Rules of Procedure</u> contain no prohibitions to a Jury.

2.4 <u>Federalist 83</u>, Juries are the check on the power of Civil Courts meant to <u>prevent corruption</u>.

2.5 <u>Case Law</u>, Minneapolis & St. Louis R. Co. v Bombolis, 241 U.S. 211 (1916); United Gas Public Service Co. v. Texas, 303 U.S. 123 (1938) affirm the Courts discretion to furnish a Jury. There is no prohibition of Juries in Civil Courts. <u>Any notions of prohibition</u>, are *false*.

¶3      Jurisdiction: A) The Courts and then B) the People (WTPCS.org) (10th Amendment)

<u>The People prefer a Bench Trial</u>. It is efficient and Justice is usually rendered without intervention.

3.1 <u>Unjust infringement on Parental or Familial Rights</u>. <u>Presumption of shared parenting</u>.

3.2 <u>Unjust taking of property</u> or money by Judicial order.

3.3 <u>Unjust or excessive incarceration</u>, <u>excessive bail</u>, or detention.

3.4 <u>Gag Orders</u> – The Purpose of the 1st Amendment is to criticize the Government.

For <u>any of the above lingering matters</u>, a Litigant should petition the Court to schedule a hearing where the People exert their just authorities over these matters via a Jury furnished by the Court.

3.5 <u>At the Courts discretion</u>, the People via <u>WTPCS may furnish their own Juries</u> in a scheduled Court hearing <u>or otherwise</u> per Rules established by the People to best preserve due process.

1
2  Zia Shaikh
   4400 Route 9 #1000
3  Freehold NJ 07728
   732-766-5466
   zia@myarpp.com

4             SUPERIOR COURT OF NEW JERSEY
5             OCEAN COUNTY – FAMILY DIVISION

6  PLAINTIFF,                          | Case No.: FM15-500-14W

7        Zia Shaikh - Father           | Notice to Revise Custody Orders
8                                       | per Jury Verdict or Conduct the
          vs.                          | Courts Own Jury Hearing
9  RESPONDENT,
                                        | Honorable Judge Marlene Ford A.J.S.C
10       Laura Germadnig - Mother

11

12
13         Plaintiff respectfully requests that this Court <u>revise custody orders in conformance</u>

14  <u>with the Jury Verdict</u>, or <u>convene its own hearing with its own Jury</u>.  Everyone agrees that this

15  court may furnish a Jury, but is not required to do so. We also agree that the right to a Jury is

16  "inviolate" and the court has no lawful discretion to completely deny or prohibit any and all

17  Juries. A flagrant "VIOLATION" of any Right which is "INVIOLATE" would obviously be

18  contrary to the Supremacy Clause (Art 6, § 2) and the Oath (Art 6, § 3). Under such

19  circumstances a Judge would have plainly forfeited their Judicial Powers and would no longer be

20  a Judge which would require actions per "Notice to Judges" § 4.4.

21

22

23

24

25         September 6, 2019        _____

26                                  /s/ Zia Shaikh – Father

27  Copies to: Clerk, Judge, Mother, Chief Justice

28  MOTION TO IMPLEMENT AND RECOGNIZE ONE JURY OR ANOTHER - 1 OF 1

3.6 WTPCS has discretion to provide or not provide a Jury based on the merits of the case. Judges are encouraged to apply <u>findings of fact and conclusions of law</u> to Judicial Orders so that Juries are more likely to affirm their orders.

¶4    <u>Limits on the Power of a Jury</u>: Court hearings conducted with a Jury are subject to normal Court Rules. Jury verdicts rendered outside of a Court hearing may <u>only</u> either <u>affirm the Judicial Order</u> or <u>Strike down a Judicial Order and provide advice to the Court</u>. The verdict may be filed into the case. This supplemental jury panel may not change the order or otherwise make law.

4.1 <u>The Judge may do nothing</u> *if the order was affirmed*, or nothing was filed into the case.

4.2 <u>Schedule a hearing with a Jury</u> whose verdict would then be superior.

4.3 <u>Revise the order</u> to the satisfaction of the parties or in keeping with guidance from the Jury.

4.4 <u>Defy a Jury Verdict</u> which is the just and guaranteed <u>authority of the People to govern themselves,</u> creating a breach of the Supremacy Clause and the Oath per Art 6 Clauses 2 & 3. No judge is required to be a judge and may resign at any time. This would necessitate <u>notifying the Governor</u> of a vacancy and seeking a replacement be appointed. <u>Notification of POTUS</u> to avoid a Federal appointment since the Judge has resigned and is no longer authorized to exercise Judicial Powers <u>Law enforcement (the Sheriff) may not enforce orders</u> issued by a former judge or anyone else who is not a judge. <u>The new status of the judge shall be made public</u> so the People may avoid being subjected to a judge who openly defies their oath and the Constitution. <u>These remedies shall become effective on the date indicated in the Notice.</u> We prefer 4.2 or 4.3, we prefer to do nothing.

¶5    This process is designed to enhance the confidence of the People in their Judiciary with minimal cost and intervention. Most Judges are competent and just, and their <u>docket is expected to decrease</u> as cases settle more readily as opportunities for corruption are reduced. <u>This has been our experience</u>. Over time a small number of Judges may end up finding something else to do.

Thank-you for your service to the People in your official capacity as a Judicial Officer.

Sincerely,
/s/Martin Lynch
General Manager – We the People Court Services - Phoenix Office

© This Process for Implementation of Juries after the Bench Trial and associated documents is the product of years of study, development, and testing. It is the intellectual property of We the People Court Services LLC.



# New Jersey Courts
Independence • Integrity • Fairness • Quality Service

SUPERIOR COU[  ]
OCEAN VICINA[  ]

EXHIBIT

_10_

Kenneth W. Kerwin
Trial Court Administrator

Stephanie Hudson, Civil Division Manager
James Castaneda, Civil Assistant Division Manager

www.njcourts.com • phone: 732-929-2042

February 14, 2019

Re: Application for Indigency

**BANK OF NEW YORK MEL VS SHAIKH ZIA  F-020634-16**

Dear Zia Shaikh:

Your application for indigent status with regard to the above captioned complaint has been reviewed.  It has been determined that you do not qualify for indigent status on this specific complaint, and your application has been denied. Enclosed is a copy of the document denying your application. You must submit the correct fee and documents to proceed, within 15 days of the above date.

Very truly yours,

Eli Vazquez
Court Services Supervisor II

120 Hooper Avenue, Room 240, P.O. Box 2191, Toms River, NJ  08754

PREPARED BY THE COURT

| | | |
|---|---|---|
| The Bank of New York et al | : | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | : | CHANCERY DIVISION |
| v. | : | OCEAN COUNTY |
| | : | DOCKET # F -020634-16 |
| Zia Shaikh | : | **ORDER TO VACATE ORDER** |
| Defendant (s) | | |

IT IS on this 14 of February 2019, **ORDERED** that the Order waiving filing fees dated February 14, 2019 be vacated in accordance with the Order dated December 19, 2018 issued by Judge, Marlene Ford in which a waiver of fees' request was denied in light of the applicant's lack of truthfulness as to his employment and income.



FILED

FEB 1 4 2019

CHAMBERS OF
FRANCIS R. HODGSON, JR. P.J. Ch
SUPERIOR COURT OCEAN COUNTY



Francis R. Hodgson, P.J.Ch.

120 Hooper Avenue, Room 240, P.O. Box 2191, Toms River, NJ 08754

NOTICE:  This is a public document. Do not enter personal identifying information on it, such as your full Social Security number, driver's license number, insurance policy number, vehicle plate number or active financial account or credit card number. This document as submitted will be available to the public upon request.

Name   ZIA SHAIKH
Address   4400 RT 9 SUITE 1000
          FREEHOLD, NJ 07728

Telephone Number  732-766-5466
Email Address  ZIA@MYARPP.COM

THE BANK OF NEWYORK et al
_____,

Plaintiff(s)/Appellant(s),

v.

Zia Shaikh
_____,

Defendant(s)/Respondent(s).

SUPERIOR     Court of New Jersey
Ocean ▼ County (if applicable)
Docket Number:  F-020634-16

**Order Waiving Filing Fees**

This matter having been brought before the court on application of ZIA SHAIKH
(☐ plaintiff(s)/ ☐ appellant(s)/ ■ defendant(s)/ ☐ respondent(s)) for an **Order** waiving filing fees pursuant to *Rule* 1:13-2 or *Rule* 2:7-1, and the Court having considered the moving party's financial information, the matter and for good cause appearing:

**(Do not write below this line, For Court Use Only)**

It is on this 14ᵗʰ day of Febuary , 2019, ORDERED that the application for a fee waiver is

☑ Granted   ☐ Denied

```
FILED

FEB 1 4 2019

CHAMBERS OF
FRANCIS R. HODGSON, JR. P.J. Ch
SUPERIOR COURT OCEAN COUNTY
```

FRANCIS R. HODGSON, JR. P.J. Ch

# We the People Court Services

https://www.wtpcs.org
September 6, 2019

Liberty and Justice for All

Right to a Jury being applied to this case per NJ Const Art 1 Sect 9 "inviolate".

## Jury Verdict – Sworn Affidavit

Case Number: FM15-500-14W
Superior Court of New Jersey – Ocean County Family Division
Review of Custody Orders – Restriction and Violation of Parental Rights
Judge: Marlene Ford
Ref Documents For and Against Termination of Parental Rights dated August 13, 2019
Documents meet the confidentiality requirements of 42 U.S.C. § 5106a

¶1   This Court has been duly noticed of Defendant's Right to have a Jury decide this case. The Judge declined to furnish a jury leaving that responsibility to Defendant per Notice to Judges Paragraph 1.3. In conformance with Due Process, the above mentioned documents have been presented to a Jury and their **unanimous verdict** is as follows:

¶2   **Jury Verdict:** The State has not met the standard of Clear and Convincing evidence that the Father ever was so dangerous to his children such that the State was or is now compelled to restrict the Parental Rights of either Parent. **Wherefore: All orders resulting in restriction of Parental Rights of Father in this case are now and have been void and unenforceable.** The court has discretion to utilize its own Jury at any time. The Right to a Jury Remains INVIOLATE regardless of the results of the Court's Discretion.

¶3   This Court now has the discretion to choose any of the options in Section 4 Page 2 of the attached Notice to Judges. 4.2 Revise custody orders, conforming to the Jury verdict. 4.3 Convene the court's own jury. 4.4 Deal with defiance of the Constitution as noted.

¶4   7th Amendment – "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States". No-place does it say "a judicial order may not be re-examined by a Jury". Only the word "Inviolate" controls in this matter.

I swear and affirm under penalty of Perjury that
the contents stated herein are true and complete.

/s/ Martin Lynch – Manager We the People Court Services          Notary
©WTPCS Rules for Juries in Civil Courts after the Bench Trial are protected intellectual property.

1   Zia Shaikh
4400 Route 9 #1000
2   Freehold NJ 07728
732-766-5466
3   zia@myarpp.com

4                 **SUPERIOR COURT OF NEW JERSEY**
5                 **OCEAN COUNTY – FAMILY DIVISION**

6   PLAINTIFF,                  Case No.: FM15-500-14W

7          Zia Shaikh - Father       Notice to Revise Custody Orders

8               vs.              per Jury Verdict or Conduct the
Courts Own Jury Hearing
9   RESPONDENT,

10         Laura Germadnig - Mother    Honorable Judge Marlene Ford A.J.S.C

11

12

13           Plaintiff respectfully requests that this Court <u>revise custody orders in conformance</u>

14  <u>with the Jury Verdict,</u> or <u>convene its own hearing with its own Jury</u>.  Everyone agrees that this

15  court may furnish a Jury, but is not required to do so. We also agree that the right to a Jury is

16  "inviolate" and the court has no lawful discretion to completely deny or prohibit any and all

17  Juries. A flagrant "VIOLATION" of any Right which is "INVIOLATE" would obviously be

18  contrary to the Supremacy Clause (Art 6, § 2) and the Oath (Art 6, § 3). Under such

19  circumstances a Judge would have plainly forfeited their Judicial Powers and would no longer be

20

21  a Judge which would require actions per "Notice to Judges" § 4.4.

22

23

24

25         September 6, 2019      _____

26                             /s/ Zia Shaikh – Father

27

28  Copies to: Clerk, Judge, Mother, Chief Justice

MOTION TO IMPLEMENT AND RECOGNIZE ONE JURY OR ANOTHER - 1 OF 1

# 𝔚𝔢 𝔱𝔥𝔢 𝔓𝔢𝔬𝔭𝔩𝔢 Court Services



https://www.wtpcs.org
August 3, 2019

Liberty and Justice for All

## Notice to Judges NJ - Limited Supplemental Jury Process in all State <u>Civil</u>, <u>Family</u>, <u>Juvenile</u>, <u>Guardianship</u> and <u>Probate</u> Courts - <u>Self Effectuating</u>

Absolute Power corrupts absolutely. So the Founders created a system of checks and balances. Did the Founders forget about Judges? Where is the limit of the power of any Judge to 1) Take your Children 2) Take all your money 3) Throw you in jail? Here it is.

¶1    Command Authorities:

1.1 NJ Constitution Art 1, Sect 9, <u>Right to a Jury is *Inviolate*</u>. (All States use "inviolate".)

1.2 US Constitution 7th Amendment, Right to a Jury is <u>*Preserved*</u>, shall not be reexamined.

1.3 US Constitution 10th Amendment, where Govt has discretion, rights become <u>self-effectuating</u>.

¶2    Supporting Authorities:

2.1 <u>State Statutes</u>, NJS 2B:23-1(b) 6 Jurors. No law prohibits juries in these courts.

2.2 Federal and State <u>Rules of Civil Procedure</u>, 38 and 39, affirm Jury Rights are *inviolate*.

2.3 <u>Family</u>, <u>Juvenile</u>, and <u>Probate</u> <u>Rules of Procedure</u> contain no prohibitions to a Jury.

2.4 <u>Federalist 83</u>, Juries are the check on the power of Civil Courts meant to <u>prevent corruption</u>.

2.5 <u>Case Law</u>, Minneapolis & St. Louis R. Co. v Bombolis, 241 U.S. 211 (1916); United Gas Public Service Co. v. Texas, 303 U.S. 123 (1938) affirm the Courts discretion to furnish a Jury. There is no prohibition of Juries in Civil Courts. <u>Any notions of prohibition</u>, are *false*.

¶3    Jurisdiction: A) The Courts and then B) the People (WTPCS.org) (10th Amendment)

<u>The People prefer a Bench Trial</u>. It is efficient and Justice is usually rendered without intervention.

3.1 <u>Unjust infringement on Parental or Familial Rights</u>. <u>Presumption of shared parenting</u>.

3.2 <u>Unjust taking of property</u> or money by Judicial order.

3.3 <u>Unjust or excessive incarceration</u>, <u>excessive bail</u>, or detention.

3.4 <u>Gag Orders</u> – The Purpose of the 1st Amendment is to criticize the Government.

For <u>any of the above lingering matters</u>, a Litigant should petition the Court to schedule a hearing where the People exert their just authorities over these matters via a Jury furnished by the Court.

3.5 <u>At the Courts discretion</u>, the People via <u>WTPCS may furnish their own Juries</u> in a scheduled Court hearing <u>or otherwise</u> per Rules established by the People to best preserve due process.

3.6 WTPCS has discretion to provide or not provide a Jury based on the merits of the case. Judges are encouraged to apply findings of fact and conclusions of law to Judicial Orders so that Juries are more likely to affirm their orders.

¶4    Limits on the Power of a Jury: Court hearings conducted with a Jury are subject to normal Court Rules. Jury verdicts rendered outside of a Court hearing may only either affirm the Judicial Order or Strike down a Judicial Order and provide advice to the Court. The verdict may be filed into the case. This supplemental jury panel may not change the order or otherwise make law.

4.1 The Judge may do nothing if the order was affirmed, or nothing was filed into the case.

4.2 Schedule a hearing with a Jury whose verdict would then be superior.

4.3 Revise the order to the satisfaction of the parties or in keeping with guidance from the Jury.

4.4 Defy a Jury Verdict which is the just and guaranteed authority of the People to govern themselves, creating a breach of the Supremacy Clause and the Oath per Art 6 Clauses 2 & 3. No judge is required to be a judge and may resign at any time. This would necessitate notifying the Governor of a vacancy and seeking a replacement be appointed. Notification of POTUS to avoid a Federal appointment since the Judge has resigned and is no longer authorized to exercise Judicial Powers Law enforcement (the Sheriff) may not enforce orders issued by a former judge or anyone else who is not a judge. The new status of the judge shall be made public so the People may avoid being subjected to a judge who openly defies their oath and the Constitution. These remedies shall become effective on the date indicated in the Notice. We prefer 4.2 or 4.3, we prefer to do nothing.

¶5    This process is designed to enhance the confidence of the People in their Judiciary with minimal cost and intervention. Most Judges are competent and just, and their docket is expected to decrease as cases settle more readily as opportunities for corruption are reduced. This has been our experience. Over time a small number of Judges may end up finding something else to do.

Thank-you for your service to the People in your official capacity as a Judicial Officer.

Sincerely,
/s/Martin Lynch
General Manager – We the People Court Services - Phoenix Office

© This Process for Implementation of Juries after the Bench Trial and associated documents is the product of years of study, development, and testing. It is the intellectual property of We the People Court Services LLC.

**EXHIBIT**

tabbies®

1 1

Zia Shaikh
4400 Route 9, Suite 1000
Freehold, NJ 07728
732-766-5466

March 15, 2019

**Sent VIA USPS mail and FAX to (732)288-7282**
Judge Francis R. Hodgson Jr P.J.Ch.P
Superior Court of New Jersey
206 Court house Ln – First Floor
Toms River, NJ 08754 - 2191

**Sent VIA USPS mail**
Chief Justice Stuart Rabner
Supreme court of New Jersey
R.J. Hughes Justice Complex
P.O. Box 970
Trenton, NJ 08625

**VIA FAX to (609) 292-3508 / USPS mail**
**Office of the Attorney General**
**John J. Hoffman**
Hughes Justice Complex
P.O. Box 080
Trenton, NJ 08625-0081

**Sent VIA USPS mail**
AOC Director, Judge Glenn Grant, J.A.D.
**Candace Moody,** Esq.Exe Dir /Chief
**Maureen Bauman,** Disciplinary Counsel
Administrative Office of the Courts
Hughes Justice Complex
P.O. Box 037
Trenton, NJ 08625

Re:    The Bank of New York et al v. Zia Shaikh
       **Dkt # F -020634-16**

## Objection to Feb 14, 2019 SECOND order denying fee waiver
## Court must comply with NJ R. 1:7-4

Dear Judge Hodgson Jr;

As you are aware, on January 12, 2019 I had filed an emergent motion to stay the Sheriff sale on my former marital residence located at 5 Lons Ln Jackson, NJ 08527 under Dkt# F-20634-16. I had already used up the two statutory delays for the Jan 22 and Feb 5, 2019 sheriff sales, while attempting to negotiate a resolution with the alleged lender / plaintiff's counsel, but no resolution as of yet has been affirmed, in addition to my pending NJ Superior court appellate division appeal Dkt# A-2418-16 on my FJOD in which I seek reversal of the custody of my precious three children and my home, the subject property.

On February 14, 2019 in connection to my emergent motion for a stay of the Sheriff sale, in the first order your court GRANTED my fee waiver and then on same day DENIED my fee waiver via a second order, citing a previous order by Judge Ford dated December 19, 2018.

In your second order vacating the fee waiver relief you did not cite pursuant NJ R. 1:7-4 any findings of FACTS by you despite being in possession of my certified financial statement and substantial other proofs from various authorities to validate my request for the fee waiver.

How did you become aware of the December 19, 2018 order by the dis-honorable Judge Marlene L. Ford.; it is obvious the lender's counsel does not know about the previous orders and neither did I inform you nor was I even aware who will be handling my emergent appeal.

I cannot accept your second order as a VALID court order since it does not comply with the NJ rules of civil procedure and you did not provide any proofs in compliance with the NJ R 1:7-4.

This is a BLATANT violation of my due process rights and abuse of the judicial process to exact a personal vendetta against me by Judge Ford using your court room, since I have filed over 9 motions for her recusal, two federal law suits, several ACJC complaints, an impeachment complaint and four pending appeals on orders directly from this judge.

The Due Process Clause incorporated the common-law rule requiring recusal when a judge has "a direct, personal, substantial, pecuniary interest" in a case, Tumey v. Ohio, 273 U.S. at 523, but this Court [U.S. Supreme Court] has also identified additional instances which, as an objective matter, require recusal where "the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable". Withrow v. Larkin, 421 U.S. 35, 47 (1975). Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him. Taylor v. Hayes, 418 U.S. 488, 501-03 (1974).

I am desperately trying to save my former residence from foreclosure for the benefit of my three minor children and your malicious order will allow the upcoming April 17, 2019 Sheriff sale to proceed if you do not allow my emergent motion to vacate the foreclosure judgment to proceed with your first order granting me the fee waiver.

**I demand IMMEDIATE withdrawal of your second order dated February 14,2019 as it is not compliant with the law and for my case to be transferred to another judge for adjudication; it is evident that you have been tainted by Judge Ford and have chosen to act outside the boundaries of the law.**

An ACJC complaint on this matter has already been filed. I cannot afford to lose my home.


Sincerely;


Zia Shaikh

Victim / Prosecutor


**Enclosure:** Judge Francis R. Hodgson Jr orders dated February 14, 2019.

Zia Shaikh
4400 Route 9, Suite 1000
Freehold, NJ 07728
732-766-5466

March 15, 2019

**Sent VIA USPS mail and FAX to (732)288-7282**
Judge Francis R. Hodgson Jr P.J.Ch.P
Superior Court of New Jersey
206 Court house Ln – First Floor
Toms River, NJ 08754 - 2191

**Sent VIA USPS mail**
Chief Justice Stuart Rabner
Supreme court of New Jersey
R.J. Hughes Justice Complex
P.O. Box 970
Trenton, NJ 08625

**VIA FAX to (609) 292-3508 / USPS mail**
**Office of the Attorney General**
**John J. Hoffman**
Hughes Justice Complex
P.O. Box 080
Trenton, NJ 08625-0081

**Sent VIA USPS mail**
AOC Director, Judge Glenn Grant, J.A.D.
**Candace Moody,** Esq.Exe Dir /Chief
**Maureen Bauman,** Disciplinary Counsel
Administrative Office of the Courts
Hughes Justice Complex
P.O. Box 037
Trenton, NJ 08625

Re:    The Bank of New York et al v. Zia Shaikh
       **Dkt # F -020634-16**

<u>**Objection to Feb 14, 2019 SECOND order denying fee waiver**</u>
<u>**Court must comply with NJ R. 1:7-4**</u>

Dear Judge Hodgson Jr;

As you are aware, on January 12, 2019 I had filed an emergent motion to stay the Sheriff sale on my former marital residence located at 5 Lons Ln Jackson, NJ 08527 under Dkt# F-20634-16.  I had already used up the two statutory delays for the Jan 22 and Feb 5, 2019 sheriff sales, while attempting to negotiate a resolution with the alleged lender / plaintiff's counsel, but no resolution as of yet has been affirmed, in addition to my pending NJ Superior court appellate division appeal Dkt# A-2418-16 on my FJOD in which I seek reversal of the custody of my precious three children and my home, the subject property.

On February 14, 2019 in connection to my emergent motion for a stay of the Sheriff sale, in the first order your court GRANTED my fee waiver and then on same day DENIED my fee waiver via a second order, citing a previous order by Judge Ford dated December 19, 2018.

In your second order vacating the fee waiver relief you did not cite pursuant NJ R. 1:7-4 any findings of FACTS by you despite being in possession of my certified financial statement and substantial other proofs from various authorities to validate my request for the fee waiver.

How did you become aware of the December 19, 2018 order by the dis-honorable Judge Marlene L. Ford.; it is obvious the lender's counsel does not know about the previous orders and neither did I inform you nor was I even aware who will be handling my emergent appeal.

I cannot accept your second order as a VALID court order since it does not comply with the NJ rules of civil procedure and you did not provide any proofs in compliance with the NJ R 1:7-4.

This is a BLATANT violation of my due process rights and abuse of the judicial process to exact a personal vendetta against me by Judge Ford using your court room, since I have filed over 9 motions for her recusal, two federal law suits, several ACJC complaints, an impeachment complaint and four pending appeals on orders directly from this judge.

The Due Process Clause incorporated the common-law rule requiring recusal when a judge has "a direct, personal, substantial, pecuniary interest" in a case, Tumey v. Ohio, 273 U.S. at 523, but this Court [U.S. Supreme Court] has also identified additional instances which, as an objective matter, require recusal where "the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable". Withrow v. Larkin, 421 U.S. 35, 47 (1975). Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him. Taylor v. Hayes, 418 U.S. 488, 501-03 (1974).

I am desperately trying to save my former residence from foreclosure for the benefit of my three minor children and your malicious order will allow the upcoming April 17, 2019 Sheriff sale to proceed if you do not allow my emergent motion to vacate the foreclosure judgment to proceed with your first order granting me the fee waiver.

**I demand IMMEDIATE withdrawal of your second order dated February 14,2019 as it is not compliant with the law and for my case to be transferred to another judge for adjudication; it is evident that you have been tainted by Judge Ford and have chosen to act outside the boundaries of the law.**

An ACJC complaint on this matter has already been filed. I cannot afford to lose my home.

Sincerely;

Zia Shaikh

Victim / Prosecutor

**Enclosure:** Judge Francis R. Hodgson Jr orders dated February 14, 2019.

AMENDED COMPLAINT

**Zia Shaikh**
**200 Village Ctr Dr**
**Unit 7381**
**Freehold, NJ 07728**
**(732)766-5466**

July 27,2021

Hon.Judge Brian Martinotti
New Jersey District Court Clerk
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

Re:  SHAIKH v. EINBINDER et al
      **Civil Action No. 3:20-cv-02540-BRM-TJB**

### <u>AMENDED COMPLAINT PURSUANT JULY 13, 2021 ORDER</u>

Dear Judge Martinotti;

By the grace of Almighty God; I was able to produce the amended complaint pursuant to the July 13,2021 order.

The cases cited by the court were *Mireles*, 502 U.S. at 11, and *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). This amended complaint speaks precisely to the lack of jurisdiction in the issuance of the unlawful orders by the defendant judges in violating the most fundamental constitutional rights of a citizen of our great nation.

This Pro Se petitioner has LOST everything due to the malicious orders of these FIVE separate judges who violate the law despite contest by my FOUR former divorce attorneys and myself; I MUST SEEK JUSTICE with every possible effort under the laws of our great nation and you are my last hope for justice. The interest of justice demands it.

Respectfully submitted,

Zia Shaikh / Plaintiff

Zia Shaikh in propria persona
200 Village Ctr Dr
Unit 7381
Freehold, NJ 07728
(732)766-5466 Cell

<div align="center">

**DISTRICT COURT FOR THE UNITED STATES**
**DISTRICT OF NEW JERSEY**
**TRENTON VICINAGE**

</div>

| | | |
|---|---|---|
| **ZIA SHAIKH,** | ) | |
| **Plaintiff,** | ) | **CIVIL CASE NO.: 3:2020-cv-02540 BRM-DEA** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MADELINE F. EINBINDER J.S.C** | ) | |
| | ) | |
| **MARLENE L. FORD A.J.S.C.** | ) | **AMENDED** |
| | ) | **CIVIL COMPLAINT** |
| **JOHN S. DORAN J.S.C.** | ) | **WITH JURY DEMAND** |
| | | |
| **DEBORAH H. SCHRON J.S.C.** | ) | **(PURSUANT ORDER DATED JULY 13,2021)** |
| | | |
| **FRANCES HODGSON J.S.C.** | ) | |
| | | |
| **LISA P. THORTON A.J.S.C.** | ) | |
| **Individual and Official capacity** | ) | |
| | | |
| **Defendants,** | ) | |

<div align="center">

**AMENDED COMPLAINT AT LAW**

</div>

   **NOW COMES,** the Plaintiff Zia Shaikh in propria persona, and does bring this Amended Complaint against all Defendants in their individual capacities. In support thereof the Plaintiff states the following:

<div align="center">

**PARTIES**

</div>

   1.    Plaintiff Zia Shaikh ("Plaintiff") is an individual currently domiciled in the State of New Jersey and resides at: 200 Village Ctr Dr Unit 7381, Freehold, NJ 07728 in Monmouth County New Jersey.

   2.    Defendant Madeline F. Einbinder is an Ocean County Superior Court judge in, New Jersey.

3.    Defendant Marlene L. Ford is an Ocean County Superior Court judge, in New Jersey.

4.    Defendant John S. Doran is an Ocean County Superior Court judge in, New Jersey.

5.    Defendant Deborah H. Schron is an Ocean County Superior Court judge in New Jersey.

6.    Defendant Frances Hodgson is an Ocean County Superior Court judge in New Jersey.

7.    Defendant Lisa P. Thorton is a Monmouth County Superior Court judge in New Jersey.

## JURISDICTION AND VENUE

*8.*    This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, and 1343 which confer jurisdiction upon this court for violations of the *Fourth, Fourteenth, and Eighth* Amendments, to the Constitution of the United States, the civil rights act of 1866 and 1871, as amended, *42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988.*

This court also has jurisdiction pursuant to *28 U.S.C. § 1337, and 28 U.S.C. § 1391* as one or more of the defendants are located in this court's district, and a substantial part of the events giving rise to the instant case occurred in this district.

As instructed by this court in it's July 13,2021 order to file a final amended complaint, that satisfies the two prong requirements of the Mireles v. Waco, 502 U.S. 9, 12 (1991). Plaintiff shall restrict the factual background in this amended complaint to only the non-judicial and criminal actions by these defendants in the instant case.

## LIMITED FACTUAL BACKGROUND

## MADELINE F. EINBINDER

**Facts Showing New Jersey Superior Court Family Division, Presiding Judge Madelin F. Einbinder Engaged in Ex Parte Contacts with Laura Germadnig and her Attorney Steven A. Zabarsky, a Partner in the Law Firm of CITTA, HOLZAPFEL & ZABARSKY.**

1.    On April 23, 2014, a Case Management Conference was held before New Jersey Superior Court, Family Division, Presiding Judge Madelin F. Einbinder [Einbinder], in the divorce Dkt# FM-15-500-14W case filed by Shaikh against Germadnig.

2.    Neither Shaikh nor his attorney were noticed to appear. There is no Docket available online for Family Division cases in the New Jersey Superior Court. Document requests for proofs of service of the notice of the April 23, 2014, Case Management Conference have not resulted in any such proofs of service to either Shaikh or his attorney being produced.

3.    The April 23, 2014, Case Management Conference was only attended by Germadnig and her attorney Zabarsky.

4.    This Case Management Conference was converted into an *ex parte* accelerated Pendente Lite hearing upon the oral request for motion by Zabarsky before Einbinder, also without any notice to either Shaikh or his attorney.

5.    Zabarsky and Einbinder concealed they are personal friends.

6.    Zabarsky changed the Pendente Lite Motion hearing returnable May 2, 2014, to an earlier date, April 23, 2014.

7.    Zabarsky knew Shaikh's then attorney, Stephanie Brown, Esq., could not change her schedule to appear on April 23, 2014, because of prior commitments to another case's hearing.

8.    At the April 23, 2014, Case Management Conference/Ex Parte Hearing, Zabarsky testified as follows:

"[Mr. SHAIKH] was born and raised in Pakistan *and can be considered a Pakistan national.* . ... We're concerned about the issue of him getting a plane with the children and the passports. . . . [T]here may be nothing stopping Mr. SHAIKH from going to the . . . Pakistani Embassy in

Washington and getting Pakistan passports, as told to us by the State Department." [T1. 14:4-15:6]
. . . . "

    THE COURT:  Okay so that raises some concern additionally with the defendant that he may at some point decide to take the children out of the country without her knowledge or consent; is that correct, Attorney ZABARSKY?"

    "Attorney ZABARSKY:   Exactly, Your Honor" [T1.26:8-12]

    A true and correct copy of the April 23, 2014 transcript marked as **EXHIBIT 1** is attached hereto and incorporated herein as if set forth in full.

    9.    On October 15, 2014 Defendant Einbinder conducted EXTORTION by issuing a bench warrant order on collection of a commercial debt for the Plaintiff's arrest and illegal incarceration to illegally enrich her family friend Steven A. Zabarsky; the order reads ***"A bench warrant shall issue against Zia H. Shaikh , for his continuing failure to abide by the courts orders to pay Steven A. Zabarsky, ESQ for counsel fees in the amount of $35,827.41, Joseph Gunteski CPA in the amount of $10,000 ..."***; this is blatant extortion using government resources to show favor to her friends. The opposing counsel, Mr. Zabarsky was the best man at Defendant Einbinder's wedding and even though there was a clear conflict of interest present in the case, the Defendant refused to recuse herself, despite Plaintiff's motion for same. She continued on with the case which adversely affected the shape of the proceedings which were constantly against the Plaintiff in this instant case.  Under duress of the bench warrant and not being able to see his children due to the chaos created by Defendant Einbinder over $50,000 was paid to Steven A. Zabarsky by Plaintiff from his children's college fund account. **This act by the Defendant constitutes kidnapping which is clearly defined by 18 U.S. Code § 1201 and further violation of US laws against Extortion 18 U.S. Code 14 § 872**; *notwithstanding* violation of the Plaintiff's due process rights. **(See: ORDER and Landi Letter to Judge as EXHIBIT 2).**

    10.    The New Jersey Supreme Court, in <u>N.J. Dept. of Health v. Roselle</u>, 34 <u>N.J.</u> 331 (1961) eradicated the distinction between civil and criminal contempt and held that all contempts are essentially one in the same.  Therefore, if both civil relief (collection of child support and alimony, which is a ***commercial debt***) and criminal punishments (arrest and imprisonment for debt) are imposed in the same proceeding, the "criminal feature of the order is dominant and fixes its character for review". <u>Hicks v. Feiock</u>, 485 <u>U.S.</u> 624, 108 <u>S.Ct</u>. 1423, 99 <u>L.Ed</u>.2d (1988); <u>Nye v. United</u>

States, 61 <u>S.Ct</u>. 810, 813 (1941).  Civil contempts or violations of court orders/violations of litigants rights, are civil in name only, entailing what are in reality criminal punishments.  <u>U.S. v. Rylander</u>, 460 <u>U.S</u>. 752, 757 (1983); <u>Uphaus v. Wyman</u>, 360 <u>U.S</u>. 72 (1959).


     11.       The New Jersey Appellate Division held in <u>Lusardi v. Curtis Point Property Owners Assoc.,</u> 138 <u>N.J. Super</u>. 44, 50 (App.Div. 1975) that there are grave doubts whether a defendant's rights can be adequately protected in a "double-barrelled proceeding" where charges of both contempt and deprivation of private rights are tried in a common proceeding.


    <u>*New Jersey Constitution*</u>, Article I, Paragraph 13:
    "No person shall be imprisoned for debt in **ANY** action, or on any          judgment founded upon contract, unless in cases of fraud".
  The Supreme Court of New Jersey stated in <u>State v. Madewell</u>, 63 N.J. 506, 512 (1973):
    "Statutes or ordinances, designed as debt collecting devices under the guise of penal laws, contravene the constitutional prohibition against imprisonment for debt.  Thus, the legislature may not circumvent the prohibition by rendering criminal a simple breach of contract, ***<u>the nonpayment of debt</u>***, or the failure to use one's own money for a purpose other than for payment of debts.  However, statutes against false pretenses, frauds, cheats, and the like, are sustained as against the constitutional objection that such statutes impose imprisonment for debt, on the theory that one who violates the act is punished for the crime he has committed, although civilly the acts may also constitute a breach of contract or the nonpayment of a debt. (16 C.J.S., Constitutional Law, Section 204(4), p.1011)." [bold, underline and italics added]


     12.       Since Plaintiff was never charged, tried or convicted of fraud, he cannot be imprisoned for a debt-whether it be a Court-Ordered debt for payment of child support, alimony or any other debt in commerce.   Pursuant to the September 1998 amendment to N.J. Court Rule, R. 1:10-3, 2002 <u>Gann Edition</u>, Comment:  **"The evident purpose of this amendment is to make clear that enforcement by incarceration was never intended to create a so-called debtor's prison."**


     13.     This COURT LACKS ALL JURISDICTION ON CHILD SUPPORT ORDERS IN VIOLATION OF 29 CFR 870.10. Title IV-D DOES NOT allow jurisdiction on individuals who ONLY received 1099 income as an independent worker; alleged arrears are void as Plaintiff formerly as an independent business owner is and was ALWAYS EXCLUDED from any child support payments pursuant 29 CFR 870.10.

14.        Keith In re Ricky D. Jones pursuant to 15 U.S.C. § 1673 as incorporated into Ohio Rev. Code § 2329.66(A)(17).    Because this court concludes that Ohio's exemption scheme incorporates 15 U.S.C. § 1673 and that this exemption extends to the earnings of independent contractors, the Trustee's objection is overruled and the claimed exemption is allowed.  The bench warrant issued November 28,2017 is in direct violation of **22 USC § 7102.** This is Abuse or threatened abuse of law or legal process; on the issuance of the outstanding bench warrant.

15.        Def. Einbinder acted without any judicial authority when she ordered to confiscate Plaintiff's US passport as further ordered. The order demanded Plaintiff to turn over his passport to opposing counsel; only the Federal government has the authority to revoke or confiscate a passport. [1] Superior courts do not have jurisdiction and authority to arrest and imprison litigants for a civil, commercial issue. This is a direct violation of constitutional limitations of the government under search and seizure laws without probable cause, or legal authority, and has violated Federal law.

16.        This Defendant knew or should have known about her orders to be without jurisdiction or legal authority; despite being noticed by the Plaintiff and his former attorney.

17.        The Defendant has acted without any jurisdiction, her actions are outside the scope of any judicial authority, or immunity, pursuant  Mireles v. Waco, 502 U.S. 9, 12 (1991)

### **MARLENE L. FORD**
**Facts Showing the April 23, 2014, Child Support Payments and Initial Attorneys Fee Order was a Fraud Upon the Court as the Court Sua Sponte Reduced the Child Support Payments from $903.00 per week to $300.00 per week without any new evidence.**

18.        On December 18, 2015, Plaintiff's pleadings were suppressed via a motion for suppression of such pleadings by Zabarsky *upon legal advice in open court by Ford on November 16, 2015, at another motion hearing*. Attached hereto marked as **EXHIBIT 3** is a true and correct copy of the Reporter's Transcript dated December  18, 2015, page 47, ln 10 and page

49 ln 15.

19.     Plaintiff filed motions to reverse these orders including a motion with supporting discovery on June 10, 2016. All were denied.

20.     Between June 15 and July 2, 2016, Plaintiff was arrested and incarcerated for inability to pay unallocated Court ordered support debt obligation of $903.00 per week.

21.     On June 17,2016, Shaikh was brought before Ford who conducted a hearing on whether Plaintiff could pay the approximate $40,000.00 in arrearages at the time. Ford incarcerated him after a short hearing without hearing any substantive evidence of Plaintiff's financial condition. A true and correct copy of Reporter's Transcript dated June 17, 2016 marked as **EXHIBIT 4** is attached hereto and incorporated herein as if set forth in full

22.     A new hearing was set for July 2, 2016. Before this hearing date, Ford sua sponte reduced the Plaintiff's $903.00 per week obligation to $300.00 per week without any new evidence.

23.     On July 2, 2016, Plaintiff was brought before Ford again to see if he could pay a "purge" amount of $2,000.  A friend of Plaintiff's paid the $2,000 for the release in addition to signing the IRS form 4506-T for the release of tax returns directly to Germadnig.

   **Facts Showing Plaintiff's Right to Earn a Living was Destroyed by the Defendants**.

24.     As a result of this arrest and imprisonment for debt, on June 24, 2016, an Order was issued by the New Jersey Department of Banking and Insurance, and the New Jersey State Attorney General's Office revoking Plaintiff's nine (9) insurance licenses. Upon his arrest and imprisonment for debt from June 15, 2016-July 2, 2016, Plaintiff's professional licenses were all revoked on June 24, 2016—nine (9) days after Plaintiff was arrested and imprisoned for a civil, commercial debt.  As a result, Plaintiff, who has no college degree, and has only known the insurance and financial services business as his career, had his livelihood and Constitutional Right to Work protected by the Fourteenth Amendment destroyed by the named Defendants.

   **Facts showing the December 20, 2016, Final Judgment of Divorce Mirrors the April 23, 2014, Order.**

25.     On November 18, 2016, Ford issued an Order DENYING Shaikh's *pro se* motion to Restore his pleadings dismissed on December 18, 2015.

26.     On December 14, 2016, Ford conducted a default trial in which Plaintiff was not allowed to present any defenses to ex-wife Germadnig's claims. Ford placed "facts" into the

record over the objections of Plaintiff, and ultimately ejected Plaintiff from the Courtroom when he objected to the false allegations dressed up as facts on the record by Def. Ford.

27.     In the December 20,2016 order for the Final Judgment of Divorce:

(1)     Germadnig was awarded:

(a)     full custody of the three minor children;

(b)     the former marital residence;

(c)     attorney fees from actions filed in the Federal courts, [where this judge had NO jurisdiction to award any fees];

(d)      state court fees; and

(e)     unproven phantom funds of over $650,000.00 for the benefit of Germadnig;

(f)     Plaintiff was awarded: one hour of supervised parenting time at the courthouse building based ONLY on the assertion by Zabarsky that "if Plaintiff was awarded joint custody, he may seek information about the Germadnig's household and her where abouts" without any basis in law or facts; and

(g)     Plaintiff was allowed to retain an old car as the only asset.


28.     Einbinder's orders have been adopted by Ford:

(a)     Ford ordered that ALL opposing counsel fees be paid by Plaintiff' just as was ordered by Einbinder at the April 23, 2014, Ex Parte hearing;

(b)     Ford refused to overturn the Ex Parte orders of April 23, 2014, and the identical orders of Dec 20, 2016, when, without Plenary hearing, Einbinder gave temporary Sole custody of Plaintiff's children to his ex-wife Germadnig and removed Plaintiff from marital residence only on the "say-so" of Zabarsky, without cause;

(c)     Germadnig's forensic accountants Cowan Gunteski & Co unsubstantiated and repeatedly rebutted "preliminary report" was relied upon by Einbinder and Ford for the conclusion that Plaintiff has allegedly $650,000 hidden;

(d)     After over 30 months and over $20,000 in fraudulent forensic fees (with a fraudulent request for more fees) no evidence was ever uncovered that Plaintiff has or ever possessed this amount of money, or that it ever existed;

(e)     Ford and Einbinder allowed the forensic accounting firm to go on a "fishing expedition" to drive up their fees; and

(f)    The forensic accounting firm fraudulently and falsely fabricated and double and triple counted Plaintiff's savings to justify their still this day unfounded claims.

30.   Every single order by Einbinder and Ford created "impossibility of performance" since Plaintiff's professional licenses were revoked by the New Jersey Dept. of Insurance on June 16,2016, including his driver's license because of the fabricated, fictitious, false, excessive unallocated support order imposed on Plaintiff without a hearing, and upheld. Plaintiff cannot work because of all these orders. These orders have taken away Plaintiff's ABILITY TO EARN MONEY in his financial advisor profession, or the ability to even get to any job. The orders are also obliterating Plaintiff's physical and equitable assets existence.

31.   Defendant Ford in her order of October 19,2017 violated the FIRST and FOURTEENTH amendment rights of the Plaintiff when she blocked access to ANY state court unless it was with her approval. By declaring Plaintiff, a "vexatious litigant", without ever providing any findings of fact or conclusions of law as required by NJ R 1:7-4; this order lacks jurisdiction. The right to access the courts is fundamental to our system of justice. In one sense, such a right has been a traditional and noncontroversial part of our constitutional law; barring unusual circumstances, anyone can bring a lawsuit, or be heard in his or her own defense. See ORDER **EXHIBIT 5.**

32.   The U.S. Supreme Court has backed that idea with numerous cases supporting public access to trials. "The right to attend criminal trials is implicit in the guarantees of the First Amendment," Justice Warren Burger wrote in the landmark **Richmond Newspaper Inc. v. Virginia** decision in the 1980s.  Taylor Smith, a lawyer for the South Carolina Press Association, said the First Amendment protects the rights of a public trial. A trial typically involves several public figures in South Carolina, such as a judge, solicitors, the police and public defenders, he added. The Supreme Court also found in 2010 that a crowded courtroom was not enough of a reason to close it to the public. The 2010 **Presley v. Georgia** case focused on a defendant's family member who was trying to watch jury selection in a crowded courtroom. The court found barring the member violated the accused's rights.

33.  Plaintiff has filed over FIFTEEN motions for recusal of Def Ford and change of venue due to multiple federal law suits filed against her in which she is a co-defendant, raising issues of conflict of interest and bias; citing various federal case law to obtain a fair trial, all such motions repeatedly get denied.

34.  The Due Process Clause incorporated the common-law rule requiring recusal when a judge has "a direct, personal, substantial, pecuniary interest" in a case, Tumey v. Ohio, 273 U.S. at 523, but this Court [U.S. Supreme Court] has also identified additional instances which, as an objective matter, require recusal where "the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable". Withrow v. Larkin, 421 U.S. 35, 47 (1975).  Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him.  Taylor v. Hayes, 418 U.S. 488, 501-03 (1974).

35.  Not only is a biased decision maker constitutionally unacceptable but "our system of law has always endeavored to prevent even the probability of unfairness". In re Murchison, supra, at 136; cf. Tumey v. Ohio, 273 U.S. 510, 532 (1927).  See also, DeNike v. Cupo, 196 N.J. 502, 506 (2008).

36.  The proper standard to assess defendant's request for recusal is set forth in DeNike v. Cupo, 196 N.J. 502, 517 (2008): "Would a reasonable, fully informed person have doubts about the judge's impartiality?" As the analysis section in the opinion reveals, the standard calls for an individualized consideration of the facts in a given case.

37.  Defendant Ford has clearly violated Federal law codified under *42 U.S.C. §§ 1981, 1985(2), 1988.*

38.  The Defendant has acted without any jurisdiction, her actions are outside the scope of any judicial authority, or immunity, pursuant  Mireles v. Waco, 502 U.S. 9, 12 (1991)

# JOHN S. DORAN

38.   In April of 2017, Defendant John S. Doran was assigned the "enforcement" portion of the underlying divorce case Dkt# FM 15-500-14W; Plaintiff was unaware of this change since he was illegally incarcerated in Ocean county jail between Mar 21, 2017 - Apr 12,2017.

39.   Despite the appropriate motions having been filed to secure Plaintiff's release, Defendant Doran refused to order the release of the Plaintiff until April 12,2017.

40.   On November 28, 2017 Defendant Doran conducted EXTORTION by issuing a new bench warrant order for the Plaintiff's arrest and illegal incarceration in the face of several .  ***"The court finds that the Plaintiff has the ability to pay his child support obligation of $284.00 per week as well as his alimony obligation of $650.00 per week for a total of $934.00 per week"*  This act by the Defendant constitutes kidnapping which is clearly defined by 18 U.S. Code § 1201 and further violation of US laws against Extortion 18 U.S. Code 14 § 872**; *notwithstanding* violation of the Plaintiff's due process rights. SEE ORDER **EXHIBIT 6.**

41.   The New Jersey Supreme Court, in <u>N.J. Dept. of Health v. Roselle</u>, 34 <u>N.J.</u> 331 (1961) eradicated the distinction between civil and criminal contempt and held that all contempts are essentially one in the same.  Therefore, if both civil relief (collection of child support and alimony, which is a ***commercial debt***) and criminal punishments (arrest and imprisonment for debt) are imposed in the same proceeding, the "criminal feature of the order is dominant and fixes its character for review".  <u>Hicks v. Feiock</u>, 485 <u>U.S.</u> 624, 108 <u>S.Ct</u>. 1423, 99 <u>L.Ed</u>.2d (1988); <u>Nye v. United States</u>, 61 <u>S.Ct</u>. 810, 813 (1941).  Civil contempts or violations of court orders/violations of litigants rights, are civil in name only, entailing what are in reality criminal punishments.  <u>U.S. v. Rylander</u>, 460 <u>U.S.</u> 752, 757 (1983); <u>Uphaus v. Wyman</u>, 360 <u>U.S.</u> 72 (1959).

42.   The New Jersey Appellate Division held in <u>Lusardi v. Curtis Point Property Owners Assoc.</u>, 138 <u>N.J. Super</u>. 44, 50 (App.Div. 1975) that there are grave doubts whether a defendant's rights can

be adequately protected in a "double-barrelled proceeding" where charges of both contempt and

deprivation of private rights are tried in a common proceeding.

*New Jersey Constitution*, Article I, Paragraph 13:
"No person shall be imprisoned for debt in **ANY** action, or on any                judgment
founded upon contract, unless in cases of fraud".

The Supreme Court of New Jersey stated in <u>State v. Madewell</u>, 63 N.J. 506, 512 (1973):
"Statutes or ordinances, designed as debt collecting devices under the guise of penal laws,
contravene the constitutional prohibition against imprisonment for debt.  Thus, the legislature
may not circumvent the prohibition by rendering criminal a simple breach of contract, ***the
nonpayment of debt***, or the failure to use one's own money for a purpose other than for
payment of debts.  However, statutes against false pretenses, frauds, cheats, and the like, are
sustained as against the constitutional objection that such statutes impose imprisonment for
debt, on the theory that one who violates the act is punished for the crime he has committed,
although civilly the acts may also constitute a breach of contract or the nonpayment of a debt.
(16 C.J.S., Constitutional Law, Section 204(4), p.1011)." [bold, underline and italics added]

43.   Since Plaintiff was never charged, tried or convicted of fraud, he cannot to be imprisoned for

a debt-whether it be a Court-Ordered debt for payment of child support, alimony or any other debt in

commerce.   Pursuant to the September 1998 amendment to N.J. Court Rule, R. 1:10-3, 2002 <u>Gann</u>

<u>Edition</u>, Comment:  **"The evident purpose of this amendment is to make clear that enforcement**

**by incarceration was never intended to create a so-called debtor's prison."**

44.   This COURT LACKS ALL JURISDICTION ON CHILD SUPPORT ORDERS IN VIOLATION

OF 29 CFR 870.10. Title IV-D DOES NOT allow jurisdiction on individuals who ONLY received 1099

income as an independent worker; alleged arrears are void as Plaintiff formerly as an independent business

owner is and was ALWAYS EXCLUDED from any child support payments pursuant 29 CFR 870.10.

45.   Keith In  re Ricky D. Jones pursuant to 15 U.S.C. § 1673 as incorporated into Ohio Rev. Code §

2329.66(A)(17).   Because this court concludes that Ohio's exemption scheme incorporates 15 U.S.C. § 1673

and that this exemption extends to the earnings of independent contractors, the Trustee's objection is overruled

and the claimed exemption is allowed.  The bench warrant issued November 28,2017 is in direct violation of **<u>22</u>**

**<u>USC § 7102.</u>** This is Abuse or threatened abuse of law or legal process; on the issuance of the outstanding

bench warrant.

46.    Defendant Doran has conspired to violate the Plaintiff's rights under the color of state with

Defendant Marlene L. Ford in the abuse of process and malicious prosecution of the Plaintiff to

deprive the Plaintiff of his rights protected by Federal law pursuant to 42 U.S.C. §§ 1985(2),1986,

1988.

47.    The Defendant has acted without any jurisdiction, her actions are outside the scope of any

judicial authority, or immunity, pursuant  Mireles v. Waco, 502 U.S. 9, 12 (1991)

## **DEBORAH H. SCHRON**

48.    In October of 2019 Defendant Deborah H. Schron became the fifth judge to preside on this

case. Several motions to vacate the illegal bench warrant for LACK OF INPERSONAM AND

SUBJECT MATTER JURISDICTION of November 28,2017 by Defendant Doran were ignored

without any explanation.

49.    In orders as recent as February 12,2021 Defendant Schron willfully violates the NJ State laws
and Federal laws when denying relief to the Plaintiff:  SEE ORDER **EXHIBIT 7**

    i. Def. Schron, in violation of the Supremacy Clause (Art 6, § 2) and the Oath (Art 6, § 3) of the
    NJ constitution, refused to reverse custody of the two minor children to Plaintiff. Def claimed
    ***"The verdict is not a valid and enforceable court proceeding and any decision of that body if it
    exists is not binding upon this court"***  about the September 06, 2019 Jury verdict order. NO
    JURISDICTION can be sustained in blatant violation of the constitution.

    "The Judiciary derives its authority from the State Constitution but earns the public's
    confidence through acts of unquestioned integrity.  When that trust is shaken—even
    slightly—our system of justice falters."  *DeNike v. Cupo*, 196 NJ. 502, 506 (2008).

    R. 1:18 obligates every judge to "abide by and to enforce the provisions of the
    Rules of Professional Conduct, the Code of Judicial Conduct and the provisions of R.
    1:15 and R. 1:17."

ii.        Denial to vacate the November 28,2017 bench warrant and dismissal of the alleged child support arrears under case # CS 91103001A, conspires in the EXTORTION scheme with Def. Doran and Def Ford. **This act by the Defendant constitutes kidnapping which is clearly defined by 18 U.S. Code § 1201 and further violation of US laws against Extortion 18 U.S. Code 14 § 872**; *notwithstanding* violation of the Plaintiff's due process rights.

The New Jersey Supreme Court, in N.J. Dept. of Health v. Roselle, 34 N.J. 331 (1961) eradicated the distinction between civil and criminal contempt and held that all contempts are essentially one in the same.  Therefore, if both civil relief (collection of child support and alimony, which is a ***commercial debt***) and criminal punishments (arrest and imprisonment for debt) are imposed in the same proceeding, the "criminal feature of the order is dominant and fixes its character for review".  Hicks v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d (1988); Nye v. United States, 61 S.Ct. 810, 813 (1941).  Civil contempts or violations of court orders/violations of litigants rights, are civil in name only, entailing what are in reality criminal punishments.  U.S. v. Rylander, 460 U.S. 752, 757 (1983); Uphaus v. Wyman, 360 U.S. 72 (1959).

The New Jersey Appellate Division held in Lusardi v. Curtis Point Property Owners Assoc., 138 N.J. Super. 44, 50 (App.Div. 1975) that there are grave doubts whether a defendant's rights can be adequately protected in a "double-barrelled proceeding" where charges of both contempt and deprivation of private rights are tried in a common proceeding.

New Jersey Constitution, Article I, Paragraph 13:
        "No person shall be imprisoned for debt in **ANY** action, or on any
        judgment founded upon contract, unless in cases of fraud".
The Supreme Court of New Jersey stated in State v. Madewell, 63 N.J. 506, 512 (1973): "Statutes or ordinances, designed as debt collecting devices under the guise of penal laws, contravene the constitutional prohibition against imprisonment for debt.  Thus, the legislature may not circumvent the prohibition by rendering criminal a simple breach of contract, ***the nonpayment of debt***, or the failure to use one's own money for a purpose other than for payment of debts.  However, statutes against false pretenses, frauds, cheats, and the like, are sustained as against the constitutional objection that such statutes impose imprisonment for debt, on the theory that one who violates the act is punished for the crime he has committed, although civilly the acts may also constitute a breach of contract or the nonpayment of a debt. (16 C.J.S., Constitutional Law, Section 204(4), p.1011)." [bold, underline and italics added]

Plaintiff was never charged, tried or convicted of fraud, he cannot to be imprisoned for a debt-whether it be a Court-Ordered debt for payment of child support, alimony or any other debt in commerce.   Pursuant to the September 1998 amendment to N.J. Court Rule, R. 1:10-3, 2002 Gann Edition, Comment:  **"The evident purpose of this amendment is to make clear that enforcement by incarceration was never intended to create a so-called debtor's prison."**

This COURT LACKS ALL JURISDICTION ON CHILD SUPPORT ORDERS IN VIOLATION OF 29 CFR 870.10. Title IV-D DOES NOT allow jurisdiction on individuals who ONLY received 1099 income as an independent worker; alleged arrears are void as Plaintiff formerly as an independent business owner is and was ALWAYS EXCLUDED from any child support payments pursuant 29 CFR 870.10.

Keith In  re Ricky D. Jones pursuant to 15 U.S.C. § 1673 as incorporated into Ohio Rev. Code § 2329.66(A)(17).   Because this court concludes that Ohio's exemption scheme incorporates 15 U.S.C. § 1673 and that this exemption extends to the earnings of independent contractors, the Trustee's objection is overruled and the claimed exemption is allowed.  The bench warrant issued November 28,2017 is in direct violation of **22 USC § 7102.** This is Abuse or threatened abuse of law or legal process; on the issuance of the outstanding bench warrant.

50.     Defendant Schron has conspired to violate the Plaintiff's rights under the color of state with Defendants Marlene L. Ford and John S. Doran  in the abuse of process and malicious prosecution of the Plaintiff to deprive the Plaintiff of his rights protected by Federal law pursuant to 42 U.S.C. §§ 1985(2),1986, 1988.

51.     The Defendant has acted and continues as same without any jurisdiction, her actions are outside the scope of any judicial authority, or immunity, pursuant  Mireles v. Waco, 502 U.S. 9, 12 (1991)

## **LISA P. THORTON**

52.     Plaintiff, as a resident of Monmouth County NJ, filed five separate lawsuits against various

individuals who had harmed him in various capacities. The following cases were filed and accepted with the corresponding fee waivers and assigned to numerous judges in the Monmouth vicinage for adjudication.

53.    Soon after filing of the first case in 2018, miraculously Monmouth cty judicial actor Thorton became aware of an order by Judicial actor Ford; without any notices by any Def or this Pla' to any court. Judicial actor Thorton then immediately Sua Sponte dismissed all cases citing an October 19, 2017 order issued by the Ocean county assignment Judge Marlene L. Ford A.J.S.C, who presided on my divorce case in Ocean cty.

54.    Oct 19, 2017 order that states in relevant part:

> With regard to any future filings with the Superior Court of New Jersey by this Plaintiff, Zia Shaikh, the Court will order that any filing shall be marked received not filed, and shall be reviewed **by the Assignment Judge** as to whether or not this filing is a duplication of a prior filing; repetitive; nonsensical, or otherwise incomprehensible and thus constituting a vexatious filing. The Court will then determine whether or not to accept the documents for filing.

55.    The October 19, 2017 order does not comply with the NJ Appellate court decision in ***Parish v. Parish, 988 A. 2d 1180, 1189 - NJ: Appellate Div. 2010 and Earnest v. Bedilion, No. A-2616-12T2.*** In Parish, the court review prior precedent reviewing restraints **on future motions in family matters**. Id. at 49-51. See D'Amore v. D'Amore, 186 N.J. Super. 525, 530 (App. Div. 1982).  **NONE of these FIVE cases relate to the FM-15-500-14w docket.**

56.    All of the FIVE filed lawsuits were under way in Monmouth county assigned to different judges at various stages of motion practice and discovery when they were maliciously dismissed by court actor Lisa P. Thorton A.J.S.C.

**AS FILED IN MONMOUTH COUNTY**

| CAPTION | FILED | SUA SPONTE DISMISSED | DKT# |
|---|---|---|---|
| ZIA SHAIKH v. MELISSA REEVES et al | 03/08/2019 | 05/24/2019 | MON-L-0844-19 |
| ZIA SHAIKH v. DAVID T. SCHLENDORF ESQ et al | 05/18/2018 | 06/24/2019 | MON-L-1644-18 |
| ZIA SHAIKH v. NADA PITYINGER et al | 08/20/2018 | 11/09/2018 | MON-L-2949-18 |
| ZIA SHAIKH v. RYAN CLARK ESQ et al | 11/01/2018 | 06/05/2019 | MON-L-3977-18 |
| ZIA SHAIKH v. DAVID GLASSMAN ESQ et al | 11/26/2018 | 06/05/2019 | MON-L-3996-18 |

57.     Despite Pla's several letters to court actor Lisa P. Thornton A.J.S.C. for her review, since the instant order required an "assignment judge" review; on **December 4, 2018** Judge Thornton via letter REFUSED to review the pending complaints in her vicinage and dismissed all cases.  **SEE EXHIBIT 8**

58.     **The malfeasance and misfeasance of judicial actor Marlene Lynch Ford, A.J.S.C., in collusion with Monmouth county judicial actor  Lisa P. Thorton A.J.S.C.** as evidenced the email from Def. Thorton's law clerk.  SEE **EXHIBIT 9.**

59.     The **due process clause** states, "No person shall…be deprived of life, liberty, or property, without due process of law." The federal due process clause is mirrored in the Fourteenth Amendment, which guarantees due process of law in *state* criminal prosecutions. **Substantive due process** protects individuals from an unreasonable loss of substantive rights, such as the right to speak freely and the right to privacy. **Procedural due process** protects individuals from being criminally punished without notice and an opportunity to be heard. Both substantive and procedural due processes ensure that individuals are not denied their life (capital punishment), liberty (incarceration), or property (forfeiture) *arbitrarily*.

 60.     That The United States Supreme Court, in Twining v. New Jersey, 211 U.S. 78, 29 S.Ct. 14, 24, (1908), stated that "Due Process requires that the court which assumes to determine the rights of

parties shall have jurisdiction."; citing Old Wayne Mut. Life Assoc. V. McDonough, 204 U. S. 8, 27 S. Ct. 236 (1907); Scott v McNeal, 154 U.S. 34, 14, S. Ct. 1108 (1894); Pennoyer v. Neff, 95 U.S. 714, 733 (1877).

61.    The state Supreme Courts have held that <u>those who aid, abet, advise, act upon and execute the order of a judge who acts without jurisdiction are equally guilty</u>. They are equally guilty of a crime against the U.S. Government.

62.    Defendant Thorton in her various sua sponte orders violated the FIRST and FOURTEENTH amendment rights of the Plaintiff when she blocked access to the Monmouth county court.

63.    The U.S. Supreme Court has backed that idea with numerous cases supporting public access to trials. "The right to attend criminal trials is implicit in the guarantees of the First Amendment," Justice Warren Burger wrote in the landmark **Richmond Newspaper Inc. v. Virginia** decision in the 1980s.  Taylor Smith, a lawyer for the South Carolina Press Association, said the First Amendment protects the rights of a public trial. A trial typically involves several public figures in South Carolina, such as a judge, solicitors, the police and public defenders, he added. The Supreme Court also found in 2010 that a crowded courtroom was not enough of a reason to close it to the public. The 2010 **Presley v. Georgia** case focused on a defendant's family member who was trying to watch jury selection in a crowded courtroom. The court found barring the member violated the accused's rights.

64.    The Due Process Clause incorporated the common-law rule requiring recusal when a judge has "a direct, personal, substantial, pecuniary interest" in a case, <u>Tumey v. Ohio</u>, 273 U.S. at 523, but this Court [U.S. Supreme Court] has also identified additional instances which, as an objective matter, require recusal where "the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable".  <u>Withrow v. Larkin</u>, 421 U.S. 35, 47 (1975). Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him.  <u>Taylor v. Hayes</u>, 418 U.S. 488, 501-03 (1974).

65.    Not only is a biased decision maker constitutionally unacceptable but "our system of law has always endeavored to prevent even the probability of unfairness".  <u>In re Murchison</u>, <u>supra</u>, at 136; cf. <u>Tumey v. Ohio</u>, 273 U.S. 510, 532 (1927).  See also, <u>DeNike v. Cupo</u>, 196 N.J. 502, 506 (2008).

66.    The proper standard to assess defendant's request for recusal is set forth in <u>DeNike v. Cupo</u>, 196 N.J. 502, 517 (2008): "Would a reasonable, fully informed person have doubts about the judge's impartiality?" As the analysis section in the opinion reveals, the standard calls for an individualized consideration of the facts in a given case.

67.    Defendant Thorton in conspiring with Def. Ford has acted without any Jurisdiction under color of law while clearly violating Federal law codified under *42 U.S.C. §§ 1981, 1985(2), 1988.*

68.    The Defendant has acted without any jurisdiction, her actions are outside the scope of any judicial authority, or immunity, pursuant  Mireles v. Waco, 502 U.S. 9, 12 (1991)


## FRANCES HODGSON

1.    On January 12, 2019 this Plaintiff had filed an emergent motion to stay the Sheriff sale on the former marital residence located at 5 Lons Ln Jackson, NJ 08527 under Dkt# F-20634-16 to have more time to amicably sell the property for a large profit with potential agreement with his ex-wife thru the family court intervention.

2.    On February 14, 2019, presiding judge Francis Hodgson Jr P.J. Ch. GRANTED Plaintiff's fee waiver application to proceed on the applied for application;  later that day via a sua sponte second order, vacated the fee waiver by simply citing a "previous order by Judge Ford dated December 19, 2018". See **EXHIBIT "10" and "11"**

3.    Def' <u>Hodgson's second order vacating the fee waiver relief failed to cite any findings of original FACTS, pursuant NJ R. 1:7-4, and thus was without jurisdiction in law.</u>

4.    The malfeasance and misfeasance of judicial actor Marlene Lynch Ford, A.J.S.C., in collusion with Monmouth county judicial actor Frances Hodgson CH J.S.C.

5.    The **due process clause** states, "No person shall…be deprived of life, liberty, or property, without due process of law." The federal due process clause is mirrored in the Fourteenth Amendment, which guarantees due process of law in *state* criminal prosecutions. **Substantive due process** protects individuals from an unreasonable loss of substantive rights, such as the right to speak freely and the right to privacy. **Procedural due process** protects individuals from being criminally punished without notice and an opportunity to be heard. Both substantive and procedural

due processes ensure that individuals are not denied their life (capital punishment), liberty (incarceration), or property (forfeiture) *arbitrarily*.

6.    That The United States Supreme Court, in Twining v. New Jersey, 211 U.S. 78, 29 S.Ct. 14, 24, (1908), stated that "Due Process requires that the court which assumes to determine the rights of parties shall have jurisdiction."; citing Old Wayne Mut. Life Assoc. V. McDonough, 204 U. S. 8, 27 S. Ct. 236 (1907); Scott v McNeal, 154 U.S. 34, 14, S. Ct. 1108 (1894); Pennoyer v. Neff, 95 U.S. 714, 733 (1877).

7.    The state Supreme Courts have held that <u>those who aid, abet, advise, act upon and execute the order of a judge who acts without jurisdiction are equally guilty</u>. They are equally guilty of a crime against the U.S. Government.

8.    Defendant Hodgson in his sua sponte order to vacate the fee waiver after first granting it, violated the FIRST and FOURTEENTH amendment rights of the Plaintiff when he blocked access to the Ocean county court.

9.    The U.S. Supreme Court has backed that idea with numerous cases supporting public access to trials. "The right to attend criminal trials is implicit in the guarantees of the First Amendment," Justice Warren Burger wrote in the landmark **Richmond Newspaper Inc. v. Virginia** decision in the 1980s.  Taylor Smith, a lawyer for the South Carolina Press Association, said the First Amendment protects the rights of a public trial. A trial typically involves several public figures in South Carolina, such as a judge, solicitors, the police and public defenders, he added. The Supreme Court also found in 2010 that a crowded courtroom was not enough of a reason to close it to the public. The 2010 **Presley v. Georgia** case focused on a defendant's family member who was trying to watch jury selection in a crowded courtroom. The court found barring the member violated the accused's rights.

10.    The Due Process Clause incorporated the common-law rule requiring recusal when a judge has "a direct, personal, substantial, pecuniary interest" in a case, <u>Tumey v. Ohio</u>, 273 U.S. at 523, but this Court [U.S. Supreme Court] has also identified additional instances which, as an objective matter, require recusal where "the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable".  <u>Withrow v. Larkin</u>, 421 U.S. 35, 47 (1975). Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him.  <u>Taylor v.</u>

Hayes, 418 U.S. 488, 501-03 (1974).

11.    Not only is a biased decision maker constitutionally unacceptable but "our system of law has always endeavored to prevent even the probability of unfairness". In re Murchison, supra, at 136; cf. Tumey v. Ohio, 273 U.S. 510, 532 (1927). See also, DeNike v. Cupo, 196 N.J. 502, 506 (2008).

12.    The proper standard to assess defendant's request for recusal is set forth in DeNike v. Cupo, 196 N.J. 502, 517 (2008): "Would a reasonable, fully informed person have doubts about the judge's impartiality?" As the analysis section in the opinion reveals, the standard calls for an individualized consideration of the facts in a given case.

13.    Defendant Hodgson denied a quiet title motion permitting the sheriff sale of the Plaintiff's home, was nonresponsive to the Plaintiff's request for assistance form the court and caused financial damages to the Plaintiff. Defendant Hodgson has willfully conspired with Defendant Ford and has violated *42 U.S.C. §§ 1981,1985(2), 1986, and 1988.* Having full knowledge of the case and refusing to rule upon the Plaintiffs motion in a manner constant with the interest of justice.

14.    The Defendant has acted without any jurisdiction while conspiring with Def. Ford, his actions are outside the scope of any judicial authority, or immunity, pursuant Mireles v. Waco, 502 U.S. 9, 12 (1991)

### JUDICIAL IMMUNITY
### AS IT APPLIES TO THE INSTANT CASE

1.    **This Plaintiff has demonstrated the violations by these defendant judges not only satisfy the requirements in Mireles v. Waco, 502 U.S. 9, 12 (1991) but also unequivocally prove constitutionally violations by repeated judicial misconduct and complete disregard for the judicial canons.**

2.    The acts of the state-court judges were not judicial acts and absolute judicial immunity does not apply.

3.    The act of declaring and branding the plaintiff as a "Vexatious Litigant" without compliance with NJ Rule 1:7-4 lacks jurisdiction, for which this judge cannot seek protection given by the absolute immunity doctrine.

4. The unlawful act of confiscating and surrendering plaintiff's U.S. passport to opposing counsel in a domestic relations case is not a judicial function that is within the authority of these individuals and does not entitle to absolute immunity.

5. The act of issuing unlawful bench arrest warrants of the plaintiff was an attempt to compel and extract substantial cash payments to personal friends and acquaintance attorneys and constitutes federal kidnapping, and extortion, and is not a judicial act, and is outside the scope of any judicial authority, and not entitled to judicial immunity.

6. The Supreme Court of the United States said "The resolution of immunity questions requires a balance between the evils inevitable in any available alternative. In situations of abuse of office, an action for damages may offer the only realistic avenue for vindication of Constitutional guarantees." Government immunity violates the common law maxim that everyone shall have a remedy for an injury done to his person or property. It is well established that a question of immunity to suit under *42 U.S.C. §1983* et seq. raises an issue of Federal law and that state law cannot immunize conduct of state actors which may otherwise violate constitutional rights. The Supreme Court held that:

> **"Conduct by persons acting under color of state law which is wrongful under 42 *U.S.C. § 1983 or 42 U.S.C. § 1985* cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution ensures that proper construction may be enforced. "The immunity claim raises a question of federal law.**

Through § 1983, Congress sought "to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." Accordingly, it authorized suits to redress deprivations of civil rights by persons acting under color of any [state] statute, ordinance, regulation, custom, or usage." *42 U. S. C. § 1983*. The requirement of action under color of state law means that the judicial defendants become liable for tortious acts they commit precisely because of their authority as judicial officers.

These judicial defendants are state judicial officers sued in their individual capacities and are "persons" within the persons" meaning of § 1983. Unlike official-capacity defendants-who are not "persons" because they assume the identity of the government that employs them, officers

sued in their personal capacity come to the court as individuals and thus fit comfortably within the statutory term "person," Moreover, § 1983's authorization of suits to redress deprivations of civil rights by persons acting under color of state law means that judicial defendants may be held liable for the torts committed precisely because of their authority as judicial officials. That the acts are both within the official's authority and constitute the performance of court functions should not be considered acts of the State that cannot give rise to a personal-capacity action against these defendants. That contention ignores the Supreme Court's holding that § 1983 was enacted to enforce provisions of the Fourteenth Amendment against those who carry a badge of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.

7.      Therefore, the Defendants in the case at bar are individuals as stated in Federal law and are properly sued in this complaint.

8.      State Judges are quick to cry "Judicial Immunity" whenever an accusation of this nature lands in their court.  The validity of the complaint is put aside, they only say "I have no responsibility for my actions".  This extent of abuse has been recognized by the courts when it has, on its own merits, been considered.  A finding that the judges were outside their judicial authority was not required. Judges whose abuse of office is characteristic of the judicial defendants in this case have been held liable for damages.  The Supreme Court of the United States said in *Butz* v. *Economou*, 438 US 506,98 S.Ct.2901(1978) "The resolution of immunity questions requires a balance between the evils inevitable in any available alternative.  In situations of abuse of office, an action for damages may offer the only realistic avenue for vindication of Constitutional guarantees."

9.      Even the state Courts have held that State Judges do not have immunity.  It was most eloquently stated in *Rabon* v. *Rowen Memorial Hosp*., Inc. 269 NS1, 13, 152 S.E.2d 485, 493 (1967) that, "Immunity fosters neglect and breeds irresponsibility, while liability promotes care and caution, which caution and care is owed by the Government to its people."

10. And in 42 U.S.C.A. 1983 *Shore* v. *Howard*, 414F.Supp. 379  the court was definitive in saying, "There is no Judicial immunity to civil actions for equitable relief under the Civil Rights Act of 1871."

11. It was decided that, "Government immunity violates the common law maxim that everyone shall have a remedy for an injury done to his person or property." in the case of *Fireman's Ins. Co. of Newark, N.J.* v. *Washburn County*, 2 Wis.2d 214,85 N.W.2d 840 (1957).

12. It is well established that a question of immunity to suit under 42 U.S.C. §1983 et seq. raises an issue of Federal law and that state law cannot immunize conduct of state actors which may otherwise violate constitutional rights.  The Supreme Court held in *Martinez* v. *California,* 444 U.S. 227, 284 n.8 (1980) that:

> "Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or 42 U.S.C. § 1985 cannot be immunized by state law.  A construction of the federal statute[1] which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that proper construction may be enforced.    See *McLaughlin* v. *Tilendis,* 398 F.2d 287, 290(7th Cir. 1968)    "The immunity claim raises a question of federal law. . . ."

13. If immunity from liability were granted, carte blanche, to anyone or any class of state officials, it would serve to deny the right to redress for wrongs and torts committed under color of law.  The very intent of the civil rights act of 1871 is to insure that these wrongs and torts are actionable.  If there be any truth to the notion that, "Justice Will Be Done,"  Judges and Court officers should be measured by an even more stringent set of rules than ordinary citizens, and by a higher authority.  The terrible swift sword of justice is an awesome weapon when improperly wielded.

14. The judicial defendants are properly sued, by plaintiff Babinski, in their individual capacity for tortious acts committed under color of law.  The right to sue turns on the fact that their tortious acts were committed in their official capacity under color of law.  The suit in this case is properly against the judicial defendants in their individual capacity for acts performed in their official capacity and under color of law.

---

[1]  There is no Federal Statute granting immunity to State Judges.  State judicial officers sometimes assume and receive immunity by way of doctrine and precedent.  The civil rights act was targeted to invade prejudicial state judicial actors.

15. Through § 1983, Congress sought "to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." *Monroe* v. *Pape*, 365 U. S. 167, 172 (1961).  Accordingly, it authorized suits to redress deprivations of civil rights by persons acting under color of any [state] statute, ordinance, regulation, custom, or usage."  42 U. S. C. § 1983.  The requirement of action under color of state law means that the judicial defendants become liable for tortious acts they commit precisely because of their authority as judicial officers.

16. The judicial defendants are state judicial officers sued in their individual capacities, and are "persons" within the persons" meaning of § 1983.  Unlike official-capacity defendants-who are not "persons"  because they assume the identity of the government that employs them, in *Will* v. *Michigan Dept.,of State Police*, 491 U.S. 58, 71, officers sued in their personal capacity come to the court as individuals and thus fit comfortably within the statutory term "person," cf.  491 U.S., at 71, n.10.  Moreover, § 1983's authorization of suits to redress deprivations of civil rights by persons acting under color of state law means that judicial defendants may be held liable for the torts committed precisely because of their authority as judicial officials.  That the acts are both within the official's authority and constitute the performance of court functions should not be considered acts of the State that cannot give rise to a personal-capacity action against these defendants.  That contention ignores the Supreme Court's holding that § 1983 was enacted to enforce provisions of the Fourteenth Amendment against those who carry a badge of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it. *Scheuer* v. *Rhodes*, 416 U.S. 232, 243.

17. The Eleventh Amendment does not bar § 1983 personal-capacity suits against state officials in federal court.  Id., at 237, 238.  *Will's* language concerning suits against state officials cannot be read as establishing the limits of liability under the Amendment.  Although imposing personal liability on state judicial officers may hamper their performance of public duties, such concerns pale compared to the damage done in a judicial immunity environment.

18. Supreme Court Justice Marshall's opinion in *Briscoe* v. *LaHue*, 103 S.Ct. 1108 at 1121 (1983), contains the following dissertation on immunity based on congressional intent when the Civil Rights Act was enacted:

19. At petitioners' urging, the Court has extensively examined the legislative history of §2 of the 1871 Ku Klux Klan Act, 17 Stat. 13, now codified as 42 U.S.C. § 1985(3). However, the forerunner of § 1983 was §1 of the 1871 Act, not §2. As the majority points out, ante, at 12, 16, the two sections differ significantly in their language and purpose. It is thus hardly surprising that debates over §2 shed little light on §1. In my view the inquiry should focus on the history of §1. Only by examining the genesis of that provision can it be determined whether Congress intended to abrogate certain common-law immunities.

20.    The origin of §1 is not open to serious question. The language and concept of the provision were derived in large part from §2 of the Civil Rights Act of 1866, 14 Stat. 27. The author of §1 clearly stated the relationship between the two acts in introducing the 1871 measure:

> "My first inquiry as to the warrant which we have for enacting such a section as this [§1 of the 1871 Act]. The model for it will be found in the second section of the act of April 9, 1866, known as the `Civil Rights Act.' *THAT SECTION PROVIDES A CRIMINAL PROCEEDING IN IDENTICALLY THE SAME CASE AS THIS ONE PROVIDES A CIVIL REMEDY FOR*, except that the deprivation under color of State law must, under the Civil Rights Act, have been on account of race, color, of former slavery. This section of the bill, *ON THE SAME STATE OF FACTS*, not only provides a civil remedy for persons whose former condition may have been that of slaves, but to all people where, under color of State law, they or any of them may be deprived of rights to which they are entitled under the Constitution by reason and virtue of their national citizenship." Cong. Globe, 42nd Cong., 1st Sess. at App. 689(1871)(emphasis added)

Because the two provisions are so intimately connected, a full examination of the history of §1 must begin with §2 of the 1866 Act.

The Civil Rights Act of 1866 was the first federal statute to provide broad protection in the field of civil rights. . . .

21. The liability of judicial officials and all official participants in state judicial proceedings under §2 was explicitly and repeatedly affirmed.  The notion of immunity for such was thoroughly discredited.  The Senate sponsor of the Act deemed the idea "akin to the maxim of the English law that the King can do no wrong.  It places officials above the law.  It is the very doctrine out of which the rebellion [the Civil War] was hatched."  Cong. Globe, 39th Cong., 1st Sess. 1758(1866)(Sen.Trumbull).  *Id*., at 1155(Rep. Eldridge).  See also *Id.*,at 1778(Sen. Johnson, member of the Senate Judiciary Committee)(§2 of the 1866 Act "strikes at the judicial department of the governments of the States").

22. Two unsuccessful efforts were made to amend §2.  First, Representative Miller introduced an amendment to exempt state judges from criminal liability.  *Id.*, at 1156.  Second, and of particular significance, Representative Bingham introduced an amendment to substitute a civil action for criminal sanctions contained in the proposal.  *Id.*,at 1266, 1271-1272. The sponsor of the 1866 Act, Representative Wilson, opposed the amendment largely on the ground that it would place the financial burden of protecting civil rights on poor individuals instead of government. *Id.*, at 1295. At the same time he stressed that there was "no difference in the principal involved" between a civil remedy and a criminal sanction.

23. After the 1866 bill passed the Senate and House, President Andrew Johnson vetoed it.  His opposition was based in part on the fact that §2 of the bill "invades the judicial power of the State."  Veto Message, in *Id.*, at 1680.  The President warned that "judges of the State courts...[and]marshals and sheriffs, who should, as ministerial officers, execute processes, sanctioned by the State laws and issued by State judges in execution of their judgements, could be brought before other tribunals and there subjected to fine and imprisonment for the performance of the duties which the State law might impose." *Ibid.*  Within two weeks, both the Senate and the House overrode the veto.  Various Congressmen responded to the President's criticisms and freely admitted that §2 of the legislation was aimed at state judicial systems.  As a member of the House Judiciary committee, Representative Lawrence, declared: "I answer it is better to invade the judicial power of the State than to permit it to invade, strike down, and destroy the civil

rights of citizens.  A judicial power perverted to such uses should be speedily invaded. The grievance would be insignificant." *Id.*, at 1837.  See also *Id.*, at 1758 (response of Sen. Trumbull to President's veto message); *id.,* at 1838 (statement of Rep. Clarke).  The bill became law on April 9, 1866This Court has from time to time read §1983 against the "background" of common-law tort liability.  Far more pertinent to this case, however, is the background provided by the 1866 Civil Rights Act.  Representative Bingham, who had introduced the amendment to substitute civil liability for criminal liability in the 1866 Act had become chairman of the House Judiciary Committee by the time of the 42d Congress.  Senator Trumbull, the Senate sponsor of the 1866 Act, was chairman of the Senate Judiciary Committee in 1871.  Representative Shellabarger, who had participated in the debates on the 1866 legislation, drafted the 1871 Act.

24. Congress was well aware that the "model" for §1 of the 1871 law could be found in the 1866 Civil Rights act.  Cong. Globe, 42d Cong., 1st Sess. App. 68 (1871) (Rep. Shellabarger).  the manager of the bill in the Senate, George Edmunds, stressed that §1 "gives a civil remedy parallel to the penal provision" in the Civil Rights Act.  "If this penal section is valid, and no one dares controvert it, the civil remedy is legal and unquestionable." Id., at 461.  See also is., at 429 (Rep. McHenry in opposition) ("The first section of the bill is intended as an amendment of the civil rights act"); id., at 3385 (Rep. Arthur in opposition) (§1 is "cumulative, as far as it goes, with certain provisions in the civil rights bill.")

25. The fact that §2 of the Civil Rights Act was the model for §1 of the 1871 Act explains why the debates in the 42d Congress on §1 were so perfunctory.  Of all the measures in the Ku Klux Klan Act, §1 generated the least controversy since it merely provided a civil counterpart to the far more controversial criminal provision in the 1866 Act.  See id., at 568 (Sen. Edmunds) ("The first section is one that I believe nobody objects to"); id., at 313 (Rep. Burchard) ("To the first section, giving an injured party redress by suit at law in the United States courts in the cases enumerated, I can see no objections.")  *Monell* v. *Department of Social Services,* 436 U.S., at 665 (debate on §1 was limited and the section passed without amendment); Developments in the Law -- Section 1983 and Federalism, 90 Harv. L. Rev. 1133, 1155, (1977).

26. Opponents of §1 of the 1871 Act repeated the same arguments that had been made against §2 of the 1866 Act. They warned of the liability for judicial officers that would result from enactment of §1. Indeed, in portraying the inevitable consequences of the 1871 Act, Senator Thurman pointed to criminal prosecutions of state judicial officers that had already taken place under the 1866 Act. These statements can hardly be dismissed as exaggerated rhetoric from opponents of the 1871 act. Instead, they simply reflect the fact that the battle over liability for those integral to the judicial process had already been fought in 1866 when Congress adopted the far more serious criminal sanction aimed at state judicial systems." Section 1, in contrast provided for "the mild remedy of a civil action." Cong. Globe, 42d Cong., 1st Sess. 482 (1871) (Rep. Wilson, member of the House Judiciary Committee). So it was not surprising that the arguments of the opponents to the 1871 Act would fall on deaf ears. It is also noteworthy that Rep. Shellabarger, who was hardly reluctant to interrupt speakers who were misconstruing his proposal, never disputed the opponents' characterizations with regard to the liability of state judicial officers.

27. To assume that congress, which had enacted a criminal sanction directed against state judicial officials, intended *sub silentio* to exempt those same officials from the civil counterpart approaches the incredible. Sheriffs and marshals, while performing a quintessentially judicial function such as serving process, were clearly liable under the 1866 Act, notwithstanding President Johnson's objections. Because, as Representative Shellabarger stated, §1 of the 1871 Act provided a civil remedy "in identically the same case" or " on the same state of facts" as §2 of the 1866 Act, it obviously overrode whatever immunity many have existed at common law for these participants in the judicial process in 1871.

28. Congress clearly intended judicial defendants to be responsible for their acts in violation of § 1983 et. seq. The discussions on the congressional floor in 1866 and 1871 were plain that the state judiciary should not be excluded from liability under the Civil Rights Act. As a member of the House Judiciary committee(see above), Representative Lawrence, declared: " . . .it is better to invade the judicial power of the State than to permit it to invade, strike down,

and destroy the civil rights of citizens.  A judicial power perverted to such uses should be speedily invaded.  The grievance would be insignificant."  Congress then passed the bill and it was law.  The law did not grant judicial immunity. Judicial immunity was then created by the courts.  The courts do not have the constitutional standing to immunize a class of persons to the law.

29.    There has never been a question of judicial immunity in any action except that judges might be immune from civil liability.  In *Lake* v. *Speziale* 580 F.Supp. 1318 (1984)  the Superior Court Judges of the State were maintained as a defendant class.  Since the Civil Rights Act was enacted the courts have at various times upheld or denied judicial immunity and immunity for other court officers. When judicial immunity was reestablished it was not on the statutes or the Act but by judges acting in defense of their colleagues and based on the common law of our English past.  It was on the doctrine of, "The King can do no wrong," as extended to the king's judges.

30.      The Civil Rights Act was enacted in 1871 to establish a broad avenue for citizens with civil rights complaints against all state officials to travel to Federal Court.  It is the state courts and enforcement officers that are the specific target of the Act.  It is only the state judicial defendants that  ". . . have the power to prevent . . . the commission of same."   The pendulum is now swinging toward denying judicial immunity and immunity for other court officers.  In *Lake Supra,* the District Court for the district of Connecticut not only allowed a civil action to proceed against state Superior Court Judges but it maintained the "Superior Court Judges of the state of Connecticut" as the defendant class.  By maintaining the class the Court for all intent and purposes exhibited no concern for mal-feasance, non-feasance and non-judicial acts of the individual judges but made the good and bad judges equally responsible to uphold the laws and Constitution.  This even extends the lack of consideration to qualified immunity.  It demonstrates an unqualified disregard of judicial immunity in Civil Rights actions by the court.

31. It is clear that the intent of the Legislators in 1871 was to provide an avenue of redress in which the people could file civil suit against state court officers and Judges.  The concept of liability

but only for certain kinds of civil relief is repugnant to the constitution.  That the Federal Court has jurisdiction to proceed against state judicial officials is not at question.  The Federal Court has often granted injunctive relief.  The question is whether the Federal Court trying a case against state judicial defendants may impose only injunctive relief to prevent future wrongs by the state judicial defendants or may grant redress to all negligent or deliberate tortious acts by the state judicial defendants.  It was not the intent of congress to allow injunctive relief and disallow compensatory and punitive relief.

32. **The concept of Judicial immunity finds its origin in Common Law of England.  Our system of jurisprudence was created on a foundation of English common law.  There are two mitigating reasons why we should look skeptically at the common law doctrines bequeathed to us.  The first reason is readily apparent; our forefathers didn't like English rule and revolted.  The revolution was successful and we established our own government, constitution and laws.  The doctrine of, "The King can do no wrong" as was extended to the king's judges is not and should not be a part of our legal heritage.**  The second reason is that even though we forswear English law as mitigating in the instant case we cannot take English law as the foundation of our laws without accepting the fact that its evolution did not end when our forefathers revolted against England.  After our country was established, English law continued to grow and change.  English jurisprudence has grown to permit civil judicial liability claims.  If the argument for judicial immunity is founded on English Common Law it is founded on axiom that no longer exists.  See *Hodgson* v. *Scarlett,* 106 Eng. Rep. 86, 91 (K.B. 1818) (Holroyd J.) and *Kendillon* v. *Maltby* 174 Eng. Rep. 562, 566 (N.P. 1842) (Lord Denman, C.J.).

33. The idea that judicial defendants are not the direct target of the civil rights act is dispelled by the language of § 1986:

"**EVERY** person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of same,  neglects or refuses to do, if such wrongful act be committed, shall be liable to the party

injured, or his legal representatives, for all damages for such wrongful act, which such person by reasonable diligence could have prevented...." (emphasis added).

34.    The law addresses "**EVERY** person," it noes not exclude anyone, not even the state judiciary.   The judicial defendants "fit comfortably" in the "**EVERY** person" description.   If the "person" addressed by § 1983 et seq. is not the state judicial officer in court where the wrongs complained of occur who is it?   There is no one else in the court or anywhere else that has the power to prevent the wrongs described.   The only person that fits the description in § 1986 of who "...shall be liable to the party injured..." is the judge.   The language and the intent of the legislators is too clear to circumvent and overrides existent doctrine and precedent.   Since the civil rights act became law it was not amended to exclude judicial defendants.   The only immunity granted was by other judges improperly protecting their state colleagues. It is equally incredible to assume that the framers of the Civil Rights Act intended to foreclose jurisdiction in cases relying on diversity of citizenship that fall below the dollar threshold for jurisdiction since diversity jurisdiction has a dollar amount threshold.   If that were the case judicial liability would attach in cases within a state for injunctive relief, but in diversity jurisdiction injunctive relief would also be barred if the claimed amount were insufficient to pass muster.   The amount of damages could not pass muster if the judicial defendants were excused since they are the prime target of civil relief under §1 of the Civil Rights Act of 1871.   This would then bar injunctive relief in cases of diversity jurisdiction.   It was also clearly not the intent of Congress to allow any judicial immunity in Civil Rights Act litigation involving diversity jurisdiction.   It was the expressed intent of the Congress while passing the Civil Rights Act to provide the citizens with the right to litigate for torts and wrongs as civil liability against "any person" including the state judiciary, in the Federal Courts.

35.    Now that the state judiciary is running amuck on the constitution it is well past time to hold their feet to the fire.   When statements like, "We are setting aside the Constitution for today"[2] issue from the state bench it is past time for the Federal Courts

---

[2]    Hon. Vincent Salem Ahto in reply to litigant's request for enforcement of his Civil Rights, *Rodetsky* v. *Bauman* FM-23289-90 Un-Reported.

to extinguish this outrageous behavior for all time.  This writer would prefer a judge burn "Old Glory" on his bench than set aside the constitution for even one second.

36.    The acts by the state judges complained of were committed outside the strict confines of judicial authority.  By acting outside the Constitution and their judicial authority, these perpetrators of Constitutional demise pierced their own veil of judicial immunity if any had heretofore existed.

37.    Even if the state Judicial defendants successfully evade liability for civil damages by way of judicial immunity the immunity does not extend to a claim for costs under §1988 nor to injunctive relief and they should not be dismissed as defendants.

38.    The loss of liberty, property and Constitutionally guaranteed civil rights that flowed from these persons operating under color of law, to plaintiff Mark Babinski is therefore actionable under the Civil Rights Act, Title 42 §1983, §1985, §1986, §1988 and this court has jurisdiction of all parties pursuant to 28 U.S.C. § 1331 and §1343(a).

## <u>COUNT ONE</u>

## <u>VIOLATIONS OF 29 CFR 870.10 AND CORAM NON JUDICE AGAINST DEFENDANTS EINBINDER, FORD, DORAN, AND SCHRON</u>

1.  Title IV-D DOES NOT allow jurisdiction on individuals who ONLY received 1099 income as an independent worker; alleged arrears are void as Plaintiff formerly as an independent business owner is and was ALWAYS EXCLUDED from any child support payments pursuant 29 CFR 870.10.

2.  Keith In  re Ricky D. Jones pursuant to 15 U.S.C. § 1673 as incorporated into Ohio Rev. Code § 2329.66(A)(17).    Because this court concludes that Ohio's exemption scheme incorporates 15 U.S.C. § 1673 and that this exemption extends to the earnings of independent contractors, the

Trustee's objection is overruled and the claimed exemption is allowed.  The bench warrant issued November 28,2017 is in direct violation of **22 USC § 7102.** This is Abuse or threatened abuse of law or legal process; on the issuance of the outstanding bench warrant.

3. Furthermore Zia Shaikh the alleged obligor is a state-citizen retaining all privileges and immunities of article IV section 2 of the constitution for the United States of America and not to be confused with a United States Citizen asserting the privileges and immunities clause of the 14th amendment3.

**THE UNDERSIGNED IS A STATE-CITIZEN DOMICILED IN A "state" OF THE UNITED STATES OF AMERICA WHO OWES HIS ALLEGIENCE TO THE JURISDICTION4 WHERE HE IS DOMICILED AND IS NOT A UNITED STATES CITIZEN RIGHTS OF THE UNITED STATES 5.**

4. The undersigned Plaintiff is a state-citizen who is contesting the court's personal jurisdiction and under UNIFORM INTERSTATE FAMILY SUPPORT ACT Section 201(2)6 the undersigned state-citizen was not serviced with a summons within the jurisdiction of this State7.

5. The undersigned Plaintiff is a state-citizen who is contesting the court's personal jurisdiction and is not making a general appearance and this responsive document is evidence that the undersigned state-citizen is making an appearance cf. "special appearance"  [*The undersigned understands that Special Appearance has been abolished under 12(b) federal rules and procedures, but the undersigned is a state-citizen and not domiciled in the State (See footnote # 4)*

---

3 ***Jones v. Temmer, 829 F. Supp. 1226 - Dist. Court, D. Colorado 1993*** "*The privileges and immunities clause of the Fourteenth Amendment protects very few rights because it neither incorporates any of the Bill of Rights nor protects all rights of individual citizens. See Slaughter-House Cases, 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1873). Instead, this provision protects only those rights peculiar to being a citizen of the federal government; it does not protect those rights which relate to state citizenship.*"

4 The same person may be at the same time a citizen of the United States and a citizen of a State, but his rights of citizenship under one of these governments will be different from those he has under the other.
- in **_United States v. Cruikshank, 1876_**

5 In 1871, Congress created by 28 USC Section 3002 (15), the corporation UNITED STATES

6 SECTION 201. BASES FOR JURISDICTION OVER NONRESIDENT.
In a proceeding to establish, enforce, or modify a support order or to determine parentage, a tribunal of this State may exercise personal jurisdiction over a nonresident individual [or the individual's guardian or conservator] if: (2) the individual submits to the jurisdiction of this State by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction;

7 28 USC Section 3002(14)"State" means any of the several States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Marianas, or any territory or possession of the United States.

*of the UNITED STATES (see footnote # 2)*] but as a state-citizen retains all rights and   privileges under article IV Section 2 of the constitution for the united States of America.

6.   In 1871, Congress created by 28 USC Section 3002 (15), the corporation UNITED STATES and not to be confused with the united States of America.

7.   There are two distinct differences between man or woman and a person.8 A man or woman are living and breathing state-citizens born in the united states of America, that can be proven by introducing into the court a true copy of a birth-certificate on bond paper.

8.   State-citizens are born with inalienable rights secured by the Bill of Rights in the constitution for the united States and state constitution.

9.   28 USC Section 3002, defining the UNITED STATES, in all upper case because it is defined as a corporation, and a person9 is defined as a corporation as well by 42 USC Section 1301(a)(3) for child support enforcement under federal statutes 42 USC Sections 651-669(b) is an individual, a trust or estate, a partnership, or a corporation, which is not to be confused with the definition of a man.

10.   A man or woman are living and breathing people; are similar to the people who declared their inalienable rights in the Declaration of Independence.

11.   Congress is not permitted to create laws which redefine terms of a man or woman with inalienable rights created by God into a *person*, that is not a living and breathing being, but is a dead entity called an estate, corporation, partnership, unincorporated association etc., that are meant to remove inalienable rights.

12.   This court and the individual Judge or Judge Surrogate presiding over the expedited proceedings is now informed that the undersigned is a man, a state-citizen asserting and invoking privileges and immunities from Article IV Section 2 of the constitution for the united States of America and not a person, UNITED STATES CITIZEN, and this court must provide written proof of jurisdiction and without written proof this court is without jurisdiction to issue a judgment for child support in violation of due process.

---

8 28 USC section 3002(10)"***Person"*** includes a natural person (including an individual Indian), a corporation, a partnership, an unincorporated association, a trust, or an estate, or any other public or private entity, including a State or local government or an Indian tribe.
9 "Person"- 42 USC Section 1301(a) (3)The term "person" means an individual, a trust or estate, a partnership, or a corporation

13. Plaintiff, Zia H. Shaikh is a state-citizen who is not submitting to the OCEAN county court's jurisdiction or tribunal and contesting personal jurisdiction10 by making his appearance under duress because he was threatened that failure to appear may cause arrest or suspension of driving privileges.

**14.** The Ocean county, NJ superior court is not located within the geographical area of the term "state" defined under 42 USC sections 651-669(b) as ***"42 USC section 410(h) the term "state" includes the District of Columbia, the commonwealth of Puerto rico, the Virgin islands, Guam, and American samoa." And thereby the court does not have subject matter jurisdiction for the federal statutes under 42 USC sections 651-669(b)11 required for the enforcement of child support and paternity to receive AFDC funds.***

15. Ocean county, NJ superior court probation department, an agency for the State Child Support Enforcement12 and state court lacks personal jurisdiction over the Plaintiff, who is a living man, a state-citizen and not a person13:

    I.      Court must take judicial notice of an adjudicated fact14, [*Please refer to footnote # 7*] the state court is required to enforce state child support under federal statutes 42 USC Sections 651-669(b)15 and because the state court and state child

---

10 ***EXTENDED PERSONAL JURISDICTION SECTION 201(2). BASES FOR JURISDICTION OVER NONRESIDENT***. In a proceeding to establish, enforce, or modify a support order or to determine parentage, a tribunal of this State may exercise personal jurisdiction over a nonresident individual [or the individual's guardian or conservator] if: (2) the individual submits to the jurisdiction of this State by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction;

11 **The Supreme Court in Matter Blessing v. Freestone, 520 US 329 - Supreme Court 1997** stated "To qualify for federal AFDC funds, the State must certify that it will operate a child support enforcement program that conforms with the numerous requirements set forth in Title IV—D of the Social Security Act, 42 U. S. C. §§ 651-669b"

12 **42 USC Section 654(3)** "*State plan for child and spousal support provide for the establishment or designation of a single and separate organizational unit, which meets such staffing and organizational requirements as the Secretary may by regulation prescribe, within the State to administer the plan;*"

13 "***Person***"- 42 USC Section 1301(a) (3)The term "person" means an individual, a trust or estate, a partnership, or a corporation.

14 **The Supreme Court in Matter Blessing v. Freestone, 520 US 329 - Supreme Court 1997**

15 **The Supreme Court in Matter Blessing v. Freestone, 520 US 329 - Supreme Court 1997 stated** "*To qualify for federal AFDC funds, the State must certify that it will operate a child support enforcement program that conforms with the numerous requirements set forth in Title IV—D of the Social Security Act, 42 U. S. C. §§ 651-669b*"

support agency is not within the geographical location of the term "State,"16 both entities lack personal jurisdiction over the body of the man, Zia H. Shaikh who is a NEW JERSEY state-citizen.

II.   It is a fact; the Plaintiff is a man domiciled in the state of NEW JERSEY with natural rights that are secured by the state constitution.

III.  It is a fact, the Plaintiff is not a "*person*"17 defined under 42 USC Section 1301(a)(3) "*means an individual, a trust or estate, a partnership, or a corporation*."

IV.   It is a fact, the Plaintiff is not domiciled within the geographical location of the term "State" defined under *42 USC Section 410(h) "The term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa*."

V.    It is a fact, the state of NEW JERSEY is not within the geographical location of *District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa* and cannot enforce the federal statutes for child support enforcement under 42 USC Sections 651-669(b).

## VOID JUDGMENT WAS ISSUED CORAM NON JUDICE

16.   All these named defendants refused to *Set Aside a Void Judgment CORAM NON JUDICE WRIT OF ERROR CORAM NOBIS CF. FEDERAL RULE 60(B)(4).*

A void judgment was issued *coram non judice* by a person not a judge, where the united states supreme court held that a judgment was void for lack of jurisdiction.

Further proof, the judgment is void, arises from the 4th amendment of the bill of rights protects against search and seizure of property unless by warrant or a fair trial by jury as guaranteed by the 7th amendment. The support order is not a warrant nor arose from a trial by jury. "*The proposition that the judgment of a court lacking jurisdiction is void traces back to the English Year Books, see*

---

16 42 USC Section 410(h)The term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa.

17 "Person"- 42 USC Section 1301(a) (3)The term "person" means an individual, a trust or estate, a partnership, or a corporation.

*Bowser v. Collins, Y. B. Mich. 22 Edw. IV, f. 30, pl. 11, 145 Eng. Rep. 97 (Ex. Ch. 1482), and was made settled law by Lord Coke in Case of the Marshalsea, 10 Coke Rep. 68b, 77a, 77 Eng. Rep. 1027, 1041 (K. B. 1612). Traditionally that proposition was embodied in the phrase coram non judice, "before a person not a judge" — meaning, in effect, that the proceeding in question was not a judicial proceeding because lawful judicial authority was not present, and could therefore not yield a judgment. American courts invalidated, or denied recognition to, judgments that violated this common-law principle long before the Fourteenth Amendment was adopted. See, e. g., Grumon v. Raymond, 1 Conn. 40 (1814); Picquet v. Swan, 19 F. Cas. 609 (No. 11,134) (CC Mass. 1828); Dunn v. Dunn, 4 Paige 425 (N. Y. Ch. 1834); Evans v. Instine, 7 Ohio 273 (1835); Steel v. Smith, 7 Watts & Serg. 447 (Pa. 1844); Boswell's Lessee v. Otis, 9 How. 336, 350 (1850). In Pennoyer v. Neff, 95 U. S. 714, 732 (1878), we announced that the judgment of a court lacking personal jurisdiction violated the Due Process Clause of the Fourteenth Amendment as well."- **Burnham v. Superior Court 495 U.S. 604 (1990)**

      **WHEREFORE,** the Plaintiff Zia Shaikh respectfully demands judgement against all of the Defendants as named herein individually, jointly, and severally for:

(H) Damages in the amount of $40 Million ($40,000,000.00);

(I) Punitive Damages in the amount of $40 Million ($40,000,000.00);

(J) Awarding of the cost of the suit;

(K) Interest;

(L) Damages for pain, suffering and irreparable harm to the Plaintiff's reputation;

(M)   Nunc pro tunc orders to reverse the judgments against the Plaintiff;

(N) Any further relief this court deems just in the instant case.

## COUNT TWO

## VIOLATIONS OF 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988. AGAINST DEFENDANTS EINBINDER, FORD, DORAN, SCHRON, THORTON AND HODGSON.

1. The Plaintiff in this instant case incorporates by reference all of the allegations stated in the above paragraphs herein.

2. Section 1983 enables persons whose constitutional rights have been violated to sue the wrongdoer personally for redress. In the typical case, liability will attach if (1) the defendant has acted "under color of" state law, and (2) the defendant's action deprived the plaintiff of some right, privilege, or immunity secured by the Constitution (or federal "laws"). Unconstitutional behavior of state actors taken in the course of employment can potentially subject them to personal liability under § 1983. Although private actors, in contrast to governmental actors, ordinarily cannot violate the Constitution because they do not engage in "state action," they sometimes may be liable under § 1983 when they act in concert with officials or when their acts are otherwise fairly attributable to the government as is the case here.

3. The Defendants in this instant case have performed administrative, non-judicial acts, and are subject to personal liability.

4. This complaint involves the tortious acts of various state judges acting as administrators under the color of state law. They have illegally kidnapped the Plaintiff and are guilty of openly denying him access to the Ocean County and Monmouth County court systems, and consequently, they have denied him the opportunity to regain custody of his minor children, and recoup financial losses.

**WHEREFORE,** the Plaintiff Zia Shaikh respectfully demands judgment against all of the Defendants as named herein individually, jointly, and severally for:

(A) Damages in the amount of $40 Million ($40,000,000.00);

(B) Punitive Damages in the amount of $40 Million ($40,000,000.00);

(C) Awarding of the cost of the suit;

(D) Interest;

(E) Damages for pain, suffering and irreparable harm to the Plaintiff's reputation;

(F) Issue a Nunc pro tunc order reversing the previous orders of these judges;

(G) Any further relief this court deems just in the instant case.

## COUNT THREE

## VIOLATIONS OF THE FOURTH, FOURTEENTH, AND EIGHTH AMENDMENTS, TO THE CONSTITUTION OF THE UNITED STATES AGAINST DEFENDANTS EINBINDER, FORD, DORAN, SCHRON, THORTON AND HODGSON.

1. The Plaintiff in this instant case incorporates by reference all of the allegations stated in the above paragraphs herein.

2. The Fourth Amendment of the U.S. Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation.

3. The Fourteenth Amendment of the United States Constitution states that: All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunity of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**WHEREFORE,** the Plaintiff Zia Shaikh respectfully demands judgement against all of the Defendants as named herein individually, jointly, and severally for:

(O) Damages in the amount of $40 Million ($40,000,000.00);

(P) Punitive Damages in the amount of $40 Million ($40,000,000.00);

(Q) Awarding of the cost of the suit;

(R) Interest;

(S) Damages for pain, suffering and irreparable harm to the Plaintiff's reputation;

(T) Nunc pro tunc orders to reverse the judgments against the Plaintiff;

(U) Any further relief this court deems just in the instant case.

## DAMAGE CLAIMS AGAINST ALL OF THE DEFENDANTS

1. Plaintiff Zia Shaikh incorporates by reference all of the allegations states herein as fully set forth.

2. In addition to the requested compensatory damages the Plaintiff hereby makes a claim for punitive damages against the Defendants named herein in an amount to be settled at trial for deliberate and malicious acts in violation of the United States constitution and Federal laws as alleged in the complaint.

3. The aforementioned acts of the Defendants were so gross and culpable in nature that they arise to the standard of reckless indifference and vicious disregard for the law.

4. The Defendants as named herein have in fact committed the acts and omissions as named herein and have subjected the Plaintiff to outrageous and improper treatment thereby causing unnecessary financial loss and emotional distress.

5. The Defendant's actions were so egregious, and they should be punished setting an example for others so that they are not repeated.

6. The recovery of punitive damages is proper under the Federal Civil Rights statutes for reckless and/or callous indifference to protected Federal rights.

## COUNT FOUR
## R.I.C.O VIOLATIONS  AGAINST DEFENDANTS
## EINBINDER, FORD, DORAN, SCHRON, THORTON AND HODGSON.

1. The aforementioned Defendants in this case have acted in concert to violate the R.I.C.O statute codified at *18 U.S.C. § 1961*. Which states in pertinent part: (1)"racketeering activity" means (A) any act or threat involving **kidnapping, bribery, or extortion**. As shown herein the Defendants have clearly acted to violate the R.I.CO statute by there actions both alone and in conspiracy with one another against the Plaintiff.

2.  There are civil penalties for these actions under the statute which states: (a)The district courts of the United States shall have jurisdiction to prevent and restrain violations of

section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons. The Plaintiff seeks redress under these laws and all of the other laws as named herein.

**CONCLUSION**

1. The Plaintiff Zia Shaikh has demonstrated violations cited in Mireles v. Waco, 502 U.S. 9, 12 (1991) and that the civil rights act was enacted with the intent of preventing abuses of state power by "persons" acting under color of law, including judges.
2. The central purpose of the Civil Rights Act is to guarantee individuals the protections and remedies afforded by the constitution and laws of the United States. This can only be accomplished by a fair and consistent application of § 1983 et seq.
3. Accordingly, Plaintiff Zia Shaikh submits that the Judicial Defendants are not entitled to immunity from liability in a suit under the Civil Rights Act, by application of Federal law as written and the clear intent of the legislators who wrote it. The immunity later granted by a non-legislative organ of government is, therefore, *Void Ab Initio*.

**BLANK**

## **JURY DEMAND**

Plaintiff Zia Shaikh hereby demands that this case be tried by a jury of twelve in the District Court of the United States in and for the District of New Jersey.

Respectfully submitted.

Zia Shaikh
200 Village Ctr Dr
Unit 7381
Freehold, NJ 07728
(732)766-5466

Submitted: July 27,2021

## <u>CERTIFICATE OF SERVICE</u>

**I, Zia Shaikh** hereby certify under the penalty of perjury that copies of the foregoing

have been sent to the Defending parties in accordance with the rules of Civil Procedure, and have

been served upon the defendants by Process server and delivered to the following parties:

MADELINE F. EINBINDER J.S.C.
1142 Satinwood Ln
Toms River, NJ 08755

MARLENE L. FORD A.J.S.C.
2193 S Tiiu Ct
Toms River NJ 08755-1378

JOHN M. DORAN J.S.C.
118 Washington St,
Toms River, NJ 08754

DEBORAH H. SCHRON J.S.C.
2345 Donna Dee Ct
Toms River NJ 08755-1394

FRANCIS Robert HODGSON, Jr. J.S.C.
118 Washington St,
Toms River, NJ 08754

LISA P. THORTON
33 Mechanic St,
Freehold, NJ 07728

Respectfully Submitted,

Zia Shaikh, Pro Se

July 27,2021

# EXHIBIT # 1

SUPERIOR COURT OF NEW JERSEY
OCEAN COUNTY
CHANCERY DIVISION, FAMILY PART
DOCKET NO. FM-15-500-14W

ZIA H. SHAIKH,                   )
                                 )
                                 )
          Plaintiff,             )          TRANSCRIPT
                                 )             OF
     vs.                         )     ORDER TO SHOW CAUSE
                                 )     CASE MANAGEMENT CONFERENCE
LAURA L. GERMADNIG-SHAIKH, )
                                 )
          Defendant.             )
X------------------------X

                    Place:   Ocean County Courthouse
                             100 Hooper Avenue, Courtroom 4
                             Toms River, NJ 08754

                    Date:    April 23, 2014

BEFORE:

     THE HONORABLE MADELIN F. EINBINDER, J.S.C.


TRANSCRIPT ORDERED BY:

     AUGUST J. LANDI, ESQUIRE

APPEARANCES:

     STEVEN A. ZABARSKY, ESQUIRE
     (Citta, Holzapfel & Zabarsky)
     Attorney for Defendant.




                         Transcriber:
                         *Geraldine Famularo*
                         19 Cherrywood Circle
                         Brick, New Jersey 08724
                         (732)458-8298

                         Sound Recorded
                         By Court Personnel

<u>I N D E X</u>

<u>ORDER TO SHOW CAUSE</u>
    Argument........................4
    Ruling.........................21

<u>EXHIBIT</u>
D-1    Text Messages.......................25
               ***************

<u>CASE MANAGEMENT CONFERENCE</u>
Pages 29 to page 41

---

Colloquy          3

(The matter was called at 10:18 a.m.)

THE COURT: This is the matter of Zia Shaikh versus Laura Germadnig, Docket No. FM-15-500-14W.

Your appearance for the record, Counsel.

MR. ZABARSKY: Thank you, Your Honor. Steven A. Zabarsky of Citta, Holzapfel & Zabarsky, 248 Washington Street, Toms River, New Jersey, on behalf of the defendant Laura Germadnig-Shaikh.

THE COURT: Okay. And your client is present, as well. However, the other side, neither Mr. Shaikh, who is the litigant, nor his attorney Stephanie Brown, are present; is that correct, Mr. Zabarsky?

MR. ZABARSKY: That's my understanding, Your Honor.  For the record, I have never personally met Stephanie Brown nor Mr. Shaikh. My client, to my left, has advised obviously she knows her husband and she is familiar, has knowledge of Ms. Brown, has seen her before, and would be able to identify her if she had come into the courthouse this morning. For the record, we've been here since about quarter to nine in the hallway where the front entrance is, and my client has indicated to me she has not seen Ms. Brown nor her husband come through the doorway.

THE COURT: Okay. Just for the record, it's approximately 10:20 right now.

1          I have the file in front of me, Mr. Zabarsky,
2  and I note that notice has been sent to both parties,
3  specifically to Ms. Brown at her address which is
4  listed at 129 Shire Drive in Sewell, New Jersey and to
5  Mr. Shaikh at a P.O. Box in Wall, New Jersey.
6          Do you know whether or not Mr. Shaikh has
7  received other notice, independent notice of today's
8  hearing?
9          MR. ZABARSKY: Your Honor, the only thing I
10  can say is -- and certainly if Your Honor would like to
11  place my client under oath -- my client advised me that
12  through text messaging, I believe, she has communicated
13  with Mr. Shaikh as early as last week and acknowledged,
14  "I'll see you next week," because we have, quote, back
15  to back Court. They also -- Mr. and Mrs. Shaikh have
16  Court in, I believe, Jackson Municipal Court tomorrow
17  pending a disorderly persons offense charges that arose
18  out of a Temporary Restraining Order back in, I
19  believe, in January of 2014. So to her understanding,
20  Mr. Shaikh is aware of today's date, as well.
21          THE COURT: Okay. And I should correct the
22  record. Apparently the notice that I was speaking about
23  that went to a Wall address was to a previous attorney
24  of Ms. Germadnig, a Cathleen Christie Coneeny.
25          MR. ZABARSKY: That's correct. And I had

---

Colloquy          5

1  submitted a substitution of attorney.
2          THE COURT: Yes. As I indicated, I was looking
3  at the file and the Court had granted an extent Order
4  extending time to answer the Complaint, and that's
5  where Ms. Coneeny's name was.
6          I should note for the record also that my
7  chambers tried to call Ms. Brown at the number that's
8  listed on the calendar which is 856-904-9390. My
9  secretary left a message on the voice mail of Ms.
10  Brown. She indicated to me that it appeared to be a
11  cell phone. And then she tried to call again and it
12  indicated that the voice mail box was full. As soon as
13  my clerk comes back, we'll try that number again.
14          In any event -- oh, there she is. We're going
15  to try calling that number.
16      (Court attempts to place phone call. Voice mail
17               box full.)
18          THE COURT: Okay. Well, it appears that Ms.
19  Brown's mailbox is still full.
20          It's my understanding, Mr. Zabarsky, that
21  notice was sent to her as indicated in the file. She's
22  not here today. So I don't know if you filled out a
23  Case Management Order on your own at this point.
24          MR. ZABARSKY: Your Honor, I didn't fill it
25  out. I didn't know if Your Honor wanted to do it on the

1    record with me because, for the record, Your Honor, on
2    April 2nd of 2014 on behalf of my client I filed a
3    Notice of Motion for pendente lite relief which is
4    pending before the Court returnable on Friday, May 2nd,
5    and there are several areas of relief in that motion
6    which would, I think, interrelate or relate with the
7    Case Management Order with regard to counsel fees,
8    expert fees, forensic evaluations.
9         And also at this point I want to alert the
10   Court that my client has received recent information in
11   the last several days directly from Mr. Shaikh as well
12   as I received several letters subsequent to the filing
13   of the motion which now calls into question a bit of an
14   emergent problem which I certainly would have addressed
15   with Ms. Brown with Your Honor as part of the case
16   management conference, but she's not here. And I still
17   on behalf of my client believe I need to place on the
18   record those issues and seek some type of relief. I'm
19   not asking for the Court to adjudicate the motion
20   today. Of course not. It's on for Friday, May 2nd. I
21   will note for the record that I confirmed with Your
22   Honor's law clerk that she does not nor have I received
23   any response to the notice of motion. The response
24   would have been due Thursday, April 17, pursuant to
25   Court Rule, I believe, fifteen days prior to the return

---

1    date. It is now Wednesday, April 23, and that response
2    is five days late. Technically my response to the
3    plaintiff's response would be due, in fact, tomorrow.
4    So there is no response or opposition to the motion at
5    this time. And again I'll leave it to Your Honor. I'm
6    not asking to argue the motion today. Your Honor's
7    calendar is what it is. I'll leave it to Your Honor how
8    to adjudicate the matter, but there is no response
9    that's been filed and there are several issues in the
10   motion which based upon the motion, I'm fairly
11   confident Mr. Shaikh has now acted upon and has caused
12   a bit of an emergency under the circumstances.
13        THE COURT: All right. Why don't you approach
14   with the Case Management Order, Mr. Zabarsky.
15        MR. ZABARSKY: Thank you. It's filled out in
16   terms of the information of counsel and caption, but I
17   didn't take the liberty of attempting to check off any
18   of the boxes. I didn't know what the Court's pleasure
19   would be on that.
20        THE COURT: Okay. So I do have a copy of the
21   motion that you filed in front of me and it is
22   indicated that it was filed on April 2nd of 2014. For
23   the record, I have not had the opportunity to review it
24   because, as you've indicated, it's not on until next
25   Friday and as you are aware the Court has motions every

Argument

1    Friday. So I'm not that far ahead. In any event, I have
2    not reviewed it yet. However, I was just paging through
3    your reliefs as you were speaking, and there's some
4    documentation here about restraining the plaintiff from
5    liquidating, hypothecating, encumbering, or otherwise
6    disposing of any marital assets, and things of that
7    nature. I don't know if that's what you're speaking
8    about.
9         MR. ZABARSKY: That's one of the areas clearly
10   we have proof that he's -- now that he received the
11   motion, he's in the process of doing just that.
12        THE COURT: So why don't you tell me what you
13   would like the Court to hear today that you have filed
14   for already.
15        MR. ZABARSKY: Thank you. I appreciate that.
16   Number one, which would be the exclusive occupancy of
17   the residence. As of January when the Restraining Order
18   was entered, even though no Final Order was entered
19   and, in fact, the Temporary was dismissed in January,
20   in fact, my client had the exclusive occupancy of the
21   residence with the children. For the record, they're
22   fourteen, ten, and six, Malana, Sonya, and Harrison.
23   And Mr. Shaikh was living at a friend's house at
24   another address and was not living in the marital
25   residence. The motion requested to continue exactly

Argument                                    9

1    what was occurring as of April 2 which at that point
2    had been more than three months, and that was to have
3    my client continue with exclusive occupancy of the
4    house with the children. Since the filing of the
5    motion, about two weeks Mr. Shaikh decided he was going
6    to let himself back into the house, and it's been
7    extreme stressful and harassing for my client from
8    locks -- and again, my client is here. She can testify
9    under oath -- removing locks from doors and constant,
10   constant verbal harassment. We just asked for the
11   status quo to be maintained, which is my client had
12   exclusive occupancy of the marital residence with the
13   children and that Mr. Shaikh continue to reside outside
14   of the house.
15        We did attach for Your Honor under Exhibit B
16   and we did outline in my client's certification several
17   incidents which occurred between -- Exhibit A is a
18   police report; Exhibit B is an audio -- between Mr.
19   Shaikh and daughter Malana where he actually kicked
20   her. It's in the police report. DYFS was called and did
21   an investigation. And the audio portion is from about
22   February where he uses extreme profanity in the
23   presence of Malana and actually, as you hear on the
24   audio, he brings her to tears to the point where she
25   says, "I just wanna slap myself across the face." It

Argument

```
 1        became very, very brutal, Your Honor. And that was
 2        during a time when he was not residing in the
 3        residence. So his return to the residence has become
 4        quite disturbing. If Your Honor looks at page seven of
 5        my client's certification Your Honor will see in detail
 6        what is contained on the CD audio itself. It's page
 7        seven into eight and, quite frankly, it's shocking.
 8                THE COURT: Paragraph thirteen?
 9                MR. ZABARSKY: I'm sorry?
10                THE COURT: Paragraph thirteen?
11                MR. ZABARSKY: Yes, Your Honor.
12                THE COURT: Okay.
13                MR. ZABARSKY: And that's why we must insist
14        that Your Honor consider the exclusive occupancy of the
15        marital residence to the defendant and the children,
16        and have the defendant not have the ability to go to
17        that residence or stay in the residence.
18                THE COURT: You're indicating because of what
19        you've just placed on the record, Mr. Zabarsky, that
20        you are making, I guess, kind of an oral motion to the
21        Court that if the Court were not to grant this relief
22        there would be immediate and irreparable harm.
23                MR. ZABARSKY: Yes, Your Honor, an oral Order
24        To Show Cause, in essence, taking what's already been
25        noticed to the plaintiff and his attorney, and asking
```

Argument                                    11

```
 1        Your Honor to consider it today as an emergent
 2        application under immediate and irreparable harm.
 3                Your Honor, you know, I had a long talk with
 4        my client. There's always that fine line, do you file
 5        it as an Order To Show Cause or do you file it as a
 6        motion. And I completely understand the Court's
 7        calendar and the economics of the Judiciary, and I am
 8        very reticent to file an application as an Order To
 9        Show Cause unless it becomes absolutely necessary. And
10        when this first occurred Mr. Shaikh was not living in
11        the house. So while this incident, in fact, occurred
12        and was extremely stressful for the daughter who at
13        that point refused to have any parenting time with him
14        at that point forward, he wasn't living in the house.
15        It's now become emergent because he's now moved himself
16        back into the house despite letters back and forth to
17        counsel.
18                And I quote a case called Degenaars,
19        D-E-G-E-N-A-A-R-S. I don't know if I actually brought
20        it with me, and I apologize to the Court. It's a case
21        that was decided by Judge Kraft up in Bergen years ago
22        when he was sitting as a Family Judge. And it stands
23        for the proposition that -- in that case it was rather
24        lengthy. It was, I think, maybe even seventeen months
25        -- but that a couple had been living separate and
```

```
 1   apart, and when the father attempted to move back into
 2   the house, even Judge Kraft said that can be considered
 3   by the Court to be harassing in nature, to be an
 4   imposition. The fact that the husband voluntarily
 5   removed himself and now attempts to come back, the
 6   Court can issue an Order for exclusive occupancy.
 7            And I just want to be clear he originally
 8   left because of a Temporary Restraining Order but
 9   shortly thereafter the Restraining Order was dismissed
10   and there was actually no Order in place keeping him
11   out of the marital residence. He voluntarily stood out
12   for those three months and it wasn't until this motion
13   was filed that he's now moved himself back into the
14   marital residence which is causing extreme emotion
15   distress to my client and to the children, Your Honor.
16   And so we ask for the Court to consider that part as an
17   emergent matter.
18            THE COURT: Your client, I'm sure, is aware
19   and I'm sure you've advised her, Mr. Zabarsky, that if
20   a situation gets to a point, she certainly is able to
21   file another Restraining Order, should the situation
22   require it.
23            MR. ZABARSKY: Yes, Your Honor. I did advise
24   her of that. At this point I believe Mr. Shaikh is well
25   aware of the law. There is in the record here before
```

```
 1   Your Honor on the audio an assault against Ms. Shaikh's
 2   friend, a person named Melissa --
 3            THE COURT: Who signed the Complaint.
 4            MR. ZABARSKY:  -- was present. Yes, there's
 5   an assault charge pending against him in Jackson
 6   Municipal Court. We submitted the proof and showed red
 7   marks on her neck. That assault is recorded live on
 8   that CD, as well. It's very alarming and it's very
 9   disturbing to listen to. But then again he was not
10   living at the house at the time. And, of course, Ms.
11   Shaikh's girlfriend didn't have the ability to get a
12   Restraining Order against him; she wouldn't qualify
13   under the Statute. So while it might not amount to
14   right now what's called Domestic Violence under the
15   Statute, clearly under that case and under the Roberts
16   case -- before there was a Domestic Violence Statute,
17   there was Roberts v Roberts where the Court could
18   decide based upon the circumstances to remove a party
19   from a marital residence under those extreme concerns.
20            THE COURT: Okay. What else, Mr. Zabarsky?
21            MR. ZABARSKY: Number two, we did ask for
22   temporary custody at this point. This leads into
23   another issue which is tied into number eleven which is
24   the children's passports, and it gets tied into the
25   liquidation of assets. Mr. Shaikh has possession of his
```

Argument

1    passport, my client's passport, and the two daughters'
2    passports. The son does not have a passports. We've
3    asked for them to be returned. He hasn't returned them.
4    He also was born and raised in Pakistan and can be
5    considered a Pakistan national. The concern is he may
6    attempt to use those passports -- and I can tell the
7    Court as an officer of the Court he has not said to my
8    clients, "I'm taking the kids and leaving town," or
9    anything like that. He did tell one of the daughters he
10   planned to take them to Dubai for a vacation at some
11   point, but at this point, Your Honor, Mr. Shaikh has
12   made it clear that he doesn't believe that my client is
13   entitled to, quote, "anything in this divorce." I have
14   some documents my client can testify to and I can place
15   on the record, and --
16           THE COURT: That's for another day, really.
17           MR. ZABARSKY: We're concerned about the issue
18   of him getting a plane with the children and the
19   passports. We spoke to the National State Department
20   with regard to children, with regard to the passports,
21   and they said that what you would want is to get a
22   Court Order that just says the children are not allowed
23   to travel outside of the United States with their names
24   and birth dates. We can supply that to the Court. We
25   would just ask under the circumstances, that that Order

Argument                                              15

1    -- there's been no planned vacations or anything, no
2    response. We did ask for the passports to be held in
3    escrow. But there may be nothing stopping Mr. Shaikh
4    from going to the Embassy, the Pakistani Embassy in
5    Washington and getting Pakistan passports, as told to
6    us by the State Department.
7            So we would just want an Order that says the
8    children are not allowed to travel outside of the
9    United States. We can give you their full names and
10   birth dates. Also that Mr. Shaikh, the plaintiff,
11   cannot apply for new passports for the children or, in
12   fact, for the defendant. We would just ask for that at
13   this point to give some level of comfort that there's
14   not going to be an issue with regard to that because
15   things have escalated.
16           THE COURT: Again you're indicating that if
17   the Court were not to consider this particular
18   application at this time there would be immediate and
19   irreparable harm that would result.
20           MR. ZABARSKY: Absolutely.
21           THE COURT: Okay. And I think you were talking
22   about the assets, as well.
23           MR. ZABARSKY: Yes. With regard to restraint,
24   that would number --
25           THE COURT: Number five.

1    MR. ZABARSKY: -- five. For the record, Your
2  Honor, two things have happened. My client will testify
3  if necessary. As an officer of the Court I hold in my
4  hand two documents which I can provide copies to the
5  Court. He just sent a text message to my client several
6  days ago that says, "Laura, remember my words. When
7  this is over we will be penniless and homeless as we
8  know it. Lawyers will be rich and I most likely will
9  lose all my licenses. The hardship cycle will repeat
10  again. Don't have the kids suffer." And so he's told
11  her flat out, "We are going to be penniless and
12  homeless," number one.
13    Number two, my client had only one asset in
14  her name. It was a TD Ameritrade IRA in her name only.
15  I have a copy of the statement here from April of 2013
16  showing it has in excess of $13,000 in it. My client
17  spoke to TD Ameritrade yesterday and they confirmed
18  that Mr. Shaikh has access and hacked her online email
19  account with TD Ameritrade through a password and, in
20  fact, the account was liquidated in a check to Mr.
21  Shaikh, the plaintiff, leaving $11.63 in the Ameritrade
22  account.
23    Also subsequent to the filing of the motion,
24  as confirmed by Mr. Shaikh's counsel, Stephanie Brown,
25  in a letter dated April 21 of 2014 our motion included

1  a request that my client maintain the Toyota Sequoia
2  for purposes of transporting the children and doing her
3  duties as a mother to care for the children. And we
4  received a letter April 21, 2004, and I quote from the
5  letter from Stephanie Brown.
6    "My ethical duty requires me to inform you
7  that my client has sold both of the other vehicles."
8    So he, in fact, according to Ms. Brown's
9  letter, sold his Audi which was worth $30,000; sold the
10  Toyota Sequoia; has liquidated the cars. We know he's
11  liquidated her account; and he stated in a text
12  message, "When this is over we will be penniless and
13  homeless."
14    Also for the record, we did attach to the
15  pleadings the fact that without my client's knowledge,
16  he listed the house for sale. That was an exhibit that
17  we provided to the Court under Exhibit -- I believe it
18  was Exhibit N with the Deed, and then behind the Deed
19  are listings on Zillo for their residence for sale for,
20  I think it was $595,000. There was an estimate and a
21  price. But in any event, he did list the house for sale
22  and we also asked that the house not be listed for sale
23  or have him remove that from any listing.
24    So he has tried to sell the house; he sold
25  the cars; he has liquidated my client's IRA, which is

1   unlawful. According to TD Ameritrade they are pursuing
2   him now. They said the check wasn't cashed. So they're
3   pursuing him now to try and get the money in the
4   account and close him out of having any access
5   whatsoever to the account. He could trade on the
6   account because that's what he does. He's licensed and
7   certified Series 6, Series 7, mortgages, insurance, and
8   investments. So while he could trade the account, he
9   can't ask for a check. Only my client can. Which is
10  what he did.
11          So we would ask the Court enter an Order
12  restraining Mr. Shaikh from incumbering, liquidating,
13  hypotheticating, or otherwise disposing of any marital
14  asset or account at this time since we know he's
15  already done that subsequent to the filing of the
16  motion. He waited until this motion was filed, and when
17  he read what was in the motion, quite frankly, Your
18  Honor, what he's now doing, he's doing exactly what the
19  motion asks him not to do, he's doing. Obviously we're
20  very concerned at this point.
21          And the only other matter that I think was
22  -- we'll deal with the cars on the return date. That's
23  not -- you know, there is a car available and my client
24  is using it. I did touch on the passport issue, the
25  temporary custody issue with the language, the

---

1   restraint on assets, and I think in terms of immediacy
2   -- oh, the only other thing is if Your Honor -- my
3   client had a cell phone with all of her contact
4   information, passwords, communications. Just an Order
5   -- she spoke to T-Mobile. T-Mobile said because it's
6   under his account name, they can't do what she wants
7   them to do. T-Mobile said if you can have in a Court
8   Order that just says place a mobile trace -- a mobile
9   security on it --
10          THE COURT: Ms. Germandig, why don't you stand
11  up for a minute and raise your right hand.
12  L A U R A   G E R M A D N I G - S H A I K H, THE
13  DEFENDANT, SWORN
14          THE CLERK: Please state your name for the
15  record.
16          MS. GERMADNIG-SHAIKH: Laura Germandig-Shaikh.
17          THE COURT: All right. And you just have to
18  speak up a little bit because everything that we're
19  saying is being recorded.
20          MS. GERMADNIG-SHAIKH: Yes. Okay.
21          THE COURT: Tell me about -- you spoke with
22  T-Mobile about the phone?
23          MS. GERMADNIG-SHAIKH: I spoke with them about
24  the phone. They said because I'm not the primary
25  account holder -- it's under my husband's account --

1   even though I had his Social, they said they cannot
2   release information as to where my phone was. 'Cause my
3   husband came into the bedroom since he's been back in
4   the house, picked the lock on the door -- I sleep with
5   the bedroom door locked and my two children sleep in
6   the bed with me in our master bedroom -- took my phone
7   out of my pocketbook that was next to the bed at night.
8   I have another phone which I got back in January. My
9   attorney said to get a different phone because I
10  believed he was hacking into the phone. But my original
11  phone that was with him had all the school's
12  information that they would contact me through the
13  school, and just other numbers, and email accounts, and
14  everything, and he can get into everything now.
15          THE COURT: Does it also have passwords --
16          MS. GERMADNIG-SHAIKH: Yes.
17          THE COURT:  -- to your accounts, as well?
18          MS. GERMADNIG-SHAIKH: Well, it has -- when
19  you would sign on onto the iPhone, it says you could
20  click on email, and emails would just come up. So you
21  wouldn't have to close it out and reopen it. So he
22  could view everything that was on there.
23          MR. ZABARSKY: So what we're asking for is, I
24  guess, a return of the cell phone. But as importantly,
25  an Order that says T-Mobile may track, security track

1   the whereabouts of the phone. And that way they can
2   tell my client where it's been and where it is right
3   now if it still exists and hasn't been destroyed.
4           THE COURT: Anything else, Mr. Zabarsky?
5           MR. ZABARSKY: Judge, that was the emergent
6   part. I think the other part of the motion that may be
7   dealt with today would be paragraph eight with regard
8   to expert fees for forensic and things of that nature
9   as part of the Case Management Order.
10          THE COURT: All right. Before we get to that,
11  let me rule on your oral application here.
12          So you've indicated for the record that there
13  was a motion filed. It was filed on April 2nd of 2014.
14  The return date of that motion is May 2nd which is next
15  Friday. You've represented to the Court that since the
16  filing of the motion, which I have to place on the
17  record, was not answered or opposed by the plaintiff
18  Mr. Shaikh or his attorney Stephanie Brown. You've
19  asked for numerous things. Since that time that the
20  motion has been filed and served Mr. Shaikh -- there
21  are several things that have happened that are
22  concerning.
23          One is that Mr. Shaikh has moved into the
24  home where the defendant resides with the three
25  children, fourteen, ten, and six. You've represented to

Ruling

1    the Court that since he's been back in the home,
2    there's been constant what you term verbal harassment
3    between Mr. Shaikh, the defendant, and the children,
4    and you pointed the Court towards information in your
5    originally filed motion which indicated that there was
6    an incident, a violent incident, between Mr. Shaikh and
7    the parties' daughter Malana.
8              Is she the fourteen-year old?
9              MR. ZABARSKY: Yes, Your Honor.
10             THE COURT:  -- fourteen-year old daughter
11   which necessitated Division involvement and also there
12   was a complaint generated by a friend of the
13   defendant's who was with the defendant on a specific
14   date. And I have read paragraph thirteen and the
15   language and the things that were said and which
16   occurred, and Mr. Shaikh's threats to call the
17   Division, take the kids away, things like that, talking
18   about their daughter in very vulgar terms, to say the
19   least.
20             And based upon your emergent application with
21   regard to the occupancy of the house, Mr. Zabarsky, I
22   will grant that request that the defendant and the
23   minor children are to maintain exclusive occupancy of
24   the marital residence located at 5 Lons Lane in
25   Jackson, New Jersey, and that Mr. Shaikh is to

Ruling                                    23

1    immediately by 5:00 today remove himself and whatever
2    personal belongings he feels are necessary from that
3    residence immediately and he is barred from that
4    residence until further Order of the Court.
5              With regard to your application that the
6    defendant since the motion -- actually, strike that --
7    I guess before the motion was filed it came to the
8    defendant's attention that had listed the marital home
9    for sale; is that correct, Mr. Zabarsky?
10             MR. ZABARSKY: Yes, Your Honor.
11             THE COURT: Okay. And I did look at the
12   exhibits which is listed under Exhibit N which has been
13   included with the motion, and there is a listing of
14   Zillo that the marital home which I've previously
15   placed on the record as 5 Lons Lane, Jackson, New
16   Jersey is listed for sale. So I would indicate for the
17   record that since I've just given the defendant
18   exclusive occupancy of that residence, that there would
19   be immediate and irreparable harm visited upon her and
20   the children if the listing were to be continued at
21   this time. So I will issue an Order restraining Mr.
22   Shaikh from listing the home for sale, and he should
23   remove the existing listing from the home by five p.m.
24   today, and that he is restrained from listing the home
25   pending further Order of the Court.

Ruling

```
 1              In addition, you've indicated to the Court
 2      and represented to the Court that since the filing of
 3      the motion Mr. Shaikh has liquidated an Ameritrade
 4      account which was solely in the defendant's name for
 5      some $13,000. Ameritrade is aware of that, and you've
 6      indicated that they are taking steps to remedy that.
 7      However, he has also sold cars that the defendant has
 8      used for the children, although you've indicated on the
 9      record that the defendant does have use of another
10      vehicle, and that he has taken the defendant's phone
11      without her permission which contained information that
12      she needs with regard to the children's school, her
13      email information, and everything -- contact
14      information that is contained on that phone.
15              So this Court feels that there would be
16      immediate and irreparable harm if this Court were not
17      to grant your request in that regard. So I will issue
18      an Order restraining Mr. Shaikh from liquidating,
19      hypothecating, incumbering, or otherwise disposing of
20      any marital asset until further Order of the Court; and
21      also order that T-Mobile may security track the
22      whereabouts of that particular phone.
23              Mr. Zabarsky, for purposes of today's
24      hearing, will you prepare an Order?
25              MR. ZABARSKY: Yes.
```

Ruling                                                    25

```
 1              THE COURT: And will you put the phone number
 2      on it so that T-Mobile will have it and that it was Ms.
 3      Germadnig's account.
 4              MR. ZABARSKY: Yes.
 5              THE COURT: Lastly, you've indicated that
 6      there is some concern with regard to the fact that Mr.
 7      Shaikh is from Pakistan and that two of the children do
 8      have passports. Apparently the son does not have a
 9      passport. And although Mr. Shaikh has not said anything
10      to Ms. Germadnig about taking the children out of the
11      country, there is some concern based upon an email --
12      actually strike that -- a text message, I guess, that
13      Ms. Germadnig received.
14              And, for the record, maybe we can mark that,
15      Mr. Zabarsky.
16              MR. ZABARSKY: May I approach, Your Honor?
17              THE COURT: Yes.
18              MR. ZABARSKY: This is a recent text message
19      that talks about being penniless and homeless.
20              THE COURT: Marijuana that as D-1 for today's
21      purposes.
22              MR. ZABARSKY: Thank you.
23              (D-1 marked for identification.)
24              MR. ZABARSKY: And for the record, Your Honor,
25      the representation was he told the daughter that he was
```

Ruling

```
 1    taking the children to Dubai and that when the daughter
 2    told my client, then she confronted Mr. Shaikh -- this
 3    is prior to the filing of the motion -- that he
 4    screamed and yelled at the daughter that she should
 5    never tell the mother what he says to them,
 6    specifically whether he's taking them out of the
 7    country.
 8            THE COURT: Okay. So that raises some concern
 9    additionally with the defendant that he may at some
10    point decide to take the children out of the country
11    without her knowledge or consent; is that correct, Mr.
12    Zabarsky?
13            MR. ZABARSKY: Exactly, Your Honor.
14            THE COURT: Okay. The Court finds that that
15    also rises to the level of immediate and irreparable
16    harm if this Court were not to grant the defendant's
17    request. So with regard to that particular request, I
18    will put a provision in the Order indicating that the
19    children are not permitted to travel outside of the
20    United States and that Mr. Shaikh cannot apply for any
21    new passports for any of the children or for Ms.
22    Germadnig until further Order of the Court.
23            With regard to the current passports, I don't
24    know if you were asking, Mr. Zabarsky, specifically --
25            MR. ZABARSKY: Well, we did ask for them to be
```

Ruling                                         27

```
 1    returned, yes, Your Honor.
 2            THE COURT: And I would --
 3            MR. ZABARSKY: I originally put in here to
 4    give them to my client or to me to be held in trust;
 5    whatever the Court's pleasure.
 6            THE COURT: I think it would be better to be
 7    returned to you, Mr. Zabarsky, to be held in trust for
 8    those passports for the children.  What about your
 9    client's passport?
10            MR. ZABARSKY: I would ask that hers, you
11    know, be returned to her. I'd just ask for the
12    children's passports at this time and my client's to be
13    returned to her.
14            THE COURT: Okay. So for purposes of today's
15    Order --
16            MR. ZABARSKY: I apologize, Your Honor. My
17    client was pointing out in our application we also
18    pointed out he took all their original Social Security
19    cards and birth certificates, as well, including my
20    client's. So we would ask for those back, as well. My
21    client can't even apply for a driver's license without
22    them. I mean, she has nothing.
23            THE COURT: Okay. So when were those taken,
24    Mr. Zabarsky?
25            MR. ZABARSKY: Prior to the filing of the
```

Ruling                                                    28

```
 1     application. That's why we put it in the motion.
 2              THE COURT: Okay. All right. So I think it
 3     would be easier, Mr. Zabarsky, just for him to turn
 4     over everything to you.
 5              MR. ZABARSKY: Fine. That's fine, Your Honor.
 6              THE COURT: And again I do find that there
 7     would be immediate -- that the defendant would suffer
 8     immediate and irreparable harm, as would the children,
 9     if they did not have their identifying information. So
10     Mr. Shaikh is ordered to turn over birth certificates,
11     original birth certificates, original Social Security
12     cards, and passports for the children as well as Ms.
13     Germadnig within, I'm going to say by Friday, which is
14     the 25th, I believe. By April 25th at five p.m. they
15     are to be turned over to the offices of Citta,
16     Holzapfel & Zabarsky to be held in trust until further
17     Order of the Court.
18              MR. ZABARSKY: Thank you.
19              THE COURT: I think that is everything that
20     you requested today, Mr. Zabarsky.
21              Now we have to deal with the Case Management
22     Order.
23              MR. ZABARSKY: Yes.
24              THE COURT: Okay. So this was a case
25     management conference that was held today.
```

Colloquy                                                  29

```
 1              Mr. Zabarsky, I would indicate that -- what
 2     are the issues that are in dispute here?
 3              MR. ZABARSKY: I would say -- I don't have the
 4     Case Management Order in front of me --
 5              THE COURT: Let's read through them. Cause of
 6     action?
 7              MR. ZABARSKY: I don't know that that's
 8     disputed. We're not disputing that, Your Honor.
 9              THE COURT: Okay. Alimony?
10              MR. ZABARSKY: Yes.
11              THE COURT: Equitable distribution; yes.
12              MR. ZABARSKY: Yes.
13              THE COURT: Child support; yes.
14              MR. ZABARSKY: Yes.
15              THE COURT: Medical insurance?
16              MR. ZABARSKY: Yes.
17              THE COURT: Life insurance?
18              MR. ZABARSKY: Yes.
19              THE COURT: Counsel fees?
20              MR. ZABARSKY: Yes.
21              THE COURT: Is custody an issue?
22              MR. ZABARSKY: Yes.
23              THE COURT: Okay. Case Information Statement
24     filed?
25              MR. ZABARSKY: We have filed one, Your Honor,
```

Colloquy

 1    with the motion. So that's filed.
 2            THE COURT: Okay.
 3            MR. ZABARSKY: There is not one filed by the
 4    plaintiff at this time.
 5            THE COURT: Okay. So I will indicate that a
 6    Case Information Statement is to be filed by the
 7    plaintiff by -- well, they haven't responded to this
 8    motion. I don't know how I'm supposed to set pendente
 9    lite support without a Case Information Statement.
10            MR. ZABARSKY: Well, Your Honor, that would be
11    for May 2nd, I assume.
12            THE COURT: Yes.
13            MR. ZABARSKY: And we've supplied a lot of
14    financial information to the Court --
15            THE COURT: Okay.
16            MR. ZABARSKY:  -- that we would think the
17    Court can act upon.
18            THE COURT: All right. So I'll require Mr.
19    Shaikh to file a Case Information Statement by May 1st.
20    That's next week.
21            MR. ZABARSKY: I was going to leave it to Your
22    Honor. It would be nice to have it for the motion.
23            THE COURT: I know, but at this point I
24    couldn't consider it. It's really late.
25            MR. ZABARSKY: I'll leave it to the Court.

---

Colloquy                                          31

 1            THE COURT: Yes.
 2            MR. ZABARSKY: I know that in one of Ms.
 3    Brown's letters, and I quote where she advised me of
 4    having the cars now being sold -- and, by the way, when
 5    I said my client has access to a car, she's using her
 6    mother's car at this point.
 7            THE COURT: Okay.
 8            MR. ZABARSKY: But we'll deal with that on the
 9    motion.
10            THE COURT: Right.
11            MR. ZABARSKY: I learned of happenstance for a
12    comment dropped on a paralegal who was aiding my client
13    and completing the debt section of the CIS. So at least
14    according to her letter, they're working on a CIS.
15            THE COURT: All right. Then how about April
16    28th? That's Monday.
17            MR. ZABARSKY: That's fine. Thank you.
18            THE COURT: Do you need Interrogatories or
19    anything like that?
20            MR. ZABARSKY: Your Honor, I've already
21    submitted my discovery request to the plaintiff. I have
22    not received requests from the plaintiff.
23            THE COURT: Okay. So the plaintiff shall
24    answer Interrogatories by -- when did you submit them?
25            MR. ZABARSKY: I don't have them with me.

Colloquy

```
 1        Probably prior to the motion.
 2             THE COURT: And that was filed --
 3             MR. ZABARSKY: April 2.
 4             THE COURT:  -- April 2nd. So I think May 15th
 5   is plenty of time for him to have answered them.
 6             Are there going to be any depositions that
 7   you're aware of?
 8             MR. ZABARSKY: Potentially, Your Honor.
 9             THE COURT: Okay. June 15th?
10             MR. ZABARSKY: Maybe. But there's going to be
11   a forensic in this, Your Honor. It's part of the
12   motion. I think that may be too early.
13             THE COURT: July 15th?
14             MR. ZABARSKY: Sounds better.
15             THE COURT: Proof of bank account balances,
16   pension, or other records?
17             MR. ZABARSKY: I would say pursuant to the
18   Notice to Produce, Your Honor, we did submit a Notice
19   to Produce to the plaintiff.
20             THE COURT: Okay.
21             MR. ZABARSKY: I guess maybe the same date as
22   the Interrogatories, 5/15.
23             THE COURT: Real estate appraisals; anything
24   about that yet?
25             MR. ZABARSKY: Yes, we'll need one from
```

Colloquy                                              33

```
 1   Benchmark just for the marital residence. We've not
 2   been able to find any other real estate in his name at
 3   this point. There was one other in a trust that was
 4   transferred out. So at this point it's just the marital
 5   residence, 5 Lons Lane. We would ask for Benchmark who
 6   I've always asked to be used. They're $500, and I'd ask
 7   that the plaintiff be solely responsible to pay for the
 8   appraisal.
 9             THE COURT: What -- are both parties employed,
10   or no?
11             MR. ZABARSKY: My client has been a stay at
12   home mother essentially for fifteen years, Your Honor;
13   has not worked for fifteen years.
14             THE COURT: I'll make the plaintiff solely
15   responsible pending final allocation of the case.
16             MR. ZABARSKY: Thank you, Your Honor.
17             THE COURT: Any date when you think Benchmark
18   should be able to do this?
19             MR. ZABARSKY: Benchmark is very efficient,
20   Your Honor, so I would say by May 3rd --
21             THE COURT: May 3rd?
22             MR. ZABARSKY:  -- May 30th would be fine.
23             THE COURT: May 30th?
24             MR. ZABARSKY: That would be fine, Your Honor.
25             THE COURT: Okay. Personalty appraisals?
```

Colloquy

1    MR. ZABARSKY: I don't think there really is
2    personality, to my knowledge, was told about
3    collectibles or anything of that nature.
4        THE COURT: Business appraisals?
5        MR. ZABARSKY: That's --
6        THE COURT: That, you said a forensic expert.
7        MR. ZABARSKY: Your Honor, there was gold and
8    silver through an account. My client is indicating she
9    believes he has real estate interests in other states.
10   I'm just saying at this point we don't know about that.
11       THE COURT: Right.
12       MR. ZABARSKY: If we find out about it, we can
13   always come back and ask for that.
14       THE COURT: Correct.
15       MR. ZABARSKY: I've explained that to my
16   client.
17       In number eight of my application, Judge, did
18   ask for a $10,000 retainer for Mr. Gunteski. This is a
19   gentleman who holds numerous certifications and
20   licenses with the State of New Jersey. He has multiple,
21   multiple, multiple investment companies, Progressive
22   Equity Partners, America's Retirement Planning
23   Partners, Progressing Alabama, multiple hedge funds,
24   on, and on, and on. So it is going to be essential that
25   we have a forensic retained. We did attach a copy of a

Colloquy                                              35

1    retainer agreement from Mr. Gunteski that asked for a
2    $10,000 retainer to commence his forensic work. That
3    was Exhibit Q. The letter was signed by Lynn Broggia
4    (phonetic) of Mr. Gunteski's office and was signed by
5    myself and my client on March 31. And the last page of
6    the letter before the signature page requested a
7    $10,000 retainer. We just received further information.
8    According to the New Jersey Office of the Attorney
9    General on August 30th, 2013 that American Retirement
10   Planning Partners actually, and I quote, "has currently
11   $13,765,000 in regulatory assets under management."
12   So this is going to be a substantial case. There has to
13   be a lot of forensic legwork on where these accounts
14   are.
15       To give Your Honor a quick example, we
16   attached to our pleading -- I don't want to argue the
17   motion, but just to point out, their checking account,
18   their own checking is in a Trust, Kiplinger's Trust. My
19   client can't even use it. It's Kiplinger's Trust.
20   That's the personal account that the expenses are spent
21   out of. So it's going to be a forensic, a heavy
22   forensic case.
23       THE COURT: Okay.
24       MR. ZABARSKY: We supplied to the Court
25   multiple, 90,000, $80,000 of checks that Mr. Shaikh

Colloquy

1  gets for doing his investment work for various people.
2  Clearly he has the funds, and more and more evidence is
3  being turned up every day. But at the end of the day he
4  clearly has the ability to pay this money. You know,
5  he'd like to get rid of my client for $50,000 in a
6  letter from Ms. Brown, but --
7          THE COURT: I appreciate the fact that there's
8  probably going to be a lot of legwork done by way of
9  forensic evaluations and things of that nature. But now
10  with regard to any emergent --
11          MR. ZABARSKY: No. We're in the case
12  management conference.
13          THE COURT: I understand that. But I'm just
14  saying at this point I understand that there may be
15  forensic accounting needed --
16          MR. ZABARSKY: Right.
17          THE COURT:  -- but I'm not going to release
18  any monies today in order to do that.
19          MR. ZABARSKY: Okay. That's fine. That's fine.
20  Can I argue that on May 2nd then?
21          THE COURT: Correct.
22          MR. ZABARSKY: Thank you, Your Honor. That's
23  fine.
24          THE COURT: Okay.
25          MR. ZABARSKY: Fine. Just indicate that the

Colloquy                                         37

1  defendant has signed a retainer agreement and has
2  retained Mr. Gunteski for doing her forensic services.
3  That will be for business valuation and cash flow
4  analysis.
5          THE COURT: One second.
6          MR. ZABARSKY: Thank you.
7      (After a pause)
8          THE COURT: For business evaluation and --
9          MR. ZABARSKY: Cash flow analysis.
10          THE COURT: Thank you.
11      (After a pause)
12          THE COURT: And I'm going to put business
13  appraisals to be completed by to be determined. Okay?
14          MR. ZABARSKY: Thank you, Your Honor.
15          THE COURT: Is there a pension, as well?
16          MR. ZABARSKY: No idea.
17          THE COURT: Okay. I'm not going to check that.
18          MR. ZABARSKY: Our listing shows, I think,
19  IRAs at this point.
20          THE COURT: Okay. A trial date to be
21  determined. Mr. Zabarsky, I'll ask you to sign this.
22  I'll sign it and I'll indicate that Ms. Brown did not
23  appear and we were unable to contact her.
24          MR. ZABARSKY: May I approach, Your Honor?
25          THE COURT: Yes. You can look it over first,

Colloquy

1    my chicken scratch.
2            MR. ZABARSKY: Thank you.
3            THE COURT: Okay. So I will sign this. We'll
4    give you copies for you and your client today, Mr.
5    Zabarsky. If you could, when you go back to your office
6    -- actually, you can email the Order --
7            MR. ZABARSKY: Form of Order?
8            THE COURT:  -- form of Order today to my
9    secretary which I'll sign today. I'm sure you want it
10   done today --
11           MR. ZABARSKY: Yes.
12           THE COURT:  -- since it's an emergent
13   application.
14           MR. ZABARSKY: Judge, my only other
15   observation is, one of the biggest concerns my client
16   has had is that he will show up at the school or will
17   do something where he just takes the children and
18   there's no pending Order that provides for any custody
19   whatsoever. So if he does that, my client has no
20   recourse, and that's a real problem, quite frankly.
21   I know Your Honor is reticent to deal with the custody
22   issue, but he was noticed to be here. It is a case
23   management. This was pending, and at a minimum, I would
24   ask the Court to at least enter an Order of temporary
25   custody to my client pending the return date of the

Colloquy                                          39

1    motion, just so there's an Order in place that she
2    doesn't have to worry that if he does take the
3    children, she has no way to stop him, prevent him. She
4    can't get the children returned to her because the
5    police will tell her, "Ma'am, this is a civil matter.
6    You need a Court Order. There's no Order that provides
7    that you even have custody. So if he has your children,
8    go to Court and get an Order." I don't want to be back
9    here on an Order To Show Cause before May 2nd. I really
10   don't.
11           THE COURT: So you're asking, Mr. Zabarsky,
12   for an Order vesting the defendant with temporary sole
13   legal custody; is that what you're asking?
14           MR. ZABARSKY: Yes, pending the return date.
15   There's been no response to our application.
16           THE COURT: Well, based on what you've
17   indicated on the record before and what you've just
18   said now, there is a concern that the Court that Mr.
19   Shaikh may try to take the children. So I do feel that
20   it rises to the level of immediate and irreparable harm
21   if the Court were not to grant that particular
22   application, as well. So for temporary purposes the
23   Court will issue an Order granting Ms. Germadnig sole
24   legal and residential custody of the three children
25   pending further Order of the Court.

Colloquy

```
 1                  MR. ZABARSKY: Yes, Your Honor. Okay.
 2                  THE COURT: Okay.
 3                  MR. ZABARSKY: I will type that up in my
 4       office and email that, Your Honor. I'll see your
 5       secretary for her email address.
 6                  THE COURT: Okay. Thank you, Mr. Zabarsky.
 7                  MR. ZABARSKY: And I'll wait for a copy, or --
 8                  THE COURT: I'm just going to sign it now. So
 9       you should get it momentarily.
10                  MR. ZABARSKY: Then I'll wait.
11                  THE COURT: Yes.
12                  MR. ZABARSKY: Thank you. Thank you for your
13       time this morning, Your Honor.
14                  THE COURT: You're welcome.
15           (After a pause)
16                  THE COURT: Oh, Mr. Zabarsky, I do note that
17       on this Order there is a fax number for Ms. Brown, as
18       well.
19                  MR. ZABARSKY: Yes.
20                  THE COURT: So I would ask -- you're going to
21       provide her with a copy of the Court's Order today as
22       well -- well, I think the Court will provide her with
23       the Case Management Order. But if you'd just provide
24       her with a copy of the Order that the Court just
25       entered.
```

Colloquy                                    41

```
 1                  MR. ZABARSKY: Certainly.
 2                  THE COURT: Okay.
 3                  MR. ZABARSKY: By telefax today.
 4                  THE COURT: Yes. And actually what I can do is
 5       put the return date of this particular oral application
 6       for next Friday, as well.
 7                  MR. ZABARSKY: Okay. Do you want me to reflect
 8       that in the Order, Your Honor?
 9                  THE COURT: Yes, please.
10                  MR. ZABARSKY: Okay.
11                  THE COURT: Thank you.
12                  MR. ZABARSKY: Thank you.
13                  (The matter concluded at 11:06 a.m.)
14                  ***************
15
16
17
18
19
20
21
22
23
24
25
```

42

1
2
3
4                    CERTIFICATION
5
6           I, Geraldine Famularo, the assigned
7    transcriber, do hereby certify the foregoing transcript
8    of proceedings on CD 4/23/14, index 10:18:35 to 11:06:43
9    is prepared in full compliance with the current Tran-
10   script Format for Judicial Proceedings and is a true and
11   accurate compressed transcript of the proceedings as
12   recorded.
13
14
15                                          #154
16   GERALDINE FAMULARO                 AOC NUMBER
17
18                     Dated: August 18, 2014

# EXHIBIT # 2

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION-FAMILY PART
OCEAN COUNTY

Zia H. Shaikh

Plaintiff,

vs.

Laura L. Germadnig-Shaikh          Docket No. FM15-500-14W

Defendant,          CIVIL ACTION
ORDER

FILED

OCT 1 5 2014

MADELINE F. EINBINDER, P.J.F.P.

This matter having been opened to this Court on application and the Court having conducted a hearing, and for just cause shown;

It is, on this ___15___ day of __October__, 2014, ORDERED as follows:

As a result of a return of an Order to Show Cause brought on behalf of defendant, Laura Germadnig-Shaikh, it is hereby Ordered, for the reasons placed on the record,

(1) A bench warrant shall issue against plaintiff Zia H. Shaikh, for his continuing failure to abide by the Court's Orders and to turn over his passport to the office of Steven A. Zabarsky, Esq. If plaintiff turns over his passport as previously Ordered, either counsel may notify the Court to vacate this warrant.

Dated:

_____ J.S.C.

p. 1 of 2

② A bench warrant shall issue against plaintiff Z i H. Shaikh, for his continuing failure to abide by the Court's Orders to pay the mortgage and utilities for the marital residence, with a purge amount of $18,892.56, due and owing to JCP+L and Select Portfolio Service, Inc. In the event plaintiff makes this payment in full, either Counsel may contact the Court to vacate this warrant.

③ A bench warrant shall issue against plaintiff Z à H. Shaikh, for his continuing failure to abide by the Court's Orders to pay Steven A. Zaborsky, Esq. for counsel fees in the amount of $35,827.41, R. Joseph Gunteski, Esq., CPA in the amount of $10,000.00, and Patricia Germadnig in the amount of $5,000.00, for a total purge amount of $50,827.41. In the event plaintiff makes this payment in full, either Counsel may contact the Court to vacate this warrant.

Dated: 10/15/14

MADELIN F. EINBINDER, P.J.F.P.   J.S.C.

p 2 of 2

December 16, 2014

Honorable Madelin F. Einbinder, P.J.F.P.

Chambers  -   Ocean County Court House                    **Via Facsimile to 732.929.4716**

100 Hooper Avenue - First Floor; Toms River, NJ 08754

Dear Judge EINBINDER:

RE:  ZIA SHAIKH  v.  LAURA L. GERMADNIG-SHAIKH
Docket No. FM-15-0500-14-W
-   Pendente lite cross-motions scheduled for Oral Argument -
December 19, 2014
_____

In an advance of oral argument on December 19, 2014, I respectfully ask that Your Honor review the thoughtful decision of Justice Albin *In the Matter of Advisory Letter No. 7-11, Docket No A-012011 (068633 decided MArch 6, 2013.*   For the Court's convenience I have appended the case.   Quoting from the advisory Letter:

The mere appearance of bias in a judge -- however difficult, if not impossible, to quantify -- is sufficient to erode respect for the judiciary. See DeNike v. Cupo, 196 N.J. 502, 514 (2008). To that end, judges must "'refrain . . . from sitting in any causes where their objectivity and impartiality may fairly be brought into question.'" Ibid. (quoting State v. Deutsch, 34 N.J. 190, 206 (1961)).   . . .

Therefore, "ensuring both conflict-free, fair hearings and *the appearance of impartiality in . . . court is vital* " to maintaining public confidence in our system of justice. McCabe, supra, 201 N.J. at 42. To accomplish that goal, we have in place exacting standards of judicial conduct to which

we now turn.    . . . .

Rule 1:12-1(g), requires judges to disqualify themselves "when there is any other reason __which might preclude a fair and unbiased hearing and judgment, *or which might reasonably lead counsel or the parties to believe so*."

Rule 1:12-1(g) -- like Canon 3(C)(1), which mandates disqualification when a "judge's impartiality might reasonably be questioned" -- is intended to apply to *scenarios that cannot be neatly catalogued*. See State v. Tucker, 264 N.J. Super. 549, 554 (App. Div. 1993)

("The situations in which a judge should grant a motion for recusal are varied . . . ."), certif. denied, 135 N.J. 468 (1994). Thus, "[n]either Canon 3C nor Rule 1:12-1 recite an exclusive list of circumstances which disqualify a judge and require recusal from a matter." State v. Kettles, 345 N.J. Super. 466, 470 (App. Div. 2001), certif. denied, 171 N.J. 443 (2002).    . . . .

It is clear from the canons of the Code of Judicial Conduct, the Court Rules, and the Guidelines for Extrajudicial Activities that "'*justice must satisfy the appearance of justice*.'" Deutsch, supra, 34 N.J. at 206 (quoting Offutt v. __United States, 348 U.S. 11, 14, 75 S. Ct. 11, 13, 99 L. Ed. 11, 16 (1954)).

The purpose of our judicial disqualification provisions "is to maintain public confidence in the integrity of the judicial process, which in turn depends on a belief in the impersonality of judicial decision making." United States v. Nobel, 696 F.2d 231, 235 (3d Cir. 1982) (emphasis added), cert. denied, 462 U.S. 1118, 103 S. Ct. 3086, 77 L. Ed.2d 1348 (1983). Even a "righteous judgment" will not find acceptance in the public's mind unless the judge's impartiality and fairness are above suspicion. State v. Muraski, 6 N.J. Super. 36, 38 (App. Div. 1949). "In other words, *judges must avoid acting in . . . a manner that may be perceived as partial*," otherwise the integrity of the judicial process will be cast in doubt. DeNike, supra, 196 N.J. at 514. DeNike, supra, 196 N.J. at 514 (quoting Deutsch, supra, 34 N.J. at 206).

Those principles have been distilled to __a simple question: ***"Would a reasonable, fully informed person have doubts about the judge's impartiality?"*** <u>Id.</u> at 517.   . . . .

The issue is not whether Judge Boyd can faithfully maintain impartiality . . . The workings of his mind cannot be put on display. That is why public perception matters. Judges must appear to be impartial, for in a democracy the standing of our system of justice depends on the people's confidence in the judicial process.   . . . .

Will the litigant reasonably believe that he will receive a **fair shake** or that the scales of justice are tilted against him? ***Ultimately, a litigant should not be left to wonder about the judge's objectivity or impartiality.*** . . . . If a "judge's impartiality might reasonably be questioned," disqualification is mandated. Canon 3(C)(1); <u>accord</u> <u>DeNike</u>, <u>supra</u>, 196 <u>N.J.</u> at 517.   . . . .

By requiring disqualification whenever a fully informed person might reasonably question the impartiality of a judge, we guarantee that the judicial process will retain its high, preferred place in our democracy."                      [emphasis added.   Reformatted for clarity]

_____

ZIA SHAIKH has profounded misgivings going back to April 23, 2014, when:

[a] Mr. SHAIKH was summarily ordered to vacate the family residence, without a hearing, based upon unsworn concerns at a Case Management Conference by his wife's attorney, in his wife's presence who was not sworn to testify as to such issues. His counsel was not present to push back on the oral OSC allowed to be presented *sua sponte* by the Court.   While victims of domestic violence appear ex parte before the Court seeking a TRO, the Court always sets a return date for a hearing to determine whether an

FRO should enter.  Fundamental due process mandates this happening. Mr. SHAIKH provided the Court with a written statement citing cases and addressing due process issues - when he was self-represented.  ZIA SHAIKH has never been given a "*fair shake*" via a scheduled hearing to address his summary removal by the Court.

[b]   The Court has entered Bench Warrants against ZIA SHAIKH now tallying up to $70,000 based upon representations by LAURA SHAIKH's counsel.

[c] Mr. ZABARSKY as agent for LAURA SHAIKH, advocates for her position. The record is replete with examples of her rage and animus towards her husband.   As set out in the Reply Certification, LAURA texts her husband:

> " I will make sure your kids never forgive you ! !! "
>
> I PROMISE THE KIDS ARE NEVER GOING TO FORGIVE U SICK BASTARD ! "
>
> " I would rather u rot in jail than anything else at this point ! "
>
> "  I will go the distance baby.   On every level.   Kids will never forgive you or forget."

Lost in the barrage of advocacy and invectives is ZIA SHAIKH's certification to the effect that he has provided his wife and children with the benefit of $86,000 to meet family support in 2014 (chart attached to his Reply Certification; and the additional fact that he has formally offered $90,000 rather than the Court-ordered $70,000 to lift the Bench Warrants.

[d] LAURA SHAIKH's emails appended to court filings clearly evidence her need for Anger Management. As a result of the legal pounding administered by Mr. ZABARSKY, Mr. SHAIKH is not seeing the children, and can not attend the course of Anger Management in New Jersey per the Court's order that he do so - further creating in his mind the perception that impartiality has not been achieved.

_____

If past is prologue, Mr. ZABARSKY will continue pounding away at Mr. SHAIKH until he has created a litigant who is removed entirely from the case.  His approach to dispute resolution has done nothing other than to fuel the emotional fires roiling around in this case - rather the actions taken have inflamed the case; without a path forward to resolution of the issues.

Respectfully submitted,

*August J. Landi, Esq.*

_____

Law Offices of Steven A. Zabarsky            [TL 732.349.1600][FX 732.349.0792]

248 Washington Street, Toms River, NJ 08753

# EXHIBIT # 3

## ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH  -- December 18, 2015

Sheet 1

```
                              SUPERIOR COURT OF NEW JERSEY
                              CHANCERY DIVISION, FAMILY PART
                              OCEAN COUNTY, NEW JERSEY
                              DOCKET NO. FM-15-500-14
                              APP. DIV. NO. A-002418-16T1

   ZIA H. SHAIKH,            )
                            )
           Plaintiff,        )        TRANSCRIPT
                            )
           v.                )        OF
                            )
   LAURA L. GERMADNIG-SHAIKH, )        HEARING
                            )
           Defendant.        )
                            )


                       Place:  Ocean County Courthouse
                               125 Washington Street
                               Toms River, NJ  08754

                       Date:   December 18, 2015

   BEFORE:

       HONORABLE MARLENE LYNCH FORD, A.J.S.C.

   TRANSCRIPT ORDERED BY:

       ZIA H. SHAIKH, (4400 ROUTE 9, SUITE 1000, FREEHOLD,
       NEW JERSEY 07728)

   APPEARANCES:

       ZIA H. SHAIKH, PRO-SE
       Plaintiff

       STEVEN A. ZABARSKY, ESQ. (Citta, Holzapfel &
       Zabarsky)
       Attorney for the Defendant


                       Transcriber Lauren Leister
                       ELITE TRANSCRIPTS, INC.
                       14 Boonton Avenue
                       Butler, New Jersey  07405
                       (973) 283-0196
                       Audio Recorded
                       Operator, Valerie Jackey
```

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey  07405
973-283-0196  FAX 973-492-2927

## ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH  --  December 18, 2015

Sheet 2

I N D E X

| MOTION | PAGE |
|---|---|
| By Mr. Shaikh | 6 |
| Response by Mr. Zabarsky | 23 |
| Decision by The Court | 46 |

3

Colloquy
```
 1          THE COURT:  Okay.  This is not related to the
 2   motion, but I did receive a memo from the mediation
 3   people.  Apparently, the parties participated in a
 4   parenting time mediation and a proposed stipulation or
 5   consent order was submitted.  Is there any reason why I
 6   shouldn't sign that order?  I see it was signed by Mr.
 7   Shaikh.  Are you -- Mr. Waters (phonetic) had conducted
 8   a mediation.  Do you have any objection to the entry of
 9   that order?
10          MR. ZABARSKY:  Judge, I didn't have the
11   opportunity to speak to my client about that order.  I
12   was going to do that directly after this motion hearing
13   and I would alert the court today.
14          THE COURT:  Okay.  Then why don't we hold off
15   on that and we just -- okay.  All right.
16          MR. ZABARSKY:  Judge, before we do move on, I
17   did want to note for the record that I did look in my
18   file with regard to that, and the correspondence I
19   received from Mr. Waters consisted of three pages and
20   it said here is the remaining portion of the proposed
21   agreement.  And the only items I got from Mr. Waters
22   was, in fact, the two pages that were attached to that.
23   So, maybe if the Court could have a copy made.
24          THE COURT:  Okay.  I'll have somebody make a
25   copy of that while we're --
```

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

```
                                                          4
                         Colloquy
 1            MR. ZABARSKY:  I would appreciate that, Your
 2   Honor, so I make sure have what Mr. Waters believes he
 3   sent me, because that's the only thing I have from Mr.
 4   Waters.
 5            THE COURT:  Okay.
 6            MR. ZABARSKY:  Thank you.
 7            THE COURT:  Just when you get a chance.
 8            All right.  This is the matter of Zia Shaikh
 9   v. Laura Germadnig-Shaikh under docket number FM-15-
10   500-14N and -- I thought I had a different docket
11   number on this.  This has been consolidated with OCNL-
12   2818-15.
13            And your appearances, please?
14            MR. ZABARSKY:  Thank you.  Good morning.
15            THE COURT:  Mr. Shaikh, you're representing
16   yourself, correct?
17            MR. SHAIKH:  Yes.
18            THE COURT:  State your full name for the
19   record.
20            MR. SHAIKH:  Zia Shaikh.
21            THE COURT:  Thank you.
22            MR. ZABARSKY:  Thank you.  Good morning, Your
23   Honor.  Steven A. Zabarsky of Citta Holzapfel &
24   Zabarsky, 248 Washington Street, Toms River, New
25   Jersey, on behalf of the defendant, Laura Germadnig-
```

```
                                                          5
                         Colloquy
 1   Shaikh.  And she is seated to my right, Your Honor.
 2            THE COURT:  Okay.  All right.  This matter
 3   came before the Court as a result of the plaintiff's
 4   motion.  You know, bear with me for a second because I
 5   don't see -- okay.  This is the plaintiff, Zia
 6   Shaikh's, motion for an order granting plaintiff's
 7   motion to suppress and dismiss defendant's divorce
 8   answer, counterclaim for divorce, and failure to
 9   provide discovery, and for sanctions against defendant
10   and counsel in the amount of $1,000 per day for failure
11   to provide discovery.
12            The defendant has filed a cross-motion
13   seeking to strike or dismiss the defendant's divorce
14   answer and counterclaim for failure to provide
15   discovery and for other relief, including suppression
16   of a subpoena duces tecum served on various
17   individuals, asking to suppress the plaintiff's
18   pleadings for failure to comply with outstanding court
19   orders and discovery, and to issue a bench warrant for
20   plaintiff's arrest or incarceration for failure to pay
21   unallocated support, that -- and to compel the
22   plaintiff's accountants, Mr. Whale and Mr. Maldjian, to
23   comply with the subpoena that was previously served
24   upon them by counsel for counsel fees and costs and for
25   such further relief.
```

## ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015

Sheet 4

6

                         Colloquy
1          All right.  So, I will hear from the
2   plaintiff first on his motion to suppress and dismiss
3   defendant's divorce answer, counterclaim for failure to
4   provide discovery and for sanctions.
5          Mr. Shaikh.
6          MR. SHAIKH:  Good morning, Judge.
7          THE COURT:  Good morning.
8          MR. SHAIKH:  Before we begin, I need to bring
9   to the Court's attention that Defendant Zabarsky and
10  myself are now in an adversarial position.  In this
11  matter, per your court order dated November 16th, which
12  was a civil tort claim --
13         THE COURT:  Okay.
14         MR. SHAIKH:  -- docket --
15         THE COURT:  I am going to hear what you made
16  a motion for.  I am not going to hear everything else
17  that you want to talk about today.  Okay?
18         MR. SHAIKH:  Well, Judge, unfortunately --
19         THE COURT:  You have not raised by -- you've
20  raised an issue about a conflict of interest due to
21  some other litigation that involves Mr. Zabarsky.
22  There's -- what is not before me legally is an
23  application to do anything on that.  So, I would
24  respectfully ask you to stick to what is on the agenda
25  for today which is your motion to suppress the

7

                         Colloquy
1   defendants' pleadings for failure to make discovery and
2   to impose sanctions against them.
3          You would certainly be free to bring, if
4   appropriate, other actions, but you cannot bring those
5   things before the Court just by saying I'm now going to
6   raise these either by letters that were written or
7   otherwise.
8          If the basis for this, however, is that Mr.
9   Zabarsky has been sued personally by you in civil and
10  state litigation, which I understand to be the case, I
11  think I had previously addressed the issue that I do
12  not find that to be a basis for -- that a strategically
13  filed complaint for the purpose of creating a conflict
14  under these circumstances would not be a basis to
15  preclude him from continuing his representation of the
16  defendant.
17         However, that's not legally before me because
18  the only thing I can respond to is what's been filed by
19  way of notice of motion before me.  Okay?
20         MR. SHAIKH:  Right.  Well, Judge, in my reply
21  certification -- I hope you have had a chance to review
22  all my papers that I submitted.
23         THE COURT:  Yes, I did.
24         MR. SHAIKH:  That's the very first point I
25  raise.  So, everything I'm talking about has already

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 5

8

                    Colloquy
1    been raised in my papers to you today.
2            THE COURT:  Okay.
3            MR. SHAIKH:  So, that's already been raised.
4            THE COURT:  Okay.  I'm going to ask you to --
5            MR. SHAIKH:  So, I'm not talking about
6    anything new.
7            THE COURT:  I'm going to ask you to address
8    the issues that were raised in your notice of motion
9    and we'll go that way, okay, so that this can proceed
10   in an organized fashion.
11           MR. SHAIKH:  Well, Judge, that's exactly why
12   I'm here.  This has to proceed in an organized fashion,
13   but unfortunately how can we set aside all the rules of
14   professional conduct and court rules and just continue
15   on as if those rules don't exist.  That's why you're --
16   I call you a judge and I sit here as a plaintiff,
17   otherwise, this would be a street corner conversation.
18   We are all regulated by the New Jersey Constitution as
19   well as the rules of the court, aren't we?
20           THE COURT:  I'm not going to engage in a
21   conversation with you.  I've asked you to --
22           MR. SHAIKH:  Well, Judge, that's my
23   understanding.
24           THE COURT:  I've asked you to please --
25           MR. SHAIKH:  That's why I call you a judge

9

                    Colloquy
1    and --
2            THE COURT:  I've asked you to please address
3    the substance of your notice of motion --
4            MR. SHAIKH:  Right.
5            THE COURT:  -- and that's what I'm affording
6    you the opportunity to do.
7            MR. SHAIKH:  Right.  Well, Judge, I'm going
8    to get into that in one moment.  But to your very first
9    point that you raised about the parenting schedule, you
10   know, the defendants [sic] have had this --
11           THE COURT:  No, no, no.  The parenting time
12   schedule, Mr. Zabarsky indicated that he did not,
13   through inadvertence through the mediator, receive a
14   full copy of the proposal.  So, I think what I would
15   like to do is to allow him an opportunity to review
16   what that written proposal was and we'll deal with that
17   separately after this.  Okay?
18           MR. SHAIKH:  On another motion, Judge, or
19   right after this hearing?
20           THE COURT:  No, no, right -- he -- all I'm
21   asking him to do is to read the mediation issue.
22           MR. SHAIKH:  Okay.  Because before we leave
23   here, Judge, I need this signed, otherwise, this would
24   never get signed.
25           THE COURT:  Okay.  That's -- well, I can't --

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

10

Colloquy

```
 1          MR. SHAIKH:  I have requested this from your
 2   court for six months.
 3          THE COURT:  If he hasn't read it, I can't do
 4   much about it at that point.
 5          MR. SHAIKH:  Well, it's everything -- the
 6   defendant read it, defendant was there.  So, she just
 7   has to tell her lawyer --
 8          THE COURT:  And you may have a point there,
 9   but I think that I'm affording him the opportunity to
10   read the complete document that was sent to him.  But
11   we're not going to talk about that right now.  What
12   we're going to talk about --
13          MR. SHAIKH:  Okay.  But before the -- before
14   we end this hearing today, Judge --
15          THE COURT:  What we're going to talk about --
16          MR. SHAIKH:  -- I would like this thing to be
17   signed because it's everything that the defendant
18   wanted.
19          THE COURT:  Okay.
20          MR. SHAIKH:  I had no input in that, zero.
21          THE COURT:  Sir, sir, I'm going to ask you
22   for the final time and if not, I'm going to suppress
23   your opportunity to have oral argument here because
24   you're not listening and following the direction of the
25   Court.
```

11

Colloquy

```
 1          I said to Mr. Zabarsky -- I started this by
 2   saying this is not related to the motion, however, I'm
 3   advised that there was a successful mediation of
 4   parenting time issues.  And I said, did you have an
 5   opportunity, Mr. Zabarsky, to review what was sent to
 6   you by Stephen Waters, (phonetic) the mediator?  He
 7   said no.  So, I said we're going to make a copy and
 8   after this, I'd ask you to remain behind, allow him a
 9   few moments to read through it and then we will address
10   that issue -- just solely on the issue of is she
11   willing to sign it or she's not willing to sign it.
12   Okay?
13          MR. SHAIKH:  Okay.  Very well, Judge.  We'll
14   continue with the motion.
15          THE COURT:  All right.  So, let's put that --
16   I'm not going to let you leave here without addressing
17   that issue, but right now, I'm asking you to address
18   the issue of what you raised in your notice of motion.
19          MR. SHAIKH:  Okay.  Very well, Judge.  So, as
20   I have very successfully and with exhibits provided in
21   my reply certification to this Court that there have
22   been many -- in fact, to my last count just on this
23   cross-motion alone, from Defendant Zabarsky and
24   Defendant Germadnig, there have been 13 frivolous and
25   willful false statements, you know, made by the
```

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 7

                                                                    12
                              Colloquy
 1    defendants.
 2              First of all, we talked about -- they talked
 3    about the -- my desktop tower not being provided.  In
 4    fact, there was a copy of an email that was sent over
 5    to my previous attorney, Margie McMahon, by Bill
 6    Stabile stating that Defendant Germadnig herself was
 7    complicit with my landlady at the time, Nada Pidinger,
 8    (phonetic) who is now being investigated by the
 9    attorney general's office, where she had walked in and
10    took from my apartment my desktop computer.  And Bill
11    Stabile, in his email to Margie McMahon, has confirmed
12    that, and I have attached that as an exhibit.  So, that
13    is a moot issue at this point.  We have talked about
14    this issue for the past six months, since July, since
15    you've been presiding on this case.
16              Number two, Mr. Gunteski, the forensic
17    accountant, you know, who has attempted to basically
18    expand my net worth by triple counting the family's
19    liquid assets, which have now been liquidated over the
20    past, you know, two years since this litigation has
21    gone on, you know -- so I had provided an exhibit that
22    that's again a false and frivolous allegation on the
23    assets.
24              I've also provided additional exhibits from
25    my accountant, Thomas Whale, who, in a very short

                                                                    13
                              Colloquy
 1    amount of time, was able to look at Mr. Gunteski's
 2    forensic accountant report where he triple counted my
 3    assets and exemplified point by point that, you know,
 4    it was totally a fabricated number.  And,
 5    unfortunately, Mr. Gunteski is now being sued in the
 6    state court for fraud.  So, him and his firm is going
 7    to have another lawsuit for fraud against me.  Moving
 8    right along --
 9              THE COURT:  Against?  Fraud against you or
10    you're filing against them?
11              MR. SHAIKH:  Well, I'm filing a lawsuit
12    against Mr. Gunteski for committing fraud against me.
13              THE COURT:  Have you filed that already, just
14    out of curiosity?
15              MR. SHAIKH:  I'm working on it right now,
16    Judge.
17              THE COURT:  Okay.
18              MR. SHAIKH:  So, there would be a suit on
19    that.
20              THE COURT:  I guess you can do whatever you
21    want with your money, but I just make the observation
22    that every time you file a civil lawsuit it's a $250
23    fee, right?
24              MR. SHAIKH:  Well, Judge, yeah.  I mean, it
25    is a $250 fee, I guess, but at this point I'm going to

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 8

14

Colloquy
```
 1    fill out indigency paperwork.
 2             THE COURT:  And you're $20,000 behind in your
 3    child support, but you put it -- you know, honestly, I
 4    don't --
 5             MR. SHAIKH:  Yeah.  It's going to be
 6    indigency paperwork, Judge, so the court is not going
 7    to charge me any money for filing that paperwork.
 8             THE COURT:  The court's not going to charge
 9    any money for filing the paperwork?
10             MR. SHAIKH:  Correct, Judge, because I'm
11    going to file for indigency filing on that.  So, I'm
12    just putting this on the record that unfortunately all
13    these improper things have been done against me and
14    I've been asking you, being the assignment judge, the
15    top judge in Ocean County, to help me out.  But, you
16    know, unfortunately, so far nothing positive has come
17    out of this.  Six months have gone by.  We have made no
18    progress in my divorce case at all.
19             Moving right along, Judge, you know,
20    defendant makes a -- you know, a very non-responsive
21    allegation in  paragraph 6 of their cross-motion where
22    they talk about that they have provided me with all
23    these bills and, you know, items, but -- you know, the
24    utility bills and all that stuff, but that's not what I
25    was asking for.  I mean, I asked for a very simple
```

15

Colloquy
```
 1    discovery and they have repeatedly refused to do so.
 2             In fact, I have attached copied of exhibits
 3    where they have reached out to other third parties who
 4    were legitimately subpoenaed by me and, you know, they
 5    -- Defendant Zabarsky was able to prevent them for
 6    [sic] sending information.
 7             In fact, Defendant Zabarsky has made several
 8    missallegations or false allegations saying that there
 9    were violations of rule 4:4-14-7 [sic] when I had
10    subpoenaed these same third parties earlier in the
11    year, but -- and the Court quashed those subpoenas, I
12    believe, sometime in October at an October hearing
13    based on the frivolous allegation.
14             So, yet again, on November 20th, I served
15    additional subpoenas to the exact same parties, and
16    Defendant Zabarsky interfered and obstructed with my
17    subpoenas and tampered with my case to obtain unfair
18    advantage for his client stating to these third parties
19    that he intends to file a subpoena.
20             Until this day, Judge, no such subpoena -- no
21    such motion to quash my subpoena has been filed.  In
22    fact, his cross-motion was filed late on December 3rd,
23    the very same day that at 10:00 that morning the
24    subpoenas were due by the third parties.  And that
25    particular cross-motion was not even stamped by the
```

## ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015

Sheet 9

16

Colloquy

```
 1   courthouse.  So, I believe that that paperwork was
 2   truly filed on December 4th, although it's dated
 3   December 3rd.  So, I would like to put that on the
 4   record.
 5           Moving right along, Judge.  Defendant
 6   Zabarsky and Defendant Germadnig, again, make false and
 7   frivolous allegations about the gold bullions.  They
 8   say that there were $40,000 worth of gold bullions that
 9   they are aware of that I, the plaintiff, may have taken
10   or hidden or something.  But yet, I have attached
11   copies of the Monex statements showing that the gold
12   bullions were only $14,000, not $40,000.
13           So, how can this continue on, Judge?  I mean,
14   I'm just sick and tired of coming into this courtroom
15   and not making any progress and that's why I keep --
16   that's why I'm asking for defendant's pleadings to be
17   suppressed and for this thing to continue.
18           Additionally, they make a point about
19   quashing, you know, my subpoenas by making an
20   additional point that Defendant Zabarsky only got paid
21   $5,000 towards his counsel fees.  I mean, we have well
22   established on this -- on the record several times that
23   he has been paid, as you will see in the reply
24   certification and the exhibits attached, $87,000, Judge
25   -- were written to his -- for his benefit.
```

17

Colloquy

```
 1           Then he makes an additional false allegation
 2   that in June, trying to deceive the Court as if it was
 3   June of 2015, that the Audi -- which was a used Audi,
 4   it was a 2007 Audi that I had, long time ago -- that
 5   that Audi was located at the back of a friend's house.
 6   But, again, he fails to mismatch the time frame to the
 7   Court by stating it was June, but in reality it was
 8   June of 2014.  So, it's been well over 18 months since
 9   that car was sold and that has --
10           THE COURT:  I -- just -- when I read that I
11   took it in the context that he was alleging that was
12   just an indicator of bad faith on your part that you
13   had secreted an asset and misrepresented that it had
14   been sold, that's all.
15           MR. SHAIKH:  Well, Judge, there wasn't a
16   misrepresentation on my part or secreting of the asset
17   because the asset was sold a long, long time ago.  In
18   fact, his own private investigator -- Mr. Reed's
19   (phonetic) report doesn't even say what kind of car he
20   located.  There is no certification for -- from John
21   Reed who says that.  So, you know, we can definitely
22   have that report reviewed.  So, again, that was yet
23   again another frivolous, you know, allegation by
24   defendant even back last year.  And now, of course, he
25   is trying to mismatch the time frame.
```

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH  --  December 18, 2015**

Sheet 10

18

Colloquy

```
 1              Now, you know, multiple sanctions, Judge, you
 2    have put against me because of my inability to comply
 3    with the court orders, which started with an ex parte
 4    hearing from April 23rd of 2014.  And unfortunately,
 5    Judge, you have not done anything to correct any of
 6    those ex parte hearings.  So, I got to tell you, it
 7    really does upset me and harms me in a very, very bad
 8    way.
 9              And this proposed sanction by -- you know, by
10    defendant wanting to incarcerate me, as you know, I've
11    already been to jail for, what, about two and a half,
12    three days I was there.  If I had the money I would
13    have paid it, Judge.  Incarceration certainly is not
14    the answer.  Perhaps mediation of settlement of this
15    divorce is the answer.
16              You know, our children are suffering.  It's
17    been over six months with this litigation just in this
18    courtroom alone and this Court has taken no action to
19    address the custody, the visitation, the parenting time
20    issue in the best interest of the children.
21              THE COURT:  Wait.  Mr. Shaikh, I sent you to
22    mediation, you came to an agreement.
23              MR. SHAIKH:  Yes, Judge.
24              THE COURT:  Okay.  So, let's not say that I
25    -- and I believe that I did that in pretty short order.
```

19

Colloquy

```
 1    So, let's not say that the Court has not taken any
 2    affirmative actions to do that.
 3              MR. SHAIKH:  That was in November, Judge.
 4    That was in November.  You have been my judge since
 5    July.  So --
 6              THE COURT:  But I'm not your lawyer and, you
 7    know -- well, I'm not going to --
 8              MR. SHAIKH:  Yeah.
 9              THE COURT:  I'm not going to engage in this.
10              MR. SHAIKH:  No, and we will address that
11    issue.  Thank you for bringing that up, Judge.  Thank
12    you for bringing that up.  So, continuing on, Judge.
13    So, all these additional sanctions where you have taken
14    away my driver's license, you have taken away my
15    professional licenses; so first of all, I can't even
16    get to work, number one.
17              Number two, if I could get to work, I can't
18    even work because now the SCC and the department of
19    insurance and banking are going to come after me for
20    practicing financial advisory services without a
21    license.  So, I don't know what your thought process
22    were or was when you came up with that idea, but --
23              THE COURT:  I didn't come up with the idea,
24    that's required by law.  When you fall that far --
25              MR. SHAIKH:  Okay.  Well, it's pushing me
```

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey 07405
973-283-0196  FAX 973-492-2927

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH  --  December 18, 2015**

Sheet 11

20

                              Colloquy
 1    back further and further, Judge.
 2              THE COURT:  When you fall that far in default
 3    on your support obligations, the state law suspends
 4    your driver's license and your -- and any professional
 5    licenses.
 6              MR. SHAIKH:  Okay.
 7              THE COURT:  It's not -- that's what the law
 8    is.
 9              MR. SHAIKH:  Well, Judge, as you know, under
10    rule 1:2-1 it says that your court has the ability to
11    lax any court rule or any state statute for the benefit
12    of progressing a case and bringing it to a conclusion.
13    So, you could have easily done that, but I'm just
14    bringing this to the Court's attention that you have
15    blocked all exits for me to make progress, to have a
16    life, to be with my children.  Everything has been
17    blocked off, Judge, so I don't know where we're going
18    with all of this.
19              So, all these additional sanctions, Judge,
20    are overkill.  They're, at this point, beyond, you
21    know, what this divorce court should be about or is
22    about.  And, you know, I can no longer comply with any
23    of the monetary orders.
24              So, the $19,000 in arrears that you just
25    talked about is a fictitious number.  It was based on a

21

                              Colloquy
 1    fictitious income from April 23rd of 2014 when I wasn't
 2    even there to defend my position.  So, that arrear has
 3    just -- is just going to continue to balloon day after
 4    day and you know what, unless you fix it, I would have
 5    no choice but to go to the appellate division to have
 6    that matter corrected.
 7              Now, defendant has created this litigation,
 8    Judge.  This is all self-imposed financial problems
 9    that she has created.  Long before I filed for divorce,
10    Judge, I gave her everything honestly.  She had her
11    financial planning folder, my ten years of tax returns,
12    every single thing.  But she had dreams of grandeur
13    that somehow there were millions of dollars somewhere
14    hidden.
15              I mean, our lifestyle is nowhere near a
16    millionaire's lifestyle but yet, here we are now, two
17    years later, with her forensic accountants looking for
18    this mysterious millions of dollars -- have come up
19    with absolutely nothing because you can't find
20    something that doesn't exist.
21              So, I've made several settlement offers,
22    Judge -- in fact, I've sent two copies of that -- to
23    cure this problem and to end this frivolous litigation
24    imposed by defendant --
25              THE COURT:  Okay.  The Court --

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey  07405
973-283-0196  FAX 973-492-2927

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 12

22

Colloquy

```
 1          MR. SHAIKH:  -- and her attorney.
 2          THE COURT:  The Court cannot consider
 3   settlement offers.  It's inappropriate for me to
 4   consider that because I'm going to ultimately have to
 5   try the case if it goes to trial.  So, I do not
 6   participate in the settlement aspects of that.
 7          MR. SHAIKH:  Sure.  Well, Judge, I'm just
 8   bringing it to your attention that I have made in every
 9   good faith effort through my past three attorneys and
10   then myself --
11          THE COURT:  I would certainly consider
12   referring the parties to a neutral mediator or someone
13   like that and you could discuss settlement but, you
14   know, I don't know if that is -- you know, what both
15   sides have represented to me is that they don't have
16   funds with which to do that.  So -- okay?
17          MR. SHAIKH:  Well, Judge, I know there is a
18   free program for the MESP, I guess it's called, that
19   perhaps that would be the --
20          THE COURT:  Haven't you already gone to MESP?
21          MR. SHAIKH:  No, Judge.  No, Judge, we have
22   not done that.  Judge Jones actually, on June 1st I
23   believe, had asked us to go for a intensive settlement
24   panel meeting, and I guess at that point we did not
25   have a complete forensic accountant's report or
```

23

Colloquy

```
 1   something like that and that meeting only lasted ten
 2   minutes because --
 3          THE COURT:  Okay.
 4          MR. SHAIKH:  -- the defense side wouldn't
 5   give it up.  So, you know, --
 6          THE COURT:  All right.  I've heard --
 7          MR. SHAIKH:  -- I think mediation is the best
 8   way to go.
 9          THE COURT:  I've heard enough.  I've read the
10   papers and I've heard enough from you, Mr. Shaikh.
11          MR. SHAIKH:  Well, Judge, one last quick very
12   [sic] point.  I apologize, Judge.
13          THE COURT:  No.  We'll get back to you, okay?
14   I want to hear from Mr. Zabarsky.  Okay?
15          MR. SHAIKH:  Okay, Judge.
16          THE COURT:  Just make a note of whatever it
17   is and we'll get back to you.
18          MR. SHAIKH:  Okay, Judge.
19          THE COURT:  Mr. Zabarsky.
20          MR. ZABARSKY:  Thank you, Your Honor.  A
21   couple of quick items to -- but I believe we went to a
22   ESP [sic] in May, Your Honor.  The court file will
23   reflect that.  I believe it was at the courthouse and
24   we had two -- I'm trying to look for my notes -- two
25   mediators and we did go to the courthouse for an ESP is
```

## ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015

Sheet 13

24
```
                         Colloquy
 1    my recollection.
 2              THE COURT:  Okay.  Do you have the history on
 3    this, Val, by any chance?  Do you have the history on
 4    this case?  Just would you pull it up.  Let's just see
 5    if there's any --
 6              MR. ZABARSKY:  I think it was May 15th.
 7              THE COURT:  -- notation on that for a
 8    referral to MESP, just -- okay.  You can't pull it up?
 9    Okay.
10              COURT CLERK:  Yeah, I can.
11              THE COURT:  All right.  Just --
12              MR. ZABARSKY:  All right.  So, I'll -- while
13    she's doing that.
14              THE COURT:  While she's doing that, just
15    continue.
16              MR. ZABARSKY:  A couple of other quick items,
17    Your Honor.  I just wanted to point out, Mr. Shaikh,
18    again, made an allegation that he gave my firm -- and I
19    benefitted or my firm benefitted by a check in the
20    amount of $87,000.  That's a complete misstatement of
21    the facts and the truth.
22              The truth is borne out and previously
23    provided to the Court on October 15 of 2014, Judge
24    Einbinder issued an order for a warrant for Mr.
25    Shaikh's arrest and she established as a purge amount
```

25
```
                         Colloquy
 1    $18,882.56 to the mortgage company, Select Portfolio
 2    Service; $35,827.41 to Steven A. Zabarsky for counsel
 3    fees; $10,000 to Joseph Gunteski, CPA; $5,000 to
 4    Patricia Germadnig-Shaikh. [sic]
 5              So, that added up to about $77,000 and I
 6    believe we received a check from Ms. McMahon from her
 7    trust account or directly from Mr. Shaikh by a
 8    cashier's check of some sort of that approximate
 9    77,000, which 35,000 went to my fees.  And the reason
10    why there was 5,000 ordered to be paid back to Patricia
11    Germadnig, who is my client's mother, is because she
12    loaned my client $5,000 for the initial retainer.  So,
13    the only money that my firm ever received by way of
14    counsel fees or costs from Mr. Shaikh is that $35,000
15    number.
16              With regard to his alleged fictitious income,
17    the proofs were borne out at the ability to pay hearing
18    and were previously supplied to Judge Einbinder for
19    purposes of her adjudication of a pendente lite support
20    application of the family's checking account statements
21    for, I believe, two or three years prior to the filing
22    of the complaint.
23              So, that would have been -- I believe it was
24    2012 and 2013 and it was called a Kiplinger's Trust.
25    It was a TD Bank account that showed deposits and
```

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 14

26

Colloquy

1   expenditures in those two or three years prior of
2   between 180 and $200,000.  Those are net numbers, of
3   course, after any taxes or did not include payment of
4   any taxes, and that was proven.  So, that is not a
5   fictitious income, that's proof of Mr. Shaikh's ability
6   to earn, ability to pay and/or accumulation of wealth
7   during the marriage.
8          With regard to the Monex, my client believed
9   it was a certificate for 40,000 but said she only ever
10  saw a certificate and never saw any gold.  And as far
11  as she understood, Mr. Shaikh had the certificates and
12  where he has the gold stored, she testified under oath
13  at the ability to pay hearing, she never heard -- or
14  never saw that gold.
15         Finally, it was very clear -- Mr. Gunteski
16  testified at the ability to pay hearing what was
17  provided by Mr. Shaikh was some type of "laptop" to Mr.
18  Stabile at Mr. Gunteski's office.  The desktop tower
19  was, in fact, never supplied to Mr. Gunteski nor my
20  office, that's been ordered many times.
21         THE COURT:  There's a receipt that says it
22  was a desktop.  Let's just -- I think that's what he's
23  referring to.
24         MR. ZABARSKY:  Well --
25         THE COURT:  March 23rd, 2015 from Bill

27

Colloquy

1   Stabile.  I just want to be clear on this.  He
2   indicated, "This email is to confirm that we are in
3   possession of a desktop computer tower we received from
4   our client Laura Shaikh.  We have not yet had the
5   opportunity to review the files contained on that
6   computer."
7          MR. ZABARSKY:  Your Honor, that was Brett
8   (phonetic) Pidinger's -- Mr. Shaikh's friend where he
9   was living, not Mr. Shaikh's business desktop tower.
10  And I believe Mr. Gunteski clearly testified at the
11  ability to pay hearing they are -- have never received
12  Mr. Shaikh's business desktop tower, which was ordered
13  by Judge Einbinder.  Again, a clear misrepresentation
14  attempt by Mr. Shaikh to confuse the Court with facts
15  that are not true but rather, false statements.
16         THE COURT:  Okay.
17         MR. ZABARSKY:  Now, with regard to our
18  motion, with regard to this matter, we've supplied to
19  the Court documentation.  The Court ordered on August
20  25 of 2015 -- this is just the most recent stuff --
21  that the defendant -- the plaintiff comply with the
22  request by Mr. Gunteski in his correspondence, items
23  needed list, as of June 9, 2015.  It was attached to
24  Your Honor's order of August 25, 2015.  Paragraph 20 of
25  Your Honor's order ordered that Mr. Shaikh comply.  We

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey  07405
973-283-0196  FAX 973-492-2927

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 15

28

Colloquy
1   attached that as exhibit A.
2                 We attached to our pleadings exhibit B, which
3   is Mr. Shaikh's response.  And Mr. Shaikh's response
4   is, as you can see from the response, "You have it.
5   You have it.  I provided it.  I provided it."  He
6   doesn't provide any additional documents whatsoever.
7                 For example, in his response of September 14
8   in 2015 with regard to the checks copies for
9   Progressive Equity Partners bank account he says, look
10  at item three.  Item three is, well, the TD Bank
11  statements from Tammy Haskell. (phonetic)
12                Well, we never got Progressive Equity Partner
13  bank statements from TD Bank or Tammy Haskell.  Mr
14  Gunteski testified to that under oath and it's in his
15  letter.  But, again, as you see Mr. Shaikh's response,
16  he basically says you either have it or it doesn't
17  exist and these -- and the truth is they just don't
18  have what's been asked for.
19                Another example most recently, not including
20  what Your Honor found in Your Honor's court order of
21  October 30 of 2015 and October 2 of 2015 with regard to
22  Mr. Shaikh's outright refusal to be compliant and
23  supply documents -- is the most recent example of
24  what's been occurring in this case.
25                In fact, Mr. Shaikh was ordered to produce

29

Colloquy
1   his tax returns and he hasn't done that.  So, we filed
2   motions, Your Honor has ordered it, and he's refused.
3   So, exhibit H attached to our pleadings is a letter
4   dated November 30 to Mr. Maldjian and Mr. Whale, his
5   accountants saying here is a subpoena.  Please give me
6   the tax returns for Mr. Shaikh for the past five years,
7   2010 through 2014.
8                 What does Mr. Shaikh do, but attached as
9   exhibit I to our -- to my client's certification is a
10  letter dated November 30th, 2015.  This is to Mr. Whale
11  and Mr. Maldjian: "I'm pro se litigant.  I'm in receipt
12  of the copy of subpoena duces tecum upon you by
13  opposing counsel.  Please be advised that I object to
14  the production of any information."
15                Well, these are the tax returns that not only
16  have we asked for two years, these are the tax returns
17  that Mr. Shaikh has been ordered multiple times to
18  provide to us.  Now, we just send a subpoena to his
19  accountants and say just please give us the tax
20  returns, and Mr. Shaikh sends them a letter and says, I
21  object, don't send them.
22                I mean, this is just the best example, quite
23  frankly, of what's happened throughout this entire
24  case.  Every time we send a subpoena to get
25  information, Mr. Shaikh says don't send the

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey  07405
973-283-0196  FAX 973-492-2927

## ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH  --  December 18, 2015

Sheet 16

30

Colloquy

1  information, I object.  We come to court, we get court
2  orders to get it, and then we try and go back and get
3  it.
4          Now, it just so happens because Mr. Shaikh
5  did not file a motion to quash the subpoena, Mr.
6  Maldjian and Mr. Whales sent us whatever tax returns
7  they had.  They did indicate to us that we received --
8  that Mr. Shaikh, in fact, has not filed tax returns for
9  anything, at least with them, for 2013 and 2014.  And
10 my recollection is in Mr. Shaikh's pleadings at some
11 point he indicated he, in fact, has not filed tax
12 returns for 2014 and 2015.  But that's just another
13 example of what --
14          THE COURT:  '13 and '14 I think --
15          MR. ZABARSKY:  Yes, I'm sorry.  2013 he's not
16 filed tax returns at all.  Since litigation started, no
17 more tax returns.
18          THE COURT:  Hm-hm.
19          MR. ZABARSKY:  Finally, with regard to the
20 motion to quash, he sent the same subpoenas to the same
21 entities that previously a motion to quash was granted.
22 We filed this motion to quash.  Mr. Shaikh made another
23 blatant misrepresentation to the Court.  He said that
24 the pleadings we filed on December 3 of 2015 aren't
25 even stamped filed with the Court.

31

Colloquy

1          I have the copies in my file of the pleadings
2  that I personally hand delivered to the information
3  center downstairs in the new justice complex.  They
4  stamped all our pleadings.  I believe the Court would
5  have a copy of the stamped pleadings in the file, as
6  they kept the original and I got back a stamped copy.
7          THE COURT:  December 3rd, 2015.
8          MR. ZABARSKY:  Thank you, Your Honor.  So,
9  Mr. Shaikh, again, makes a blatant misrepresentation.
10         MR. SHAIKH:  Judge, I have the originals
11 right here, Judge.  There's no stamp --
12         THE COURT:  He may not have a --
13         MR. ZABARSKY:  He may not have a stamped
14 copy, but his representation was --
15         MR. SHAIKH:  You sent me two copies, none of
16 them are stamped.  So, this cross-motion wasn't filed.
17         THE COURT:  Well, it doesn't make any
18 difference, doesn't -- you didn't -- you may have just
19 gotten file copies, but --
20         MR. ZABARSKY:  Right.
21         THE COURT:  -- they were filed with the court
22 December 3rd, 2015.
23         MR. ZABARSKY:  Thank you.
24         MR. SHAIKH:  Well, Judge, they're not
25 stamped.  If the shoe was on the other foot, Judge, you

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey  07405
973-283-0196  FAX 973-492-2927

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 17

32

Colloquy

```
 1    would dismiss any of my filings if they didn't have a
 2    stamp on it.
 3              MR. ZABARSKY:  Judge, can I finish?
 4              MR. SHAIKH:  So, maybe you'll give me that
 5    opportunity next time if I don't get my court paperwork
 6    stamped.
 7              THE COURT:  All right.
 8              MR. SHAIKH:  Because Mr. Zabarsky obviously
 9    is --
10              THE COURT:  I think this is --
11              MR. SHAIKH:  -- favored by the Court.  It's
12    fine, Judge.
13              THE COURT:  This is not -- this is the least
14    of the problems that we have in this case.  Okay?
15              MR. SHAIKH:  Yeah.
16              MR. ZABARSKY:  So --
17              MR. SHAIKH:  Well, Judge, it's still a matter
18    of court rules, Judge.  That's what I'm bringing to
19    your attention.
20              THE COURT:  Proceed.
21              MR. ZABARSKY:  The court -- so, the court
22    rule 1:9-2 specifically provides that if a motion to
23    quash is going to be filed that the information does
24    not have to be supplied.  We filed a motion to quash on
25    December 3rd and we represent to the Court -- and I
```

33

Colloquy

```
 1    went through the reasons why none of this information
 2    at this point, (a) is even discoverable, (b) it's
 3    beyond the scope of the case management order.
 4    Discovery basically is ended.  Our subpoenas were for
 5    information from orders that are already -- they're
 6    really like enforcement subpoenas at that point.
 7              So, for all these reasons, Your Honor, we --
 8    and including Your Honor's order of October 30 of 2015,
 9    paragraph 19 where the Court finds an application by
10    the defendant to suppress the pleadings is warranted,
11    we included this extra evidence just to show that every
12    time we attempt to get information that Mr. Shaikh's
13    been ordered to supply, that he says he supplied but he
14    hasn't, or that we won't supply, we try and get the
15    information, and Mr. Shaikh still tries to obfuscate
16    and interfere with us obtaining this information.
17              So, for all these reasons, pursuant to the
18    court rule which I cited, 4:23-2b, makes it clear that
19    failure to comply with a court order -- not only did he
20    not comply with the court order, but he sent a letter
21    to the accountant saying don't comply with this.  So,
22    he's directly violating the Court's order affirmatively
23    and intentionally.  So, we --
24              MR. SHAIKH:  Judge, can I object to that,
25    Judge?  Judge, if you read any of my paperwork --
```

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey 07405
973-283-0196  FAX 973-492-2927

## ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015

Sheet 18

34

Colloquy

```
 1              THE COURT:  You will -- Mr. Shaikh.
 2              MR. SHAIKH:  -- he's out of time.  November
 3    12th was the end of the --
 4              THE COURT:  Mr. Shaikh.
 5              MR. SHAIKH:  -- discovery, Judge.
 6              THE COURT:  Mr. Shaikh.
 7              MR. SHAIKH:  That's the -- that's what my
 8    letter said to the accountant, Judge.  If he's going to
 9    twist my words, Judge, I have to object, Judge.
10              THE COURT:  Mr. Shaikh.
11              MR. SHAIKH:  I cannot let Defendant Zabarsky
12    lie in this court again, Judge, or I'm going to have to
13    go to the prosecutor's office and make a report.
14              THE COURT:  Mr. Shaikh, you will have an
15    opportunity to respond to what Mr. Zabarsky said.  I
16    did not allow --
17              MR. SHAIKH:  Judge, how many times is he
18    going to lie to this Court, Judge.
19              THE COURT:  Mr. Shaikh.  Mr. Shaikh, I did
20    not allow him to interrupt you when you made your
21    argument to the court and I'm going to ask you --
22              MR. SHAIKH:  Judge, he shouldn't even be
23    speaking, Judge.
24              THE COURT:  I'm going to ask you --
25              MR. SHAIKH:  By court rules, he shouldn't
```

35

Colloquy

```
 1    even be here.
 2              THE COURT:  Mr. --
 3              MR. SHAIKH:  So, I'm allowing him to speak,
 4    not you, Judge.
 5              THE COURT:  Mr. Shaikh, I'm going to ask you
 6    to keep your comments and then you will have an
 7    opportunity at the conclusion of his argument to make a
 8    response.
 9              MR. SHAIKH:  Okay, Judge.  I'll try to do
10    that.
11              MR. ZABARSKY:  We ask that his pleadings be
12    stricken.  I ask that the Court allow us, pursuant to
13    rule 5:5-10, proceed by filing a notice of proposed
14    final judgment and proceed in an uncontested fashion
15    under the circumstances.  As I represented to the Court
16              THE COURT:  I just want to bring to your
17    attention the fact this was referred several times to
18    MESP.  According to our records, it says it was
19    referred to MESP, but it was not completed and it's
20    marked adjourned, but it just -- it says that the case
21    was not ready on the two occasions, and those occasions
22    were September 23rd, 2014, August 19th, 2014, October
23    28th, 2014.  I think that's all I have, just for the
24    information, the parties.
25              COURT CLERK:  Beginning?
```

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey  07405
973-283-0196  FAX 973-492-2927

## ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH  --  December 18, 2015

36

                    Colloquy
1           THE COURT:  Pardon me?
2           COURT CLERK:  That was from -- is that from
3  the beginning?
4           THE COURT:  Right, that's the complete
5  history with the MESP anyway.
6           MR. ZABARSKY:  Okay.  I thought we did go
7  once to the courthouse.  I thought we did, Your Honor.
8           THE COURT:  I think you probably did, but it
9  was marked that it was not -- you know it was carried
10 probably because you -- like, May 30th, 2014 it says
11 that it was cancelled --
12          MR. ZABARSKY:  That may have been it.
13          THE COURT:  -- adjourned.
14          MR. ZABARSKY:  Well, we were there then for
15 another --
16          THE COURT:  You might have been there on that
17 day.
18          MR. ZABARSKY:  Judge, I think it -- if
19 anything has been made crystal clear to the Court, it's
20 that going to some type of mediator in this case -- I
21 don't understand how it could possibly bear fruit
22 considering Mr. Shaikh's position and statements on the
23 record.  It just doesn't -- if the Court wants to order
24 it, you know, obviously as an officer of the court,
25 we'll participate in whatever Your Honor says, but I

37

                    Colloquy
1  think the case is ripe for a 5:5-10 application to
2  proceed to judgment.
3           Quite frankly, a list of our proofs are
4  already in the court's file.  Mr. Gunteski's already
5  testified, my client's testified, Mr. Shaikh has
6  testified, and we're going to rely mostly on the
7  evidence that's already been provided to the Court with
8  regard to our request for alimony and equitable
9  distribution.
10          Finally, Your Honor, I believe if the Court
11 does a recent update, I believe Mr. Shaikh is now in
12 arrears $21,000.  My client advises it was 19 at the
13 time of the filing of the pleadings on December 3rd,
14 but it may be higher at this time.
15          Your Honor previously entered orders that Mr.
16 Shaikh should be arrested and Judge Einbinder
17 previously issued an order that he should be arrested
18 with a purge amount.  And as my client indicates, when
19 he was issued a warrant for his arrest, after he was
20 arrested, he produced a check for $77,000.
21          MR. SHAIKH:  Objection, Judge.  Objecting --
22          MR. ZABARSKY:  Can I finish, Judge?  Judge,
23 can I --
24          MR. SHAIKH:  Again, he misplaces the time
25 frame, Judge.  That 77,000 -- he just attested five

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH  --  December 18, 2015**

Sheet 20

38
Colloquy
```
 1    minutes ago now he's going --
 2              THE COURT:  Okay.
 3              MR. SHAIKH:  -- opposing to his own
 4    statement, Judge.
 5              THE COURT:  Mr. Shaikh.
 6              MR. SHAIKH:  But, Judge, he keeps twisting
 7    the time frames, Judge.
 8              THE COURT:  Mr. Shaikh, I cannot possibly --
 9              MR. SHAIKH:  As an officer of the court, how
10    can he stand up straight and lie, Judge?
11              THE COURT:  Okay.
12              MR. SHAIKH:  It's amazing to me.
13              THE COURT:  I cannot possibly conduct an oral
14    argument on this motion appropriately if you are
15    constantly interjecting and yelling at the Court and at
16    counsel.  So, I'm going to ask you again to please
17    refrain from interrupting counsel and then I will
18    afford you the opportunity to speak directly because I
19    can't hear two people at the same time and I refuse to
20    consider where you're shouting and screaming at the
21    Court.
22              MR. SHAIKH:  But, Judge, I'm not --
23              THE COURT:  Okay?
24              MR. SHAIKH:  I apologize, Judge.  I'm not
25    shouting and screaming --
```

39
Colloquy
```
 1              THE COURT:  Okay.  I know it's a very
 2    emotional thing.
 3              MR. SHAIKH:  -- but this is just so
 4    outrageous behavior, Judge, it's beyond --
 5              THE COURT:  I know it's a very emotional
 6    thing but, you know --
 7              MR. SHAIKH:  No, I'm not being emotional,
 8    Judge.  That was two years ago I was emotional.  Now,
 9    I'm just looking to follow the Court's rules and making
10    sure this Court follows the rules that exit --
11              THE COURT:  Okay.
12              MR. SHAIKH:  -- as well as Mr. --
13              THE COURT:  All right.
14              MR. SHAIKH:  -- Defendant Zabarsky who claims
15    to be an officer of the court.
16              MR. ZABARSKY:  Judge.
17              THE COURT:  Okay.
18              MR. ZABARSKY:  Judge.
19              THE COURT:  Stop talking, Mr. Shaikh.
20              MR. SHAIKH:  Very well, Judge.
21              MR. ZABARSKY:  Judge, I would ask the Court,
22    for purposes of decorum and respect, that I not be
23    referred to as Defendant Zabarsky.  It's demeaning and
24    it's inappropriate and we're not here on the civil
25    action.
```

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 21

40

                              Colloquy
1              THE COURT:  Okay.  It's Mr. Shaikh and it's
2    Mr. Zabarsky.
3              MR. ZABARSKY:  Thank you.
4              THE COURT:  That's how we're going to refer
5    to each other.  Okay?
6              MR. ZABARSKY:  Thank you.
7              MR. SHAIKH:  But, Judge, is he not a
8    defendant.  You combined the case number.
9              THE COURT:  Mr. Shaikh.
10             MR. SHAIKH:  You made him a defendant in this
11   case, Judge, not me.  You made him a defendant --
12             THE COURT:  Mr. Shaikh, --
13             MR. SHAIKH:  -- not me, Judge.
14             THE COURT:  -- I'm going to ask you to refer
15   to Mr. Zabarsky as Mr. Zabarsky, and I'm asking him to
16   refer to you as Mr. Shaikh.  Okay?
17             MR. SHAIKH:  Yes, Judge.
18             MR. ZABARSKY:  Judge, what it was is it was
19   a bench warrant for his arrest.  Before he got picked
20   up it was about seven months that he couldn't be
21   located.  He, through counsel, produced a check and
22   then the warrants were vacated.  That's correct.  That
23   is -- that is factual.  So, we ask that the Court
24   consider issuing another warrant for his arrest and
25   maybe we'll get the 19 or 21,000 that the children need

41

                              Colloquy
1    for shelter, --
2              THE COURT:  Okay.
3              MR. ZABARSKY:  -- to pay for the household
4    bills and to put food on the table.
5              THE COURT:  All right.
6              Mr. Shaikh.
7              MR. SHAIKH:  Yes, Judge.
8              THE COURT:  Okay.  You may respond to that.
9              MR. SHAIKH:  Yes, Judge.  First of all,
10   defense counsel talks about $77,000.  Again, a
11   misstatement.  There was an additional -- well, yeah.
12   $5,000 came from Patricia Germadnig, which he agreed
13   to.  He had received that.  He received an additional
14   $77,000 check from me and then an additional $5,000 was
15   paid to him by my second attorney, August Landi.  So,
16   that was $87,000 that has been -- in checks that has
17   been written to defense counsel's law firm's benefit.
18   Whatever he did with that money, you know, that's
19   something he has to prove.
20             Number two, moving on to desk tower.  Judge,
21   that was my office desk tower -- desktop tower and Bill
22   Stabile has reviewed that stuff.  In fact, in addition
23   to the desktop tower, Judge, on whatever -- March 15th
24   of 2015, earlier this year, I brought my laptop and
25   they made a copy of the hard drive off my laptop in

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH  -- December 18, 2015**

Sheet 22

42

Colloquy

```
 1    addition to the desktop that's still in their
 2    possession, which I need if I could get back to doing
 3    my business to operate my business.
 4             So, I need that desktop tower back, Judge.
 5    So, please, if you can make an order.  I have asked for
 6    that previously also but, you know, it's such a
 7    minuscule thing that it kind of got shuffled to the
 8    side.
 9             The 2013 and 2014 tax returns, I cannot file
10    them, Judge, because the landlady, Nada Pidinger, whose
11    house I was living at or I was renting from her, who I
12    thought was a family friend, stole all my financial
13    documents, my passport, my tax return paperwork, my
14    1099s, a bunch of tax paperwork.  Judge, I've been
15    living out a suitcase ever since this divorce started.
16             So, those tax returns cannot be filed and at
17    this point, like I stated earlier, the attorney
18    general's office -- we do have a detective assigned to
19    it.  He is investigating, you know, the theft of my
20    financial documents by defendant and how she obtained
21    them through Nada Pidinger.  So, I'm sure the detective
22    is going to make that connection.  He -- the detective
23    is based out of Trenton.
24             The motion to quash, Judge, is a totally
25    bogus motion.  I mean, defense counsel has sent out
```

43

Colloquy

```
 1    over 70 subpoenas, Judge, 70.  Not only to my
 2    accountant, but to God knows all the banks in the
 3    universe, then to every person that he could think of
 4    to try to somehow come up with this mysterious millions
 5    of dollars, Judge, that you've been hearing about, that
 6    everybody's been hearing about.
 7             So, I have complied in every possible way.  I
 8    have provided my tax returns half a dozen times through
 9    my previous counsels, through myself and now, at the
10    very latest, my own accountant, Tom Whale, who's so fed
11    up with this that he actually mailed a copy despite
12    defense counsel being out of time on subpoenaing
13    anybody.
14             So, there could be no more subpoenas issued
15    as per your August 7th order, Judge.  November 12th was
16    the finality of all expert reports, of all subpoenas,
17    of all discovery.  So, we are well past that.  Just the
18    way he was able to request bank statements from TD Bank
19    directly -- which they sent him CDs of everything,
20    Judge, on both my companies, Progressive Equity
21    Partners and America's Retirement Planning.  That was
22    already provided.
23             So, again, defense counsel misstates to this
24    Court that no statements were provided, but Tammy
25    Haskell wrote -- testified and he has actually provided
```

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 23

44

Colloquy

```
 1    proofs in his paperwork that every single bank
 2    statement has been provided.  So, I don't know what
 3    more I can do to that, Judge, outside of going back to
 4    Tammy Haskell and re-requesting all the paperwork or
 5    CDs that they put all the statements on over here.
 6            Then going back to, you know, defense counsel
 7    likes to make a point that I'm constantly objecting to
 8    release of information, that's not true.  My CPA,
 9    number one, already provided, but he is out of time,
10    Judge.  At which point are we going to start obeying
11    the court rules that we all operate under?  Are we just
12    going to willy nilly go on?
13            And as you can see from defendant's counsel's
14    attitude that even the hint of going to any kind of
15    MESP or any kind of mediation is totally against their
16    process.  In fact, Judge Jones, who was our -- my judge
17    before we came over to you, had noticed this repeatedly
18    about defense counsel and defendant that they like to
19    make mountains out of mole hills, Judge.
20            I mean, this divorce has to come to an end.
21    Our children are suffering, you know, and this Court,
22    Judge, frankly has a duty and obligation to protect all
23    parties and all parties' rights.  And, Judge, this
24    cross-motion came from a direct advice from you to
25    defense counsel at the October 26th hearing that he
```

45

Colloquy

```
 1    should file a motion to quash my pleadings.  So, you
 2    gave him legal advice, which as you know is not fair.
 3            THE COURT:  I would -- did not give him legal
 4    advice, Mr. Shaikh.  Mr. Shaikh, that was in the
 5    context of an application to hold you -- to incarcerate
 6    you for failure to make child support payments.  And
 7    when I instructed Mr. -- I invited -- which is a common
 8    thing for courts to do.  I invited Mr. Zabarsky to make
 9    an application for an alternative sanction, for
10    example, suppression of the pleadings which would
11    afford the Court to consider an application other than
12    coercive incarceration, which some may argue might be
13    appropriate in this case, but I think that there are
14    other ways to drive home the point and perhaps bring
15    this to a head.  And while I was not giving legal
16    advice, I was inviting him to make the appropriate
17    application to the Court, which he did.
18            MR. SHAIKH:  Well, Judge, that CD has been
19    heard by some attorney -- by a couple of deputy
20    attorney generals and it was perceived to be legal
21    advice.  So, I'll leave it to the higher ups to make
22    that.
23            THE COURT:  Okay.
24            MR. SHAIKH:  I'm not a lawyer.  But I would
25    like you to know, Judge, that -- let's just presume for
```

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey  07405
973-283-0196  FAX 973-492-2927

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH  --  December 18, 2015**

Sheet 24

46

Colloquy

1   a moment that any monetary sanctions that you think are
2   legitimate, whatever marital assets that are to be
3   distributed --
4                    THE COURT:  Mr. --
5                    MR. SHAIKH:  -- at this point we have the
6   house left, jewelry, and gold and silver, Judge.
7                    THE COURT:  Okay.  Obviously I can't --
8                    MR. SHAIKH:  You know, we can divvy it up at
9   that point.
10                   THE COURT:  I can't resolve that aspect of
11  it, but what I -- all right.  I've heard enough.
12                   MR. SHAIKH:  Right.  So --
13                   THE COURT:  Okay.  This matter comes before
14  the Court on the motion of the plaintiff, Zia Shaikh.
15  He appears here as self-represented.  He's asking for
16  an order to suppress and dismiss defendant's answer,
17  counter-claim and other requests for discovery.  He
18  also asked for an imposition of sanctions against
19  defendants [sic] and her attorney, Mr. Zabarsky, with
20  fines of $1,000 per day.
21                   The defendant has cross-moved in opposition
22  to the relief request and in support of a cross-motion
23  to enforce litigants rights.  The defendant seeks to
24  strike or dismiss the defendant's divorce answer,
25  counter-claim for failure to provide discovery and that

47

Colloquy

1   -- to suppress certain subpoenas that were issued upon
2   defendant's counsel's law firm, Citta, Holzapfel &
3   Zabarsky; against John Reed Investigative Services,
4   Securities; PNC Bank; Cellco Partnership, doing
5   business as Verizon Wireless; Anthony Travel;
6   (phonetic) Allstate Insurance, and that -- also that
7   there be an order directing that any future discovery
8   request or subpoenas issued by the defendant be with
9   the permission of the Court, that the --
10                   Also the defendant seeks suppression of the
11  plaintiff's pleadings for failure to pay unallocated
12  support as previously ordered in this matter and to
13  otherwise comply with discovery, that the defendant
14  issues -- requests the Court to issue a bench warrant
15  for plaintiff's arrest or incarceration for failure to
16  pay child support, which at the time had an approximate
17  arrearage of $19,000.
18                   Also, to compel the plaintiff's accountants
19  to produce certain information -- tax information for
20  the tax years 2013, 2014 and any other years.  It's my
21  understanding I presume that's being withdrawn because
22  they've complied with the subpoena for counsel fees and
23  costs and for other relief.
24                   The Court has considered the oral argument
25  that's been made here today.  I just want to address a

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey  07405
973-283-0196  FAX 973-492-2927

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 25

48

Colloquy

```
 1    couple of things, that the plaintiff's motion to
 2    suppress and dismiss defendant's answer and
 3    counterclaim for failure to provide discovery pursuant
 4    to rule 4:23-5 is denied without prejudice.
 5             I note that the defendant's default together
 6    with this application, the Court must also consider an
 7    application to suppress the plaintiff's pleadings for
 8    noncompliance with prior court orders as a sanction.
 9    And in that capacity, assuming that the Court grants
10    that application, the plaintiff would not be able to
11    assert any affirmative claims, would be able to be
12    heard on the issues of the divorce action, but would
13    not be able to assert any affirmative claims in
14    connection with that, including applications to enforce
15    or for discovery.
16             The Court, as the parties note and the
17    defendant -- and the plaintiff has so noted that the
18    Court had entered a order extending the time period for
19    discovery in this matter in the interest of trying to
20    bring it to a resolution.  And notwithstanding that,
21    there has been little, if anything, provided by the
22    defendant.  And therefore, his application to suppress
23    the defendant's pleadings basically is denied without
24    prejudice.  Obviously, there may be other issues that
25    occur on this.
```

49

Colloquy

```
 1             Therefore also, the application to impose a
 2    sanction of $1,000 per day upon the defendant and
 3    personally upon her attorney, Mr. Zabarsky, is denied,
 4    that the defendant has made a cross-motion to compel or
 5    strike and dismiss defendant's divorce complaint for
 6    failure to provide discovery.
 7             And in this particular case, I just note that
 8    during the course of this litigation it appears that
 9    the only way that the defendant has received any
10    accurate and valid information has been through the use
11    of direct subpoena process to many individuals in order
12    to verify some of the information, that the plaintiff
13    has not complied in good faith with the discovery and,
14    therefore, that defendant's motion to -- cross-motion
15    to suppress the -- to dismiss the complaint is granted,
16    that the application of the defendant to quash the
17    subpoenas issued to the various individuals that I
18    cited before that there -- is also granted, that
19    defendant's motion to suppress plaintiff's pleadings
20    pursuant to rule 4:23-2b --
21             In this particular case -- and I just want to
22    note for the record that I do have the probation
23    department report indicating the summary of the support
24    obligations.  The plaintiff in this matter had been
25    ordered to maintain certain utilities and mortgage on
```

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey  07405
973-283-0196  FAX 973-492-2927

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH  --  December 18, 2015**

Sheet 26

50

Colloquy

```
 1    the former marital home.  As I indicated in the many
 2    prior court proceedings, which I refer to by reference,
 3    but which I am not going to go into detail on -- that
 4    there has been a default in the -- in that -- at some
 5    point in time and the time is kind of irrelevant --
 6    that the plaintiff stopped making payments on the
 7    mortgage on the home.  I note that I believe the home
 8    is only in his name, but the mortgage is in both names
 9    and that -- and therefore, the home is in default and
10    in danger of foreclosure, but --
11                MR. SHAIKH:  Correction, Judge, the mortgage
12    is only in my name too.
13                THE COURT:  Okay.
14                MR. SHAIKH:  Just the deed and the mortgage
15    are only in my name, that's it.
16                THE COURT:  So, not that -- as we know for
17    equitable distribution purposes, that's not
18    particularly relevant --
19                MR. SHAIKH:  Correct.
20                THE COURT:  -- but that the plaintiff has
21    failed to make payments, notwithstanding having been
22    ordered to do so.  Plaintiff has also failed to make an
23    accurate application to the Court for modification of
24    that pendente lite order.  The -- in addition to that,
25    the plaintiff was ordered to pay, I believe it's $800
```

51

Colloquy

```
 1    per week in unallocated family support for the
 2    defendant and for the three minor children that are in
 3    her temporary custody, that the -- the Court conducted
 4    an ability to pay hearing on this matter.  The Court
 5    concluded at that -- after that ability to pay hearing
 6    that the plaintiff had historically been -- had earned
 7    income in the area of at least 120, if not $200,000,
 8    that there is, as represented by Mr. Zabarsky and was
 9    supported by the proofs presented, some proof that the
10    parties had habitually spent net, after taxes, in the
11    area of 180 to $200,000 to sustain their lifestyle.
12                MR. SHAIKH:  Judge, that's inaccurate, Judge.
13    That's been proven for you.  That's inaccurate, Judge.
14                THE COURT:  Excuse me, sir.  Excuse me, sir.
15    I'm making my --
16                MR. SHAIKH:  I'm just correcting you, Judge.
17    That's an inaccurate statement.
18                THE COURT:  Sir, I'm making my findings on
19    the record because you've indicated that it's important
20    to you to appeal this and all decisions of the Court.
21    So, in order to do that, I want to make sure that I set
22    forth my reasons on the record.
23                MR. SHAIKH:  Okay.  But that's an inaccurate
24    statement, Judge.
25                THE COURT:  Okay.  And in any event, the
```

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 27

52

Colloquy

```
 1    Court made a finding and -- at that point in time that
 2    the plaintiff had the ability to earn at least
 3    $120,000, that the -- per year, that the support
 4    obligation, at least at a minimum, the $800 per week
 5    was not a -- was not in the context of $120,000 per
 6    year imputed income to Mr. Shaikh.
 7         And the Court said it's difficult to
 8    ascertain the actual income of somebody who is self-
 9    employed, but that for imputing purposes and based on
10    that, that $120,000 a year certainly -- with a gross
11    income was -- and with an ongoing support obligation of
12    $800 per week was not an unreasonable pendente lite
13    order given the fact that the plaintiff had
14    responsibility not only for herself but for the three
15    minor children, and that there was a separate issue as
16    to the dissipation of the asset, the marital home, by
17    failure to pay the ongoing overhead.
18         At that time, the Court was particularly
19    concerned about the fact that the plaintiff had failed
20    to make payments on the utilities on the home and had
21    caused the gas, in particular, to be terminated or shut
22    off on the home.  And as a result, the children were
23    without the ability to have hot showers, that there was
24    potentially no heat in the home looking forward to the
25    winter, and that this had created a very untenable
```

53

Colloquy

```
 1    position.
 2         When I entered the order on October 2nd, I
 3    directed that the plaintiff go to the -- go to the gas
 4    company to see whether or not they would be willing to
 5    compromise the amount needed to turn that on.  At
 6    various points in time, he told me that the turn on
 7    amount, I believe, was about $1,100.  There were other
 8    amounts that were articulated.
 9         I've indicated to the parties that on October
10    9th, having been advised that there was no turn on of
11    the electricity at a minimum, I felt -- and reluctantly
12    because it's something I don't like doing.  I issued an
13    order for the arrest of Mr. Shaikh because there had,
14    (a) been no stay of that order, (b) he had not made an
15    application showing -- you know, an emergent
16    application to show that there were -- what the
17    arrangements were or whatever to turn that back on and,
18    (c) I had already made a determination that he had the
19    ability to turn that back on.
20         At the review hearing on this before Judge
21    Nemeth in the court -- in this Court's absence, Judge
22    -- and I had the opportunity to listen to the tape of
23    that hearing.  And granted, Mr. Shaikh was not under
24    oath, but I believe he represented to Judge Nemeth that
25    it would cost about 5 or $6,000 to turn the electricity
```

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 28

54

Colloquy

```
 1    on.  As a result, Judge Nemeth deferred to this Court
 2    and vacated the bench warrant and released Mr. Shaikh.
 3    And then subsequent to that, the parties came before
 4    the Court, I think, the following Monday.
 5              At -- in the interim, Mrs. Shaikh, the
 6    defendant, was able to get the gas turned on for $500.
 7    The -- and I cite this in some detail because much of
 8    what has happened on this and I am -- I am sad to come
 9    to this conclusion, but I do come to this conclusion --
10    is that Mr. Shaikh has used his superior financial
11    position and his control of the finances in this family
12    in order to put pressure upon the defendant in order to
13    effectuate a favorable resolution of this matrimonial
14    litigation.
15              And he has used some extraneous and very
16    questionable civil actions that have been filed against
17    defendant, her parents, Mr. Zabarsky, I think even
18    staff members at Mr. Zabarsky's firm, all of which is
19    very unusual and highly contentious litigation.  And
20    all of that has diverted us really from our task of
21    trying to resolve this marriage, to allow people to
22    know what their legal obligations are, to have a
23    relationship with their children and so forth.
24              And I came to the conclusion, as I have at
25    prior proceedings, that Mr. Shaikh has conducted
```

55

Colloquy

```
 1    himself in a particularly egregious manner in terms of
 2    bad faith in the conduct of this litigation.  The
 3    example was made about the vehicle from last year.  Mr.
 4    Shaikh represented it was sold.  It, in fact -- a
 5    private investigator hired by the defendant found that
 6    the vehicle was hidden at the home of a friend and that
 7    it continued to be insured under his name.  So, at
 8    least for a period of time it wasn't sold.  I know
 9    ultimately it was sold, but at that --
10              So, all of this -- there's been issues about
11    whether or not -- and I just want to note for the
12    record also the payment history on this, that there was
13    -- there was a -- an obligation, as I indicated, to pay
14    $800 per week.  In December of last year, January,
15    February, March, April, May and June, there was more or
16    less full compliance with that.
17              In June of 2015, Mr. Shaikh had accumulated
18    in arrears $1,290.  Since June of this year, there have
19    been quite literally a pittance paid in terms of family
20    support.  In July of 2015, Mr. Shaikh paid $60.  In
21    August of 2015, Mr. Shaikh paid $135.  In September of
22    2015, Mr. Shaikh paid $96.  In October of 2015, Mr.
23    Shaikh paid $70.  In November of 2015, he paid $245.25,
24    and in December of this year -- and I -- and today is
25    December 18th, that the records which are fresh as of
```

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

56

                                    Colloquy
1    yesterday shows one payment of $42.
2                The amount that he has paid during this six
3    month time period is so woefully inadequate for -- not
4    -- let's not even consider the support of Mrs. Shaikh
5    who's an adult, but for the support of three minor
6    children who obviously have no capacity to support
7    themselves.
8                And in October 2nd, I entered an order which
9    -- I entered an order which found that he had an
10   ability to pay and that was after a -- an evidential
11   ability to pay hearing.  And I afforded him the
12   opportunity to try to make things right for his family,
13   and he did not do that by October 9th and a bench
14   warrant was issued.
15               I just find the concept of coercive
16   incarceration to be distasteful to the Court because
17   after all, this is a civil matter.  It's not a criminal
18   matter.  Mr. Shaikh's not a criminal.  I -- you know,
19   it's -- and I noted that I would consider other
20   alternatives for sanctions against Mr. Shaikh and I
21   invited, as I often do and many judges do -- I invited
22   the parties to make an application to the Court by
23   notice of motion for other sanctions, including a
24   sanction of suppressing the pleadings.
25               And so, as to the defendant's motion to

57

                                    Colloquy
1    suppress the pleadings pursuant to rule 4:23-2b for
2    failure to comply with the outstanding court orders
3    relative to financial obligations to the family, as
4    previously ordered, and I think I put forth on the
5    record the basis for that, that they're -- that I am
6    not inclined to issue a bench warrant for Mr. Shaikh's
7    incarceration.  I'm not sure that that is appropriate
8    under these circumstances when there are less intrusive
9    and available alternatives which I think would serve
10   the interest of everyone.
11               And I do think it's appropriate to suppress
12   his pleadings for a very gross and calculated effort to
13   avoid his obligations to make discovery and to
14   otherwise conduct himself in good faith in this
15   matrimonial litigation.  So, the pleadings -- the
16   plaintiff's complaint will be suppressed pursuant to
17   rule 4:23-2b.
18               What this means, Mr. Shaikh, is that you --
19   I'm going to authorize this matter to proceed as an
20   uncontested matter.  You will have -- your appearance
21   in this matter will be noted.  You'll certainly have a
22   right to participate in the hearing on equitable
23   distribution and other issues, but you can certainly
24   present evidence and so forth, but you can't make any
25   affirmative claims, for example, to impose sanctions

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey  07405
973-283-0196  FAX 973-492-2927

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH  --  December 18, 2015**

Sheet 30

58

Colloquy

1   against the other side or so forth.  Okay?
2            MR. SHAIKH:  Well, Judge, I would like to put
3   this on the record also --
4            THE COURT:  Well, I'm not done because I
5   haven't gone through the motions.  If you just bear
6   with me a minute.
7            So, the defendant's motion to issue a bench
8   warrant for failure to make payments -- and I've
9   indicated why -- is denied without prejudice.  The
10  defendant's motion to compel the plaintiff's
11  accountants is -- to produce is withdrawn by defendant
12  because there apparently has been a separate
13  compliance.
14           Defendant's motion for counsel fees and costs
15  is granted.  The Court notes that part of the
16  consideration in this is that this was in part a
17  mechanism for enforcement of an existing support
18  obligation and that the rules and the case law
19  indicates that one of the factors for the Court to
20  consider in terms of counsel fees is whether or not
21  this is an enforcement action or the action was taken,
22  the counsel fees were incurred to enforce the rights
23  that were afforded to the defendant under prior orders
24  of the Court.
25           And this clearly is an enforcement action and

59

Colloquy

1   therefore, the application will be granted.  Counsel
2   for the defendant shall submit a affidavit of services
3   and a form of order -- separate form of order for the
4   counsel fees.  Okay.  All right.
5            Mr. Shaikh.  Okay.
6            MR. SHAIKH:  Yes, Judge.
7            THE COURT:  All right.  You can address the
8   Court.
9            MR. SHAIKH:  Judge, I wanted to just put this
10  on the record that everything you have just stated is
11  basically in line with all the objections and my
12  contentions that I've had with your courtroom
13  particularly.  I realize that since your graduation
14  from Seton Hall University you have championed the
15  causes of women and I got to tell you, on various blogs
16  you are --
17           THE COURT:  Things that you find out through
18  googling somebody, huh?
19           MR. SHAIKH:  Well, Judge, it's not just a
20  matter of Google.  You're a very popular judge.  I
21  don't know if you know that or not.  There's a lot of
22  people, lot of men who have been hurt by your orders
23  and today's order is no different, which will be
24  appealed.  And I don't know -- you sat on the appellate
25  courts -- or, you know, on -- at the appellate court

## ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015

60

Colloquy

```
 1    level, so you know that the appellate courts have
 2    overturned --
 3              THE COURT:  No, I've never sat on the
 4    appellate court level.
 5              MR. SHAIKH:  Okay.  I was told differently by
 6              THE COURT:  Yeah.
 7              MR. SHAIKH:  -- by many lawyers in the area,
 8    but I was told that you sat on there just very
 9    recently.  So, appellate courts --
10              THE COURT:  No, I've never -- I've never been
11    -- I think you have me mixed up with Judge Roe.  Judge
12    Roe sat on the appellate court for a little while.
13              MR. SHAIKH:  Okay.  Somebody said Judge Ford.
14    So, anyway, maybe they were misinformed.
15              THE COURT:  All us women judges look alike,
16    you know.
17              MR. SHAIKH:  Gotcha.  So, unfortunately, you
18    know, by you suppressing my pleadings it's not going to
19    help this case.  I have never lied about my monies,
20    about anything in this court, so I don't know where
21    this case is really going.
22              Number two, you made a comment about, you
23    know, the electric and gas bill.  I have copies right
24    here which I provided to you back in -- on November 13
25    to your courtroom.  Between the gas bill and the
```

61

Colloquy

```
 1    electric bill, this is $5,000 that was needed to turn
 2    it on.  So, again, that was a misstatement --
 3              THE COURT:  But --
 4              MR. SHAIKH:  -- and misinformation that was
 5    provided to you.
 6              THE COURT:  It was turned on in October for
 7    $500 after --
 8              MR. SHAIKH:  Correct, Judge.
 9              THE COURT:  -- within days of when --
10              MR. SHAIKH:  Correct.  And I got to tell you
11              THE COURT:  You represented --
12              MR. SHAIKH:  -- when I have a recording in
13    speaking to the gas company, there's --
14              THE COURT:  There's a difference between
15    working out a payment schedule or --
16              MR. SHAIKH:  Oh, I did, Judge.  I attempted.
17    I attempted.  Just -- that -- wasn't the gas bill
18    you're referring to where the bill was $954, and I have
19    recorded my conversation with the New Jersey Natural
20    Gas people.  They said for less than $920.
21              THE COURT:  Look --
22              MR. SHAIKH:  So, anyway, I made a good faith
23    effort.
24              THE COURT:  Mr. Shaikh, I don't know why -- I
25    raised that just as an example.  Just first of all --
```

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey 07405
973-283-0196  FAX 973-492-2927

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 32

```
                                                         62
                            Colloquy
 1     first of all I think --
 2              MR. SHAIKH:  Sure.  Again, I'm trying to
 3     clear my name, Judge, on that.  That's all.
 4              THE COURT:  Okay.  Let me just -- first,
 5     you've raised an issue of bias on the part of the
 6     Court.  I will indicate to you that, you know, I do not
 7     feel that I am biased for men, for women, for one side,
 8     for the other side.
 9              MR. SHAIKH:  Judge, just look at your orders
10     from July.
11              THE COURT:  I think that I try to make my
12     rulings based on that.
13              MR. SHAIKH:  Every single order, Judge.
14              THE COURT:  But --
15              MR. SHAIKH:  Every single order has not
16     benefitted me one iota.  You haven't even helped me get
17     a parenting schedule with my kids, Judge.  And please
18     don't forget, we do need this parenting schedule signed
19     before we leave today.
20              THE COURT:  Yes.  We're going to address
21     that.
22              MR. SHAIKH:  And we also need to -- we need
23     to assign a time.
24              THE COURT:  But let me just stop -- let me
25     just stop you there.  And so, to the extent that you
```

```
                                                         63
                            Colloquy
 1     are asking, again, for the Court to take any action --
 2     or to refrain from taking any action on an application
 3     because you allege bias, that -- based upon whatever
 4     you might have read on the internet or otherwise is
 5     denied, that -- secondly, that you certainly have a
 6     right to appeal this order.  I have no problem with you
 7     taking whatever steps you feel you need to take.  I
 8     will put in the order that you made an -- because they
 9     look for this, as you know by now.
10              MR. SHAIKH:  Yes, absolutely.
11              THE COURT:  They ask me to -- they ask you to
12     make an application to stay the order at the trial
13     level.  Your application to stay the order is denied.
14     You have a right to make an application for a stay to
15     the appellate division.  Okay?  As far as, you know,
16     any of this other stuff, you know, I don't know what to
17     tell you.
18              MR. SHAIKH:  Well, Judge, you know, again,
19     defense counsel's --
20              THE COURT:  I -- the reason I have the case
21     is because of -- there are conflicts with other judges
22     in the courthouse, there's conflicts -- there's a
23     conflict that was created by virtue of the filing of a
24     civil action, the federal court against at least two of
25     our judges.  You have a right to do that.  I just have
```

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 33

64

Colloquy

```
 1    questioned repeatedly, you know, what -- it doesn't
 2    make sense to me that when you have certain family
 3    financial obligations why money is diverted to those
 4    causes, but that's -- you know, that's your right.
 5               MR. SHAIKH:  Judge, those lawsuits existed
 6    long before I came along, Judge.  Yeah.
 7               THE COURT:  That's your right to do that.
 8               MR. SHAIKH:  Yeah.  Those lawsuits were
 9    existed, I just became a party to them.
10               THE COURT:  Okay.  And --
11               MR. SHAIKH:  But as far as -- Judge, there is
12    a huge conflict between yourself and Defendant Zabarsky
13    that he shouldn't even be in your courtroom, Judge.  We
14    have talked about this on several occasions.
15               THE COURT:  Yeah.  I've ruled -- I've ruled
16    on that.
17               MR. SHAIKH:  And this will be addressed at
18    the appellate level, Judge.
19               THE COURT:  Okay.
20               MR. SHAIKH:  And all the orders since
21    November 16th need to be admonished --
22               THE COURT:  Sir.
23               MR. SHAIKH:  -- for the simple fact that
24    there's a huge conflict between the two of you, Judge.
25               THE COURT:  Sir, you have raised an issue of
```

65

Colloquy

```
 1    conflict, so I've addressed -- I believe it goes back
 2    -- I think that was first raised in an August order and
 3    then it was raised again.  I've written a -- I know
 4    I've written a couple of --
 5               MR. SHAIKH:  And the issue has -- and now
 6    it's even worse, Judge, because of my civil case that I
 7    filed, which you combined.  So, you made defense
 8    counsel Zabarsky --
 9               THE COURT:  Okay.
10               MR. SHAIKH:  -- a defendant in the
11    matrimonial case.  So, you did that, Judge.
12               THE COURT:  Well, let me just --
13               MR. SHAIKH:  So, court rules say he shouldn't
14    even be here, Judge.
15               THE COURT:  Let me just indicate that under
16    these circumstances where the Court feels that the
17    filing of that civil action is either a strategic step
18    in an effort --
19               MR. SHAIKH:  It's not a -- it's just a
20    legitimate step, Judge, and I have given exhibits and
21    proofs.
22               THE COURT:  Sir.  Sir, respectfully --
23               MR. SHAIKH:  So, there's nothing strategic
24    about it, Judge.
25               THE COURT:  Sir.  Sir, respectfully, I'm
```

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey 07405
973-283-0196  FAX 973-492-2927

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 34

66

Colloquy
```
 1   trying to put something on the record.
 2              MR. SHAIKH:  Yes, Judge.
 3              THE COURT:  It's really for your benefit --
 4              MR. SHAIKH:  Sure.
 5              THE COURT:  -- so that if the appellate
 6   division looks at the transcript they'll know, you
 7   know, what the basis is, that -- let me just say you
 8   have raised some very, you know, unusual allegations of
 9   some relationship that I have with the Zabarsky firm,
10   with Mr. Holzapfel and so forth.  I do not have any
11   business relationship, social relationships, anything
12   like that.
13              I obviously know Mr. Zabarsky because I've
14   been an attorney in Ocean County, I've been a judge for
15   a number of years, you know, but there's no basis for
16   me by court rule or by code of conduct to recuse myself
17   from the case because of that.
18              That secondly, I have found on various
19   appearances before the Court that I truly believe that
20   when you file these applications they are done for
21   strategic reasons and not really in good faith to
22   assert a claim.  You may think differently, but that's
23   how I view it.  And so, I'm not going to deprive the
24   defendant of her right to have counsel of her selection
25   based upon that.
```

67

Colloquy
```
 1              MR. SHAIKH:  Well, Judge, you're depriving me
 2   for a right to have counsel, Judge.  I need a lawyer.
 3              THE COURT:  Okay.  You keep --
 4              MR. SHAIKH:  I've asked you for it 100 times.
 5              THE COURT:  Once again, you're interrupting
 6   me when I'm trying to --
 7              MR. SHAIKH:  Okay, Judge.
 8              THE COURT:  -- put some reasoning on the
 9   record here.
10              MR. SHAIKH:  I'm trying to out this on the
11   record too, Judge.
12              THE COURT:  Well, at this point in time, I
13   have a right to put the reasons on the record to
14   protect the record and the parties.  Okay?  That you
15   now have raised some issues about something that you've
16   read on the internet for the first time, that you say
17   that I have a bias in favor -- against men and in favor
18   of women.  I disagree with that, you know, but by the
19              MR. SHAIKH:  It's not me, Judge.  It's the
20   internet and it's the other lawyers and other parties.
21   I'm just a messenger.
22              THE COURT:  Whatever you read on the
23   internet, that's true.  It's got to be true.
24              MR. SHAIKH:  I'm just a messenger, Judge.
25              THE COURT:  Okay.
```

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 35

68

Colloquy

```
 1          MR. SHAIKH:  Just a messenger.
 2          THE COURT:  So, I am respectfully, you know,
 3   denying your application once again to recuse me biased
 4   upon any gender bias.  You have, in the past, suggested
 5   I have a bias against you for ethnic reasons.  I have
 6   denied that application to be recused based on ethnic
 7   reasons.
 8          I do not -- I believe that I am, you know,
 9   applying the rules.  Whether I agree with them or not,
10   I have to apply the rules and the rules of court as I
11   see appropriate in this case.  It is true in a
12   matrimonial case that there is a tremendous amount of
13   equitable discretion by the Court, but I think that
14   that equitable discretion has been exercised
15   appropriately in this case.
16          So, at least on the motion, we will -- I will
17   enter an order consistent with what my findings were on
18   this.  And secondly, that I'm going to ask Mr. Zabarsky
19   just to take a couple of minutes.  I think by now
20   you've gotten a copy.  Have we gotten him a copy of
21   that?
22          MR. ZABARSKY:  No, Your Honor.
23          THE COURT:  Okay.  Yeah, that was faxed out
24   and I think what happened when he made the copies, he
25   -- they had it out of order, but -- so, it had gone --
```

69

Colloquy

```
 1   at least on the copy.  So, what I'm giving you, this
 2   not part of the order, but it was the fax from Steve
 3   Waters, the family court mediator that went to Mr.
 4   Shaikh and Mr. Zabarsky.  And then the proposed consent
 5   order -- let's see -- starts -- okay.  It's a little
 6   bit out of order.  This is -- okay.
 7          Let's -- can you copy it all on just one
 8   side?  Recopy it.  I'm going to number the pages.  This
 9   is page 1 of 2.  So, that's 1, 2, and there's a
10   signature on it.  Did I have one that had original
11   signatures on it?  Okay.  So, let's do this because
12   they had it all backwards and they have this -- this is
13   out of -- this is a holiday one.  Yeah.  So, this is --
14          MR. ZABARSKY:  That's the one I said that I
15   received, Your Honor.  It said here's an additional
16   proposal for holidays.
17          THE COURT:  Okay.  There's one, it's a
18   consent order for holidays and special days.  Okay.
19   And then there is a -- this is where it starts, the
20   consent order, which is 1 of 3.  1, A, B, C, D -- okay.
21   This is page 1.  I'm just going to put page 1 on it.
22   1, this is 2, and this is 3.  All right?  Don't do
23   double-sided.  Do single-sided, it's easier to see and
24   it's not as -- 1, 2, 3.  Okay?  And then you have the
25   consent order.  This one here, do it on two pages, the
```

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH  --  December 18, 2015**

Sheet 36

70

                          Colloquy
1      consent order on the -- on the holiday time.  Okay?
2                COURT CLERK:  You want to review the record.
3                THE COURT:  Yeah.  We're going to close the
4      record.  We're going to close the record at this point.
5      We're going to allow her to do that.  I'm going to give
6      you a couple of minutes just to look --
7                (Off the record - On the record.)
8                COURT CLERK:  On the record.
9                THE COURT:  Okay.  I had referred the parties
10     in this matter to mediation.  I had received what
11     purported to be a draft of a consent order.  It was
12     signed by Mr. Shaikh.  It was not signed by Mrs.
13     Shaikh.  I appreciate the fact that they sent it to Mr.
14     Zabarsky for the purpose of trying to -- to give him
15     the courtesy of reviewing the language.
16               What's your position on that, Mr. Zabarsky?
17               MR. ZABARSKY:  Yes.  And, Judge, just so it's
18     clear, the mediation program is voluntary, (a), and (b)
19     it is not binding on anybody who has an attorney.  They
20     have the right to consult with their attorney.
21               That being said, for the record, Your Honor,
22     I was handed the proposed consent order for parenting
23     time that I indicated to the Court I did not receive.
24     I did receive the holiday one.
25               I did review it with my client, for the

71

                          Colloquy
1      record, Your Honor, in my presence.  After consultation
2      with my client, she has signed the order.  The only
3      observation I make and it is an observation, we didn't
4      make any handwritten changes to the order.  May I
5      approach, Your Honor?
6                THE COURT:  You made some handwritten
7      changes?
8                MR. ZABARSKY:  We did not.
9                THE COURT:  Did not.  Okay.
10               MR. ZABARSKY:  May I approach, Your Honor?
11               THE COURT:  All right.  Sure.  You know what
12     I'm going to ask her to do is maybe sign off on the --
13     it's both the consent order for holidays and special
14     days and for parenting time?
15               MR. ZABARSKY:  No, You Honor, we just need to
16     finish being heard.  Two things.
17               THE COURT:  Okay.
18               MR. ZABARSKY:  One, on the consent order for
19     parenting time it should indicate it is for Sonya and
20     Harrison, Your Honor.  There's an outstanding order
21     with regard to Milana and situations that occurred that
22     does not include Milana.  And there is orders for
23     reunification therapy if Mr. Shaikh wants to pursue
24     that, but this is for Sonya and Harrison.
25               I would indicate to the Court, according to

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH  --  December 18, 2015**

72
```
                            Colloquy
 1    my client, she, in fact, did meet with Mr. Shaikh on
 2    Sunday and did effect parenting time on Sunday.  So,
 3    that should be clear that that order is with regard to
 4    Sonya and Harrison and not Milana.
 5              THE COURT:  Sonya and Harrison?
 6              MR. ZABARSKY:  That's correct, Your Honor.
 7              THE COURT:  I'm just going to add that to the
 8    order.
 9              MR. ZABARSKY:  Thank you, Your Honor.
10              MR. SHAIKH:  Judge, Milana needs to be added
11    there, Judge.  There's no DYFS cases, nothing.  All the
12    allegations, yet again, that defense counsel is --
13              THE COURT:  Okay.  There's a previous -- I
14    know, but --
15              MR. SHAIKH:  But there's been nothing
16    substantiated on that, Judge.  That was done in an ex
17    parte hearing, Judge.  Again, April 23rd, that's when
18    all this stuff happened.  There has been no discussion
19    about Milana ever since.  In fact, in your last order,
20    November 17th, you said I can have parenting time with
21    all three children because there's no substantiated
22    allegation of abuse or anything to that effect.
23              THE COURT:  Okay.  Let me just -- let me just
24    stop you there.  Just -- but right now you're having
25    parenting time with Sonya and Harrison.  I'm not trying
```

73
```
                            Colloquy
 1    to cut you off, but what I would propose that we put in
 2    this -- Milana is 15?
 3              MR. ZABARSKY:  She'll be 16 in March.
 4              THE COURT:  She'll be 16.  I'm just going to
 5    put a paragraph here that parenting time --
 6              MR. SHAIKH:  Well, Judge, to be honest,
 7    Milana needs her father the most than the little two
 8    ones.
 9              THE COURT:  And I think I had previously
10    suggested some therapeutic intervention and that's what
11    I think is the best thing with her.  She's at an age
12    where she can articulate a reason whether or not she
13    wants to go to parenting time.  I mean, you know,
14    almost 16 years old.
15              MR. SHAIKH:  Right.
16              THE COURT:  So, on that I'm just going to
17    add, just for explanation purposes that the order is
18    applicable to Sonya and Harrison parenting time.
19    Milana is to be after therapeutic intervention and with
20    her consent.  Okay?
21              MR. SHAIKH:  Judge, is there a court program
22    for therapeutic parenting time?
23              THE COURT:  Well, I thought -- I thought what
24    I had ordered in the past was that you go to some type
25    of therapy with Milana, right?  And I don't know -- you
```

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 38

74

Colloquy

```
 1    know, I don't know what type of insurance coverage you
 2    have, what's available.  I would suggest that you look
 3    into that, okay?  But this order --
 4              MR. ZABARSKY:  My client clearly doesn't have
 5    the funds for that, Your Honor.
 6              THE COURT:  Right.
 7              MR. SHAIKH:  Judge, I don't have the funds
 8    either, so that's why I'm asking --
 9              MR. ZABARSKY:  Okay.  Then that's where it
10    says.  Good.
11              THE COURT:  Well, then there's not much we
12    can do about it at this point in time.
13              MR. SHAIKH:  -- a court program to do that,
14    Judge.
15              THE COURT:  Okay.  So --
16              MR. SHAIKH:  Well, Judge, as far as
17    therapeutic goes, you know, I know the guidance
18    counselor at their school also do provide some service
19    like that because I have met with the --
20              THE COURT:  That's -- if you can -- any place
21    where you can find it, anything reasonable.
22              MR. SHAIKH:  Okay.  So, would it be okay with
23    you if I --
24              THE COURT:  Supply it to Mr. -- and say I
25    suggest --
```

75

Colloquy

```
 1              MR. SHAIKH:  Yeah.  I'm talking about just
 2    the guidance counselor at her high school.
 3              THE COURT:  Right.
 4              MR. SHAIKH:  Her guidance --
 5              THE COURT:  Well, I don't know if they would
 6    get involved with this, but you can -- you could check
 7    with them.
 8              MR. SHAIKH:  Well, I think -- when you talk
 9    about therapeutic thing, Judge, I can meet with her
10    guidance counselor in Milana's presence.
11              THE COURT:  Maybe they have somebody they can
12    refer you to.
13              MR. SHAIKH:  Yeah.
14              THE COURT:  Okay.
15              MR. SHAIKH:  I mean, but I think the schools
16    do kind of help alleviate some of these stresses, you
17    know.  And again, all these are just false allegations.
18    DYFS or DCP&P have not -- have done the research.
19              THE COURT:  I'm not making any ruling on the
20    allegations, just saying there's a problem with Milana,
21    you got to --
22              MR. SHAIKH:  But, Judge, then -- the point
23    I'm trying to get across to this Court is that there is
24    no substantiated proofs of anything and that I should
25    be given an opportunity to be with my daughter.  But
```

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey 07405
973-283-0196  FAX 973-492-2927

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH  --  December 18, 2015**

Sheet 39

76

Colloquy

```
 1    you are --
 2              THE COURT:  Milana is refusing to see you as
 3    I understand it.
 4              MR. SHAIKH:  Judge, she's not refusing
 5    because I have seen her last year.
 6              THE COURT:  And --
 7              MR. SHAIKH:  I saw her last year after all --
 8    I mean, everything they talk about.
 9              THE COURT:  Well, that -- last year?
10              MR. SHAIKH:  I've met her.  Yeah, in 2014 at
11    the house.
12              THE COURT:  I'm -- look, I'm not here to
13    argue with that.  Okay?  I just want to --
14              MR. SHAIKH:  Judge, I'm not arguing.  I'm
15    just saying I need to be given an opportunity to be
16    with my kid.
17              THE COURT:  All right.  On the -- would you
18    stop talking, please.  On the consent order as to the
19    holidays and special days there's not a problem with
20    that, right?
21              MR. SHAIKH:  No, Judge, it's fine.
22              THE COURT:  Okay.
23              MR. SHAIKH:  Judge, can we also mandate phone
24    time, although I call my kids every day, but I have a
25    sense that they're being prohibited from taking --
```

77

Colloquy

```
 1              THE COURT:  I'm not going to do anything else
 2    here other than to enter the consent order.  Okay?
 3              MR. SHAIKH:  Okay.  Very well, Judge.
 4              THE COURT:  All right.  With the -- just with
 5    that clarifying language.
 6              MR. ZABARSKY:  Judge, and with regard --
 7              THE COURT:  We're going to --
 8              MR. ZABARSKY:  I'm sorry.
 9              THE COURT:  This is going to be the originals
10    now.  Okay?
11              Yes, sir?
12              What?
13              COURT CLERK:  I have to have --
14    (indiscernible - not on microphone.)  She didn't sign
15    --
16              THE COURT:  Oh, she didn't sign the holiday,
17    special day either.
18              MR. ZABARSKY:  She's not -- Judge, there's a
19    problem with the holiday.  The holiday --
20              THE COURT:  Okay.  I'm sorry.
21              MR. ZABARSKY:  That's all right.  The holiday
22    has really regular holiday time which is not
23    conditioned or appropriately for supervision.  It
24    doesn't even discuss supervision.  So, because this is
25    supervised right now -- it's every Thursday from 4:00
```

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 40

78

                              Colloquy
1   to 7:30 and every Sunday from 12:00 to 6:00.  The
2   holiday order doesn't even talk about supervision.
3   This is really at this point not appropriate to get
4   into.  A usual "holiday schedule" when it's --
5           THE COURT:  All right.  So, there wasn't an
6   agreement on the holiday time?
7           MR. ZABARSKY:  No.  That's correct, Your
8   Honor.
9           MR. SHAIKH:  Yes, Judge.  Judge, all these
10  orders, every consent order came from the defendant,
11  Judge.
12          MR. ZABARSKY:  Your Honor.  Your Honor, it's
13  enough of Mr. Shaikh.
14          MR. SHAIKH:  I didn't say anything.
15          THE COURT:  All right.  Okay.  Stop.
16          Mr. Shaikh, this is what I'm going to do --
17          MR. SHAIKH:  Judge, he needs to stop talking
18  to me like that, Judge.
19          THE COURT:  Mr. Shaikh, you have to stop
20  talking when, you know -- because I can't possibly
21  conduct a hearing with --
22          MR. SHAIKH:  You're right.
23          THE COURT:  -- you interrupting us all the
24  time.  I'm going to send the parties back to work out
25  the parenting time for holidays.  Okay?

79

                              Colloquy
1           MR. ZABARSKY:  Okay.
2           MR. SHAIKH:  But, Judge, this is what the
3   defendant agreed to, Judge.
4           THE COURT:  All right.  You're getting
5   referred back -- look, we're going to deal with it
6   quicker than --
7           MR. SHAIKH:  But, Judge, we're in the middle
8   of a holiday season, Judge.
9           THE COURT:  -- quicker and cheaper than
10  making a motion.  What about the holidays coming up?
11          MR. ZABARSKY:  Your Honor, it just --
12          MR. SHAIKH:  Judge -- okay.
13          THE COURT:  The holidays coming up.
14          MR. ZABARSKY:  It just so happens Thursday is
15  Christmas Eve and he'll be with them from 4:00 to 7:30.
16  And then the following Thursday is New Years Eve and
17  he'll be with them from 4:00 to 7:30.  So, those are
18  the only real holidays of any imminence.
19          THE COURT:  Okay.
20          MR. ZABARSKY:  And if Your Honor's ordering
21  my client to go back, she'll be happy to go back.
22          THE COURT:  Okay.
23          MR. ZABARSKY:  But she did not agree to this
24  order because it involves supervision at this point.
25  It's not in the order.

## ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015

Sheet 41

80

                                    Colloquy
1           THE COURT:  I'm going to -- I'm just going to
2      add to the parenting time order that the parties --
3      that --
4           MR. SHAIKH:  And, Judge, we need a return
5      date on when this parenting -- supervised parenting
6      schedule would end because as I've said several times
7      there's no DCP&P issues here.
8           THE COURT:  Look, you got to feel it out as
9      you go along and then at some appropriate time then --
10     what I'm going to put in here is the issue of permanent
11     holiday visits shall be referred to mediation.
12          MR. SHAIKH:  Judge, can we set a 60 -- 45 day
13     return date on the supervised parenting?
14          THE COURT:  Well, what I'm going to say is
15     that after 60 days the parties will go to mediation to
16     discuss expansion of parenting time.  Okay?  So, this
17     is what -- if things go well, everybody's comfortable,
18     you know, another 60 days.  Okay?
19          MR. SHAIKH:  Judge --
20          THE COURT:  In the meantime, they're going to
21     discuss future holiday time, you know, in mediation.
22     All right?
23          MR. SHAIKH:  Judge, one last quick
24     clarification I need from you before you had left the
25     bench.  On the MESP mediation ,did you order MESP

81

                                    Colloquy
1      mediation so we could get this thing resolved?
2           THE COURT:  No.  MES -- no.
3           MR. SHAIKH:  Because that's been adjourned
4      previously.
5           THE COURT:  I mean, you've had this scheduled
6      and -- several times.  You need an -- you're both
7      looking for extra things for discovery.  I don't know
8      what you're looking for.  You're pleadings have been
9      suppressed.  This is going to proceed in a different --
10          MR. SHAIKH:  Well, Judge, I can't get anymore
11     discovery you said, right?
12          THE COURT:  This is going to proceed in a
13     different fashion and I do -- and that's -- it's not an
14     appropriate case to go to MESP after all of these
15     referrals.  Okay?
16          MR. ZABARSKY:  Thank you, Judge.  I'll be
17     filing --
18          THE COURT:  If you --
19          MR. ZABARSKY:  I'm sorry.
20          THE COURT:  If you -- if either side wants
21     some other form of an alternate dispute resolution then
22     that's fine, but --
23          MR. SHAIKH:  Well, Judge, I've asked for, you
24     know, alternative dispute resolution through my
25     attorneys over and over again.  So, the defense has

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 42

82
Colloquy

1    continued in litigation and bad faith and you are
2    helping them.  So be it and I will see --
3          THE COURT:  Okay.
4          MR. SHAIKH:  There's going to be another
5    federal suit, Judge.  What can I say?
6          THE COURT:  Thank you.
7          COURT CLERK:  I have to make copies --
8          THE COURT:  All right.  You need to make
9    copies of this consent order.  Mark it filed.  Okay?
10         MR. ZABARSKY:  We'll wait for copies.
11         THE COURT:  I'm sorry that, you know --
12         MR. ZABARSKY:  It's all right, we'll wait.
13         THE COURT:  -- she's not familiar with the
14   procedure because we don't usually do FMs over here.
15         MR. ZABARSKY:  Thank you.
16         THE COURT:  You have to mark it filed.  You
17   have to make copies for everybody.  Okay?  Now -- and
18   -- now, in the order on this motion, you can distribute
19   that to the parties.
20         MR. ZABARSKY:  And, Judge, I can proceed
21   under 5:5-10 then obviously, correct, notice of
22   proposed final judgment?
23         THE COURT:  Right.
24         MR. ZABARSKY:  Correct.  Thank you.
25         THE COURT:  Well, after -- you indicated you

83
Colloquy

1    want additional discovery.
2          MR. ZABARSKY:  I may.  I'll talk to my
3    client.  Thank you, Your Honor.
4          MR. SHAIKH:  Judge, no discovery -- no more
5    discovery for me, Judge?  Very well, Judge.  Okay.
6          THE COURT:  Your pleadings have been
7    suppressed as a result and --
8          MR. SHAIKH:  Well, Judge, I'll -- okay, sir
9    -- Judge.  I'll see all of you guys in federal court
10   again.  Okay, Judge.  See you guys there.
11         THE COURT:  Okay.  Thank you.
12         MR. ZABARSKY:  Judge, you said we're going to
13   wait for the order for today's motions is coming also?
14         THE COURT:  I thought that she had it for you
15   to distribute.
16         MR. ZABARSKY:  Oh, that's this one.  Okay.
17   Then we're waiting for the parenting.  Okay.  Thank
18   you, Your Honor.
19         THE COURT:  You're waiting for the parenting
20   time and we gave you an order on the motion today.
21         MR. ZABARSKY:  Oh, we have this one.  Thank
22   you.  Great.
23         THE COURT:  Okay?  Thank you.
24         MR. SHAIKH:  What did she say, we're waiting
25   for one more order to come out?

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey  07405
973-283-0196  FAX 973-492-2927

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- December 18, 2015**

Sheet 43

84

```
                           Colloquy
 1          COURT CLERK:  You're still on the record.
 2              (Proceedings concluded.)
 3                  *  *  *  *  *  *  *  *
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

85

```
 1
 2               C E R T I F I C A T I O N
 3
 4          I, Lauren Leister, the assigned transcriber,
 5     do hereby certify the foregoing transcript of
 6     proceedings on electronic recording dated 12/18/15,
 7     electronic recording time from 9:54:12 to 12:11:39, is
 8     prepared in full compliance with the current Transcript
 9     Format for Judicial Proceedings and is a true and
10     accurate compressed transcript of the proceedings as
11     recorded.
12
13
14     /S/ Lauren Leister                    #651
15     Lauren Leister                   AOC NUMBER
16
17
18     ELITE TRANSCRIPTS, INC.          November 5, 2017
19     AGENCY                           DATE
20
21
22
23
24
25
```

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey 07405
973-283-0196  FAX 973-492-2927

# EXHIBIT # 4

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH  --  June 17, 2016**

```
                              SUPERIOR COURT OF NEW JERSEY
                              CHANCERY DIVISION, FAMILY PART
                              OCEAN COUNTY, NEW JERSEY
                              DOCKET NO. FM-15-500-14W
                              APP. DIV. NO. A-002418-16T1

      ZIA H. SHAIKH,                )
                                    )
              Plaintiff,            )       TRANSCRIPT
                                    )
              v.                    )          OF
                                    )
      LAURA L. GERMADNIG-SHAIKH,    )        HEARING
                                    )
              Defendant.            )
                                    )


                         Place:  Ocean County Courthouse
                                 125 Washington Street
                                 Toms River, NJ  08754

                         Date:   June 17, 2016

      BEFORE:

         HONORABLE MARLENE LYNCH FORD, A.J.S.C.

      TRANSCRIPT ORDERED BY:

         ZIA H. SHAIKH, (4400 ROUTE 9, SUITE 1000, FREEHOLD,
         NEW JERSEY 07728)

      APPEARANCES:

         ZIA H. SHAIKH, PRO SE
         Plaintiff

         OFFICER CARLO RUSSOMANNO, (Ocean County Probation
         Department)

                         Transcriber Lauren Leister
                         ELITE TRANSCRIPTS, INC.
                         14 Boonton Avenue
                         Butler, New Jersey  07405
                         (973) 283-0196
                         Audio Recorded
                         Operator, Valerie Jackey
```

## ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- June 17, 2016

Sheet 2

```
                  I N D E X
WITNESS                                        PAGE
Zia H. Shaikh
  Examination by the Court                       8
  Decision by the Court                         18
```

Examination by the Court — 8
Decision by the Court — 18

```
                                                      3
                        Colloquy
 1            THE COURT:  All right.  You can be seated.
 2   All right.  This is a review hearing after bench
 3   warrant.  This is the matter of Zia Shaikh versus Laura
 4   Germadnig-Shaikh under FM-15- -- I mean, it's 500-14.
 5   And appearing on behalf of the Probation Department --
 6            MR. RUSSOMANNO:  Carlo Russomanno, Your
 7   Honor.
 8            THE COURT:  Okay.  And Mr. Shaikh, you're
 9   here as a result of being incarcerated pursuant to the
10   order for bench warrant, correct?
11            MR. SHAIKH:  Yes.
12   Z I A   S H A I K H, PLAINTIFF, SWORN.
13            THE COURT:  Okay.  Thank you.  All right.
14   This is a scheduled hearing after issuance of bench
15   warrant.  The Court entered an order for a bench
16   warrant on June 15th, 2016 as a result of an
17   enforcement action that was initiated by the Ocean
18   County Probation Department.
19            That the -- as a result of that hearing, the
20   Court entered an order for bench warrant for the
21   reasons set forth in the June 15th, 2016 order.  The
22   Court has also entered an order which supplemented the
23   record -- just fleshing out some of the procedural
24   history and so forth on this for -- which was entered
25   just yesterday and had not even been served on the
```

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey 07405
973-283-0196  FAX 973-492-2927

## ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- June 17, 2016

4

Colloquy

```
 1    parties.  Mr. Shaikh has been provided with a copy of
 2    the supplemental statement of reasons.
 3                I am aware that the appellate division is
 4    considering an application for emergent relief for Mr.
 5    Shaikh.  At this point in time, I have not heard
 6    anything about a stay or anything, Mr. Shaikh, but I
 7    will abide by whatever the appellate division directs
 8    us to do on this, but I still have to proceed forward
 9    with this at this point in time.
10                All right.  Probation department set forth,
11    please, for the record what the status of this is.
12                MR. RUSSOMANNO:  Thank you, Your Honor.  This
13    is first appearance under a bench warrant issued on
14    June 15th, 2016, date of incarceration, June 15th,
15    2016, with a release amount of $3,000.  There has been
16    one prior warrant, one prior incarceration in this
17    matter, Your Honor.  This case is currently charging in
18    the amount of $803 per week, ongoing support $100 per
19    week towards arrears, for a total weekly obligation of
20    $903.
21                The total arrears as of this date would be
22    $41,339.75.  The most recent payment made to Probation
23    on this account was on January 11th, 2016 in the amount
24    of $40.  The last purge hearing dated October 21st,
25    2016 before Judge Nemeth, the purge was vacated.
```

5

Colloquy

```
 1                Probation is respectfully requesting any
 2    missed one payment bench warrant stipulation on this
 3    matter.  Thank you.
 4                THE COURT:  Okay.  Mr. Shaikh, do you wish to
 5    be heard on this?
 6                MR. SHAIKH:  Well, Judge, I don't know what
 7    more I can say than what I said a couple of days ago
 8    before you conveniently incarcerated me.  As far as the
 9    appellate division is concerned, obviously, I have yet
10    to make an application to them because I wasn't
11    expecting to be arrested when I showed up on a cross-
12    motion that I filed against Probation which they have
13    yet to respond to.  And I don't know what this
14    gentleman is, if he's an attorney, if he's a police
15    officer.  Who is he?  I have no idea.
16                I -- as I had stated on Tuesday, I believe --
17    on Wednesday, that, you know, Probation has no
18    jurisdiction.  They have no authority to bring this
19    claim against me.  And this $800 a week claim or
20    whatever, schedule A and B expenses that defendant
21    Zabarsky had placed in the made up CIS, and the April
22    and the June 2014 orders are inaccurate.
23                I have disputed it since the beginning and
24    I'm disputing it until this day.  That's not the
25    lifestyle that we maintained and, you know, this is an
```

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey 07405
973-283-0196  FAX 973-492-2927

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- June 17, 2016**

Sheet 4

6

Colloquy

1  illegal incarceration.  And under Pasqua v. Council you
2  have to appoint me counsel before you incarcerate me,
3  which you have failed to do.
4           And just to refresh this Court's mind, you
5  are a defendant in a brand new lawsuit that was filed
6  against you on March 22nd, 2016 in which myself and
7  Karl Hagberg are plaintiffs against you only.
8           THE COURT:  Okay.
9           MR. SHAIKH:  So, I look at this as
10  retaliation against myself.
11          THE COURT:  I am in receipt of an order from
12  Federal Judge Wolfson which dismisses that lawsuit.
13          MR. SHAIKH:  That's not true, Judge.  My
14  attorney who is handling that case has not made me
15  aware.  I have been in touch with the attorney
16  general's office.  That is not the case.  Unless you're
17  stating that on the record, then you would be perjuring
18  yourself.
19          THE COURT:  I -- I'm just indicating that I
20  have been -- I have received an order from Judge
21  Wolfson and it -- can we find a copy of that order?
22          COURT CLERK:  Yeah.
23          THE COURT:  -- which indicates that while the
24  case is being maintained for purposes of allowing other
25  individuals to be added as defendants, that as to the

7

Shaikh - By The Court

1  claim against me, it's been dismissed.  That's what I
2  was advised and -- okay.
3           MR. SHAIKH:  Okay.  Well, you were advised
4  wrong.  I'm just talking about the brand new lawsuit,
5  Judge --
6           THE COURT:  But these --
7           MR. SHAIKH:  -- in which myself and Karl
8  Hagberg are plaintiffs against you, that's it.
9           THE COURT:  That's the March 22nd lawsuit.
10          MR. SHAIKH:  Correct.
11          THE COURT:  Right.
12          MR. SHAIKH:  Yea.  Judge Wolfson has not
13  ruled on that yet.  It's still in progress.  There has
14  been no action on that case whatsoever.  I stay in
15  touch with -- with me -- with the attorney who has
16  taken on that action and he speaks to the attorney
17  general all the time.
18          THE COURT:  Well -- all right.
19          MR. SHAIKH:  So, I'm very aware of the status
20  of that case.
21          THE COURT:  Okay.
22          MR. SHAIKH:  So, what you stated is
23  incorrect.
24          THE COURT:  All right.  We -- all right.  I'm
25  going to ask you a couple of questions just to satisfy

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey  07405
973-283-0196  FAX 973-492-2927

## ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- June 17, 2016

Sheet 5

8

                    Shaikh - By The Court
1    the record.
2    EXAMINATION BY THE COURT:
3        Q    Mr. Shaikh, you indicated that you are
4    presently living in, I believe, Beachwood with a
5    friend?
6    A    Toms River, yes, Judge.  I'm in the process of
7    moving there right now.
8        Q    Okay.  Are you -- do you have an address in -
9    - are you sure it's Toms River?
10   A    I think it's Toms River, yeah.
11       Q    Yeah, I -- you know, respectfully, I think
12   that it's not in Toms River, but it's Mermaid Avenue or
13   something like that?
14   A    It's Mermaid Avenue, yeah.
15       Q    700 Mermaid Avenue?
16   A    Yeah.  I think so, yeah.
17       Q    And -- which I -- which you believe is Toms
18   River, but I think -- and I understand how that
19   confusion could occur because all of the -- you know,
20   they kind of --
21   A    Right.
22       Q    -- call the whole regional area Toms River,
23   but I think it's actually Beachwood.  And you had
24   indicated the person who owns or rents that residence
25   is a man by the name of --

9

                    Shaikh - By The Court
1    A    Michael Sycle.
2        Q    -- Michael Sycle.  And that's S-Y-C-L-E?
3    A    Correct.
4        Q    Okay.  And you have an agreement with him
5    that you are going to pay him $150 a month for rent?  I
6    believe that's what your testimony --
7    A    No, it's just a handshake agreement right now,
8    Judge.  It's still being worked out.
9        Q    Okay.  So, you don't have any agreement about
10   the rent?
11   A    Correct.  I have no agreement.
12       Q    And you haven't actually lived -- haven't
13   moved there?
14   A    I haven't lived there continuously yet.  I'm just
15   in the process of getting there.
16       Q    Okay.  Where do you live now?  What is your
17   current address?
18   A    Well, a lot of my stuff is moving there right now.
19   It's from my old apartment from Manasquan.
20       Q    Okay.  Where is it moving from?
21   A    From my old apartment in Manasquan.
22       Q    Okay.  And that address was?
23   A    300 Main Street.
24       Q    Okay.  Do you have any -- I know you dispute
25   the legitimacy of the amount that is -- that's

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey  07405
973-283-0196  FAX 973-492-2927

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH  --  June 17, 2016**

Sheet 6

10

Shaikh - By The Court

1   reflected on the Probation Department accounts, but --
2   which is 40,536.75.  And as I've told you, an
3   appropriate application to modify might have resulted
4   in a reduction in that amount, but there's -- has never
5   been that application, but --
6   A    I believe, Judge, I have filed several motions to
7   modify that support, but --
8        Q    Okay.  You haven't filed an updated case
9   information statement, which would be required as a
10  precondition to the Court legally considering your
11  application to modify the support obligation.  Do you
12  understand that?
13  A    I filed one in September with you, Judge.
14       Q    The last filed case information statement we
15  have is from April of, I believe, 2015.
16            THE COURT:  Okay.  On -- I have a filed copy,
17  it's dated May 11th, 2016, and this is the Karl Hagberg
18  and Zia Shaikh versus Marlene Lynch Ford under civil
19  action 16-1189, ordered from Judge Wolfson.  It's
20  entered May 11th, 2016.
21            It says that, "Judge Ford's motion to dismiss for
22  the reasons stated in my opinion, an order issued April
23  27th, 2016, is granted."  And just -- the -- and we'll
24  provide you with a -- this is apparently a copy of the
25  filed document, but unsigned.  It's under the -- you

11

Shaikh - By The Court

1   know, online information that's with the Federal Court.
2   They have -- they put their things online.  The --
3            MR. SHAIKH:  Well, I'm not aware of that
4   order, Judge, so I'll look at it when I get a chance.
5   BY THE COURT:
6        Q    Okay.  And are you prepared to make any
7   payments against the arrears today?
8   A    Judge, I have, I think, about $100 in my checking
9   account.  I think I can afford to expend about 50
10  bucks.  I can do that.
11       Q    Okay.
12  A    And then the rest can come out of further marital
13  distribution.  My wife, as I've said several times, is
14  sitting on about a quarter million dollars worth of
15  assets, which at this point -- I mean, three years
16  running on this divorce without any finalization, I'm
17  looking to write a letter to Defendant Zabarsky to just
18  basically give up all my assets and see if I can end
19  this divorce quickly.  I don't know how much more of
20  the shackles and court drama I can take, so that's the
21  only conclusion I've come up with.
22       Q    Okay.  Who is presently paying for your rent
23  and food?
24  A    Well, Judge, whatever little bit of money I was
25  able to scrape together and I was doing odds and ends

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- June 17, 2016**

Sheet 7

12

Shaikh - By The Court
1    jobs and that's how I was able to survive --
2         Q    Okay.
3    A    -- but that has now ended.
4         Q    You said you were doing odds and ends jobs.
5    A    Right.
6         Q    Give me some examples of what jobs you were
7    doing.
8    A    Well just, you know, mowing -- lawn mowing service
9    around the corner from, you know, some of the people.
10   Some day worker type jobs, some work at the marina that
11   I'm still -- the marina, I might still be working there
12   to sell boats once this guy gets more inventory.  So,
13   whatever I could do to make ends meet.
14        Q    Who did you work for mowing lawns?
15   A    Just various people.  Just, you know --
16        Q    Did you know the names of the people that you
17   worked for mowing lawns?
18   A    No.
19        Q    Did you receive compensation for mowing
20   lawns?
21   A    Very nominal, Judge, all cash.
22        Q    Okay.  Were you paid -- well, cash is money.
23   A    Right.
24        Q    It doesn't make any difference whether you
25   get a check or cash, right?

13

Shaikh - By The Court
1    A    Sure.  Yeah.
2         Q    How much did you earn mowing lawns since the
3    beginning of this year?
4    A    Oh, I've only did that since probably the weather
5    broke, you know, probably like an extra $500 a month.
6         Q    Okay.  And you indicated the other day that
7    you earn $2,000 a month about from your insurance
8    investment advisors business; is that correct?
9    A    Yes, Judge.  Yeah.
10        Q    So, that -- so, now we're up to $2,500 a
11   month?
12   A    Something like that, yeah.
13        Q    Okay.  And in addition to that you indicated
14   that you were working at a marina?
15   A    Yes.
16        Q    And what -- what is the name of the marina
17   that you were working at?
18   A    Jersey Shore Marina in Brick.
19        Q    And is that located on -- is that located,
20   like, on Route 70 or somewhere?
21   A    Route 70, yeah.
22        Q    Route 70 in Brick.  And what is the name of
23   your employer?
24   A    Jersey Shore Marina.
25        Q    Jersey Shore -- is there a person associated

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey  07405
973-283-0196  FAX 973-492-2927

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- June 17, 2016**

Sheet 8

14

Shaikh - By The Court

```
 1    with that?
 2    A     Yeah, yeah.  Vito.
 3          Q    Who?
 4    A     Vito.
 5          Q    V-I --
 6    A     -T-O.  Vito.
 7          Q    --T-O.  Vito.
 8    A     Vito.
 9          Q    Does Vito - is that a first name or a last
10    name?
11    A     It's his first name, yeah.
12          Q    Okay.  Is there a last name for Vito?
13    A     Trapasso, T-R-A-P-A-S-S-O, I believe.
14          Q    Okay.  And you indicated that you are
15    employed by Jersey Shore Marina selling boats?
16    A     I mean, I don't know if the word employed really
17    works.  I mean, yeah, I go there to sell boats.  It's a
18    very casual handshake, really.  It's a very tiny
19    marina, so it's nothing official, per se.
20          Q    Okay.  Well, I mean, do they have a showroom?
21    I mean, are these boats that are pre-owned and you just
22    work --
23    A     No, they don't have a showroom.  No.
24          Q    Okay.  Have you earned any commissions on
25    selling boats this year at Jersey Shore Marina?
```

15

Shaikh - By The Court

```
 1    A     No.  No, not yet.
 2          Q    Okay.  Do you expect any regular commissions
 3    from your job as a financial advisor and your --
 4    A     Yeah.  Just the regular little bit of stuff that
 5    I've been able to generate has averaged about 2,000 a
 6    month, like I stated.
 7          Q    Okay.  And do you dispute that you have made
 8    no payments on this account since January of this year?
 9    A     Do I dispute it?  Yes.  I dispute it because I
10    don't owe any child support.  Correct.
11          Q    Okay.  And so, you're disputing the records
12    of the Probation Department that you're currently in
13    arrears 40,536.75?
14    A     Correct.  Correct.  That was based on a fraudulent
15    order from April and June.
16          Q    So.  Okay.
17    A     So, I've disputed that since the beginning of
18    time.
19          Q    When you -- would you be surprised to find
20    that since July -- almost a year ago, July 1 of 2015
21    and that for the course of the past year, that you have
22    made child support payments in the total amount of
23    $783.25?
24    A     I don't understand your question, Judge.
25          Q    Okay.  You've made payments through the
```

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey 07405
973-283-0196  FAX 973-492-2927

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH  --  June 17, 2016**

Sheet 9

16

Shaikh - By The Court

```
 1    Probation Department since July 1 of 2015.  Today is
 2    June 17th, 2016.  So, let -- you know, but for two
 3    weeks, one full year that you've made a total amount of
 4    payments of $783.25 through the Probation Department.
 5    A    Well, whatever I could make, I did.  Yes, Judge.
 6         Q    Okay.  And that's for three children and your
 7    --
 8    A    I don't know what you're driving at, Judge.  I
 9    mean, I have really no clue.  I mean, I don't
10    understand the --
11         Q    Well, I'm --
12    A    -- the idea behind your questioning.
13         Q    I'm just trying to clarify that you haven't
14    made any payments, basically, on your child support
15    obligation for a year.
16    A    Well, I've made lots of payments.  Remember, I've
17    been paying health insurance, dental --
18         Q    Okay.
19    A    -- all that stuff that I told you.  I've been
20    paying about an extra $1,443 a month.
21         Q    Okay.  Do you understand that your legal
22    obligation is to make the -- make payments for support
23    through Probation and to maintain health insurance, but
24    the health insurance is for your benefit as well as
25    that of your three children, right?
```

17

Shaikh - By The Court

```
 1    A    Well, after I'm done paying whatever I could on
 2    the required bills, whatever I could afford I paid and
 3    now, you know, that's it.  So, that's --
 4         Q    Hm-hm.
 5    A    I've done my best to keep up with the family.
 6         Q    And in --
 7    A    Again, as you -- as the Court already knows, I
 8    don't get a salary.  I'm a commission salesperson, and
 9    for that, certain conditions have to be optimal.  I
10    have to market.  I have to have certain facilities
11    available to me --
12         Q    Okay.
13    A    -- to be able to generate that revenue, and that
14    has been taken away from me overnight by your court.
15         Q    Do you have any lawsuits other than the ones
16    that are in Federal court that allege constitutional
17    deprivations?  Do you have any lawsuits that which --
18    for example, for personal injury or something that you
19    would expect to receive some type of settlement?
20    A    No, Judge.  But like I've said again and again,
21    Judge, I mean, look, there's plenty of assets in my
22    marital equitable distribution.  At this point, I'm
23    willing to sign over everything, the house, the cars,
24    even my car.  I'll walk.  I have a bicycle.  I'll bike,
25    it's fine, and build myself from scratch.  I've done it
```

**ELITE TRANSCRIPTS, INC.**
14 Boonton Avenue, Butler, New Jersey  07405
973-283-0196  FAX 973-492-2927

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- June 17, 2016**

Sheet 10

18

Colloquy
1    before.  I'm just -- I have no choice.  I have to end
2    this divorce.  This can't go on forever.  I just don't
3    know what more I can say or what more I can do.  You
4    know, you took my kids away, you took my house away,
5    you took all my money away, so here I am sitting here
6    in shackles like a criminal.
7            THE COURT:  All right.  I will reduce the
8    purge amount to $2,500, which the -- Mr. Shaikh
9    indicates is approximately what his monthly income is
10   from all sources, and I will otherwise put the release
11   amount, $2,500.
12           The defendant will be directed to file a
13   complete and up-to-date case information statement with
14   a supported notice of motion to modify his support.
15   The Court will consider that as an exception to the
16   suppression of his pleadings.
17           If -- once that motion is filed, I will stay
18   for purposes of considering the motion to modify any
19   enforcement action, but in the absence of that, I don't
20   have the legal authority to amend the prior order of
21   the court and I have never received a complete and up-
22   to-date case information statement that makes a honest
23   disclosure of what your income, assets and income
24   ability is.  So --
25           MR. SHAIKH:  Well, Judge, I don't know what

19

Colloquy
1    you mean by honest.  Everything have disclosed is
2    honest, it's just that my crime in this divorce right
3    now is that I'm not a multi-millionaire.
4            THE COURT:  Okay.
5            MR. SHAIKH:  That's my crime, you know.
6            THE COURT:  If he --
7            MR. SHAIKH:  Can't fix that.
8            THE COURT:  I'm also -- there also is an
9    issue that arose at the last hearing as to whether or
10   not tax returns were filed.  I'm going to direct that
11   as a condition of release that Mr. Shaikh execute an
12   authorization for the Ocean County Probation Department
13   to obtain tax information directly from the IRS for
14   2013, '14 and '15.  This will allow the Court to
15   determine whether or not there were tax returns filed
16   or 1099s or W-2 statements that were filed which would
17   substantiate his income and income capacity.
18           Also, if he continues to take the position
19   that he's unemployed as a result of this litigation and
20   otherwise, I will direct that he report on a bi-weekly
21   basis, every 14 days, to the Probation Department with
22   proofs of a job search.  Okay?
23           So, the purge will be reduced to $2,500.  If
24   -- with a missed one payment bench warrant stipulation,
25   the authorization for the Ocean County Probation

20

Colloquy

1  Department to obtain all tax information as to the
2  plaintiff, including filed tax returns that he -- and
3  if necessary for -- I don't think there were any joint
4  returns.  There were no joint returns filed for '13,
5  '14 and '15, but there is an allegation that the
6  returns were filed and that the deduction for the
7  children was taken by the plaintiff.  A job search with
8  14 day reporting cycle.
9          And if a complete motion is filed to modify
10  support, then the Court will stay any enforcement
11  during the pendency of the consideration on that
12  motion.  Okay?  What I'm obviously trying to do is
13  encourage you to give a complete up-to-date case
14  information statement with the attachments that you
15  have.  If you don't have a tax return, you certainly
16  have a 1099 from the people that are sending you
17  commissions and/or records to show those commissions,
18  and I will consider an application to modify.
19          As I've indicated to you many, many times,
20  this is pendente lite application.  It is subject to
21  retroactive modification upon a showing that the
22  initial amount was fair or not fair.  But until we
23  receive that information, I -- it is -- I can't just,
24  you know, craft an order out of air.  I have to have
25  some basis upon which to craft it.

21

Colloquy

1          MR. SHAIKH:  If you want another motion,
2  Judge, I'll do that.
3          THE COURT:  Okay.
4          MR. SHAIKH:  But I certainly do not have
5  $2,500.
6          THE COURT:  The motions that you have filed
7  have been defective because they have not been
8  supported by financial information, and I'm just
9  indicating that they will continue to be defective
10  unless you can give me a case information statement
11  that really means something.  Okay?
12          MR. SHAIKH:  All right.  But, Judge, I do not
13  have $2,500 right now, so all I have is about a --
14          THE COURT:  All right.  So, the --
15          MR. SHAIKH:  I could only spare about 50
16  bucks.
17          THE COURT:  That's the purge amount.  That
18  will be continued.  Okay?
19          MR. SHAIKH:  So, I don't understand what your
20  order is at this point.
21          THE COURT:  That concludes the hearing.
22          COURT OFFICER:  All right.  Come on.  Come
23  on.
24          MR. SHAIKH:  All right.
25              (Proceedings concluded.)

**ZIA H. SHAIKH v LAURA L. GERMADNIG-SHAIKH -- June 17, 2016**

Sheet 12

22

```
 1                  C E R T I F I C A T I O N
 2
 3          I, Lauren Leister, the assigned transcriber,
 4     do hereby certify the foregoing transcript of
 5     proceedings on electronic recording dated 6/17/16,
 6     electronic recording time from 9:45:48 to 10:07:58, is
 7     prepared in full compliance with the current Transcript
 8     Format for Judicial Proceedings and is a true and
 9     accurate compressed transcript of the proceedings as
10     recorded.
11
12
13     /S/ Lauren Leister                    #651
14     Lauren Leister                 AOC NUMBER
15
16
17     ELITE TRANSCRIPTS, INC.        November 15, 2017
18     AGENCY                         DATE
19
20
21
```

# EXHIBIT # 5

# Superior Court of New Jersey



**CHAMBERS OF**
**JUDGE MARLENE LYNCH FORD**
**ASSIGNMENT JUDGE**

**OCEAN COUNTY COURT HOUSE**
**P.O. BOX 2191**
**TOMS RIVER, NJ 08754-2191**
**732-929-2176**

October 20, 2017

Mr. Zia Shaikh
4400 Route 9 Suite 1000
Freehold, NJ  07728

Ms. Laura L. Germadnig
5 Lons Lane
Jackson, NJ  08527

**RE:    Zia H. Shaikh v. Laura L. Germadnig-Shaikh**
**Docket No. FM-15-500-14W**

Dear Mr. Shaikh and Ms. Germadnig:

Enclosed please find a copy of the Order memorializing the hearing which took place on October 19, 2017.

Thank you for your attention.

Very truly yours,

Marlene Lynch Ford, A.J.S.C.

MLF/kp
Cc:    Family Division

FILED

OCT 19 2017

CHAMBERS OF JUDGE LAWSON
SUPERIOR COURT OF N.J.
OCEAN COUNTY

## ORDER PREPARED BY THE COURT

|  |  |
|---|---|
| **Zia Shaikh** <br>      Plaintiff, <br><br> v. <br><br> **Laura Germadnig** <br><br>      Defendant | : SUPERIOR COURT OF NEW JERSEY <br> : CHANCERY DIVISION/FAMILY PART <br> : OCEAN COUNTY <br> : <br> : DOCKET NO. FM-15-500-14W <br> : CIVIL ACTION <br> : <br> : <br> : <br> : **ORDER ON MOTION AND CROSS-** <br> : **MOTION RETURNABLE OCTOBER 19,** <br> : **2017** |

**THIS MATTER** comes before the Court on the return date of a motion filed by the

Plaintiff, **Zia Shaikh,** appearing self-represented; Plaintiff in addition to his notice of motion

filed with the Court other documents that were entitled: (1) NOTICE OF DEMAND WRIT OF

QUO WARRANTO PROCEEDING 9TH AMENDMENT ALL WRITS ACT 1789 cf. 28 USC

SECTION 1651, marked as exhibit c-1; (2) NOTICE TO COURT BILL OF PARTICULARS

CONTEMPT OF COURT, marked as exhibit C-2; (3) NOTICE DEMAND TO VACATE

SUPPORT ORDER cf. FEDERAL RULE 60 (B) (4) LACK OF JURISDICTION, marked C-3;

1

(4) NOTICE TO COURT WRIT OF CERTIORARI WRIT OF MANDAMUS TO COMPEL WRIT OF PROHIBITION ALL WRITS SECTION 29 USC SECTION 1651, marked as Exhibit c-4;

In addition the Plaintiff filed a Notice of Motion to 1.) vacate/terminate Plaintiff's support obligations of $900/week child support and $650/week spousal support; 2.) to vacate the December 20, 2016 Final Judgment of Divorce and the January 26, 2017 Amended Final Judgment of Divorce; 3.) To vacate the FJOD and AFJOD because Plaintiff did not have competent effective counsel to represent him in these divorce proceedings; 4.) To vacate the FJOD and AFJOD because Plaintiff was subjected to fraudulent abuse of process/fraudulent abuse of discovery process; 5.) Vacate and reimburse $144,717 that Defendant and her attorneys fraudulently took; 6.) Vacating all orders preventing Plaintiff from asserting his constitutionally protected parental rights and granting Plaintiff sole custody; 7.) Compelling Defendant to pay for all therapy/reunification therapy; 8.) Granting Plaintiff makeup time for loss of parenting time; 9.) To stay any and all enforcement hearings and orders until an ability to pay/ability to comply hearing;

In addition, the Plaintiff filed a Notice of Motion on Short Notice (without any authorization from the Court) to recuse Judge Marilyn [sic] Ford and Judge John Doran, and to transfer venue to Mercer County.

Defendant, **Laura Germadnig (formerly known as Germadnig-Shaikh)**, appearing self-represented, filed a cross-motion in response to Plaintiff's motion, seeking an Order: (1) Denying Plaintiff's Notice of Motion filed on August 16, 2017 in its entirety; (2) Denying Plaintiff's Notice of Motion filed on September 12, 2017 in its entirety; (3) Denying Plaintiff's Notice of Motion filed on September 29, 2017 in its entirety; (4) Fully enforcing the terms set

2

forth in the Amended Final Judgment of Divorce entered on January 26, 2017, by the Honorable

Marlene Lynch Ford, A.J.S.C.; (5) Ordering that Plaintiff undergo a psychiatric evaluation and

psychiatric counseling with a licensed psychiatrist to be chosen and appointed by the Court; and

further ordering that Plaintiff be responsible 100% of all costs associated with same; (6)

Suspending all supervised visitation until such time as the Court appointed psychiatrist provides

a report to the Court stating that the Plaintiff is psychologically stable and fit to resume

supervised visitation; (7) Enforcing Judge Ford's Order entered on July 27, 2017; particularly

paragraph 6 ordering that Plaintiff be restrained from following, stalking and maintaining video

surveillance of the Defendant and the children and not coming within 1000 feet from the

property where the Defendant and children reside; (8) Ordering that Plaintiff is prohibited from

coming within 1000 feet of the children's schools; (9) Ordering Plaintiff to provide tax returns

for the years 2013 through 2016 and an updated Case Information Statement; (10) Ordering that

Plaintiff must comply with all Orders of the Court and further ordering that if the Plaintiff

continues to disregard and violate Court Orders, a bench warrant will be issued for his arrest and

incarceration until such time as he complies with the Court Orders.

With regard to the documents purporting to be various writs, prerogative writ actions, and

direct actions against the undersigned Judge of the Superior Court, or the Probation Department,

which Court finds that the purported filings do not constitute motions, and are not recognized

under state law and not a valid submission under this matrimonial docket. The Plaintiff

represented that an attorney prepared these documents for him; that he did so pro bono, although

the Plaintiff did not disclose the name of this attorney or legal advisor. For the reasons set forth

on the record, the Court disregarded these submissions as not being authorized in this

3

matrimonial action by law, practice or court rule. The Court further found that they have no
valid legal import or efficacy in this proceeding, and therefore are not considered by the Court.

 With regard to the Plaintiff's two motions filed with the Court and the Reply and cross
motion filed by the Defendant, The Court has considered the submissions and oral argument of
the parties on October 19, 2017. The court set forth its oral opinion and decision on these
applications on the record on October 19, 2017. The Court was required to ask the Plaintiff to
leave because he could not conduct himself during this motion proceeding in accordance with the
reasonable decorum requests of the court. The court was required to ask the Plaintiff several
times to only comment when the Court authorized him to speak, and despite numerous warnings
the Plaintiff could not conduct himself in a manner in which a motion hearing could be
conducted. Therefore the Court excused the Plaintiff from the Court Room and he was escorted
from the Court.

 For the reasons set forth on the record, and for good cause shown, it is on this 19th day of
October, 2017 Ordered:

(1) Plaintiff's motion to vacate/terminate Plaintiff's support obligations of $900/week child
 support and $650/week spousal support is denied. This is a repetitive motion to the
 Court. The Plaintiff has failed to file an up to date and complete Case Information
 Statement which is a requirement for the Court to consider any motion for modification
 of support. This application has been denied before for the same reason. In addition, the
 Plaintiff has filed an appeal of the Final Judgment of Divorce, although he failed to
 provide a copy of the notice of appeal to the Court. Once an appeal is filed this Court is
 deprived of jurisdiction with the exception of enforcement proceedings.

4

(2) Plaintiff's motion to vacate the December 20, 2016 Final Judgment of Divorce and the
January 26, 2017 Amended Final Judgment of Divorce is denied. This is a repetitive
motion to the Court. The Plaintiff has filed an appeal with the Appellate Division from
this Final Judgment. This Court is deprived of jurisdiction with the exception of
enforcement proceedings.

(3) Plaintiff's motion to vacate the FJOD and AFJOD because Plaintiff did not have
competent effective counsel to represent him in these divorce proceedings is denied for
the same reasons set forth in paragraphs 1 and 2 of this order.

(4) Plaintiff's motion to vacate the FJOD and AFJOD because Plaintiff was subjected to
fraudulent abuse of process/fraudulent abuse of discovery process is denied for the same
reasons set forth in paragraphs 1 and 2 of this order.

(5) Plaintiff's motion to vacate and reimburse $144,717 that Defendant and her attorneys
fraudulently took is denied. The Final Judgment of Divorce addressed all issues of
outstanding claims by the parties. The Plaintiff's pleadings were suppressed for reason of
bad faith by the Plaintiff in the conduct of this litigation which precluded him from
making any affirmative claims for relief. The Court found no evidence of fraud or
misconduct by the Defendant or her attorney. This is an application completely without
merit.

(6) Plaintiff's motion to vacate all orders preventing Plaintiff from asserting his
constitutionally protected parental rights and granting Plaintiff sole custody is denied.
The Plaintiff must show a change of circumstance from the entry of the FJOD and
AFJOD which addressed in detail the issues of custody and parenting time. Plaintiff
must also show that the change is in the best interests of the minor children. The Plaintiff

5

has refused to submit to a custody neutral assessment, and to pay for same, which would be a prerequisite to the Court conducting a hearing on any modification of parenting time. The Plaintiff cannot show that any change in parenting time is in the best interests of the children.

(7) Plaintiff's motion to compel Defendant to pay for all therapy/reunification therapy relative to the Plaintiff and the three minor children is denied. This Court imposed the financial obligation to pay for reunification therapy, if appropriate, upon the Plaintiff who has as of this date defaulted in making over $100,000 in Court ordered child support and spousal support. The Defendant has been impoverished by the failure of the Plaintiff to make any child support payment, and for the year 2017 he has only made payments of less than $100 on his account. The Defendant is in no position to assume this payment.

(8) Plaintiff's motion granting Plaintiff makeup time for loss of parenting time is denied. Plaintiff currently has supervised parenting time. Plaintiff has been advised that any changes to the parenting time would only occur after the Court has received a Custody Neutral Assessment. The Plaintiff refuses to participate in a CNA, or pay for a CNA. Therefore the Plaintiff's motion for makeup time is denied.

(9) Plaintiff's motion to stay any and all enforcement hearings and orders until an ability to pay/ability to comply hearing is conducted is denied as moot. The Defendant is currently before the Honorable John Doran for an enforcement hearing. The ability to pay hearing was continued to a later date, and during the interim, the Court vacated the bench warrant to afford the Plaintiff the opportunity to produce financial information that would support his claim of hardship.

6

(10)     Plaintiff's Notice of Motion for the disqualification and/or recusal of Judges

Marlene Lynch Ford, A.J.S.C. and John Doran, J.S.C. and transfer of venue to Mercer

County, Family Part, is hereby **denied.** This is the 6th motion by the Plaintiff seeking

recusal of the undersigned Judge of the Superior Court, and now the first as to Judge

Doran, who is currently conducting an ability to pay hearing at the request of the Plaintiff

on the issue of enforcement of his child and spousal support obligations. The Court has

set forth on the record that there is no basis for the recusal of either Judge, however, the

application for recusal must be made first to the Judge hearing the case. The motion to

recuse Judge Ford is denied; the motion to recuse Judge Doran is denied without

prejudice since any motion to recuse would have to be made in the first instance to Judge

Doran. The motion to transfer venue to Mercer County is denied, as there is no basis to

transfer venue.

(11)     That the Defendant's Notice of Motion fully enforcing the terms set forth in the

Amended Final Judgment of Divorce entered on January 26, 2017, by the Honorable

Marlene Lynch Ford, A.J.S.C. is hereby **granted.**

(12)     That the Defendant's Notice of Motion ordering that Plaintiff undergo a

psychiatric evaluation and psychiatric counseling with a licensed psychiatrist to be

chosen and appointed by the Court; and further ordering that Plaintiff be responsible

100% of all costs associated with same is hereby is denied without prejudice. The Court

feels a referral for a psychiatric assessment at this time would be futile. However, the

Plaintiff has raised psychiatric disorders or mental illness as a reason why he is not

employed. The issue of whether or not the Plaintiff is psychiatrically disabled and

unemployable may be an issue at a future hearing on whether he is underemployed or

7

unemployed as a result of disability, or as a result of personal choice. The Court may revisit this issue at a later date if a questions as to disability and inability to work becomes an issue before the Court. No credible proofs of physical or mental disability have been submitted to the Court at this time.

(13)     That the Defendant's Notice of Motion to suspend all supervised visitation until such time as the Court appointed psychiatrist provides a report to the Court stating that the Plaintiff is psychologically stable and fit to resume supervised visitation is hereby granted in part and denied in part. The court will grant the Defendant's motion to terminate supervised parenting time at this time as being in the best interests of the children. The Court has had an opportunity to consider the reports of the Court Supervised Parenting time program. Although the Plaintiff presents as a caring and loving parent, he places unreasonable stress and anguish upon the children by his actions, by his statements and by his complete financial abandonment of his family. This Court has determined that the Plaintiff has not been truthful to the Court about his financial circumstances. The Plaintiff has been found to be voluntarily underemployed or unemployed. The Plaintiff has a history of earning income from his self employement as a financial advisor and asset protection advisor. The Defendant has attached to her papers a boarding pass from Virgin Airlines which indicates Plaintiff took a trip to Dubai apparently to do business or investigate business at a foreign bank located there. This trip took place on July 22, 2014, a few weeks before the Court ruled on a pendente lite motion, and shortly after the imposition of mutual restraints on the disposition of assets. The proofs submitted at the final hearing and during the ability to pay hearing of October 2015 reflected that about $650,000 of joint assets were unaccounted for by the Plaintiff.

8

The Plaintiff has completely failed to provide any proof of income for the years 2013, 2014, 2105 or 2016 although ordered to do so in the AFJOD. The Court made a factual finding that the Plaintiff has made false and material representations about his assets and income. The Plaintiff has financially abandoned his children, and refuses to pay any support whatsoever for them. The Plaintiff however has been able to give gifts directly to the children. The Plaintiff has used the judicial process on both the state court and the federal court level to harass and intimidate all involved in this litigation. The Plaintiff has required the children to read aloud letters to them from him that attempt to elicit information about the Defendant. The Plaintiff brings gifts, money and other things of value to the children during supervised parenting time, but at the same time providing nothing other than the most de minimis amount of support through his probation account. The Plaintiff requested the children to call the Court and to tell the undersigned that they wish to live with their father, a clear violation of the concept that the children need to be insulated from this litigation. The Plaintiff refuses to participate in a custody neutral assessment that would allow the children and the parties, in a therapeutic setting, to set forth their positions for the benefit of the Court. The Plaintiff continues to disparage the Defendant, the mother of the three children, during these visits, as well in appalling text messages to the Defendant. In the letter to the children, the Defendant wrote "You won't have to deal with strange men that mom is bringing into the house." The Court would have expected a cooling in the anger of the Plaintiff directed at the Defendant, however, the attachments to the Defendant's certification including text messages reflects that the Plaintiff continues to demean the Defendant with vile, degrading and insulting language. The Plaintiff's verbal abuse of Court Staff resulted in an order of this Court directing that

9

he only communicate with Court staff in writing. It is painfully apparent to this Court
that the Plaintiff is unable to control his anger, as reflected in the many times this Court
was obliged to remove him from the Court Room in order to conduct a proceeding and to
make an adequate record. For these reasons and for the reasons set forth on the record
the Court will suspend supervised parenting time with the children in order to insulate the
children from any further inappropriate contact by the Plaintiff, from his direct and subtle
disparagements of their mother, and from any conflicts with Court Staff. This is without
prejudice. The Court will consider restoring supervised parenting time if and when the
Plaintiff complies with the orders of this court referring the parties to a custody neutral
assessment.

(14)     That the Defendant's Notice of Motion to enforce Judge Ford's Order entered on
         July 27, 2017; particularly paragraph 6 ordering that Plaintiff be restrained from
         following, stalking and maintaining video surveillance of the Defendant and the children
         and not coming within 1000 feet from the property where the Defendant and children
         reside is hereby granted. The Defendant shall further no use any other form of
         surveillance, for example a camera equipped drone, to "spy" on the home occupied by the
         Defendant, or retaining any third parties for the purpose of surveilling the Defendant.

(15)     That the Defendant's Notice of Motion to restrain the Plaintiff from coming
         within 1000 feet of the children's school, place of employment or sports or social venue
         is granted. The Plaintiff shall not be permitted to send letters for the children by way of
         the administrative offices of their school. The Plaintif may communicate with the
         children in writing, by letter by regular mail, however the Defendant shall be authorized
         to screen these communications.

10

(16) That the Defendant's motion for an order to produce the Plaintiff's tax returns or other tax forms for the years 2013 to 2016 is granted. Plaintiff shall provide copies of all tax returns, W-2 forms, 1099 forms, misc. income forms, or others proofs of income within 45 days of the entry of this order. These shall be sent by regular mail to the home of the Plaintiff.

(17) That the Defendant's motion to compel Plaintiff to comply with all Orders of the Court and further ordering that if the Plaintiff continues to disregard and violate Court Orders, a bench warrant will be issued for his arrest and incarceration until such time as he complies with the Court Orders is hereby denied without prejudice. The issue of whether or not the Defendant should be subject to a bench warrant is presently pending before Judge Doran in an enforcement hearing and an ability to pay or comply hearing.

**(18)** This Plaintiff continues to file motions before the Court which are duplicative of prior applications to the Court. The Plaintiff has filed a notice of appeal from the AFJOD which is currently pending in the Appellate Division, and the filing of that appeal has deprived the Court of jurisidiction. The Plaintiff has been verbally abusive to the Court, and has refused to follow normal protocols for conducting a proper hearing on a motion. The Plaintiff has also filed documents with the Court that are nonsensical, invoking "writs" "prerogative writs" and naming the Court as a defendant in a matrimonial litigation. The Court has extended great deference to the Plaintiff because he is self represented; however, his multiple and nonsensical submissions to the Court certainly supports a finding that he is a vexatious litigant. **With regard to any future filings with the Superior Court of New Jersey by this Plaintiff, Zia Shaikh, the Court will order that any filing shall be marked received not filed, and shall be reviewed by the**

11

Assignment Judge as to whether or not this filing is a duplication of a prior filing; repetitive; nonsensical, or otherwise incomprehensible and thus constituting a vexatious filing. The Court will then determine whether or not to accept the documents for filing.

MARLENE LYNCH FORD, A.J.S.C.

# EXHIBIT # 6

PREPARED BY THE COURT

| | |
|---|---|
| **ZIA SHAIKH,** | : SUPERIOR COURT OF NEW JERSEY |
| | CHANCERY DIVISION/FAMILY PART |
| **Plaintiff** | : OCEAN COUNTY |
| | |
| vs. | : DOCKET NO. FM-15-500-14N |
| | |
| | : CIVIL ACTION |
| | |
| | : ORDER FOLLOWING ABILITY TO PAY |
| **LAURA GERMADNIG,** | HEARING: PART 2 |
| **Defendant** | |

| | | |
|---|---|---|
| **Plaintiff:** | **SELF-REPRESENTED** | **Fax: (732) 200-1070** |
| **Defendant:** | **SELF-REPRESENTED** | **VIA EMAIL** |

FILED

NOV 2 8 2017

JOHN M. DORAN, J.S.C.

**THIS MATTER** comes before the Court on November 28, 2017, at the request of the Ocean County Probation Division for a hearing to enforce the Plaintiff's child support and spousal support obligations.

## PROCEDURAL HISTORY:

See the Procedural History outlined in the Order entered October 3, 2017.

Since the entry of that prior order, Judge Ford entered an Order on Motion and Cross-motion returnable October 19, 2017, on October 19, 2017.

On page 3 of that order:

"With regard to the documents purported to be various writs, prerogative writ actions, and direct actions against the undersigned Judge of the Superior Court, or the Probation Department, which Court finds that the purported filings do not constitute motions and are not recognized under state law and not a valid submission under this matrimonial docket."

1

On Page 11, section 18 of that order, the Court found the Plaintiff to be:

"... a vexatious litigant. With regard to any future filings with the Superior Court of New Jersey by this Plaintiff, Zia Shaikh, the Court will order that any filings shall be marked received not filed, and shall be reviewed by the Assignment Judge as to whether or not this filing is a duplication of a prior filing; repetitive; nonsensical, or otherwise constituting a vexatious filing. The Court will then determine whether or not to accept the document for filing."

The Plaintiff has **not** followed the Court's directive.

On November 21, 2017, he faxed **directly to this Court's chambers**, an eight page letter dated November 20, 2017, entitled DEMAND FOR DISMISSAL OF ERRONEOUS ENFORCEMENT HEARING BY PETITIONER OF NOV 28, 2017 FOR LACK OF IV-D JURISDICTION AND OCEAN COUNTY CHILD SUPPORT ENFORCEMENT AGENCY FAILURE TO PROVE DEBT IS OWED.

As such, this Court has **not** reviewed and will **not** address same.

### XXXXX

**IT IS** on this 28th day of November, 2017, for the reasons set forth in detail on the record, as well as contained herein and for good cause shown, **ORDERED:**

**The Court finds that the Plaintiff has the ability to pay his child support obligation of $284.00 per week as well as his alimony obligation of $650.00 per week for a total of $934.00 per week.**

As set forth in the Procedural History of the order entered October 3, 2017, there were **five previous ability to pay findings** prior to the hearing of October 2, 2017.

2

For the October 2, 2017, hearing, the Court issued a Stay of Enforcement to allow the Plaintiff to appear in person. He refused to do so. The Court allowed him to appear telephonically.

The Plaintiff testified that his address of 4400 Route 9, unit 1000, Freehold, NJ, was a PO BOX. He testified that he neither owns nor rents a residence. He testified that there are no gas, electric, water, sewer, or cable utilities in his name. He testified that 100% of his schedule (A) housing expenses, schedule (B) transportation expenses, and schedule (C) personal expenses were paid for by **unnamed friends**. He was directed to supply the names and contact information by October 3, 2017, which he failed to do. This Court finds the testimony of the Plaintiff to be untruthful, incredible, and completely devoid of common sense.

The Plaintiff testified that he is unemployed and that there are no INC's, LLC's, or licenses in his name. This Court finds the testimony of the Plaintiff to be untruthful to the extent that he must be employed in some capacity in order to support himself.

The Plaintiff testified that his bank accounts are minimal and that he owns no motor vehicle. When confronted with the fact that a certain motor vehicle was registered in his name, he admitted to a fraudulent MV registration in order to benefit an unnamed friend.

The Plaintiff testified that he was **not** willing to participate in a job search and was **not** willing to seek employment.

The Plaintiff was directed in §3 of the order entered October 3, 2017, to file such further information as necessary to the Court's determination. The Plaintiff sent **directly to this court's chambers** a letter dated October 4, 2017, with attachments. Same was **not filed** with the Clerk of the Superior Court.

Nevertheless, the court finds:

3

§3A: with respect to the 2013, 2014, and 2015 **US and NJ** personal and business tax returns, with required attachments, they have **not been filed**. He claims they were stolen by the Defendant. Instead, he provided an **IRS summary** of his tax returns. They were provided to him by the IRS **at his request**. He did not, at least in this action, request the **full** returns. He also did not provide his **NJ** tax returns, with required attachments.

Further, with respect to his 2016 tax returns, he says that he cannot afford the $350.00 to file same. **There is no cost to file a tax return**. The Plaintiff has testified that he is unemployed. A simple tax return could have been filed by the Plaintiff at **no cost to him**.

§3B: Plaintiff has complied with same.

§3C: the Plaintiff has **not provided** a copy of the agency's rejection with respect to his NJ unemployment benefits application. What he provided was the agency's Notice to Claimant of Receipt of Claim.

§3D: the Plaintiff did **not provide** a copy of his January 15, 2017 Disability Benefits application. What he did provide was the agency's response dated September 26, 2016, to his application dated May 29, 2016.

§3E: the Plaintiff did **not provide a current** psychological report from David N. Lipton, Ph.D. He provided a report dated December 8, 2016, with an addendum dated June 20, 2017. **The Plaintiff has failed to provide proof that he is unable to work in any capacity**.

The Court draws an adverse inference against the Plaintiff for his failure to file and/or produce for the Court the information ordered under §§ 3A, 3C, 3D, and 3E of the order entered October 3, 2017. He provided only **select** information to the Court. He requested **summaries** from the **IRS**. He ignored the **NJ** tax returns. He supplied information regarding purported unemployment and disability which is inconsistent as to date and conflicts with his own

4

testimony. The Plaintiff's purpose is to deceive the Court. The only logical conclusion to be drawn is that he is hiding income and assets and that **he has the present ability to pay both his child support and alimony obligations**.

Despite his present ability to pay, the Plaintiff has paid only $88.11 in the past year towards his support obligations. His total arrears now equal $105,355.52.

Accordingly, this Court issues a bench warrant for the arrest and incarceration of the Plaintiff, Zia Shaikh, in accordance with the terms thereof.

This Court retains jurisdiction of this enforcement matter.

HON. JOHN M. DORAN, J.S.C.

5

# EXHIBIT # 7

**PREPARED BY THE COURT**

---

| | | |
|---|---|---|
| **ZIA SHAIKH,** | : | **SUPERIOR COURT OF NEW JERSEY** |
| **Plaintiff,** | : | **CHANCERY DIVISION/FAMILY PART** |
| | : | **OCEAN COUNTY** |
| **v.** | : | |
| | : | **DOCKET NO. FM-15-500-14** |
| **LAURA L. GERMADNIG,** | : | **CIVIL ACTION** |
| | : | |
| **Defendant.** | : | **POST-JUDGEMENT ORDER** |
| | : | |

---

    **THIS MATTER** comes before the Court with the Plaintiff being self- represented and the Defendant being self-represented.

    By way of background, the parties were married on March 5, 1999, and divorced pursuant to a Final Judgment of Divorce (FJOD)  on December 20, 2016, following the oral decision of the Honorable Marlene Lynch Ford, A.J.S.C. on December 20, 2016, after a trial of the within matter. The FJOD was subsequently amended on January 26, 2017.

    There has been significant pre-judgment and post-judgment litigation in the within matter, both at the trial level as well as in the Appellate Division.[1] On May 7, 2019, the Final Judgment of Divorce incorporating the decision of the trial judge was affirmed by the Appellate Division under the Appellate Division Docket No. A-2418-16T1.  A second appeal by the Plaintiff under Appellate Division Docket No.  A-003068-18 was dismissed on October 11, 2019, for failure to

---

[1] It is noted that an Order was issued on October 19, 2017 by the Honorable Marlene Lynch Ford, A.J.S.C. designating the Plaintiff as a vexatious litigant. This designation was a result of that court's detailed findings regarding the verbally abusive behavior of the Plaintiff while in the courtroom as well as repeated nonsensical filings invoking "writs" or "prerogative writs". This designation occurred after that court showed great deference to the Plaintiff's status as a self -represented litigant.  As such, his applications were to be screened upon submission for filing.

file a timely brief.  Plaintiff asserts that there is a New Jersey Supreme Court appeal pending under

Docket No. 082984.[2]  In October of 2019, this court has confirmed that this Docket number does

exist. However, no action had been taken due to procedural deficiencies. As such, this Court was

satisfied at that time that it retained jurisdiction to address post-judgment enforcement issues.

On July 30, 2019, Defendant filed a Notice of Motion seeking the following reliefs: (1)

Amend the most recent court order to include imprisonment of the Plaintiff regarding his consistent

perjury to the court; (2) Amend the most recent order of the Court to include imprisonment  for

Plaintiff regarding his crossing of state lines, while willfully not paying child or spousal support

in excess g $10,000.00 for a period exceeding two (2) years; (3) Enforce the various orders granted

to the Defendant regarding the Plaintiff's harassment of said Defendant,  as well as any friend or

family member who has helped her and her three (3) children obtain basic necessities; (4) Enforce

the Plaintiff's Child support court ordered obligation and reinstate the support for Defendant's

daughter, M.L.S.,  as it was revoked due to the fact that she turned 19;  (5) Enforce the consistent

demand for the Plaintiff's physical residential address and sanction him $100.00 per day that it is

not provided; (6) Enforce the consistent demand for NJ tax returns dating back but not limited to

the years of 2013 through 2017, including personal as well as those of America's Retirement

Planners NJ, Progressive Equity Partners NJ, Texas and elsewhere, Sabur Private Wealth

Management, Texas and elsewhere as well as any other entities that the Court has not yet been

informed of.  The Plaintiff should be sanctioned $100.00 per day for each day that this information

is not provided; (7) Subpoena Plaintiff's current and former bank accounts, pay stubs, telephone

records and all assets found under Trusts; (8) Subpoena proof of Plaintiff's claim of having

received SSI/Disability benefits, for which he claims is the proof that he is indigent and therefore,

---

[2] This court has confirmed that the Supreme Court denied the Plaintiff's position on April 7, 2020.

receives waivers; (9) Enforce the Final Judgment of Divorce issued on December 20, 2016, including the arrears to date; (10) Enforce the existing bench warrant; and (11) disregard all filings by the Plaintiff that do not prove service by certified mail and regulars mail.

On August 21, 2019, the Plaintiff filed a Request to Cancel the Motion Hearing since the New Jersey Supreme Court was hearing the same issues. The Plaintiff provided only a docket number with no supporting documentation.  On August 22, 2019, the Plaintiff filed a second request to cancel the pending motion and also asserted in additional fifteen (15) pages of drop cites and case law blurbs and constitutional and religious commentary that the Court lacks jurisdiction over the Plaintiff and that the bench warrant presently active for Plaintiff's willful failure to pay his court-ordered support obligations is null and void pursuant to federal law. On August 26, 2019, the Plaintiff then filed a Reply Certification in opposition to the motion. In this Certification, Plaintiff alleges that the motion is frivolous, false, etc. Plaintiff also alleges that at some earlier time, he was imprisoned in the "Ocean County Debtor's Prison" on an earlier bench warrant. The Plaintiff writes that all reliefs sought by Defendant have already been addressed. Plaintiff then repeats all the information previously provided regarding the court's lack of jurisdiction.

The Defendant requested to be heard via telephone. The Plaintiff affirmatively indicated that he was not requesting oral argument.

The Court having considered the documents filed, and having heard the argument of the Defendant and for good cause shown issued the following Order on October 22, 2019:

1. **Amend the most recent order by the Court to include imprisonment for consistent perjury to the Court, in violation of federal law and punishable by 5 years.**   This

request is **DENIED.** The Court advised the Defendant on the record that this was state court family division and that criminal issues are not appropriately here.

2. **Amend the most recent Court Order by the Court to include imprisonment of the Plaintiff as he crossed state lines, while willfully not paying child or spousal support in excess of $10,000.00 for over two (2) years, which is a federal offense.** This request is **DENIED.** The Court advised the Defendant during oral argument that there is an active bench warrant for the Plaintiff's arrest for failure to pay support.

3. **Enforce the various Orders granted to the Defendant regarding the Plaintiff's harassment of said Defendant as well as any friend or family member who has helped her and her three children obtain the basic necessities.** Defendant advised that there is a Temporary Restraining Order in effect which has not yet been served upon the Plaintiff. This request is **GRANTED** and the authorities should make every effort to serve the Plaintiff with a copy of the Temporary Restraining Order. The Defendant provided a possible supplemental address for the Plaintiff, which is **950 East State Highway 114, Suite 160, South Lake, Texas 96042.** This address was listed on the licensing histories for the various financial licenses the Plaintiff holds, as well the website he maintains online with regard to "bubble wrapping your assets to protect them from family support obligations" or words to that effect. A copy of the within Order shall be served upon the Sheriff's Department, Warrant Division, with respect to the active bench warrant and the Domestic Violence Office to determine if such Order can be administratively forwarded to the authorities in Texas.

4. **Enforce the child support obligation and reinstate the support for M.L.S as it terminated upon her 19th birthday.** Defendant advises that M.L.S. will be attending

college full-time at Brookdale Community College.  However, at present, she is not living with the Defendant. Defendant advises that she is locating a new residence.  Once that residence is in place, the child, M.L.S, will be returning to the home. The Plaintiff was advised that if the child was attending college full-time and commuting, she can re-apply for a reinstatement of the child support obligation. Defendant was further advised that she would have to supply documentation in this regard to include proof of residence and proof of full-time attendance at college.

5. **Enforce the consistent demand for Plaintiff's residential address and sanction him $100.00 per day that it is not provided.** This request is **GRANTED in part.** The Court will Order that Plaintiff shall provide his current residential address to the Court and to the Ocean County Probation Department within five (5) days of the date of the within Order.  The Court declines to address the issue of sanctions at this time.

6. **Enforce the consistent demand for tax returns of the Plaintiff and all entities he is involved with.**  This request is **DENIED without prejudice.** There has been no showing made as to why these are relevant at this time.  The Court will reconsider same if they are relevant to any provisions of the Amended Final Judgment of Divorce which are presently unenforced.

7. **Subpoena Plaintiff's current and former bank accounts, pay stubs, telephone records and all assets under trusts.** This request is **DENIED without prejudice. The Court finds that there has been no showing of a need for such items at this time and the Court is not an investigative body for the Defendant.**

8. **Subpoena proof of Plaintiffs claim of having received Disability benefits for which he claims as proof that he is indigent and therefore receives waivers.** This is **DENIED without prejudice. See, Paragraph 7.**

9. **Enforce the final Judgement of Divorce issued December 20, 2016, including the arrears to date. This request is GRANTED.** The controlling Order of the Amended Final Judgement of Divorce dared January 26, 2017. All obligations contained therein are **ENFORCED.** There remains an active bench warrant for the Plaintiff's arrest for failure to comply with his court-ordered support obligations. As indicated previously, Defendant provided the Court with a new potential address in the State of Texas. The Court shall provide this address to the Ocean County Sheriff's Department and shall also request that the Sheriff's Department consider extending the parameters of the search warrant jurisdiction to include the State of Texas.

10. **Enforce the bench warrant.** This request is **GRANTED.** The bench warrant remains active.

11. **Disregard all filings of the Plaintiff that do not provide service to the Defendant by certified mail one tracking number via regular mail.** This request is **DENIED without prejudice.** The Court believes that the Defendant is aware of the filings of the Plaintiff as she filed a response to his Reply Certification on the eve of the motion.

**In addition, there has been a document circulated by the Plaintiff which the Defendant has provided to the Court. The document appears under the name "We the People" Court Services. This purports to be a Jury Verdict-Sworn Affidavit with respect to FM-15-500-14 W which is the matrimonial docket number. The document purports to indicate that a jury trial was conducted with regard to the termination of the parental rights**

**of the Plaintiff.  This document is counterfeit and is not recognized by this Court.   No such proceedings were eve commenced. There is no venue listed in such.  This document was created on a computer and appeared to be something that one can purchase online.  This document is to be given no force and effect and the State of New Jersey retains jurisdiction as the home state for all matters relating to child custody on this matter.**

Since the Order of October 22, 2019 issued, there have been occasions where the Plaintiff has continued to send correspondence to the court although there was no application pending at the time.  The court forwarded correspondence to both parties indicating that the court will not respond to random correspondence sent when there is no formal application pending.   On September 29, 2020, the Plaintiff filed what he referred to as a " Notice of Motion on Short Notice to Revise Custody Orders Pursuant to the Jury Verdict Order of September 6, 2019  or Conduct the Court's own jury hearing and to Dismiss CS91103001A and refund all monies erroneously collected as child support  payments to Plaintiff within  30 days.  (It should be noted that the court was not consulted and did not authorize a filing on short notice). This filing was done utilizing JEDS. However, for some reason, the court did not receive a copy of this motion until the parties were before the court on an unrelated matter on November 18, 2020.  At that time, the Plaintiff inquired as to whether his custody motion would be heard that day.  The court advised that it had not received same.  The Plaintiff, although quite verbally abusive to the court and referring to the court by her first name, was kind enough to send another copy via facsimile to the chambers of the court.  On November 18, 2020, the court scheduled the return date of the motion for January 4, 2021 with the consent of both parties. The Defendant had not been served with a copy of the motion as there was a Temporary Restraining Order in place on behalf of the Defendant against the Plaintiff.  The court subsequently served the Defendant with a copy of the papers to allow for

her to file a response. In late December of 2020, Defendant requested an adjournment for additional time to prepare a response due to some medical procedures in December. The court denied the request. It was the court's intention to hear argument of the parties and allow them to file additional written submissions after the oral argument. On January 4, 2021, all parties appeared remotely.  The Plaintiff immediately requested that the Court recuse itself as there was allegedly pending federal litigation filed against all members of the Ocean County Judiciary who had been previously assigned to the within matter as well as the Assignment Judge of Monmouth County.[3] The court had previously made findings regarding this issue and did not intend to revisit same. The Plaintiff repeatedly referred to the court by her first name and insisted that the court did not have jurisdiction over the matter and should recuse herself.  The Court asked the Plaintiff whether he would like to present oral argument regarding his application. The Plaintiff declined to do so after verifying with the court that the Court had reviewed his submissions.  The court then advised that the Defendant would have seven (7) days to file a response to Plaintiff's motion.  The response was to be filed by January 11, 2021.  The court would then allow the Plaintiff an opportunity to submit a Reply Certification as he was not seeking oral argument. This was to be filed by January 20, 2021.  The Plaintiff did make an additional request for the Court to consider providing his children's phone numbers to the Jackson Township Police Department, who, in turn, would release same to him as he needed to speak with his children immediately.  After all submissions were received, the court would review same and would release a written decision. There was no date for release of the decision. The Plaintiff did file a Reply on January 13, 2021 as well an additional submission on January 18, 2021. Beginning January 20, 2021, the Plaintiff has been sending email

---

[3] It should be noted that this court subsequently learned the original federal complaint filed by Plaintiff against various members of the Ocean and Monmouth County Judiciaries had been dismissed without prejudice by the federal court.  The federal court allowed the Plaintiff to re-file an amended complaint for screening. This court had no further information at the time of the within Order as to the present status of the federal litigation.

requests to the court's chambers demanding his "Order" insisting that the court was to release its decision on January 20, 2021. On January 21, 2021, the court forwarded correspondence to both parties outlining the history of the current application. **This correspondence also provided that the court was in receipt of all submissions by the January 20, 2021 date and that the court would review all submissions, but that the Court was presently reserving decision and that a written decision would be forth coming.** Notwithstanding this correspondence, Plaintiff has continued to forward emails demanding his Order, including an email received in the middle of the night.

The pending Notice of Motion filed by the Plaintiff on "Short Notice"  requests the following reliefs : (1) Immediately revise custody orders in conformance with the Jury Verdict dated September 06, 2019, or convene a new jury; (2) Vacate illegal bench warrant dated November 28, 2017, issued by the Honorable John M. Doran, J.S.C.  for lack of subject matter and in personam jurisdiction and without probable cause for non-payment of alleged child support payments; (3) Dismiss Child support alleged arrears under Case No. Cs91103001A with prejudice and to refund all erroneously collected payments to within thirty (30) days; (4) Immediate incarceration of the Defendant for contempt pursuant to N.J.S.A. 2C:29-9; (5) Immediate incarceration of the Defendant for extreme interference with the parent child relationship between Plaintiff and his three children in violation of N.J.S.A. 2C:13-4a(4); (6) Immediate assessment of the two (2) minor children for their emotional well-being by a licensed family therapist in the Monmouth county area for physical and emotional abuse experienced at the hands of Defendant's multiple paramours; (7) Disqualification/Recusal  of Judges Ford and Doran  due to Plaintiff suing various Ocean County judges  in a federal lawsuit causing an acrimonious situation between Plaintiff and the Ocean County Judiciary  and creating a conflict of interest resulting in Plaintiff

not receiving a fair trial or hearings in Ocean County; and (8) Transferring venue of the entire Family Court matter to Mercer County Superior Court, Family Part. In addition, there was the was the added request for the immediate production of the cellphone numbers of the minor children.

The Notice of Cross-Motion filed by the Defendant on January 11, 2021, seeks the following reliefs: (1) Deny and Dismiss Plaintiff's Motion on Short Notice in its entirety; (2) Fully enforcing the Order designating the Plaintiff as a vexatious litigant; (3) Denying the revision of the custody orders ever  for any reason, with or without a jury; (4) Deny the request to vacate the bench warrant issued by Judge John M. Doran regarding a failure to pay child support obligations; (5) Denying the dismissal of child support arrears and deny reimbursement to the Plaintiff of any monies already paid; (6) Deny Plaintiff's request for the incarceration of the Defendant for Contempt violations and/or interfering with  the relationship between the Plaintiff and the minor children; (7) Deny Plaintiff's demand for an assessment of the children; (8) Deny Plaintiff's request for recusal; and, (9) Deny the transfer of the family court matter to Mercer County or any other county.

Plaintiff filed an initial Reply Certification on January 13, 2021 and filed another submission on January 18, 2021.

Having considered the documents filed and for good cause shown;

It is on this 12th day of February **ORDERED as follows.**

**With regard to the Notice of Motion on Short Notice:**

1. **Immediately revise custody orders in conformance with the Jury Verdict dated September 06, 2019 or convene a new jury.  This request is DENIED.** This Court

previously issued an Order dated October 22, 2019, delineating that this "Jury Verdict" was not to be given any force and effect in the State of New Jersey. This "jury verdict" is not a valid and enforceable court proceeding and any decision of that body if it exists is not binding upon this court. The children of the parties have been continuous residents of the State of New Jersey for several years. In accordance with the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), the home state of the minor children for all matters relating to custody is New Jersey.

2. **Vacate illegal bench warrant dated November 28, 2017 issued by the Honorable John M. Doran, J.S.C. for lack of subject matter and in personam jurisdiction and without probable cause for non-payment of alleged child support payments.** This request is **DENIED.** The relief sought by the Plaintiff is this regard has been previously heard by the Honorable Marlene Lynch Ford, A.J.S.C. In a letter opinion dated November 13, 2018, as well as an accompanying Order filed on December 19, 2017, Judge Ford found Plaintiff's application to file a motion to vacate a bench warrant to be duplicative and repetitious and in violation of the October 19, 2017 Order of Judge Ford, which provide a basis on which relief could be granted. See also, paragraph 2, supra.

3. **Dismiss Child support alleged arrears under Case No. Cs91103001A with prejudice and to refund all erroneously collected payments to within thirty (30) days.** This request is **DENIED.** Throughout the litigation, in both the pre-and post-judgment stages, the Plaintiff has willfully failed to provide his financials to the court and dissipated marital assets. The child support obligation fashioned by the court was proper. In addition, the Plaintiff has willfully failed to pay his child support obligations, and has financially abandoned his children, although in the earlier stages of the litigation was always able to

supply the children with gift cards and presents  during his supervised visits, as was noted in previous Orders in this regard.

4. **Immediate incarceration of the Defendant for contempt pursuant to <u>N.J.S.A.</u> 2C:29-9.** This request is **DENIED.** Plaintiff 's Certification refers back to Orders entered with regard to his supervised parenting time which pre-dated the Amended Final Judgment of Divorce. Moreover, the post-judgment Order of Judge Marlene Lunch Ford, A.J.S.C., dated October 19, 2017 at Paragraph thirteen (13) provided in pertinent part that in the best interests of the children,  Plaintiff's parenting would be suspended without prejudice pending  further Order of the Court. The ruling detailed the steps that the Plaintiff needed to take before the court would reconsider this ruling. Plaintiff has not attempted to comply with any required provisions. Rather, he continues to provide the court with rambling nonsensical reasons why his position is correct and all previous rulings by the courts are incorrect.

5. **Immediate incarceration of the defendant for extreme interference with the parent child relationship between Plaintiff and his three children in violation of <u>N.J.S.A.</u> 2C:13-4a (4).**  This request is **DENIED.** This request is simply an amplification of the reliefs requested in Paragraph 3, supra.

6. **Immediate assessment of the two (2) minor children for their emotional well-being by a licensed family therapist in the Monmouth county area for physical and emotional abuse experienced at the hands of Defendant's multiple paramours.** This request is **DENIED.**  Plaintiff has made no showing that such assessment is required.

7. **Disqualification/Recusal  of Judges Ford and Doran  due to Plaintiff suing various Ocean County judges  in a federal lawsuit causing an acrimonious situation between Plaintiff and the Ocean County Judiciary  and creating a conflict of interest resulting**

**in Plaintiff not receiving a fair trial or hearings in Ocean County.**  This request is **DENIED.**  Plaintiff has moved to recuse Judge Ford and Judge Doran on numerous occasions.  In a letter opinion dated November 13, 2018, Judge Marlene Lynch Ford, A.J.S.C. indicated that the Plaintiff had filed at least nine (9) prior applications to recuse Judge Ford.  There has been more than one application to recuse Judge Doran.  The arguments raised in the current application for relief in this regard are essentially the same to those raised in his prior applications. This particular repetitive request for relief by the Plaintiff will not be considered.

8.  **Transferring venue of the entire Family Court matter to Mercer County Superior Court, Family Part.**  This request is **DENIED.**  This request for relief has previously been addressed during the litigation and denied.  Plaintiff argues herein that venue must be changed due to the bias of the Ocean County Judiciary and, more specifically, Judge Ford as the Assignment Judge and the conflict of interest that exists due to pending litigation. Plaintiff has offered nothing of substance in this regard and simply submits rambling demands for his reliefs and drop cites to legal authorities.

9.  **Immediate production of the cellphone numbers of the minor children.**  This request is **DENIED.**  Plaintiff seek the cellphone numbers of his minor children so that he may contact the children forthwith to continue his relationship with them. The Court has grave concerns in this regard. Initially, his parenting time remains suspended as he failed to comply and cooperate with a Custody Neutral assessment, which, in accord with previous Orders, is a pre-requisite to any modification or request to reinstate supervised parenting time. In addition, and of grave concern to this court is a situation which arose in late September and October of 2020, Plaintiff prepared a postcard, like those used by political candidates during

a political campaign.  The postcard discussed the issues with the Family Division of the Ocean County Superior Court and specifically referenced two (2) sitting judges. The front side of the postcard stated "MISSING" in block letters with "$100,0000 REWARD" also in colored block letters. The reverse side of the postcard displayed the language "REWARD: $100,000 Have You Seen My Kids?"   accompanied by pictures of his children with details regarding the schools that they currently attend. The postcard discussed the continuing contentious litigation and named the Defendant as the person responsible for keeping the Plaintiff from his children.  This postcard also displayed language urging its recipients to approach his children as they shop in local stores or are seen on the streets of Jackson Township.  In exchange for these actions, the person who helps the Plaintiff "reunite" with his children will receive a $100,000 reward which will be paid from the proceeds of the lawsuits in progress. Those that seek out his children should facilitate contact with their father for a video chat to confirm their well-being.  It was signed by Zia Shaikh, Loving father, Victim of Ocean County Family Court.  There was a mass mailing of this postcard. This court cannot fathom the thought process of the Plaintiff to engage in such an action. Plaintiff has purposely and knowingly exposed his children to victimization by members of the public. Plaintiff has no idea who has received this mailing or the extent of actions that might be undertaken by member of the public seeking the monetary reward.   This court finds, that based upon these actions, Plaintiff has no regard for the safety and well -being of his children.

**With respect to the Notice of Cross- Motion:**

10. **Deny and Dismiss Plaintiff's Motion on Short Notice in its entirety.** This request is **GRANTED. See, paragraphs 1-8, inclusive.**

11. **Fully enforcing the Order designating the Plaintiff as a vexatious litigant.** This request is **GRANTED.**

12. **Denying the revision of the custody orders ever for any reason, with or without a jury.** This request is **GRANTED in part and DENIED without prejudice in part.** Plaintiff has failed to meet his burden for any modification of custody orders in the within application. However, should Plaintiff ever choose to come into compliance with the previous Orders of the court delineating the steps that need to be undertaken in order to submit an application for reinstatement of his supervised parenting time, the court would be required to hear such application. To change the custody terms provided in a judgment, order, or consent order, a party who seeks to modify an existing custody or parenting time order must meet the burden of showing changed circumstances and that the current arrangement is no longer in the best interests of the child. Finamore v. Aronson, 382 N.J. Super. 514, 522-23 (App. Div. 2006).

13. **Deny the request to vacate the bench warrant issued by Judge John M. Doran regarding a failure to pay child support obligations.** This request is **GRANTED. See, paragraph 2, supra.**

14. **Denying the dismissal of child support arrears and deny reimbursement to the Plaintiff of any monies already paid.** This request is **GRANTED. See paragraph 3, supra.**

15. **Deny Plaintiff's request for the incarceration of the Defendant for Contempt violations and/or interfering with the relationship between the Plaintiff and the minor children.** This request is **GRANTED. See, paragraphs 4 -5, supra.**

16. **Deny Plaintiff's demand for an assessment of the children.** This request is **GRANTED. See, paragraph 6, supra.**

17. **Deny Plaintiff's request for recusal.** This request is **GRANTED. See, paragraph 7. Supra.**

18. **Deny the transfer of the family court matter to Mercer County or any other county**. This request in **GRANTED in part.** The request of Plaintiff was specific to Mercer County. This court cannot automatically rule out every county in New Jersey in the absence of a specific request for relief being raised. **See paragraph 8, supra.**

_Deborah Hanlon-Schron_
**Deborah Hanlon-Schron, J.S.C.**

16

# EXHIBIT # 8

# SUPERIOR COURT OF NEW JERSEY

CHAMBERS OF

**LISA P. THORNTON**
Assignment Judge



MONMOUTH VICINAGE

71 MONUMENT PARK

POST OFFICE BOX 1266

December 4, 2018

Mr. Zia Shaikh
4400 Route 9
Suite 1000
Freehold, New Jersey 07728

Dear Mr. Shaikh,

I am in receipt of your letter dated November 20, 2018. Please be advised that I will not review the submitted complaints and make a determination regarding whether the order of the Honorable Marlene Lynch Ford was valid. If you did not agree with Judge Ford's order, you had a right to file an appeal.

Thank you,

  /s/ Lisa P. Thornton

Lisa P. Thornton A.J.S.C.

cc.  Honorable Marlene Lynch Ford

# EXHIBIT # 9

**Print**  |  **Close Window**

Subject:  **Order Dismissing Docket No.: MON-L-2949-18**
   From:  **Cody Valdez <cody.valdez@njcourts.gov>**
   Date:  **Thu, Nov 15, 2018 4:19 pm**
     To:  **"zia@myarpp.com" <zia@myarpp.com>**
 Attach:  **Zia Shaikh - Order.pdf**

---

Hello Zia,

A ached is the order.  I just want to reiterate that my specula on that it is likely Judge Thronton and Judge Ford talked regarding Judge Ford's order, I do not have factual knowledge.  Therefore, I am unaware how Judge Ford's order to enjoin you came to Judge Thornton's a en on.

Have a wonderful evening,

Cody

---

Copyright © 2003-2019. All rights reserved.

# EXHIBIT # 10

NOTICE: This is a public document. Do not enter personal identifying information on it, such as your full Social Security number, driver's license number, insurance policy number, vehicle plate number or active financial account or credit card number. This document as submitted will be available to the public upon request.

Name   ZIA SHAIKH
Address   4400 RT 9 SUITE 1000
         FREEHOLD, NJ 07728

Telephone Number 732-766-5466
Email Address ZIA@MYARPP.COM

SUPERIOR _____ Court of New Jersey
Ocean        ▼ County (if applicable)
Docket Number:  F-020634-16

THE BANK OF NEWYORK et al          ,

_____
                Plaintiff(s)/Appellant(s),

                    v.

Zia Shaikh
_____,
               Defendant(s)/Respondent(s).

**Order Waiving Filing Fees**

This matter having been brought before the court on application of ZIA SHAIKH _____,
(☐ plaintiff(s)/ ☐ appellant(s)/ ■ defendant(s)/ ☐ respondent(s)) for an **Order** waiving filing fees
pursuant to *Rule* 1:13-2 or *Rule* 2:7-1, and the Court having considered the moving party's financial
information, the matter and for good cause appearing:

**(Do not write below this line, For Court Use Only)**

It is on this _14th_ day of _February_____, 20_19_, ORDERED that the application for a fee waiver is

☑ Granted   ☐ Denied

```
┌─────────────────────┐
│       FILED         │
│  ┌───────────────┐  │
│  │  FEB 1 4 2019 │  │
│  └───────────────┘  │
│     CHAMBERS OF     │
│ FRANCIS R. HODGSON, JR. P.J. Ch │
│ SUPERIOR COURT OCEAN COUNTY │
└─────────────────────┘
```

**FRANCIS R. HODGSON, JR. P.J. Ch**

# EXHIBIT # 11



# New Jersey Courts
Independence • Integrity • Fairness • Quality Service

**SUPERIOR COURT
OCEAN VICINAGE**

| | |
|---|---|
| **Kenneth W. Kerwin**<br>**Trial Court Administrator** | **Stephanie Hudson, Civil Division Manager**<br>**James Castaneda, Civil Assistant Division Manager** |

**www.njcourts.com • phone: 732-929-2042**

February 14, 2019

Re: Application for Indigency

## BANK OF NEW YORK MEL VS SHAIKH ZIA  F-020634-16

Dear Zia Shaikh:

Your application for indigent status with regard to the above captioned complaint has been reviewed.  It has been determined that you do not qualify for indigent status on this specific complaint, and your application has been denied. Enclosed is a copy of the document denying your application. You must submit the correct fee and documents to proceed, within 15 days of the above date.

Very truly yours,

Eli Vazquez
Court Services Supervisor II

120 Hooper Avenue, Room 240, P.O. Box 2191, Toms River, NJ  08754

PREPARED BY THE COURT

| | |
|---|---|
| The Bank of New York et al | : SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | : CHANCERY DIVISION |
| v. | : OCEAN COUNTY |
| | : DOCKET # F -020634-16 |
| | : **ORDER TO VACATE ORDER** |
| Zia Shaikh | |
| Defendant (s) | |

**IT IS** on this 14 of February 2019, **ORDERED** that the Order waiving filing fees dated February 14, 2019 be vacated in accordance with the Order dated December 19, 2018 issued by Judge, Marlene Ford in which a waiver of fees' request was denied in light of the applicant's lack of truthfulness as to his employment and income.



FILED

FEB 1 4 2019

CHAMBERS OF
FRANCIS R. HODGSON, JR. P.J. Ch
SUPERIOR COURT OCEAN COUNTY



Frances R. Hodgson, P.J.Ch.

ORDER OF DISMISSAL
DATED: NOV 01,2021

## Other Orders/Judgments

<u>3:20-cv-02540-ZNQ-TJB SHAIKH</u>
<u>v. EINBINDER et al</u>

PROSE+,PROSE

<div align="center">

**U.S. District Court**

**District of New Jersey [LIVE]**

</div>

**Notice of Electronic Filing**

The following transaction was entered on 11/1/2021 at 2:08 PM EDT and filed on 11/1/2021

**Case Name:**      SHAIKH v. EINBINDER et al
**Case Number:**    <u>3:20-cv-02540-ZNQ-TJB</u>
**Filer:**
**WARNING: CASE CLOSED on 11/01/2021**
**Document Number:** <u>22</u>

**Docket Text:**
**ORDER that this case shall be reopened; Plaintiff's third Amended Complaint [19] is hereby DISMISSED WITH PREJUDICE; The Motion for Preliminary Injunction is Denied as moot; This case shall be marked closed. Signed by Judge Zahid N. Quraishi on 11/1/2021. (mg)**

**3:20-cv-02540-ZNQ-TJB Notice has been electronically mailed to:**

**3:20-cv-02540-ZNQ-TJB Notice has been sent by regular U.S. Mail:**

ZIA SHAIKH
200 VILLAGE CTR. DR.
UNIT 7381
FREEHOLD, NJ 07728

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1046708974 [Date=11/1/2021] [FileNumber=15589257-0] [892bd5ce401952288e6380e2c3715d6ee0350cb8df1e18260e85a23844be09d33e4121fac3fe59fe08669a2218f2760581fb552bb9c894200c955487d6ce56a3]]

<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

</div>

---

**ZIA SHAIKH,**

        Plaintiff,

        v.

**MADELINE F. EINBINDER,** *et al.,*

        Defendants.

Case No. 20-2540 (ZNQ)(TJB)

**ORDER**

---

**THIS MATTER** is opened to the Court by Plaintiff Zia Shaikh's ("Plaintiff")[1] third Amended Complaint, (ECF No. 19), which the Court is required to screen pursuant to 28 U.S.C. § 1915 and the Court's prior November 25, 2020 Order, (ECF No. 8).[2]  Also before the Court is Plaintiff's third Motion for a Preliminary Injunction (ECF No. 21) to vacate a November 28, 2017 bench warrant in connection with Ocean County Docket No. FM-15-500-14W. (*See* ECF Nos. 6, 11.)

    Plaintiff's third Amended Complaint continues to make allegations against judicial officers, but it again fails to cure the deficiencies with respect to pleading a cause of action against judicial officers that were addressed in the Court's previous Opinion (ECF No. 7) and subsequent Orders of Dismissal, (ECF Nos. 8, 14).  Nearly a year has passed since the Court first rejected Plaintiff's initial Complaint on November 25, 2020.  After reviewing Plaintiff's multiple attempts to cure its defects over that time and having placed Plaintiff on notice in the last Order that this would be his final opportunity to amend his Complaint, the Court finds

---

[1] Plaintiff has multiple cases before this Court, including but not limited to Case Numbers: 19-14092; 19-20597; 20-2540; 20-11057; 20-20003; 20-20005; 20-20007;  20-20008.

[2] This Court previously granted Plaintiff's application to proceed *in forma pauperis* (ECF No. 3), dismissed Plaintiff's original complaint for seeking relief against immune defendants (ECF Nos. 7, 8), and granted Plaintiff leave to file an amended complaint, which would be subject to screening, (*id.*).

that granting him further opportunities would be futile and will dismiss the Complaint with prejudice. *See Keaton v. Argo Turboserve Corp.*, Civ. No. 17-3978, 2021 WL 3879091, at *11 n.11 (D.N.J. Aug. 31, 2021) (dismissing claims with prejudice "given multiple opportunities to amend" and the plaintiff's "repeated failure to cure the deficiencies" in the claims to be dismissed). In light of the Court's decision to dismiss this matter, the Court will deny the pending Motion for Preliminary Injunction as moot.

Accordingly, for the reasons set forth above and for good cause shown,

**IT IS** on this **1st** day of **November, 2021,**

**ORDERED** that this case be **REOPENED**; and it is further

**ORDERED** that Plaintiff's third Amended Complaint (ECF No. 19) is hereby **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that the Motion for a Preliminary injunction (ECF No. 21) is hereby **DENIED AS MOOT**; and it is further

**ORDERED** that this case shall be marked **CLOSED.**

*s/ Zahid N. Quraishi*
**HON. ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

## Utility Events

3:20-cv-02540-ZNQ-TJB SHAIKH
v. EINBINDER et al **CASE
CLOSED on 07/13/2021**

PROSE+,CLOSED,PROSE

<div align="center">

**U.S. District Court**

**District of New Jersey [LIVE]**

</div>

### Notice of Electronic Filing

The following transaction was entered on 10/27/2021 at 2:35 PM EDT and filed on 10/27/2021

| | |
|---|---|
| **Case Name:** | SHAIKH v. EINBINDER et al |
| **Case Number:** | 3:20-cv-02540-ZNQ-TJB |
| **Filer:** | |
| **WARNING: CASE CLOSED on 07/13/2021** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Set Deadlines as to [21] MOTION for Preliminary Injunction. Motion set for 12/6/2021 before Judge Zahid N. Quraishi. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (mg)**

**3:20-cv-02540-ZNQ-TJB Notice has been electronically mailed to:**

**3:20-cv-02540-ZNQ-TJB Notice has been sent by regular U.S. Mail:**

ZIA SHAIKH
200 VILLAGE CTR. DR.
UNIT 7381
FREEHOLD, NJ 07728

**Motions**

3:20-cv-02540-ZNQ-TJB SHAIKH
v. EINBINDER et al **CASE
CLOSED on 07/13/2021**

PROSE+,CLOSED,PROSE

---

Please remember to send in your courtesy copies to chambers marked *Courtesy Copy*. For further Judge
Preference information <u>click here.</u>

### U.S. District Court

### District of New Jersey [LIVE]

**Notice of Electronic Filing**

The following transaction was entered on 10/27/2021 at 2:34 PM EDT and filed on 10/27/2021
Case Name:       SHAIKH v. EINBINDER et al
Case Number:     <u>3:20-cv-02540-ZNQ-TJB</u>
Filer:           ZIA SHAIKH
~~WARNING: CASE CLOSED on 07/13/2021~~
Document Number: <u>21</u>

Docket Text:
**MOTION for Preliminary Injunction to Vacate 11/28/221 bench Warrant for Lack of In Personam and
Subject Matter Jurisdiction by ZIA SHAIKH. (Attachments: # (1) Certification)(mg)**

3:20-cv-02540-ZNQ-TJB Notice has been electronically mailed to:

3:20-cv-02540-ZNQ-TJB Notice has been sent by regular U.S. Mail:

**ZIA SHAIKH
200 VILLAGE CTR. DR.
UNIT 7381
FREEHOLD, NJ 07728**

The following document(s) are associated with this transaction:

Document description:Main Document
Original filename:n/a
Electronic document Stamp:
[STAMP dcecfStamp_ID=1046708974 [Date=10/27/2021] [FileNumber=15576561
-0] [97aed9a64a7f233501192c914249c3bdbc0d9a6c9297da1e561878f505ce96cb3
bc36632a62a5a546303a26ac8f5a1babacc460f8567ccd443789550c6806c33]]
Document description:Certification
Original filename:n/a
Electronic document Stamp:
[STAMP dcecfStamp_ID=1046708974 [Date=10/27/2021] [FileNumber=15576561
-1] [6eb18d1f960119c5ea17539ca1f8f255833deb24e03a54dbd9fd06f76469b68b9
8a29665d69af68cd8e835967f0ad5002e19cb1a99ba574d7fe14f5ef6a5d962]]

NOTICE OF APPEAL

United States District Court for the NEW JERSEY
District of NEW JERSEY
File Number 3:20-CV-02540-ZNQ-TJB

| | |
|---|---|
| ZIA SHAIKH., Plaintiff | |
| v. | Notice of Appeal |
| MADELINE. EINBINDER et al ., Defendant | |

Notice is hereby given that ZIA SHAIKH, Plaintiff in the above named case, hereby appeal to the United States Court of Appeals for the 3rd Circuit from the final judgment, from an order DISMISSING the underlying for alleged failure to cure deficiencies in the order dated November 25,2020 entered in this action on the 01st day of November, 2021.

(s) ___ZIA SHAIKH_____
Attorney for ____PRO SE_____
Address: _200 VILLAGE CTR DR
UNIT 7381
FREEHOLD, NJ 07728

[**Note to inmate filers:** *If you are an inmate confined in an institution and you seek the timing benefit of Fed. R. App. P. 4(c)(1), complete Form 7 (Declaration of Inmate Filing) and file that declaration along with this Notice of Appeal.*]

## Other Orders/Judgments

3:20-cv-02540-ZNQ-TJB SHAIKH
v. EINBINDER et al

PROSE+,PROSE

U.S. District Court

District of New Jersey [LIVE]

## Notice of Electronic Filing

The following transaction was entered on 11/1/2021 at 2:08 PM EDT and filed on 11/1/2021
**Case Name:** SHAIKH v. EINBINDER et al
**Case Number:** 3:20-cv-02540-ZNQ-TJB
**Filer:**
**WARNING: CASE CLOSED on 11/01/2021**
**Document Number:** 22

**Docket Text:**
**ORDER that this case shall be reopened; Plaintiff's third Amended Complaint [19] is hereby DISMISSED WITH PREJUDICE; The Motion for Preliminary Injunction is Denied as moot; This case shall be marked closed. Signed by Judge Zahid N. Quraishi on 11/1/2021. (mg)**

**3:20-cv-02540-ZNQ-TJB Notice has been electronically mailed to:**

**3:20-cv-02540-ZNQ-TJB Notice has been sent by regular U.S. Mail:**

ZIA SHAIKH
200 VILLAGE CTR. DR.
UNIT 7381
FREEHOLD, NJ 07728

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1046708974 [Date=11/1/2021] [FileNumber=15589257-0] [892bd5ce401952288e6380e2c3715d6ee0350cb8df1e18260e85a23844be09d33e4121fac3fe59fe08669a2218f2760581fb552bb9c894200c955487d6ce56a3]]

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

ZIA SHAIKH,

        Plaintiff,

        v.

MADELINE F. EINBINDER, *et al.*,

        Defendants.

Case No. 20-2540 (ZNQ)(TJB)

**ORDER**

**THIS MATTER** is opened to the Court by Plaintiff Zia Shaikh's ("Plaintiff")[1] third Amended Complaint, (ECF No. 19), which the Court is required to screen pursuant to 28 U.S.C. § 1915 and the Court's prior November 25, 2020 Order, (ECF No. 8).[2]  Also before the Court is Plaintiff's third Motion for a Preliminary Injunction (ECF No. 21) to vacate a November 28, 2017 bench warrant in connection with Ocean County Docket No. FM-15-500-14W. (*See* ECF Nos. 6, 11.)

    Plaintiff's third Amended Complaint continues to make allegations against judicial officers, but it again fails to cure the deficiencies with respect to pleading a cause of action against judicial officers that were addressed in the Court's previous Opinion (ECF No. 7) and subsequent Orders of Dismissal, (ECF Nos. 8, 14).  Nearly a year has passed since the Court first rejected Plaintiff's initial Complaint on November 25, 2020.  After reviewing Plaintiff's multiple attempts to cure its defects over that time and having placed Plaintiff on notice in the last Order that this would be his final opportunity to amend his Complaint, the Court finds

---

[1] Plaintiff has multiple cases before this Court, including but not limited to Case Numbers: 19-14092; 19-20597; 20-2540; 20-11057; 20-20003; 20-20005; 20-20007;  20-20008.

[2] This Court previously granted Plaintiff's application to proceed *in forma pauperis* (ECF No. 3), dismissed Plaintiff's original complaint for seeking relief against immune defendants (ECF Nos. 7, 8), and granted Plaintiff leave to file an amended complaint, which would be subject to screening, (*id.*).

that granting him further opportunities would be futile and will dismiss the Complaint with prejudice. *See Keaton v. Argo Turboserve Corp.*, Civ. No. 17-3978, 2021 WL 3879091, at *11 n.11 (D.N.J. Aug. 31, 2021) (dismissing claims with prejudice "given multiple opportunities to amend" and the plaintiff's "repeated failure to cure the deficiencies" in the claims to be dismissed).  In light of the Court's decision to dismiss this matter, the Court will deny the pending Motion for Preliminary Injunction as moot.

Accordingly, for the reasons set forth above and for good cause shown,

**IT IS** on this **1st** day of **November, 2021,**

**ORDERED** that this case be **REOPENED**; and it is further

**ORDERED** that Plaintiff's third Amended Complaint (ECF No. 19) is hereby **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that the Motion for a Preliminary injunction (ECF No. 21) is hereby **DENIED AS MOOT**; and it is further

**ORDERED** that this case shall be marked **CLOSED.**

*s/ Zahid N. Quraishi*
**HON. ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

## Utility Events

<u>3:20-cv-02540-ZNQ-TJB SHAIKH</u>
<u>v. EINBINDER et al</u> **CASE**
**CLOSED on 07/13/2021**

PROSE+,CLOSED,PROSE

U.S. District Court

District of New Jersey [LIVE]

### Notice of Electronic Filing

The following transaction was entered on 10/27/2021 at 2:35 PM EDT and filed on 10/27/2021

| | |
|---|---|
| **Case Name:** | SHAIKH v. EINBINDER et al |
| **Case Number:** | <u>3:20-cv-02540-ZNQ-TJB</u> |
| **Filer:** | |

**WARNING: CASE CLOSED on 07/13/2021**

**Document Number:** No document attached

**Docket Text:**
**Set Deadlines as to [21] MOTION for Preliminary Injunction. Motion set for 12/6/2021 before Judge Zahid N. Quraishi. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (mg)**

**3:20-cv-02540-ZNQ-TJB Notice has been electronically mailed to:**

**3:20-cv-02540-ZNQ-TJB Notice has been sent by regular U.S. Mail:**

ZIA SHAIKH
200 VILLAGE CTR. DR.
UNIT 7381
FREEHOLD, NJ 07728

**Motions**

<u>3:20-cv-02540-ZNQ-TJB SHAIKH</u>
<u>v. EINBINDER et al</u> **CASE**
**CLOSED on 07/13/2021**

PROSE+,CLOSED,PROSE

Please remember to send in your courtesy copies to chambers marked *Courtesy Copy*. For further Judge
Preference information <u>click here.</u>

<div align="center">

**U.S. District Court**

**District of New Jersey [LIVE]**

</div>

**Notice of Electronic Filing**

The following transaction was entered on 10/27/2021 at 2:34 PM EDT and filed on 10/27/2021

| | |
|---|---|
| Case Name: | SHAIKH v. EINBINDER et al |
| Case Number: | <u>3:20-cv-02540-ZNQ-TJB</u> |
| Filer: | ZIA SHAIKH |

WARNING: CASE CLOSED on 07/13/2021
Document Number: <u>21</u>

Docket Text:
**MOTION for Preliminary Injunction to Vacate 11/28/221 bench Warrant for Lack of In Personam and
Subject Matter Jurisdiction by ZIA SHAIKH. (Attachments: # (1) Certification)(mg)**

3:20-cv-02540-ZNQ-TJB Notice has been electronically mailed to:

3:20-cv-02540-ZNQ-TJB Notice has been sent by regular U.S. Mail:

**ZIA SHAIKH**
**200 VILLAGE CTR. DR.**
**UNIT 7381**
**FREEHOLD, NJ 07728**

The following document(s) are associated with this transaction:

Document description:Main Document
Original filename:n/a
Electronic document Stamp:
[STAMP dcecfStamp_ID=1046708974 [Date=10/27/2021] [FileNumber=15576561
-0] [97aed9a64a7f233501192c914249c3bdbc0d9a6c9297da1e561878f505ce96cb3
bc36632a62a5a546303a26ac8f5a1babacc460f8567ccd443789550c6806c33]]
Document description:Certification
Original filename:n/a
Electronic document Stamp:
[STAMP dcecfStamp_ID=1046708974 [Date=10/27/2021] [FileNumber=15576561
-1] [6eb18d1f960119c5ea17539ca1f8f255833deb24e03a54dbd9fd06f76469b68b9
8a29665d69af68cd8e835967f0ad5002e19cb1a99ba574d7fe14f5ef6a5d962]]

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

**ZIA SHAIKH,**

          Plaintiff,

        v.

**MADELINE F. EINBINDER,** *et al.*,

          Defendants.

Case No. 20-2540 (ZNQ)(TJB)

## ORDER

**THIS MATTER** is opened to the Court by Plaintiff Zia Shaikh's ("Plaintiff")[1] third Amended Complaint, (ECF No. 19), which the Court is required to screen pursuant to 28 U.S.C. § 1915 and the Court's prior November 25, 2020 Order, (ECF No. 8).[2]  Also before the Court is Plaintiff's third Motion for a Preliminary Injunction (ECF No. 21) to vacate a November 28, 2017 bench warrant in connection with Ocean County Docket No. FM-15-500-14W. (*See* ECF Nos. 6, 11.)

      Plaintiff's third Amended Complaint continues to make allegations against judicial officers, but it again fails to cure the deficiencies with respect to pleading a cause of action against judicial officers that were addressed in the Court's previous Opinion (ECF No. 7) and subsequent Orders of Dismissal, (ECF Nos. 8, 14).  Nearly a year has passed since the Court first rejected Plaintiff's initial Complaint on November 25, 2020.  After reviewing Plaintiff's multiple attempts to cure its defects over that time and having placed Plaintiff on notice in the last Order that this would be his final opportunity to amend his Complaint, the Court finds

---

[1] Plaintiff has multiple cases before this Court, including but not limited to Case Numbers: 19-14092; 19-20597; 20-2540; 20-11057; 20-20003; 20-20005; 20-20007;  20-20008.

[2] This Court previously granted Plaintiff's application to proceed *in forma pauperis* (ECF No. 3), dismissed Plaintiff's original complaint for seeking relief against immune defendants (ECF Nos. 7, 8), and granted Plaintiff leave to file an amended complaint, which would be subject to screening, (*id.*).

that granting him further opportunities would be futile and will dismiss the Complaint with prejudice. *See Keaton v. Argo Turboserve Corp.*, Civ. No. 17-3978, 2021 WL 3879091, at *11 n.11 (D.N.J. Aug. 31, 2021) (dismissing claims with prejudice "given multiple opportunities to amend" and the plaintiff's "repeated failure to cure the deficiencies" in the claims to be dismissed). In light of the Court's decision to dismiss this matter, the Court will deny the pending Motion for Preliminary Injunction as moot.

Accordingly, for the reasons set forth above and for good cause shown,

**IT IS** on this **1st** day of **November, 2021**,

**ORDERED** that this case be **REOPENED**; and it is further

**ORDERED** that Plaintiff's third Amended Complaint (ECF No. 19) is hereby **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that the Motion for a Preliminary injunction (ECF No. 21) is hereby **DENIED AS MOOT**; and it is further

**ORDERED** that this case shall be marked **CLOSED.**


*s/ Zahid N. Quraishi*
**HON. ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

ZIA SHAIKH,

                    Appellant

v.

MADELINE EINBINDER, J.S.C.; MARLENE L. FORD, A.J.S.C.;
 JOHN S. DORAN, J.S.C.; FRANCIS HODGSON, J.S.C.;
LISA P. THORTON, A.J.S.C.; DEBORAH H. SCHRON

OFFICE OF THE CLERK

**PATRICIA S. DODSZUWEIT**

**CLERK**



UNITED STATES COURT OF APPEALS
21400 UNITED STATES COURTHOUSE
601 MARKET STREET
PHILADELPHIA, PA  19106-1790
Website: www.ca3.uscourts.gov

TELEPHONE
215-597-2995

November 16, 2021

Zia Shaikh
200 Village Center Drive
Unit 7381
Freehold, NJ 07728

RE: Zia Shaikh v. Madelin Einbinder, et al
Case Number: 21-3115
District Court Case Number: 3-20-cv-02540

**PACER account holders are required to promptly inform the PACER Service Center of any contact information changes. In order to not delay providing notice to attorneys or pro se public filers, your information, including address, phone number and/or email address, may have been updated in the Third Circuit database. Changes at the local level will not be reflected at PACER. Public filers are encouraged to review their information on file with PACER and update if necessary.**

To All Parties:

**Attorneys are required to file all documents electronically through the Court's Electronic Case Filing System. See 3d Cir. L.A.R. 113 and the Court's website at www.ca3.uscourts.gov/cmecf-case-managementelectronic-case-files.**

Enclosed is case opening information regarding the above-captioned appeal filed by **Zia Shaikh**, docketed at **No. 21-3115**. All inquiries should be directed to your Case Manager in writing or by calling the Clerk's Office at 215-597-2995. This Court's rules, forms, and case information are available on our website at http://www.ca3.uscourts.gov.

**On December 1, 2009, the Federal Rules of Appellate and Civil Procedure were amended modifying deadlines and calculation of time. In particular those motions which will toll the time for filing a notice of appeal under Fed.R.App.P. 4(a)(4), other than a motion for attorney's fees under Fed.R.Civ.P. 54, will be considered timely if filed no later than 28 days after the entry of judgment.**

**Should a party file one of the motions listed in Fed.R.App.P 4(a)(4) after a notice of appeal has been filed, that party must immediately inform the Clerk of the Court of Appeals in writing of the date and type of motion that was filed.** The case in the court of appeals will not be stayed absent such notification.

The requirements for the filing of an appearance form, disclosure statement and civil appeal information statement are waived for pro se litigants.

**Counsel for Appellee**

As counsel for Appellee(s), you must file:
1. Application for Admission (if applicable)
2. Appearance Form
3. Disclosure Statement (except governmental entities)
These forms must be filed within **(14) fourteen days** of the date of this letter.

Attached is a copy of the full caption as it is titled in the District Court. Please review the caption carefully and promptly advise this office in writing of any discrepancies.

Enclosures:

Information for Pro Se Litigants
Caption

Very truly yours,
Patricia S. Dodszuweit, Clerk

By: Pamela Batts

Pamela Batts, Case Manager
267-299-4943